UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SKYLER JACKSON,

                                    Plaintiff,

                                                              9:13-CV-01279
v.
                                                              (MAD/TWD)

NATHAN YANDO, et al.,

                                    Defendants.

_____

APPEARANCES:                                        OF COUNSEL:

SKYLER JACKSON
08-A-2852
Plaintiff, *pro se*
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

HON. ERIC T. SCHNEIDERMAN                           C. HARRIS DAGUE, ESQ.
Attorney General of the State of New York           Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Skyler Jackson, an inmate in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"), alleges violations of his rights under the Eighth and

Fourteenth Amendments while he was confined at the Great Meadow Correctional Facility ("Great Meadow"). (*See generally* Dkt. No. 39.)

Plaintiff alleges that on October 11, 2010, Defendant Correction Officers Nathan Yando ("Yando"), Daniel Mulligan (Mulligan"), Jeremy Saunders ("Saunders"), Joseph Courtright ("Courtright"), Roger Morgan[1] ("Morgan"), Cory Thayer ("Thayer"), Officer Kelly ("Kelly"), and Sergeant Colin Fraser ("Fraser") subjected Plaintiff to excessive force, and that Kelly, Thayer, and Fraser also failed to intervene and protect Plaintiff. *Id.* Plaintiff further alleges that Defendant Lieutenant Craig Goodman ("Goodman") denied Plaintiff due process during his subsequent Tier III disciplinary hearing. *Id.* Plaintiff also alleges supervisory liability claims against Superintendent Norman Bezio ("Bezio"). *Id.*

Currently pending before the Court is Defendants' motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, dismissing all claims against Thayer, Goodman, and Bezio. (Dkt. No. 69.) For the reasons discussed below, the Court recommends granting Defendants' motion as to the Eighth Amendment claim against Thayer and the Fourteenth Amendment claims against Goodman and Bezio. However, because Defendants did not address Plaintiff's Eight Amendment supervisory liability claim against Bezio, the Court recommends that with respect to that claim, Defendants' motion be denied.

## I.      BACKGROUND

Plaintiff alleges that on October 11, 2010, while he and other members of the "E-Block" housing unit at Great Meadow were walking to the facility mess hall for their afternoon meal, Plaintiff overheard Mulligan tell Courtright, "That's him right there." (Dkt. No. 39 at ¶¶ 20-21.) Plaintiff was subsequently placed on the wall for a pat frisk. *Id.* at ¶ 21. According to Plaintiff,

---

[1] By Decision and Order, dated October 7, 2014, this Court dismissed this action as against deceased Correction Officer Roger Morgan. (Dkt. No. 57.)

while his hands were on the wall, Mulligan punched Plaintiff on the left side of his face. *Id*. at ¶ 22. Thereafter, Mulligan, Yando, Saunders, Morgan, and Courtright knocked Plaintiff to the floor, where he was kicked, and struck by fists and batons. *Id*. at ¶ 23. Plaintiff further alleges that Kelly, Thayer, and Frazer failed to intervene and protect Plaintiff from the excessive force. *Id*. at ¶¶ 24-25. Plaintiff alleges several injuries stemming from the incident, including swollen left eye, swollen bridge of nose, swollen left wrist, and a cut above the nose. *Id*. at ¶ 27. After the assault, Plaintiff was taken to the prison infirmary and then to Albany Medical Center for treatment for concussion symptoms and dizzy spells. *Id*. at ¶ 28.

Plaintiff further alleges that Mulligan, Saunders, Courtright, and Yando have repeatedly engaged in the use of excessive force against inmates in the past. *Id*. at ¶ 26. Plaintiff alleges that Bezio failed to take disciplinary or other action to curb the known pattern of physical abuse of inmates by Mulligan, Saunders, Courtright, and Yando. *Id*. at ¶ 38.

On October 12, 2010, Plaintiff was issued three misbehavior reports related to his misconduct during the incident. (Dkt. No. 69-6 at 5-7.[2]) Specifically, Courtright charged Plaintiff with violation of Rules 100.11 (assault on staff), 115.10 (complying with frisk procedures), 106.10 (direct order), and 104.11 (violent conduct). *Id*. at 6. Mulligan charged Plaintiff with violation of Rules 100.11 (assault on staff), and 104.11 (violent conduct). *Id*. at 7. Saunders charged Plaintiff with violation of Rule 113.10 (weapon). *Id*. at 5.

Bezio assigned Goodman to conduct Plaintiff's Tier III disciplinary hearing, which began on October 18, 2010, and ended November 4, 2010. (Dkt. No. 69-7.) On the first day of the hearing, Goodman read the three misbehavior reports into the record and Plaintiff pleaded "not guilty" to all charges. *Id*. at 4-5.

---

[2] Page references to documents identified by docket number are to the page number assigned by the Court's CM/ECF electronic docketing system.

3

Plaintiff asserted several objections throughout his hearing. On the first day of the hearing, Plaintiff objected to the fact that he never received the "to and from" memoranda that he had requested from his assistant, J. Parham. *Id*. at 7. Goodman advised Plaintiff that he was not allowed that information due to a recent change in DOCCS' Policy. *Id*. Plaintiff also objected to Goodman conducting the hearing, because, in part, he may have "an enemy that's got a special interest." *Id*. at 11. Goodman noted that objection and continued the hearing. *Id*.

On October 19, 2010, at Plaintiff's request, Mulligan and Saunders were called as witnesses and Plaintiff was permitted to ask questions through Goodman. *Id*. at 13, 29. Goodman also read the Unusual Incident Report into the record. *Id*. at 22. Plaintiff objected that he was not provided a copy of that report. *Id*. at 22-23. Goodman explained to Plaintiff that pursuant to DOCCS' policy, inmates were no longer entitled to copies of unusual incident reports, but the hearing officer could read the report into the hearing record. *Id.* at 23.

The hearing resumed on October 26, 2010. *Id*. at 44. At Plaintiff's request, Courtright was called as a witness and Plaintiff was permitted to ask questions through Goodman. *Id*. Plaintiff objected once more that he did not have a copy of the Unusual Incident Report and stated that other inmates in the special housing unit ("SHU") had copies of use of force reports and "to and froms." *Id*. at 53, 60. At Plaintiff's request, Parham was called as a witness. *Id*. at 62. Parham testified that she believed Plaintiff was not entitled to that information. *Id*. at 73.

Subsequently, Goodman determined Plaintiff was permitted to have copies of the Use of Force Report and associated "to and from" memoranda. *Id*. at 62. Goodman adjourned the hearing for twenty-four hours in order to provide Plaintiff the necessary opportunity to consider and review the materials. *Id*. Thereafter, Plaintiff asked to call Yando, Morgan, and Kelly, and to "recall" Courtright, Mulligan, and Saunders, as witnesses. *Id*. at 65, 74, 92. Goodman

granted Plaintiff's request to call Yando, Morgan, and Kelly, but denied his request to recall Courtright, Mulligan, and Saunders. *Id*. at 65, 69, 73, 74, 92.

On November 4, 2010, Goodman found Plaintiff guilty of (1) violent conduct (two counts), (2) assault on staff (two counts), (3) refusing search or frisk, and (4) weapon. (Dkt. 69-6 at 2.) Goodman sentenced Plaintiff to thirty-six months in the SHU, with a corresponding loss of privileges and good time credits. *Id*. Goodman explained the reasons for his decision in a Memorandum entitled "Statement of Evidence Relied Upon," which he read into the hearing record. (Dkt. No. 69-6 at 8-9; Dkt. No. 69-7 at 107.) In part, Goodman relied upon the:

- misbehavior report written by Courtright and his testimony that he observed Plaintiff receive an unknown object from a cell during the noon meal run, Plaintiff failed to comply with an ordered pat risk, assaulted staff during the attempted pat frisk, and resisted efforts of the security staff to subdue him;

- misbehavior report written by Mulligan and his testimony that he observed Plaintiff making slashing motions at Yando during the incident, and that Mulligan intervened in the altercation by grabbing Plaintiff's left wrist causing an item, later to be identified as a broken piece of razor wrapped in electrical tape, to fall to the floor, and that Mulligan received an injury to his left knuckle from the weapon Plaintiff was wielding during the struggle;

- misbehavior report written by Saunders and his testimony that he was directed to, and confiscated a razor-type weapon measuring ¾ inches by ½ inch from the floor near the E-Block desk, and that he photographed and catalogued the weapon pursuant to DOCCS' policy, both of which were made part of the hearing record; and

- Yando's testimony that he observed Plaintiff fighting and struggling during the incident and that he further observed Plaintiff attempting to "slash him" with an object in his hand, described as metal and shiny in color.

(Dkt. No. 69-6 at 8-9.)

Plaintiff alleges that Goodman denied Plaintiff due process of law in violation of the Fourteenth Amendment at the disciplinary hearing by (1) failing to conduct the hearing in a fair and impartial matter, (2) failing to conduct a thorough investigation, (3) failing to promptly

provide Plaintiff with requested materials, and (4) finding Plaintiff guilty of the charges "with no evidence to support the charges." (Dkt. No. 39 at ¶¶ 32, 39.) Plaintiff further alleges that Bezio's action in "overseeing and sustaining" Goodman's decision violated his Fourteenth Amendment rights. *Id*. at 6.

## II.    PROCEDRUAL HISTORY

Plaintiff commenced this action in October, 2013, alleging that on October 11, 2010, Yando, Mulligan, Saunders, Courtright, Morgan, Thayer, Kelly, and Fraser violated his rights under the Eighth Amendment. (Dkt. No. 1.) On November 20, 2013, this Court issued a Decision and Order granting Plaintiff's application for *in forma pauperis* status and directing service of the Complaint. (Dkt. No. 5.)

Following service of process, Defendants answered the Complaint. (Dkt. No. 25.) Defendants filed a motion for judgment on the pleadings on the ground that the Complaint was not timely filed. (Dkt. No. 27.) Plaintiff opposed the motion (Dkt. No. 41), and filed an Amended Complaint. (Dkt. No. 39.) Plaintiff's Amended Complaint asserted claims for the violation of his rights under the Eighth and Fourteenth Amendments, and named Goodman and Bezio as additional Defendants. *Id*.

On August 13, 2014, this Court denied Defendants' motion for judgment on the pleadings; construed Plaintiff's Amended Complaint as a motion to amend; granted the motion to amend; directed service on Goodman and Bezio; and directed all Defendants to answer the Amended Complaint. (Dkt. No. 44.) Defendants filed their Answer on September 19, 2014. (Dkt. No. 52.)

On June 29, 2015, after engaging in discovery, Defendants moved for entry of partial summary judgment dismissing all claims against Thayer, Goodman, and Bezio. (Dkt. No. 69.)

In their motion, Defendants argue that (1) Thayer was not physically present at the time of the altercation, (2) Goodman provided Plaintiff with adequate due process at the disciplinary hearing, and (3) Bezio was not personally involved in Plaintiff's disciplinary hearing in any regard. (Dkt. No. 69-3.) Plaintiff has opposed the motion. (Dkt. No. 74.)

## III.    APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 273 (citations omitted). The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible

evidence.") (citation and internal quotation marks omitted). A plaintiff's verified complaint is to be treated as an affidavit and "therefore will be considered in determining whether material issues of fact exist[.]" *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted).

In *Jeffreys v. City of New York*, the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original). To defeat summary judgment, "nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). Statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to formal pleadings drafted by lawyers." *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haynes v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). The court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments

that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, this does not

mean that a *pro se* litigant is excused from following the procedural formalities of summary

judgment, *Govan*, 289 F. Supp. 2d at 295, and "a *pro se* party's 'bald assertion,' unsupported by

evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93

Civ. 5981 (WHP) (JCF), 1999 WL 983876 at *3, 1999 U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y.

Oct. 28, 1999)[3] (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)). Moreover, the

latitude accorded a *pro se* litigant "does not relieve him of the obligation to respond to a motion

for summary judgment with sufficient admissible evidence." *Hamlett v. Srivastava*, 496 F. Supp.

2d 325, 328 (S.D.N.Y. 2007) (citing *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir.

2003)).

## IV.    ANALYSIS

### A.    Deficiencies in Plaintiff's Opposition

As required under N.D.N.Y. Local Rule ("L.R.") 7.1, Defendants have filed a statement

of material facts with citations to the summary judgment record. (Dkt. No. 69-2.) Although

Plaintiff has opposed Defendants' motion, Plaintiff failed to respond to the statement of material

facts filed by Defendants as required under L.R. 7.1(a)(3). (*See* Dkt No. 74.) Under the rule, the

opposing party's response to the movant's statement of material facts "shall mirror the movant's

Statement of Material Facts by admitting and/or denying each of the movant's assertions in

matching numbered paragraphs. Each denial shall set forth a specific citation to the record

where the factual issue arises." L.R. 7.1(a)(3).

Where, as in this case, a party has failed to respond to the movant's statement of material

facts in the manner required under L.R. 7.1(a)(3), the L.R. provides that facts in the movant's

---

[3] The Court will provide Plaintiff with copies of unpublished decisions in accordance with the Second Circuit's
decision in *Lebron v. Sanders*, 557 F.3d 76, 76 (2d Cir. 2009) (per curium).

statement will be accepted as true (1) to the extent they are supported by evidence in the record,[4] and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion.[5] *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

The Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted). The Court has opted to review the entire record in this case. Moreover, because Plaintiff's Amended Complaint (Dkt. No. 39) and Opposition (Dkt. No. 72) are both verified, the Court will treat them as affidavits in opposition to Defendants' motion. *See Colon*, 58 F.3d at 872. However, the Court's review has revealed that Plaintiff's submissions contain very little in the way of admissible evidence.

## B. Defendant Thayer

Plaintiff brings an Eighth Amendment claim against Thayer, alleging that Thayer used excessive force and also failed to intervene during the incident. (Dkt. No. 39 at ¶¶ 9, 25.) Defendants move for summary judgment in Thayer's favor, arguing that he was not personally involved in any of the alleged constitutional violations, nor was he even present during the

---

[4] L.R. 7.1(a)(3) provides that "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *But see Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts]. It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[5] Defendants have complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to their summary judgment motion. (Dkt. Nos. 69, 69-1.)

incident.  (Dkt. No. 69-3 at 9-12.)  For the reasons that follow, the Court recommends granting Thayer summary judgment on Plaintiff's Eighth Amendment claims.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

To establish a claim of excessive force under the Eighth Amendment, a plaintiff must satisfy two components: "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).  In consideration of the subjective element, a plaintiff must allege facts which, if true, would establish that the defendant's actions were wanton "in light of the particular circumstances surrounding the challenged conduct."  *Id.* (internal quotations omitted).  The objective component asks whether the punishment was sufficiently harmful to establish a violation "in light of contemporary standards of decency."  *Id.* (internal quotation omitted).

Generally, officers have a duty to intervene and prevent such cruel and unusual punishment from occurring or continuing.  *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  "It is well-settled that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers."  *Henry v. Dinelle*, No. 10–CV–0456 (GTS/DEP), 2011 WL 5975027, at *4, 2011 U.S. Dist. LEXIS 136583, at *13 (N.D.N.Y. Nov. 29, 2011).  A correction officer who does not participate in, but is present when

an assault on an inmate occurs, may still be liable for any resulting constitutional deprivation. *Id*.

To prevail on a failure to intervene claim, the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer did not take reasonable steps to intervene. *Id.* (citing *Jean-Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008)).

In support of Defendants' motion, Thayer declares that he was not personally involved in any application of force administered against Plaintiff on October 11, 2010. (Dkt. No. 69-4 at ¶ 3.) Thayer further declares that he was not present during any alleged application of force. *Id*. Thayer explains that on October 11, 2010, his "bid" at Great Meadow was Mental Health Unit/Courtroom Escort. *Id*. at ¶ 4. Thayer's duties included escorting "keeplocked" inmates to mental health appointments or disciplinary hearings. *Id*. His bid was not stationed on E-block. *Id*. Thayer declares that he was on the other side of the prison when he received the "level-2" stress call notifying facility security staff of an incident requiring assistance on E-block. *Id*. at ¶ 5. He responded by running from his location to E-block. *Id*. He was then stopped near the facility cell hall and was told that the incident had resolved. *Id*. at ¶ 6. Thayer was given a facility hand held video camera and instructed to report to the incident location on E-block and to videotape the inmate escort to the medical unit for examination. *Id*.

Thayer declares that when he arrived at the E-Block corridor, Plaintiff was restrained against the wall awaiting escort to medical. *Id*. at ¶ 7. He did not observe any force applied against Plaintiff at any time. *Id*. Thayer recorded the escort of Plaintiff to the medical unit for examination. *Id*. at ¶ 8. Thayer declares that no use of force was necessary during escort. *Id*.

Here, Thayer's declaration establishes that he was not present during the alleged incident, nor did he have a realistic opportunity to intervene and prevent the harm. Thus, the burden shifts to Plaintiff to raise a triable issue of fact.

Plaintiff has failed to meet his burden. Plaintiff's verified Amended Complaint alleges Thayer failed to protect Plaintiff from the assault and that Plaintiff "believes" Thayer participated in the assault. (Dkt. No. 39 at ¶ 25.) However, Plaintiff also states that he is "unsure" if Thayer was part of the "response team." *Id.* At his deposition, Plaintiff testified that he included Thayer in this lawsuit because Thayer's name appeared in post-incident documentation identifying him as the video camera escort officer following the incident. (Dkt. No. 69-10 at 12.) Plaintiff admitted that he did not know if Thayer had "any direct involvement in the incident or not." *Id.* Turning to the only other piece of evidence that Plaintiff proffers on his claims against Thayer, Plaintiff declares in opposition that:

> By the instant complaint, the Plaintiff concedes that the defendant Thayer was even present during the incident. While the evidence does establish that the Defendant Thayer operated the video camera, that does not mean that Defendant Thayer was not outside of his assigned area and participated in the attack of the plaintiff.

(Dkt. No. 74 at 3.)

"Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998); *Smith v. Rosati*, No. 9:10-CV-1502 (DNH/DEP), 2013 WL 1500422, at *12, 2013 U.S. Dist. LEXIS 54402, at *39 (N.D.N.Y. Feb. 20, 2013) ("Mere conclusory allegations that are unsupported by any record evidence are insufficient to give rise to a genuine dispute of material fact."). Evidence must be based on personal knowledge. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004); *Sellers v. M.C Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988).

In this case, Plaintiff has not raised a triable issue of fact as to Thayer's personal involvement in the incident. Accordingly, the Court recommends that Thayer be granted summary judgment on Plaintiff's Eighth Amendment claims.

## C. Defendant Goodman

Plaintiff claims that he was denied due process in his disciplinary hearing because (1) Goodman did not conduct a thorough investigation, (2) Goodman failed to "promptly turn over" requested material, and (3) there was insufficient evidence to find Plaintiff guilty of the charges. (Dkt. No. 39 at ¶¶ 32-35.) Plaintiff further alleges that Goodman was biased and failed to conduct the hearing in a fair and impartial manner. *Id.* at ¶ 32.

To establish a procedural due process claim under § 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).

The Fourteenth Amendment due process protections afforded a prison inmate do not equate to "the full panoply of rights due to a defendant in a criminal prosecution." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). "An inmate is entitled to advance written notice of the charges against him; a hearing affording a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The due process clause requires that a hearing officer's determination be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Sira*, 380 F.3d at 69 (quoting

*Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). In the Second Circuit, the "some evidence" standard requires some "reliable evidence." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004).

In addition, to establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural deficiencies, in the sense that the errors affected the outcome of the hearing. *See, e.g.*, *Clark v. Dannheim*, 590 F. Supp. 2d 429, 429 (W.D.N.Y. 2008) (citing, *inter alia*, *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) ("[I]t is entirely inappropriate to overturn the outcome of a prison disciplinary hearing because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial.")); *see also Lewis v. Murphy*, No. 9:12–CV–0268 (NAM/CFH), 2014 WL 3729362, at *13, 2014 U.S. Dist. LEXIS 102659, at *36 (N.D.N.Y. July 25, 2014) (the plaintiff alleged that his counselor failed to interview witnesses but did not show how this shortcoming prejudiced the results).

Here, Goodman sentenced Plaintiff to serve thirty-six months in the SHU. (Dkt. No. 69-6 at 2; Dkt. No. 69-7 at 107.) Defendants, apparently conceding that the disciplinary sanctions imposed on Plaintiff implicated a liberty interest, argue that Plaintiff was afforded ample due process during the hearing. (Dkt. No. 69-3 at 12-16.) The Court agrees.

In this case, Plaintiff (1) received advance notice of the charges, (2) appeared at the disciplinary hearing and was afforded a reasonable opportunity to call witnesses and present documentary evidence in his defense, (3) was afforded a fair and impartial hearing officer, and (4) received a written statement of the disposition. Based on the record of the disciplinary hearing, no reasonable factfinder could conclude that Plaintiff's due process rights were violated

or that the outcome of the proceeding would have been any different if Goodman had "promptly" turned over the requested material.

### 1.   Thorough Investigation

As an initial matter, Plaintiff's claim that Goodman failed to conduct a thorough investigation is without merit because Plaintiff had no right to an independent investigation by the hearing officer. *See Robinson v. Brown*, No. 9:11–CV–0758 (TJM/DEP), 2012 WL 6799725, at *5, 2012 U.S. Dist. LEXIS 183782, at *17-18 (N.D.N.Y. Nov. 1, 2012) (there is no requirement that a hearing officer conduct an independent investigation).

### 2.   Opportunity to be Heard and Present Witnesses

An accused prisoner has the right to a hearing where he is given a reasonable opportunity to call witnesses and present documentary evidence. *Sira*, 380 F.3d at 69. The record establishes that Plaintiff was present and testified at the hearing, and called and questioned seven witnesses. (*See generally* Dkt. No. 69-7.) Plaintiff does not dispute that he was given an opportunity to be heard. Plaintiff does, however, allege that Goodman failed to provide Plaintiff with any of the requested documents until after the majority of the officers testified at the hearing. (Dkt. No. 39 at ¶ 33.)

Plaintiff raised this objection several times during the course of the hearing. (Dkt. No. 69-7 at 7, 23, 59, 62, 71-74.) In response to this objection, Goodman explained to Plaintiff that a recent change in DOCCS' policy prohibited the provision of the requested materials to inmates, but that the hearing officer could read the information into the hearing record.[6] *Id*. at 7, 23, 60,

---

[6] Specifically, Goodman explained to Plaintiff that in a July 7, 2010, Memorandum from Deputy Commissioner Lucien Leclair, Jr., DOCCS adopted a policy whereby inmates would not be provided copies of preliminary unusual incident reports, but the materials could be made available during the hearing. (*See* Dkt. No. 69-6 at 15-16.)

62, 71-74. Parham also testified that she believed that she could not provide copies of the requested documents to Plaintiff. *Id*. at 109.

Goodman declares that in line with DOCCS' policy, he read to Plaintiff a copy of the Unusual Incident Report, and provided him copies of the memoranda associated with the Use of Force Report. (Dkt. No. 69-5 at ¶ 13.) Additionally, Goodman declares that upon reading and providing these materials to Plaintiff, he adjourned the hearing for twenty-four hours in order to provide Plaintiff the necessary opportunity to consider and review the materials. *Id*.

Thereafter, Plaintiff asked to call Morgan, Kelly, and Yando as witnesses, and Plaintiff was permitted to question each officer. (Dkt. No. 69-7 at 65, 74, 92.) However, Goodman denied Plaintiff's request to "recall" Courtright, Mulligan and Saunders. *Id*. at 73, 74, 92. Goodman determined that recalling the officers was "unnecessary" because they were already questioned and testified that their written misbehavior reports were accurate.[7] *Id*. at 73.

Although due process includes a right to call witnesses, this right is not unfettered. *Alicea v. Howell*, 387 F. Supp. 2d 227, 234 (W.D.N.Y. 2005) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)). This right may be limited for security reasons, to keep a hearing within reasonable limits, or on the basis of irrelevance or lack of necessity. *Id*. (citing, *inter alia*, *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony or evidence)); *see also Eleby v.*

---

[7] Prior to denying Plaintiff's request, Goodman provided Plaintiff with an opportunity to explain why he believed that additional testimony from Courtright, Mulligan, and Saunders was necessary. (Dkt. No. 69-7 at 69-72, 100.) Plaintiff explained to Goodman that after reading the Use of Force memoranda, "everything is not making sense" because Mulligan's memorandum to Bezio stated that he observed Plaintiff making "slashing" motions while Courtright, who was present throughout the entire incident, did not. *Id*. at 102. Plaintiff specified that he wanted to question Courtright and Mulligan about the weapon, "because there wasn't no weapon period." *Id*. at 103. Plaintiff further stated that "I would like to know how a weapon just magically popped up in my hand . . . Courtright didn't see a weapon in my hand upon putting me up on the wall to do a pat frisk. A weapon doesn't just pop out of nowhere." *Id*. at 104. Goodman denied this request as irrelevant because neither Courtright nor Mulligan charged Plaintiff with possession of a weapon. *Id*. at 103-04.

*Selsky*, 682 F. Supp. 2d 289, 291-92 (W.D.N.Y. 2010) (hearing officers have discretion to keep the hearing within reasonable limits, and "included within that discretion is the authority to refuse to call witnesses whose testimony the prison official reasonably regards as duplicative or non-probative"). Goodman, having explained his reasoning for denying Plaintiff's request to recall Courtright, Mulligan, and Saunders, was acting within his discretion as a hearing officer to control the hearing.

After an exhaustive review of the hearing transcript, the Court finds that no reasonable factfinder could conclude that the delay in the requested documents, or denial to recall witnesses, resulted in any prejudice to Plaintiff. Plaintiff was given ample opportunity, with several adjournments, to prepare for the hearing. Goodman provided Plaintiff with all requested documentation. *See Murray v. Arguitt*, No. 9:10-CV-1440 (NAM/CFH), 2014 WL 4676569, at *19, 2014 U.S. Dist. LEXIS 68665, at *48-49 (N.D.N.Y. Sept. 18, 2014) (the record established that the hearing officer took steps to provide the inmate with the requested evidence). Goodman granted Plaintiff's request to call seven witnesses, and provided Plaintiff with sufficient time to question each witness. Thus, the Court finds no triable issue of fact exists as to whether Plaintiff had a reasonable opportunity to call witnesses and present documentary evidence, or that the outcome of the proceeding would have been any different had Plaintiff received the requested documents at the outset of the hearing or been permitted to reexamine Courtright, Mulligan, and Saunders.

### 3. Impartial Hearing Officer and "Some Evidence"

An accused prisoner has the right to have a fair and impartial hearing officer preside over his disciplinary hearing. *Sira*, 380 F.3d at 69. "It is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts."

*Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted); *see also Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) ("We recognize that the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally. Because of the special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process."). Prison officials "enjoy a rebuttable presumption that they are unbiased." *See Rodriguez v. Selsky*, No. 9:07–CV–0432 (LEK/DEP), 2011 WL 1086001, at *11, 2011 U.S. Dist. LEXIS 21023, at *34 (N.D.N.Y. Jan. 25, 2011) (citation omitted). Due process in this context requires only that the hearing officer's decision not be "arbitrary." *Wolff*, 418 U.S. at 571. A decision is not "arbitrary" if it is supported by "some evidence." *Hill*, 472 U.S. at 455.

Here, there is no evidence in the record, aside from Plaintiff's conclusory allegation, that Goodman failed to conduct the hearing in a fair and impartial manner because Goodman is "an officer with rank and works closely with the officers involved." (Dkt. No. 39 at ¶ 34.) Indeed, "[a]n inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Johnson v. Fernandez*, No. 9:09 CV-626 (FJS/ATB), 2011 WL 7629513, at *11, 2011 U.S. Dist. LEXIS 154404, at *33 (N.D.N.Y. Mar. 12, 2011) (citing *Francis*, 891 F.2d at 46); *see also Houston v. Goord*, No. 9:03-CV-1412 (GTS/DEP), 2009 WL 890658, at *5 n.16, 2009 U.S. Dist. LEXIS 27481, at *21-22, n.16 (N.D.N.Y. Mar. 31, 2009) (rejecting argument that there is a "conflict of interest" resulting from disciplinary hearing officers knowing each other, or knowing the correction officers having charged the plaintiff with disciplinary violations).

The Court has reviewed the entire hearing transcript and finds no evidence that Goodman was biased or predisposed to any conclusion. As reflected in the hearing transcript and Disposition sheet, Goodman relied upon documentary, testimonial, and tangible evidence establishing "some evidence" of Plaintiff's guilt. Plaintiff testified, questioned all witnesses, and voiced his objections throughout the hearing. As such, Plaintiff's conclusory allegations of bias do not present a due process violation.

Plaintiff further contends that he did not receive a fair and impartial hearing because Courtright and Kelly testified that they did not see Plaintiff with a weapon, yet Goodman found Plaintiff guilty of possessing the weapon. (Dkt. No. 74 at 3.) Although Plaintiff's statement of the record is accurate, judicial review of the "some evidence" standard is "narrowly focused." *Sira*, 380 F.3d at 76. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . ." *Hill*, 472 U.S. at 455-56 (citations omitted).

Here, the record shows that Goodman's determination of guilt was supported by "some evidence" as required in *Hill*, 472 U.S. at 455, and "reliable evidence" pursuant to *Luna*, 356 F.3d at 488. The evidence considered in Plaintiff's disciplinary hearing included the three misbehavior reports, the testimony of each officer charging Plaintiff with improper conduct, all of whom were present at the incident and had first-hand knowledge of the events, along with the testimony of three witnesses to the incident, and a photograph of the weapon recovered during the incident. *See Hinton v. Prack*, No. 9:12–CV–1844 (LEK/RFT), 2014 WL 4627120, at *15, 2014 U.S. Dist. LEXIS 126955, at *39 (N.D.N.Y. Sept. 11, 2014) (citation omitted) ("some

evidence" standard satisfied where the misbehavior report was made by the officer personally involved in the incident and was based upon his first hand observation and detailed account of the incident); *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (same); *see also Galan v. Laird*, No. 08-cv-267 (NG), 2010 WL 3780175, at *2, 2010 U.S. Dist. LEXIS 98864, at *6 (E.D.N.Y. Sept. 17, 2010) (discovery of contraband weapon in inmate's cell satisfied the "some evidence" standard); *Hernandez v. Selsky*, 572 F. Supp. 2d 446, 453 (S.D.N.Y. 2008) (same).

Finally, Plaintiff's conclusory argument, raised for the first time in opposition, that Goodman's Disposition was "arbitrary and capricious" because Plaintiff was sentenced to thirty-six months in the SHU and yet, under the "old disciplinary guidelines" the maximum amount of "SHU time" to be imposed was twenty-four months, is misplaced. (*See* Dkt. No. 74 at 3.) Absent some proof of actual biases, a violation of DOCCS regulations and policies does not give rise to liability under § 1983. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009); *see also Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990).

Accordingly, the Court finds that no reasonable factfinder could conclude that Plaintiff was deprived of due process during his disciplinary hearing. For this reason, the Court recommends that Goodman be granted summary judgment on Plaintiff's Fourteenth Amendment claim.

### 4. Qualified Immunity

In the alternative, Defendants seeks dismissal of Plaintiff's Fourteenth Amendment claim against Goodman on qualified immunity grounds. (Dkt. No. 69-3 at 18-19.) Inasmuch as the Court is recommending that Goodman be granted summary judgment on other grounds, it finds it unnecessary to reach the qualified immunity argument.

### D.    Defendant Bezio

Defendants' motion seeks dismissal of the Amended Complaint against Bezio in its entirety.  (Dkt. No. 69-3 at 17.)  Defendants state that the "singular allegation" against Bezio is that "he assigned Defendant Goodman to conduct Plaintiff's Tier III Hearing."  *Id.*  However, a careful review of Plaintiff's Amended Complaint reveals that Plaintiff alleges Bezio violated Plaintiff's constitutional rights by (1) "overseeing and sustaining" Goodman's decision, and (2) failing "to take disciplinary action or other action to curb the known pattern of physical abuse of inmates" by Mulligan, Yando, Saunders, and Courtright.  (Dkt. No. 39 at 6.)

As to Plaintiff's Fourteenth Amendment claims against Bezio, a supervisor cannot be held liable in his individual capacity under §1983 on a theory of supervisory liability given Plaintiff's failure to establish any underlying constitutional violation by Goodman.  *See Alston v. Bendheim*, 672 F. Supp. 2d 378, 388-89 (S.D.N.Y. 2009) (failure to state a claim for an underlying constitutional violation forecloses supervisory liability); *see also Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N .Y. 2011) (collecting cases for the proposition that "because Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability"); *see also Loret v. Selsky*, 595 F. Supp. 2d 231, 235-36 (W.D.N.Y. 2010) (designating officer to conduct plaintiff's disciplinary hearing "plainly insufficient" to hold the superintendent personally liable for any constitutional deprivations that may have occurred there); *Amaker v. Fischer*, No. 10-CV-464A, 2013 WL 6092501, at *4, 2013 U.S. Dist. LEXIS 164392 (W.D.N.Y. Nov. 19, 2013) (same).  Therefore, the Court recommends that Bezio be granted summary judgment on Plaintiff's Fourteenth Amendment claim.

As to Plaintiff's Eighth Amendment claim against Bezio, as the movants, Defendants have the burden of showing through admissible evidence that there are no material issues of fact

and they are entitled to judgment as a matter of law.  *See Liberty Lobby*, 477 U.S. at 251-52.

Only after the moving party has met this burden is the nonmoving party required to produce

evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272-

73.  Here, Defendants failed to address Plaintiff's Eighth Amendment supervisory liability claim

against Bezio.  (Dkt. No. 69-33 at 17.)  Therefore, the Court recommends that Bezio be denied

summary judgment on Plaintiff's Eighth Amendment claim.

 **ACCORDINGLY** it is hereby

 **RECOMMENDED** that Defendants' motion for partial summary judgment (Dkt. No.

69) be **GRANTED IN PART AND DENIED IN PART**.  It is recommended that the Court (1)

grant Defendants' motion as to the Eighth Amendment claim against Thayer and terminate him

as a Defendant in this action; (2) grant Defendants' motion as to the Fourteenth Amendment

claim against Goodman and terminate him as a Defendant in this action; (3) grant Defendants'

motion as to the Fourteenth Amendment claim against Bezio; and (4) deny Defendants' motion

as to the Eighth Amendment claim against Bezio; and it is further

 **ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions

cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

 Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: January 19, 2016
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2013 WL 6092501
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Anthony AMAKER, Plaintiff,
v.
Brian S. FISCHER, et al., Defendants.

No. 10–CV–464A.
|
Nov. 19, 2013.

**Attorneys and Law Firms**

Anthony D. Amaker, Stormville, NY, pro se.

George Michael Zimmermann, Office of the New York State Attorney General, Buffalo, NY, for Defendants.

### ORDER

RICHARD J. ARCARA, District Judge.

**\*1** The above-referenced case was referred to Magistrate Judge H. Kenneth Schroeder, Jr., pursuant to 28 U.S.C. § 636(b)(1)(B). On October 21, 2013, Magistrate Judge Schroeder filed a Report and Recommendation, recommending that defendants' third motion to dismiss plaintiff's pro se complaint be granted in part. Specifically the Magistrate Judge recommended that defendants Fischer, LeClaire, Kirkpatrick and Bezio be dismissed from the action and that plaintiff's amended complaint be limited to a cause of action for denial of due process during the course of a disciplinary hearing on May 22, 2010 against defendants Kearney, Croston, Rynlewicz and Keenan and that Acting Director Prack and ITC Krygier be added as defendants on the cause of action.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties, and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Schroeder's Report and Recommendation, defendants Fischer, LeClaire, Kirkpatrick and Bezio are dismissed from the action and

plaintiff's amended complaint is limited to a cause of action for denial of due process during the course of a disciplinary hearing on May 22, 2010 against defendants Kearney, Croston, Rynlewicz and Keenan and Acting Director Prack and ITC Krygier are added as defendants on the cause of action

The case is referred back to Magistrate Judge Schroeder for further proceedings.

SO ORDERED.

### *REPORT, RECOMMENDATION AND ORDER*

H. KENNETH SCHROEDER, JR., United States Magistrate Judge.

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. # 9.

By Decision and Order entered March 25, 2013, the Hon. Richard J. Arcara adopted this Court's Report, Recommendation and Order and dismissed plaintiff's complaint without prejudice to filing an amended complaint to allege recently discovered facts supporting a claim of denial of due process during the course of a prison disciplinary hearing conducted in plaintiff's absence by Captain Kearney at the Wende Correctional Facility ("Wende"). Dkt. # 45, pp. 4–6.

Currently before the Court is defendants' third motion to dismiss plaintiff's *pro se* complaint. Dkt. # 50. For the following reasons, it is recommended that the motion be granted in part.

### *BACKGROUND*

Plaintiff filed an amended complaint on May 23, 2013 seeking compensatory and punitive damages as well as expungement from plaintiff's disciplinary records of a guilty determination on charges of refusing a direct order and refusing assignment to a double bunk which resulted in the imposition of 180 days confinement to the Special Housing Unit ("SHU"). Dkt. # 48. Plaintiff's amended complaint alleges the following relevant facts:

**\*2**  1. Plaintiff was released from SHU on May 14, 2010.

2. After entering A-block at Wende at approximately 8:00 p.m., plaintiff was told to double cell. After refusing to double cell, the plaintiff was returned to SHU.

3. On May 18, 2010, plaintiff was interviewed by his assigned assistant, C.O. Croce. Plaintiff requested that C.O. Croce interview Deputy Superintendent Sticht and obtain: (1) a memorandum from plaintiff's file authored by Deputy Superintendent Sticht which states that plaintiff should not be placed in a double cell; and (2) a transcript of a disciplinary hearing from November of 2005 in which then Captain Sticht found plaintiff not guilty of refusing to double bunk and assured plaintiff that he should not be placed in a double cell. C.O. Croce failed to provide the requested assistance.

4. On May 22, 2010, at approximately 9:55 a.m., while using the bathroom, C.O. Croston and C.O. Rynlewicz told plaintiff to get ready for a hearing. Plaintiff informed them he was using the bathroom defecating. Once he finished, C.O. Croston and C.O. Rynlewicz took plaintiff out of his cell and proceeded to pat frisk him. During the pat frisk, plaintiff's hair was pulled by C.O. Croston and when plaintiff protested, he was told by C.O. Rynlewicz, "shut up, he did not pull your hair," and then returned plaintiff to his cell.

5. Plaintiff filed a grievance (# WDE–32889–10), which was investigated by Lt. Keenan.

6. Plaintiff requested that Lt. Keenan review and preserve the videotape of C.O. Croston and C.O. Rynlewicz pat frisking him outside of his cell and also asked Inmate Record Coordinator ("IRC"), Joyce Krygier to preserve the videotape.

7. In retaliation for plaintiff filing a grievance against them, C.O. Croston and C.O. Rynlewicz issued a misbehavior report against plaintiff regarding the pat frisk on May 22, 2010.

8. On May 28, 2010, plaintiff wrote to SHU Director Bezio about his confinement in SHU and not being released or called to the hearing within fourteen days.

9. After being informed that his hearing regarding the May 14, 2010 incident had been held without his presence, plaintiff submitted an appeal to SHU Director Bezio on June 4, 2010.

10. Plaintiff requested production of the videotape as exculpatory evidence at his disciplinary hearing regarding the May 22, 2010 incident, but the hearing was postponed and the disciplinary charges apparently dismissed.

11. On or about July 6, 2010, plaintiff received an appeal decision from Albert Prack, Acting Director of Special Housing/Inmate Disciplinary Programs, which affirmed Captain Kearney's May 22, 2010 hearing determination despite Captain Kearney's failure to allow the plaintiff to be present, call witnesses or present evidence and despite the fact that plaintiff did not receive a written disposition or statement of evidence relied upon and that the videotape was not preserved.

12. On or about July 11, 2010, plaintiff was informed by Sgt. Post at the Southport Correctional Facility that he was subject to 180 days in SHU as well as loss of all privileges such as phones, commissary and packages as a result of the disiplinary proceedings of May 22, 2010.

**\*3**  13. The imposition of this penalty constituted an atypical and signficant hardship.

Dkt. # 48.

### DISCUSSION AND ANALYSIS

In support of the motion to dismiss, defendants argue that plaintiff has included claims which were previously dismissed by the Court and added new defendants and claims unrelated to the due process claim permitted by Judge Arcara's Decision and Order. Dkt. # 50–1, pp. 3–4. Specifically, defendants oppose plaintiff's attempt to "shoe horn a retaliation claim into the Amended Complaint under the guise of a substantive due process claim."Dkt. # 56, p. 3.

Plaintiff responds that he understands that the Court's Decision and Order limited his amended complaint to a claim of denial of due process, but asserts that it is necessary to allege issues raised in the prior complaint so as to relate the current claims back to the initial violations. Dkt. # 55, p. 2. Plaintiff also argues that all of the defendants were actively involved in the alleged violation of his right to due process. Dkt. # 55, p. 2. For example, plaintiff argues that C.O. Croston and C.O. Rynlewicz "are the main reasons why the plaintiff was not allowed to attend the hearing."Dkt. # 54, ¶ 4.

Fed.R.Civ.P. 15(a) provides that a party may amend a pleading by leave of court or by written consent of the adverse party. Leave to amend is to be "freely granted" unless the party seeking leave has acted in bad faith, there has been an undue delay in seeking leave, there will be unfair prejudice to the opposing party if leave is granted, or the proposed amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981); Fed.R.Civ.P.15(a). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993). "Absent a showing that significant additional discovery burdens will be incurred or that the trial of the matter will be significantly delayed, amendment should be permitted." *W.R. Grace & Co. v. Zotos Int'l, Inc.,* 98–CV–838, 2000 WL 1843282 (W.D.N.Y. Nov.2, 2000). The decision to grant or deny a motion for leave to amend a pleading is within the discretion of the district court. *Foman,* 371 U.S. at 182.

Although Fed.R.Civ.P. 15(a) generally governs the amendment of complaints, where the proposed amendment seeks to add new defendants, Fed.R.Civ.P. 21 governs. *Rush v. Artuz,* 00CIV3436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct.26, 2001). Rule 21 states that "[p]arties may be ... added by order of the court on motion of any party ... at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. "In deciding whether to allow joinder, the Court is guided by the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Rush,* 2001 WL 1313465, at *5 (internal quotation omitted); *see Clarke v. Fonix Corp.,* 98 CIV 6116, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999), *aff'd* 199 F.3d 1321 (2d Cir.1999).

**\*4** "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Lucente v. Int'l Business Machines, Corp.,* 310 F.3d 243, 258 (2d Cir.2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Application

of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678, *quoting Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060,1065 (2d Cir.1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon,* 58 F.3d at 873. "There is no *respondeat superior* liability in § 1983 cases." *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

Plaintiff's vague allegations that **Commissioner Brian Fischer** and **Deputy Commissioner Lucien J. LeClaire, Jr.** allowed ongoing retaliation against him are insufficient to plausibly allege their personal involvement in the alleged denial of plaintiff's due process rights during the course of the disciplinary hearing on May 22, 2010. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) ("a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."). Similarly, plaintiff's allegation that **Superintendent Kirkpatrick** assigned Captain Kearney to conduct the disciplinary hearing is insufficient to plausibly allege Superintendent Kirkpatrick's

personal involvement in the alleged improprieties during the disciplinary hearing. *Cf. Green,* 46 F.3d at 194 (undue delay in appointing hearing officer alleges sufficient personal involvement). Moreover, plaintiff's allegation that Superintendent Kirkpatrick is "responsible for seeing to it that Deputy Superintendent Sticht make [sic] out the appropriate double cell information sheet prior to subjecting anyone to double celling" is insufficient to impose supervisory liability.

**\*5** In contrast, plaintiff has plausibly alleged that **Captain Kearney** denied plaintiff's due process right to be present at his disciplinary hearing and to call witnesses and present evidence in his defense and failed to provide plaintiff with a written statement of evidence relied on and the reasons for the disciplinary disposition imposed. *See Wolff v. McDonnell,* 418 U.S. 556–57 (1974) (inmate charged with disciplinary hearing must be given (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, call witnesses and present rebuttal evidence; and (3) a written statement by the fact finder as to the evidence relied on and the basis for the disposition); *Malik v. Tanner,* 697 F.Supp. 1294, 1302 & n. 12 (S.D.N.Y.1988) (circumstances justifying exclusion of inmate from disciplinary hearing "must remain narrow" and "occur only in the unusual circumstance."). In addition, plaintiff has plausibly alleged a due process claim against Acting Director **Albert Prack,** who affirmed Captain Kearney's disposition on appeal. *See Smith v. Rosati,* 10–CV–1502, 2013 WL 1500422, \*7–8 (N.D.N.Y. Feb.20, 2013) (collecting cases and holding that review of disciplinary proceeding is sufficient personal involvement in denial of due process claim).

However, "the allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983." *Ward v. LeClaire,* No. 07–CV–6145, 2008 WL 3851831, at \*3 (W.D.N.Y. Aug.14, 2008) (collecting cases); *Smart v. Goord,* 441 F.Supp.2d 631, 642–43 (S.D.N.Y.2006) ("The failure of a supervisory official to investigate a letter of protest written by an inmate is insufficient to establish personal involvement.")."Personal involvement will be found, however, where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Bodie v. Morgenthau,* 342 F.Supp.2d 193, 203 (S.D.N.Y.2004), *quoting Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002). Inasmuch as plaintiff's hearing had been conducted prior to plaintiff's

May 28, 2010 letter to the Director of SHU, **Norman Bezio** complaining about his continued confinement in SHU without a hearing or notice of extension of the deadline for conducting the hearing and inasmuch as Acting Director Prack was responsible for plaintiff's appeal of the disposition of the disciplinary hearing and responded to plaintiff's June 4, 2010 letter of appeal to Director Bezio, plaintiff's communications with Director Bezio are insufficient to plausibly allege his personal involvement in the alleged denial of due process during the course of the disciplinary hearing and its review on appeal.

Plaintiff's allegations that **C.O. Croston** and **C.O. Rynlewicz** prevented his attendance at the disciplinary hearing are sufficient to state their personal involvement in plaintiff's denial of due process claim. Similarly, plaintiff's allegations that **Lt. Keenan** and **IRC Krygier** failed to preserve the videotape of plaintiff's interaction with C.O. Croston and C.O. Rynlewicz outside of his cell prior to his disciplinary hearing on May 22, 2010, despite his timely requests that the videotape be preserved as exculpatory evidence, is sufficient to support their personal involvement in plaintiff's denial of due process claim. *See Livingston v. Piskor,* 153 Fed. Appx. 769, 2005 WL 2759805, at \*2 (2d Cir.2005) (allegation that Superintendent Kelly failed to preserve videotapes sufficient to establish personal involvement in denial of due process during the course of disciplinary hearings).

**\*6** However, plaintiff's allegations that C.O. Croston and C.O. Rynlewicz issued a false misbehavior report regarding plaintiff's actions outside of his cell after being called for his disciplinary hearing on May 22, 2010 and that this misbehavior report was issued in retaliation for plaintiff filing a grievance about their conduct, fails to state a plausible claim of constitutional misconduct because even if that misbehavior report was issued in retaliation for plaintiff's grievance, [1] plaintiff was already in SHU as a result of his refusal to double bunk on May 14, 2010 and plaintiff alleges that the disciplinary hearing regarding the events of May 22, 2010 "was postponed and never prosecuted" and the false misbehavior report dismissed. Dkt. # 48, ¶¶ 19–20. Accordingly, plaintiff's allegations refute any plausible claim that plaintiff suffered an atypical and significant hardship as a result of the issuance of the allegedly false misbehavior report in retaliation for plaintiff's grievance regarding events of May 22, 2010. *See Pettus v. McGinnis,* 533 F.Supp.2d 337, 341 (W.D.N.Y.2008) ("In order to make out a due process claim based on the issuance of a false misbehavior report, plaintiff would have to allege ... that the issuance of the misbehavior

report led to an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.' "), *quoting Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).


### *CONCLUSION*

For the reasons set forth above, it is recommended that defendants' motion to dismiss (Dkt.# 50), be granted in part. Specifically, it is recommended that defendants Fischer, LeClaire, Kirkpatrick and Bezio be dismissed from this action and that plaintiff's amended complaint be limited to a cause of action for denial of due process during the course of a disciplinary hearing on May 22, 2010 against defendants Kearney, Croston, Rynlewicz and Keenan and that Acting Director Prack and IRC Krygier be added as defendants on this cause of action.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson–Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

**\*7** The parties are reminded that, pursuant to Rule 72.3(a) (3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."*Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.*

The Clerk is hereby directed to send a copy of this Report,

Recommendation and Order to plaintiff and the attorney for the defendants.

**SO ORDERED.**

**All Citations**

Slip Copy, 2013 WL 6092501

---

Footnotes

1    "[T]he only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as 'retaliation against the prisoner for exercising a constitutional right.' " *Collins v. Ferguson,* 804 F.Supp.2d 134, 138 (W.D.N.Y.2011), *quoting Cuasamano v. Sobek,* 604 F.Supp.2d 416, 471–72 (N.D.N.Y.2009); *See Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997).

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,
v.
Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone, New
York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York, New
York, for Defendant.

## MEMORANDUM & ORDER

PAULEY, J.

 **\*1**  The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary judgment
and dismissing the amended complaint, and United States
Magistrate Judge James C. Francis IV having issued a report
and recommendation, dated August 20, 1999, recommending
that the motion be granted, and upon review of that report and
recommendation together with plaintiff's letter to this Court,
dated August 28, 1999, stating that plaintiff does "not contest
the dismissal of this action", it is

ORDERED that the attached report and recommendation of
United States Magistrate Judge James C. Francis IV, dated
August 20, 1999, is adopted in its entirety; and it is further

ORDERED that defendant Pflueger's motion for summary
judgment is granted, and the amended complaint is dismissed;
and it is further

ORDERED that the Clerk of the Court shall enter judgment
accordingly and close this case.

## REPORT AND RECOMMENDATION

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42 U.S.C.
§ 1983. Mr. Cole alleges that the defendant Richard Pflueger,
a corrections officer, violated his First Amendment rights
by refusing to allow him to attend religious services. The
defendant now moves for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure. For the
reasons set forth below, I recommend that the defendant's
motion be granted.

### Background

During the relevant time period, Mr. Cole was an inmate
in the custody the New York State Department of
Correctional Services ("DOCS"), incarcerated at the Green
Haven Correctional Facility. (First Amended Complaint
("Am.Compl.") ¶ 3). From June 21, 1993 to July 15, 1993,
the plaintiff was in keeplock because of an altercation with
prison guards. (Am.Compl.¶¶ 17–25). An inmate in keeplock
is confined to his cell for twenty-three hours a day with
one hour for recreation. (Affidavit of Anthony Annucci
dated Dec. 1, 1994 ¶ 5). Pursuant to DOCS policy, inmates
in keeplock must apply for written permission to attend
regularly scheduled religious services. (Reply Affidavit of
George Schneider in Further Support of Defendants' Motion
for Summary Judgment dated September 9, 1996 ("Schneider
Aff.") ¶ 3). Permission is granted unless prison officials
determine that the inmate's presence at the service would
create a threat to the safety of employees or other inmates.
(Schneider Aff. ¶ 3). The standard procedure at Green Haven
is for the captain's office to review all requests by inmates
in keeplock to attend religious services. (Schneider Aff. ¶ 3).
Written approval is provided to the inmate if authorization
is granted. (Affidavit of Richard Pflueger dated April 26,
1999 ("Pflueger Aff.") ¶ 5). The inmate must then present the
appropriate form to the gate officer before being released to
attend the services. (Pflueger Aff. ¶ 5).

 **\*2**  On June 28, 1993, the plaintiff submitted a request
to attend the Muslim services on July 2, 1993. (Request
to Attend Scheduled Religious Services by Keep–Locked
Inmate dated June 28, 1993 ("Request to Attend Services"),

attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

## A. Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir.1995); Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material

fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Anderson, 477 U.S. at 255; Vann v. City of New York, 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. Anderson, 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita Electric Industrial Co., 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)); Montana v. First Federal Savings & Loan Association, 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is prose, his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding prose does not otherwise relieve a litigant from the usual requirements of summary judgment, and a prose party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1991); Gittens v. Garlocks Sealing Technologies, 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); Howard Johnson International, Inc. v. HBS Family, Inc., No. 96 Civ. 7687, 1998 WL 411334, at *3 (S.D .N.Y. July

22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *prose* litigants should be generously and liberally construed, but [the *prose*'s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *prose* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

## B. *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock.*Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."*Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison.*O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."*Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being

released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

## Conclusion

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

## All Citations

Not Reported in F.Supp.2d, 1999 WL 983876

Footnotes

1    In light of this finding, there is no need to consider the defendant's qualified immunity argument.

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3780175
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Alonzo GALAN, Petitioner,
v.
Paul M. LAIRD, Warden, Respondent.

No. 08–cv–267 (NG).
|
Sept. 21, 2010.

**Attorneys and Law Firms**

Alonzo Galan, Brooklyn, NY, pro se.

*MEMORANDUM AND ORDER*

GERSHON, District Judge.

**\*1** *Pro se* petitioner Alonzo Galan petitions for relief under 28 U.S.C. § 2241. For the reasons described below, Mr. Galan's petition is denied.

**BACKGROUND**

Alonzo Galan challenges a prison disciplinary finding that he possessed a weapon at the Brooklyn Metropolitan Detention Center ("MDC") in violation of 28 C.F.R. § 541.13 Code 104. [1] On September 6, 2006, while conducting a search of the petitioner's cell, correctional officers found a seven-and-a-half inch sharpened piece of metal, with a handle made from toothbrushes, hidden under the cell sink. At the time the weapon was found, Mr. Galan, who shared his cell with one other person, had been assigned to the cell for approximately a month.

Following this discovery, petitioner received an Incident Report informing him of the discovery of the weapon. He then appeared before the Unit Disciplinary Committee, where he denied knowledge of the weapon. The Unit Disciplinary Proceeding referred him to the Disciplinary Hearing Officer ("DHO"). The DHO conducted an administrative proceeding, where Galan testified that he was surprised when the officer found the weapon, and that the previous inmate must have left it behind, but he did not call any other witnesses or

request a staff representative. The DHO rejected Mr. Galan's testimony, and sanctioned him to 40 days' loss of good conduct time, 180 days' loss of visiting privileges, and 180 days' loss of telephone privileges. Mr. Galan appealed the DHO's decision to the Regional Office, which denied his appeal on November 1, 2006, and to the General Counsel in Washington D.C., which rejected the appeal first on procedural grounds, and then on the merits.

On January 15, 2008, Mr. Galan filed this petition with the court pursuant to 18 U.S.C. § 2241. He seeks to restore his good conduct time and to expunge all references to the incident from BOP records.

**DISCUSSION**

Mr. Galan raises several challenges to his disciplinary hearing. First, Mr. Galan claims that the DHO denied his procedural due process rights to be given notice, the opportunity to be heard, to call witnesses on his behalf, and to have a Spanish-speaking staff representative at his hearing. Pet.'s Brief at 3. Additionally, Mr. Galan argues that his loss of good conduct time was an "arbitrary action." *Id.* Construed liberally, the petition also argues that there was insufficient evidence that the contraband belonged to him. None of these claims has merit.

**A. Procedural Due Process**

Prison inmates charged with disciplinary violations do not have "the full pan oply of rights" afforded to a defendant in a criminal prosecution. *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see also Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004). However, an inmate is entitled to "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken."*Sira,* 380 F.3d at 69 (citing *Wolff,* 418 U.S. at 563–670).

**\*2** Petitioner received his full procedural due process rights. Galan himself acknowledges being issued an Incident Report, Pet.'s Brief at 2, and he was also provided with a written explanation of his rights, which he signed. As for an opportunity to be heard, a disciplinary hearing was held on September 18, 2006, where Galan testified and had an

opportunity to call witnesses. With respect to his right to call witnesses and to a Spanish-speaking representative, Galan specifically waived these rights on a "Notice of Discipline Hearing Before the (DHO)," where he declined to call witnesses and to have a staff member at the hearing. [2] The proceedings, therefore, comported with the requirements of due process.

## B. Insufficient Evidence

Despite Galan's argument to the contrary, sufficient evidence supported the DHO's finding. Due process requires only that the written findings by the disciplinary board be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (holding that "the findings of the prison disciplinary board [b]e supported by some evidence in the record.") "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. "This standard is extremely tolerant and is satisfied if 'there is *any* evidence in the record that supports' the disciplinary ruling." *Sira,* 380 F.3d at 69 (quoting *Fried v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000)). However, the "some evidence" standard requires "reliable evidence." *Sira,* 380 F.3d at 69; *Luna v. Pico,* 356 F.3d 481, 488 (2004).

The DHO relied on sufficient reliable evidence to satisfy the "some evidence" test. As the DHO officer stated, an inmate has the responsibility to keep his or her area free of contraband. *See* 28 C.F.R. § 541.12. The contraband was found in Galan's cell, where he had resided for a month, wedged under the sink between pipes, in an area that the DHO found to be "easily accessible" to Galan. Discipline Hearing Report at 2. "Some evidence," therefore, supports the DHO's conclusion.

Galan's case is distinct from those cases in which the court found that a large number of inmates other than the petitioner had access to the contraband. *See Broussard v. Johnson,*

253 F.3d 874, 877 (5th Cir.2001) (holding that contraband found in an area in which the inmate worked, but to which approximately one hundred inmates had access, did not satisfy the "some evidence" test against petitioner; *Hamilton v. O'Leary,* 976 F.2d 341, 346 (7th Cir.1992) (stating that "in the abstract" a weapon found in a vent to which 32 inmates had access would not satisfy the "some evidence" test). Here, the weapon was found in the petitioner's cell, which was shared with only one other inmate and which the petitioner was responsible for keeping free from contraband, not in a common work area or in a vent.

**\*3** Petitioner's final argument, that one must use a weapon to have committed the charged offense, also fails. Galan argues that use is both an element of the crime of possession and part of the definition of a weapon. 28 C.F.R. § 541.13 Code 104 specifically prohibits "possession" of a weapon. [3] "Possession" in Code 104 is distinct from use. *See Wallace v. Nash,* 311 F.3d 140, 144 (2d Cir.2002) (stating that the term "possession" is not "intended to encompass 'use.' "). Moreover, although " 'weapon' is nowhere defined in the Code ... the inclusion of that word in a list in which every specified item is inherently dangerous leads [to the inference] that the drafters intended the word 'weapon' similarly to mean objects that may be considered weapons without regard to their use." *Id.* at 145. Thus, there is no use requirement either in the definition of a weapon or as an element of possession. Consequently, an inmate could be found to have possessed a weapon without actually using the weapon.

## CONCLUSION

For the reasons described above, Mr. Galan's petition is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

## All Citations

Not Reported in F.Supp.2d, 2010 WL 3780175

## Footnotes

1    A § 2241 petition is an appropriate vehicle to challenge prison disciplinary actions. *See Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir.2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as ... prison disciplinary matters ...").

2    Nothing in the record indicates that Galan asked for language assistance. On the contrary, he waived his right to have a staff member present. Notably, his testimony appears to have been given in English, and his argument, which is repeated

in his papers here—that the weapon was not his, and must have been left by the previous resident of his cell—was clearly understood by the DHO, but rejected.

3    Although Galan was specifically charged with possession of a "weapon", Discipline Hearing Report at 1, Code 104 also prohibits possession of a "sharpened instrument." 28 C.F.R. § 541.13.

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 5975027
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jonathan HENRY, Plaintiff,

v.

James F. DINELLE, Corrections Officer; Russell
E. Duckett, Corrections Officer; Alfred J. Deluca,
Corrections Officer; Donald L. Broekema,
Sergeant; and Jean Norton, Nurse, Defendants.

No. 9:10–CV–0456 (GTS/DEP).
|
Nov. 29, 2011.

**Attorneys and Law Firms**

Sivin & Miller, LLP, Edward Sivin, Esq., of Counsel, New York, NY, for Plaintiff.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Timothy P. Mulvey, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*MEMORANDUM–DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this prisoner civil rights action filed by Jonathan Henry ("Plaintiff") against the five above-captioned employees of the New York State Department of Corrections and Community Supervision ("Defendants"), is Defendants' motion for partial summary judgment. (Dkt. No. 24.)For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that, between approximately January 29, 2009, and January 31, 2009, at Ulster Correctional Facility in Napanoch, New York, Defendants violated Plaintiff's following rights in the following manner: (1) Defendants Nurse Jean Norton, Corrections Officer James F. Dinelle, Corrections Officer Russell E. Duckett and Corrections Officer Alfred J. DeLuca violated Plaintiff's rights under the First Amendment by

filing retaliatory false misbehavior reports against him, and subsequently providing false testimony against him at administrative disciplinary hearings, which resulted in his spending time in the Special Housing Unit ("SHU"); (2) Defendant Dinelle violated Plaintiff's rights under the Eighth Amendment by assaulting him on two occasions, and Defendants DeLuca and Duckett violated Plaintiff's rights under the Eighth Amendment by assaulting him once; (3) Defendant Sergeant Donald L. Broekema violated Plaintiff's rights under the Eighth Amendment by failing to intervene to prevent one of these assaults from occurring; (4) Defendant Norton violated Plaintiff's rights under the Eighth Amendment by harassing him almost immediately before he was subjected to the above-described assaults; and (5) Defendants Norton, Dinelle, Duckett and DeLuca violated Plaintiff's rights under the Fourteenth Amendment by performing the aforementioned acts, which constituted atypical and significant hardships in relation to the ordinary incidents of prison life. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

### B. Undisputed Material Facts

At all times relevant to Plaintiff's Complaint, Plaintiff was an inmate and Defendants were employees of the New York Department of Corrections and Community Supervision at Ulster Correctional Facility. On January 30, 2009, Defendant Dinelle took Plaintiff to the medical ward, because Plaintiff was experiencing a foul odor and oozing from a wound on his leg. After Defendant Norton treated Plaintiff, she filed an inmate misbehavior report against him based on (1) Plaintiff's harassing behavior toward Defendant Norton and Defendant Dinelle, and (2) Plaintiff's disobedience of a direct order to be quiet. The misbehavior report was signed by Defendant Dinelle as an employee witness.

At his deposition, Plaintiff testified, while leaving the infirmary, he was punched and kicked by Defendant Dinelle and two unknown prison officials. Plaintiff was then taken to the SHU, where he waited with Defendants Dinelle and Duckett, and up to three more individuals, for a sergeant to arrive. When Defendant Broekema (a sergeant) arrived at the SHU, Plaintiff was taken to a frisk room, where a frisk was conducted. During the frisk, Defendants Dinelle, Duckett and (Plaintiff suspected) DeLuca used force to bring Plaintiff to the ground. Plaintiff testified that, during the use of force, he

was simultaneously punched in the nose by two officers while their supervisor watched.

**\*2** After the use of force, Plaintiff stated to Defendants Dinelle, Broekema and Duckette, "I will be contacting my attorney," or "I will be calling a lawyer." [1] Plaintiff never used the term "grievance" when addressing Defendants Dinelle, Broekema and Duckett (or Defendant Norton). [2] Subsequently, Defendant Duckett filed an inmate misbehavior report against Plaintiff based on his disobedience of frisk procedures and a direct order. Defendant DeLuca signed this report as a witness to the events.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties. (*Id.*)

### C. Defendants' Motion

Generally, in support of their motion for partial summary judgment, Defendants argue as follows: (1) Plaintiff's claim that Defendants issued false misbehavior reports should be dismissed because Plaintiff has no constitutional right to be free of false misbehavior reports; (2) Plaintiff's First Amendment retaliation claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (a) engaged in protected activity, or (b) suffered adverse action as a result of engaging in protected activity; (3) Plaintiff's Fourteenth Amendment substantive due process claim should be dismissed because he has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants deprived Plaintiff of his liberty rights; (4) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she (a) used force against Plaintiff, or (b) was in a position to prevent the use of force from occurring, yet failed to do so; (5) Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"; (6) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Broekema had a realistic opportunity to intervene to prevent or stop the assault, yet failed to do so; and (7) Defendants are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].). [3]

In Plaintiff's response to Defendants' motion for partial summary judgment, he argues as follows: (1) his retaliation claims should not be dismissed because there are triable issues of fact as to whether Defendants retaliated against him for stating that he would be contacting an attorney; (2) his failure-to-intervene claim against Defendant Broekema should not be dismissed because there are triable issues of fact as to whether Defendant Broekema failed to prevent excessive force from being used against him; (3) his excessive-force claim against Defendant DeLuca should not be dismissed because there are triable issues of fact as to whether Defendant DeLuca used excessive force against him; and (4) Defendants are not protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].) [4]

**\*3** In their reply, Defendants essentially reiterate their previously advanced arguments. (*See generally* Dkt. No. 29, Attach. 1 [Defs .' Reply Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't,* 04–CV–0828, 2009 WL 3165551, at \*2–3 (N.D.N.Y. Sept.29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B. Legal Standards Governing Plaintiff's Claims

### 1. First Amendment Retaliation Claim

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of his First Amendment rights. *See Gill,*

389 F.3d at 381–383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that (1) the speech or conduct at issue was "protected", (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights, and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d 489, 492 [2d Cir.2001] ). Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

**\*4** In determining whether an inmate has established a prima facie case of a causal connection between his protected activity and a prison official's adverse action, a number of factors may be considered, including the following: (1) the

temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation. *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996); *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002). Even where the inmate has established such a prima facie case, the prison official may be entitled to judgment as a matter of law on the inmate's retaliation claim where the prison official has satisfied his burden of establishing that the adverse action would have been taken on proper grounds alone. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994); *Jordan v. Garvin,* 01–CV–4393, 2004 WL 302361, at \*6 (S.D.N.Y. Feb.17, 2004).

### 2. Eighth Amendment Claims of Excessive–Force and Failure–to–Intervene

To establish a claim of excessive-force under the Eighth Amendment, a plaintiff must satisfy two components: "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009). In consideration of the subjective element, a plaintiff must allege facts which, if true, would establish that the defendant's actions were wanton " 'in light of the particular circumstances surrounding the challenged conduct.' " *Id.* (quoting *Blyden v. Mancusi,* 186 F.3d 252, 262 [2d Cir.1999] ). The objective component asks whether the punishment was sufficiently harmful to establish a violation "in light of 'contemporary standards of decency.' " *Wright,* 554 F.3d at 268 (quoting *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Generally, officers have a duty to intervene and prevent such cruel and unusual punishment from occurring or continuing. *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994)."It is well-established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers." *Cicio v. Lamora,* 08–CV–0431, 2010 WL 1063875, at \*8 (N.D.N.Y. Feb.24, 2010) (Peebles, M.J.). A corrections officer who does not participate in, but is present when an assault on an inmate occurs may still be liable for any resulting constitutional deprivation. *Id.* at \*8. To establish a claim of failure-to-intervene, the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated,

and (3) that officer does not take reasonable steps to intervene. *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008). Generally, officers cannot be held liable for failure to intervene in incidents that happen in a "matter of seconds." *Parker v. Fogg,* 85–CV–177, 1994 WL 49696 at *8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.).

### 3. Fourteenth Amendment Substantive Due Process Claims

**\*5** The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."*Zinernon,* 494 U.S. at 125 [internal quotations marks omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property ...*without due process of law."Id.* at 125–126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question).*Id.*

"Substantive due process protects individuals against government action that is arbitrary, ... conscience-shocking, ... or oppressive in a constitutional sense, ... but not against constitutional action that is incorrect or ill-advised."*Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) [internal quotations marks and citations omitted], *aff'g,* 91–CV–1196, Memorandum–Decision and Order (N.D.N.Y. filed Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

"An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes 'an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Whitaker v. Super,* 08–CV–0449, 2009 WL 5033939, at *5 (N.D.N.Y. Dec.14, 2009) (Kahn, J. adopting Report–Recommendation by Lowe, M.J.) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 [1995] ). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU."

*Palmer v. Richards,* 364 F.3d 60, 64 n. 2 (2d Cir.2004). When evaluating whether an inmate's confinement in SHU violates his substantive due process rights, the issue, then, is whether his keeplock confinement imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Id.* at 64.

"In the Second Circuit, determining whether a disciplinary confinement constituted an 'atypical and significant hardship' requires examining 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement.' " *Whitaker,* 2009 WL 5033939, at *5 (quoting *Palmer,* 364 F.3d at 64). "Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an 'atypical and significant hardship' only if 'the conditions were more severe than the normal SHU conditions.' " *Id.* (quoting *Palmer,* 364 F.3d at 65). [5]

### 4. Qualified Immunity Defenses

**\*6** The qualified immunity defense is available to only those government officials performing discretionary functions, as opposed to ministerial functions. *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991)."Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004), *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence

of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). [6] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful."*Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007). [7] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."*Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). [8] As the Supreme Court has explained,

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341. [9]

## III. ANALYSIS

### A. Plaintiff's Retaliation Claim Under the First Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that he (1) engaged in protected activity, or (2) suffered adverse action as a result of engaging in protected activity. More specifically, Defendants argue that the claim should be dismissed because (1) the statement of an inmate's intent to contact an attorney is not protected conduct, (2) Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Norton knew of Plaintiff's intention to contact an attorney, and (3) Plaintiff has failed to adduce admissible record evidence from which a rational

factfinder could conclude that Defendants' actions were retaliatory. (Dkt. No. 24, Attach.10.) [10]

**\*7** After carefully considering the admissible record evidence adduced in this case, and carefully reviewing the relevant case law, the Court has trouble finding that an inmate's one-time making of an oral statement (immediately after the use of force against him) that he would be "contacting [his] attorney," or "calling a lawyer" at some unidentified point in the future constitutes engagement in activity that is protected by the First Amendment—especially where, as here, the inmate did not reference the prison grievance process in his statement.

Representation by a lawyer is certainly not necessary to file an inmate grievance in the New York State Department of Corrections and Community Supervision, nor does such representation necessarily result in the filing of a grievance. Rather, such representation is most typically associated with the filing of a civil rights action in federal court (as is clear from the motions for appointment of counsel typically filed in federal court actions). As a result, the statement in question does not reasonably imply that Plaintiff was filing a grievance as much as it implies that he was going to consult an attorney as to whether or not to file a civil rights action in federal court.

Here, such a statement is problematic. This is because, generally, the filing of the prisoner civil rights action in federal court in New York State must be preceded by the prisoner's exhaustion of his available administrative remedies (or his acquisition of a valid excuse for failing to exhaust those remedies). Any filing without such prior exhaustion (or acquisition of a valid excuse), under the circumstances, would be so wholly without merit as to be frivolous. Of course, filing a court action that is frivolous is not constitutionally protected activity. [11]

Moreover, to the extent that Plaintiff's statement could be construed as reasonably implying that he was going to consult an attorney as to whether or not to file a grievance, the Court has trouble finding that such a vague statement is constitutionally protected. [12] As one district court has stated, "[h]oping to engage in constitutionally protected activity is not itself constitutionally protected activity." [13] The Court notes that a contrary rule would enable a prisoner who has committed conduct giving rise to a misbehavior report to create a genuine issue of material fact (and thus reach a jury)

on a retaliation claim (alleging adverse action based on the issuance of that misbehavior report) simply by uttering the words, "I'm calling a lawyer," after he commits the conduct in question but before the misbehavior report is issued.

In any event, even assuming, for the sake of argument, that Plaintiff's statement was constitutionally protected, the Court finds, based on the current record, that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that his statement to Defendants Dinelle, Duckett, and Broekema that he would be contacting an attorney was a substantial or motivating factor for the issuance of the misbehavior report by Defendant Norton (which was signed by Defendant Dinelle as a witness), and the misbehavior report by Defendant Duckett (which was signed by Defendant DeLuca as a witness). The Court makes this finding for two alternate reasons.

**\*8** First, with regard to the misbehavior report issued by Defendant Norton, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she was aware Plaintiff would be contacting an attorney. In addition, with regard to the report made by Defendant Duckett (which was signed by Defendant DeLuca as a witness), although there is record evidence that Defendant Duckett had knowledge of Plaintiff's statement that he would contact an attorney, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Duckett had reason to believe, at the time the misbehavior report was issued, Plaintiff would actually follow through with his one-time oral statement, made on the heals of a heated incident.

Second, even assuming that Defendant Duckett or Defendant Norton had reason to believe Plaintiff would contact an attorney, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Duckett or Defendant Norton would not have issued the misbehavior report anyway, based on Plaintiff's actions. Indeed, at Plaintiff's disciplinary hearings, evidence was adduced that he in fact committed most of the misconduct alleged in the misbehavior reports, which resulted in the hearing officer finding multiple violations and sentencing Plaintiff to SHU. [14] Furthermore, those convictions were never subsequently reversed on administrative appeal. [15] As a result, no admissible record evidence exists from which a rational factfinder could conclude that Plaintiff has established the third element of a retaliation claim—the

existence of a causal connection between the protected speech and the adverse action.

For each of these alternative reasons, Plaintiff's retaliation claim under the First Amendment is dismissed.

### B. Plaintiff's Claims Under the Eighth Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's Eighth Amendment claims because (1) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Norton used any force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so, (2) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Broekema had a reasonable opportunity to intervene and prevent the alleged assault by Defendants Dinelle, DeLuca and Duckett, yet failed to do so, and (3) Plaintiff's identification of Defendant DeLuca is "very tentative."

As an initial matter, because Plaintiff did not oppose Defendants' argument that his excessive-force claim against Defendant Norton should be dismissed, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu–Shen Zhou v. S.U.N.Y. Inst. of Tech.,* 08–CV–0444, 2011 WL 4344025, at \*11 (N.D.N.Y. Sept.14, 2011) (Suddaby, J.). After carefully considering the matter, the Court finds that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, the Court can find no record evidence to support the claim that Defendant Norton used force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so. As a result, Plaintiff's Eighth Amendment claim against Defendant Norton is dismissed.

**\*9** Turning to Plaintiff's failure-to-intervene claim against Defendant Broekema, it is undisputed that it was Defendants Duckett, Dinelle and DeLuca who used force against Plaintiff. Plaintiff testified that, while Defendant Broekema was in the room at the time, Defendant Broekema was standing behind Defendant Dinelle on his "immediate right." In addition, Plaintiff testified that Defendant Duckett's threat of physical force against Plaintiff was conditioned on Plaintiff's continued failure to comply with (what Plaintiff perceived

to be) conflicting instructions by Defendants Duckett and Dinelle during the frisk. (Dkt. No. 24, Attach. 4, at 97–99.) Furthermore, Plaintiff testified that it was only after he failed to put his hands in his pockets (rather soon after being warned by Defendant Duckett) that either Defendant Duckett or Defendant Dinelle punched him *one time* with a "closed fist" in the side of his nose, causing him to immediately fall to the ground. (*Id.* at 98–99.)Finally, Plaintiff testified that the kicks that he suffered soon after falling to the ground were limited in nature, having occurred only "a couple of times," and indeed having only *possibly* occurred. (*Id.* at 99.)

While the Court in no way condones the conduct alleged in this action, the Court is simply unable to find, based on the current record, that Plaintiff has adduced sufficient admissible record evidence to reach a jury on his Eighth Amendment claim against Defendant Broekema. Rather, based on the evidence presented, a rational factfinder could only conclude that the use of force was simply too uncertain for a reasonable person in Defendant Broekema's position to expect; and it was too brief in nature to give Defendant Broekema a realistic opportunity to intervene in it, so as prevent the one punch and possibly few kicks that Plaintiff presumably experienced. [16]

Finally, based on the current record, the Court rejects Defendants' third argument (i.e., that Plaintiff's excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"). Defendants argue that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant DeLuca was present during the use of force against Plaintiff (let alone that Defendant DeLuca used force against Plaintiff). This is because Plaintiff's basis for bringing his excessive-force claim against Defendant DeLuca is that he remembered being assaulted by three individuals, including Defendants Dinelle and Duckett, whose last names began with the letter "D." While this fact is undisputed, it is also undisputed that Defendant DeLuca was interviewed by the Inspector General's Office regarding his involvement in the incidents giving rise to Plaintiff's claims, [17] and that both Defendant Broekema's use-of-force report, and Defendant Broekema's Facility Memorandum, state that Defendant DeLuca participated in the use of force against Plaintiff. [18] Based on this evidence, a rational factfinder could conclude that Defendant DeLuca violated Plaintiff's Eighth Amendment rights. As a result, Plaintiff's Eighth Amendment excessive-force claim against Defendant

DeLuca survives Defendants' motion for summary judgment. The Court would add only that, although it does not construe Plaintiff's Complaint as alleging that Defendant DeLuca failed to intervene in the use of force against Plaintiff, assuming, (based on Plaintiff's motion papers) that Plaintiff has sufficiently alleged this claim, the claim is dismissed because the entirety of the record evidence as it pertains to Defendant DeLuca establishes that he used force against Plaintiff.

### C. Plaintiff's Claim Under the Fourteenth Amendment

**\*10** As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because Defendants did not deprive Plaintiff of his liberty rights. As stated above in note 2 of this Decision and Order, Plaintiff failed to address Defendants' argument that his substantive due process claim should be dismissed. As a result, as stated above in Part III.B. of this Decision and Order, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden."*Xu–Shen Zhou,* 2011 WL 4344025, at *11.

After carefully considering the matter, the Court finds that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law. The Court would add only that, based on its own independent review of the record, although the record evidence establishes that Plaintiff was confined in SHU for 150 days as a result of the misbehavior reports issued by Defendants Norton and Duckett, Plaintiff has failed to adduced admissible record evidence from which a rational factfinder could conclude that the conditions of his confinement during this 150–day period were more severe than normal SHU conditions. [19] As a result, Plaintiff's substantive due process claim is dismissed.

### D. Defendants' Defense of Qualified Immunity

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claims on the alternative ground that they are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances.

#### 1. Retaliation

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [1982] ). Here, even assuming that Plaintiff's statement that he would contact an attorney regarding the use of force he experienced constitutes engagement in protected activity, and even also assuming that the only reason Defendant Norton and/or Duckett issued Plaintiff a misbehavior report was because he made this statement, these Defendants are, under the circumstances, entitled to qualified immunity. This is because the Court finds that the right to make this statement (without experiencing any resulting adverse action) was not a clearly established during the time in question (January 2009), based on a review of the relevant case law. *See, supra,* notes 12 and 13 of this Decision and Order.

As a result, Plaintiff's retaliation claim is dismissed on the alternate ground of qualified immunity.

**2. Excessive Force**

There is no doubt that the right to be free from the use of excessive force was "clearly established" at the time of the incidents giving rise to Plaintiff's claims. *See, e.g., Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Moreover, with regard to whether it was objectively reasonable for Defendants to use the alleged amount of force that they used, the Second Circuit has made clear that, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity."*Mickle v. Morin,* 297 F.3d 114, 122 (2d Cir.2002) [internal quotation marks omitted].

**\*11** Here, after carefully reviewing the record, and construing it in the light most favorable to Plaintiff, the Court finds that, even if Defendants Dinelle, DeLuca and Duckett genuinely feared being assaulted by Plaintiff, and even if those three Defendants genuinely perceived Plaintiff's words and movements to constitute an attempt to resist a frisk, admissible record evidence exists from which a rational jury could conclude that those perceptions were not objectively reasonable under the circumstances. As the Second Circuit has observed, it is impossible to "determine whether [Defendants] reasonably believed that [their] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified immunity [is] precluded."*Thomas v. Roach,*

165 F.3d 137, 144 (2d Cir.1999). [20] For these reasons, the Court rejects Defendants' argument that Plaintiff's excessive-force claim should be dismissed on the ground of qualified immunity as it relates to Defendants Dinelle, DeLuca and Duckett.

However, the Court reaches a different conclusion with regard to Plaintiff's failure-to-intervene claim against Defendant Broekema: the Court finds that, at the very least, officers of reasonable competence could disagree on the legality of Defendant Broekema's actions, based on the current record. As a result, Plaintiff's failure-to-intervene claim against Defendant Broekema is dismissed on this alternative ground.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 24) is *GRANTED* in part and *DENIED* in part in the following respects:

(1) Defendants' motion for summary judgment on Plaintiff's First Amendment claim is *GRANTED;*

(2) Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim is *GRANTED;*

(3) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton is *GRANTED;*

(4) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema is *GRANTED;* and

(5) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca is *DENIED;* and it is further

**ORDERED** that the following claims are *DISMISSED* **with prejudice** from this action:

(1) Plaintiff's First Amendment claim;

(2) Plaintiff's Fourteenth Amendment substantive due process claim;

(3) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton; and

(4) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema; and it is further

**ORDERED** that Defendants Norton and Broekema are *DISMISSED* from this action; and it is further

**ORDERED** that, following this Decision and Order, the following claims remain pending in this action: Plaintiff's Eighth Amendment excessive-force claim against Defendants DeLuca, Dinnelle and Duckett; and it is further

**\*12 ORDERED** that counsel are directed to appear on **JANUARY 4, 2012 at 2:00 p.m.** in chambers in Syracuse, N.Y. for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **DECEMBER 16, 2011,** and the parties are directed to engage in meaningful settlement negotiations prior to the 1/4/12 conference.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 5975027

Footnotes

1    (*Compare*Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with*Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also*Dkt. No. 24, Attach. 4, at 100, 102–03 [attaching pages 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo .].)

2    (*Compare*Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with*Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7 .1 Response]; *see also*Dkt. No. 24, Attach. 4, at 59–60, 100, 102–03 [attaching pages 175, 176, 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2–3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo.].)

3    In their motion, Defendants do not challenge the evidentiary sufficiency of Plaintiff's Eighth Amendment excessive-force claim against Defendants Dinelle or Duckett. (*See generally*Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].)

4    Plaintiff does not oppose Defendants' arguments that (1) Plaintiff's excessive-force claim against Defendant Norton should be dismissed, and (2) Plaintiff's substantive due process claim should be dismissed. (*See generally*Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].)

5    Generally, " '[n]ormal' SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week."*Whitaker,* 2009 WL 5033939, at *5 n. 27 (citing *Ortiz v. McBride,* 380 F.3d 649, 655 [2d Cir.2004] ).

6    *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Div. of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

7    *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' "); *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

8    *See also Malsh v. Corr. Oficer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

9    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks omitted].

10   Defendants also argue that Plaintiff's First Amendment claim should be dismissed to the extent that it is based solely on the fact that misbehavior reports against him were *false* (as opposed to being false *and* retaliatory ). The Court agrees that Plaintiff has no general constitutional right to be free from false misbehavior reports. *See Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997). As a result, to the extent that the Plaintiff's Complaint may be construed as asserting a claim based solely on the issuance of false behavior reports, that claim is dismissed.

11   *See Wade–Bey v. Fluery,* 07–CV–117, 2008 WL 2714450 at *6 (W.D.Mich. July 8, 2010) ("Although it is well established that prisoners have a constitutional right of access to the courts ..., the filing of a frivolous lawsuit would not be protected activity.") [citation omitted].

12   The Court notes that numerous cases exist for the point of law that even *expressly threatening* to file a *grievance* does not constitutes protected activity. *See, e.g., Bridges v. Gilbert,* 557 F.3d 541, 554–55 (7th Cir.2009) ("[I]t seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") [emphasis in original]; *Brown v. Darnold,* 09–CV–0240, 2011 WL 4336724, at *4 (S.D.Ill. Sept.14, 2011) ("Plaintiff cannot establish that his threat to file a grievance against Defendant Darnold is a constitutionally protected activity."); *Koster v. Jelinek,* 10–CV–3003, 2011 WL 3349831, at *3, n. 2 (C.D.Ill. Aug.3, 2011) ("The plaintiff does not seem to be asserting that he had a First Amendment right to threaten the facilitators with lawsuits and grievances, nor does the Court believe that he has such a right."); *Ingram v. SCI Camp Hill,* 08–CV–0023, 2010 WL 4973302, at *15 (M.D.Pa. Dec.1, 2010) ("Stating an intention to file a grievance is not a constitutionally protected activity."), *aff'd,*No. 11–1025, 2011 WL 4907821 (3d Cir. Oct.17, 2011); *Lamon v. Junious,* 09–CV–0484, 2009 WL 3248173, at *3 (E.D.Cal. Oct.8, 2009) ("A mere threat to file suit does not rise to the level of a protected activity...."); *Miller v. Blanchard,* 04–CV–0235, 2004 WL 1354368, at *6 (W.D.Wis. June 14, 2004) ("Plaintiff alleges that defendants retaliated against him after he threatened to file a lawsuit against them. Inmates do not have a First Amendment right to make threats.").

13   *McKinnie v. Heisz,* 09–CV–0188, 2009 WL 1455489, at *11 (W.D.Wis. May 7, 2009) ("Hoping to engage in constitutionally protected activity is not itself constitutionally protected activity. At most, petitioner's actions could be construed as a 'threat' to assert his rights but that is not enough.").

14   *See Hynes v. Squillance,* 143 F.3d 653, 657 (2d Cir.1998) (holding that defendants met their burden of showing that they would have taken disciplinary action on valid basis alone where the evidence demonstrated that plaintiff had committed "the most serious, if not all, of the prohibited conduct"); *Jermosen v. Coughlin,* 86–CV–0208, 2002 WL 73804, at *2 (N.D.N.Y. Jan.11, 2002) (Munson, J.) (concluding, as a matter of law, that defendants showed by a preponderance of the evidence that they would have issued a misbehavior report against plaintiff even in the absence of his complaints against correctional department personnel, because they established that the misbehavior report resulted in a disciplinary conviction, "demonstrat[ing] that plaintiff in fact committed the prohibited conduct charged in the misbehavior report.").

15   For these reasons, the Court finds to be inapposite the case that Plaintiff cites for the proposition that the Court must accept as true his sworn denial that he committed any of the violations alleged in the misbehavior reports issued against him. *See Samuels v. Mockry,* 142 F.3d 134, 135–36 (2d Cir.1998) (addressing a situation in which a prisoner was placed in a prison's "Limited Privileges Program," upon a finding rendered by the prison's Program Committee, that he had refused to accept a mandatory work assignment, *"without a hearing or a misbehavior report"* ) [emphasis added]. The Court would add only that, even if it were to accept Plaintiff's sworn denial as true, the Court would still find that he has failed to establish that Defendants Duckett and Norton would not have issued the misbehavior reports against him anyway, based on their subjective belief that he was acting in a disturbing, interfering, harassing and disobedient manner at the time in question (as evident from, *inter alia,* their misbehavior reports, the disciplinary hearing testimony of three of the Defendants, and admissions made by Plaintiff during his deposition regarding the "confusion" and "misunderstanding" that occurred during his examination by Defendant Norton, his persistent assertions about his prescribed frequency of visits, and his unsolicited comments about his proper course of treatment).

16   *See O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988) (noting that "three blows [that occurred] in such rapid succession ... [is] not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator"); *Blake v. Base,* 90–CV–0008, 1998 WL 642621, at *13 (N.D.N.Y. Sept.14, 1998) (McCurn, J.) (dismissing failure-to-intervene claim against police officer based on finding that the punch to the face and few body blows that plaintiff allegedly suffered "transpired so quickly ... that even if defendant ... should have intervened, he simply did not have enough time to prevent plaintiff from being struck"); *Parker v. Fogg,* 85–CV–0177, 1994 WL 49696, at *8 (N.D.N.Y. Feb.17, 1994) (McCurn, J.) (holding that an officer is not liable for failure-to-intervene if there "was no 'realistic opportunity' to prevent [an] attack [that ends] in a matter of seconds"); *see also Murray–Ruhl v. Passinault,* 246 F. App'x 338, 347 (6th Cir.2007) (holding that there was no reasonable opportunity for an officer to intervene when one officer stood by while another fired twelve shots in rapid succession); *Ontha v. Rutherford Cnty., Tennessee,* 222 F. App'x 498, 506 (6th Cir.2007) ("[C]ourts have been unwilling to impose a duty to intervene where ... an entire incident unfolds 'in a matter of seconds.' "); *Miller v. Smith,* 220 F.3d 491, 295 (7th Cir.2000) (noting that a prisoner may only recover for a correction's officer's failure to intervene when that officer "ignored a realistic opportunity to intervene").

17   (Dkt. No. 27, Attach. 2, at 19–20.)

18    (Dkt. No. 27, Attach. 2, at 10, 14.)

19    *See Spence v. Senkowski,* 91–CV–0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (finding that 180 days that plaintiff spent in SHU, where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217–19 (W.D.N.Y.1998) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353–56 (W.D.N.Y.1997) (161 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96–CV–2003, 1997 WL 137448, at *4–6 (S.D.N.Y.1997) (192 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116–17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94–CV–4094, 1996 WL 487951, at *4–5 (S.D.N.Y. Aug.27, 1996) (210 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103–04 (W.D.N.Y.1995) (270 days in SHU under numerous conditions of confinement that were more restrictive than those in general population).

20    *See also Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987) ( "[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon]. Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4627120
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Leonard HINTON, Plaintiff,
v.
A. PRACK, et al., Defendants.

No. 9:12–CV–1844 (LEK/RFT).
|
Signed Sept. 10, 2014.
|
Filed Sept. 11, 2014.

**Attorneys and Law Firms**

Leonard Hinton, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of New York, Joshua E. Mcmahon, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

*MEMORANDUM–DECISION and ORDER*

LAWRENCE KAHN, District Judge.

## I. INTRODUCTION

**\*1** This *pro se* action under 42 U.S.C. § 1983 comes before the Court following a Report–Recommendation filed on August 14, 2014, by United States Magistrate Judge Randolph F. Treece, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Dkt. No. 59 ("Report–Recommendation"). Judge Treece recommends that all of Plaintiff Leonard Hinton's ("Plaintiff") claims be dismissed, except that he be awarded nominal damages for violation of his due process rights by Defendant Uhler. Report–Rec. at 31–32. Plaintiff timely filed Objections. Dkt. Nos. 62 ("Objections"); 63 ("Addendum"). For the following reasons, the Report–Recommendation is adopted in its entirety.

## II. STANDARD OF REVIEW

When a party makes a timely objection to a Report–Recommendation, it is the duty of the Court to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). Where, however, an objecting "party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Farid v. Bouey,* 554 F.Supp.2d 301, 307 (N.D.N.Y.2008) (quoting *McAllan v. Von Essen,* 517 F.Supp.2d 672, 679 (S.D.N.Y.2007)) (citations omitted); *see also Brown v. Peters,* No. 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22, 1997)."A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

## III. DISCUSSION

### A. First Disciplinary Hearing

Plaintiff argues that the evidence presented at his first disciplinary hearing was not "reliable evidence" sufficient to support the hearing officer's determination that Plaintiff was guilty of the alleged conduct. Objs. at 1. Specifically, Plaintiff argues that the evidence was insufficient because there was no independent credibility assessment of, or written statements by, the confidential informant or alleged victim to corroborate Sergeant Gower's testimony. *Id.* at 1–2.

Plaintiff already raised this argument in great detail in his Motion for summary judgment, *see* Dkt. No. 39 at 19–22, and Judge Treece explicitly addressed it in the Report–Recommendation, Report–Rec. at 12–15. Because Plaintiff's argument is "a mere reiteration of an argument made to the magistrate judge,"*Dove v. Smith,* No. 13–CV–1411, 2014 WL 1340061, at *1 (N.D.N.Y. Apr. 3, 2014) (Kahn, J.) the Court reviews Plaintiff's objection only for clear error, *see Chylinski v. Bank of Am., N.A.,* 434 F. App'x 47, 48 (2d Cir.2011)). The Court finds that Judge Treece committed no clear error in determining that Sergeant Gower's testimony was sufficiently corroborated by his written report and other evidence in the record. *See* Report–Rec. at 12–15; *see also Kotler v. Daby,* No. 10–CV–0136, 2013 WL 1294282, at *10 (N.D.N.Y. Mar. 28, 2013) (finding guard's testimony and written report constituted "reliable evidence" under the "some evidence" standard, and that an independent assessment of the witnesses' credibility was not required).

### B. Second Disciplinary Hearing

**\*2** Plaintiff argues that his due process rights were violated at his second disciplinary hearing because Defendant Haug, who conducted the disciplinary hearing, failed to interview or make available four of Plaintiff's requested witnesses. Objs. at 2. Specifically, Plaintiff asserts that he was prejudiced by his inability to question Captain Scarafile ("Scarafile") and

Deputy Superintendent Kinderman ("Kinderman") because they "ascertained the facts of th[e] incident, and would have testified of [sic] those facts."*Id.* Moreover, corrections officer Ruggerio ("Ruggerio") and inmate Burton ("Burton") both had relevant, first-hand knowledge of the circumstances of the alleged fight. *See id.; see also* Addendum at 2.

To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing. *See Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991). In his Objections, Plaintiff states that "[c]learly there is relevance of every witness that Plaintiff requested to testify on his behalf."Objs. at 2. However, Plaintiff fails to advance any specific arguments as to *how* these witnesses' testimonies would have affected the outcome of his disciplinary hearing.

Indeed, as Judge Treece points out, Kinderman and Scarafile were merely supervisors who were informed of the incident after it had already transpired. Report–Rec. at 19. Thus, they did not have first-hand knowledge of the events, and there is no indication that they would have testified favorably to Plaintiff. *See id.*Moreover, Ruggerio did not arrive until after the incident occurred, and his misbehavior report was virtually identical to that of Officer Betti, who testified at the hearing. *Id.* Thus, there is no indication that Ruggerio's testimony would have affected the outcome of the hearing. Finally, although Burton presumably could have offered relevant testimony, as he was the alleged victim of Plaintiff's attack, Plaintiff has not demonstrated how Burton's testimony would have affected the outcome of his hearing. To the contrary, as indicated in Sergeant Betti's Fight Investigation Report, Burton stated that Plaintiff began yelling at him for no reason and Plaintiff then hit him in the head with a frying pan. Report–Rec. at 20. Thus, Plaintiff's arguments that these witnesses' testimonies would have affected the outcome of his hearing are entirely speculative, and do not warrant finding a constitutional violation. *See* Report–Rec. at 2; *see also Grossman v. Bruce,* 447 F.3d 801, 805 (10th Cir.2006) ("[A] prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony would have affected the outcome of his case.").

## C. Third Disciplinary Hearing

Plaintiff next argues that he has established an actual injury in connection with his third disciplinary hearing because he was confined in the Special Housing Unit ("SHU") "as a result of the constitutional violations."Objs. at 2. Plaintiff

is correct that his constitutional rights were violated by Defendants' failure to timely provide Plaintiff with a copy of the disciplinary hearing determination. *See* Report–Rec. at 25–26. However, the copy of the hearing determination was merely the means by which to inform Plaintiff of the penalty to be imposed. Thus, Defendants' failure to provide Plaintiff with a copy of the hearing decision did not affect the actual determination, because the determination had already been made. In other words, Defendants' failure to provide Plaintiff with the hearing decision did not *cause* him to be confined in SHU—the penalty had already been imposed and was entirely independent of the failure to serve Plaintiff with a written confirmation of the penalty. *See McCann v. Coughlin,* 698 F.2d 112, 126 (2d Cir.1983) (noting that failure to provide a copy of a hearing determination occurs after the decision has been rendered). Therefore, Plaintiff has failed to show actual injury in relation to his third disciplinary hearing.

## D. Qualified Immunity

 **\*3** Plaintiff's final objection is that Defendants are not entitled to qualified immunity. Objs. at 3. However, Judge Treece did not find that any Defendants were entitled to qualified immunity. Therefore, Plaintiff's argument is irrelevant.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 59) is **APPROVED and ADOPTED in its entirety;** and it is further

**ORDERED,** that Plaintiffs' Motion (Dkt. No. 39) for summary judgment is **GRANTED in part and DENIED in part** consistent with the Report–Recommendation (Dkt. No. 59); and it is further

**ORDERED,** that Defendant's Cross-Motion (Dkt. No. 42) for summary judgment is **GRANTED in part and DENIED in part** consistent with the Report–Recommendation (Dkt. No. 59); and it is further

**ORDERED,** that Plaintiff be awarded nominal damages in the amount of one dollar ($1.00); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

IT IS SO ORDERED.

LEONARD HINTON, Plaintiff,

-v-

A. **PRACK,** *Commissioner's Designee,* **D. VENETTOZZI,** *Commissioner's Designee,* **S. BULLIS,** *Hearing Officer,* **D. HAUG,** *Hearing Officer,* **D. ROCK,** *Superintendent; Upstate Correctional Facility,* **UHLER,** *Deputy Superintendent of Security; Upstate Correctional Facility,* Defendants.

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Leonard Hinton brings this action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his right to due process at three separate disciplinary hearings. *See* Dkt. No. 1, Compl. Plaintiff has moved for summary judgment. Dkt. No. 39. Defendants oppose that Motion, and Cross–Move for Summary Judgment. Dkt. No. 42. Plaintiff opposes Defendants' Cross–Motion. Dkt. Nos. 44, Pl.'s Opp'n, & 45, Pl.'s Supp. Opp'n. For the reasons that follow, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED,** Defendants' Cross–Motion for Summary Judgment be **GRANTED,** and that this action be **DISMISSED.**

### I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I. C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986))."When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

**\*4** To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) and *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998)."[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation,* 311 F.3d 534, 543 (2d Cir.2002) (quoting *Heublein, Inc. v. United States,* 996

F.2d 1455, 1461 (2d Cir.1993)).“[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it ... [and] a district court is not required to grant judgment as a matter of law for one side or the other.”*Heublein, Inc. v. United States,* 996 F.2d at 1461.

## II. DISCUSSION

### A. Due Process

**\*5** Plaintiff alleges that Defendants violated his right to due process at three separate disciplinary hearings. *See generally* Compl.

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that “exceed[ ] the sentence in ... an unexpected manner[.]”*Sandin v. Conner,* 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id.* With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has “narrowly circumscribed its scope to protect no more than the ‘most basic liberty interests in prisoners [,]’ “ *Arce v. Walker,* 139 F.3d at 333 (quoting *Hewitt v. Helms,* 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that “exceed[ ] the sentence in ... an unexpected manner[,]” *Sandin v. Conner,* 515 U.S. 472, 478 (1995).

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to “atypical and significant hardship ... in relation to the ordinary incidents of prison life.”*Sandin v. Connor,* 515 U.S. at 484; *see also Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001) (citing *Sandin* ); *Welch v. Bartlett,* 196 F.3d 389, 392 (2d Cir.1999).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include “(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary

confinement.”*Spaight v. Cinchon,* 1998 WL 167297, at \*5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)); *see also Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (stating that in assessing what constitutes an atypical and significant hardship, “[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical” (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second Circuit has cautioned that “there is no bright-line rule regarding the length or type of sanction” that meets the *Sandin* standard. *Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999) (citations omitted). Nevertheless, the Court of Appeals has stated that “[w]here the plaintiff was confined for an intermediate duration— between 101 and 305 days—development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.” *Palmer v. Richards,* 364 F.3d at 64–65 (quoting *Colon v. Howard,* 215, F.3d 227, 232 (2d Cir.2000)); *see also Hanrahan v. Doling,* 331 F.3d 93, 97–98 (2d Cir.2003) (“[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest.”); *Edmonson v. Coughlin,* 1996 WL 622626, at \*4–5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that “disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life”); *Sims v. Artuz,* 230 F.3d 14, 23 (2d Cir.2000) (noting that segregative sentences of 125–288 days are “relatively long” and therefore necessitate “specific articulation of ... factual findings before the district court could properly term the confinement atypical or insignificant”). Accordingly, the court must “make a fact-intensive inquiry” that would examine the actual conditions of confinement within SHU. *Palmer v. Richards,* 364 F .3d at 65; *see also Wright v. Coughlin,* 132 F .3d at 137; *Brooks v. DiFasi,* 112 F.3d 46, 49 (2d Cir.1997). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards,* 364 F.3d at 65. If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of procedural due process under *Sandin. Id.*

**\*6** Once a prisoner makes a threshold showing of atypical and significant confinement, the court should determine whether that prisoner, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). A prisoner placed in disciplinary segregation must be provided (1) advanced written notice of the charges against them at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) written statement as to the evidence relied upon and the reasons for the disciplinary action. *Id.* at 564–66; *see also Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986); *Taylor v. Rodriguez,* 238 F.3d 188, 192 (2d Cir.2001) (quoting *Hewitt v. Helms,* 459 U.S. at 476).

With these principles in tow, we discuss the process that was provided at each of the disciplinary hearings at issue *seriatim.*

### 1. Liberty Interest

Defendants concede that, in the aggregate, the amount of time Plaintiff spent in the solitary housing unit ("SHU"), as a result of the three disciplinary hearings at issue, was sufficient to implicate a protected liberty interest.[1] Dkt. No. 42–7, Defs.' Mem. of Law, at p. 11; *see also* Dkt. No. 42–4, Steven Bullis Decl., dated Dec. 26, 2013, at Ex. A, Disciplinary Hr'g Tr. (hereinafter "1st Hr'g Tr."), dated Oct. 13–18, 2010, at p. 1; Dkt. No. 42–5, Donald Haug Decl., dated Dec. 24, 2013, at Ex. A, Disciplinary Hr'g Report, dated Sept. 7–13, 2010;[2] Dkt. No. 42–6, Donald Uhler Decl., dated Dec. 27, 2013, at Ex. A, Disciplinary Hr'g Tr. (hereinafter "3rd Hr'g Tr."), dated February 2–3, 2011, at p. 1. Accordingly, we need only determine whether Plaintiff was deprived of any of the minimum requirements of due process during any of the disciplinary hearings at issue.[3]

### 2. First Disciplinary Hearing

The following facts are undisputed.

On July 25, 2010, Sgt. Gower[4] issued a misbehavior report charging Plaintiff with extortion, soliciting a sexual act, and making a third party call. Defendant Bullis found Plaintiff guilty of all three violations, and sentenced him to six months in the SHU as well as six months loss of packages, commissary, phone, and good time credits. Dkt.

No. 39–3, App. to Pl.'s Mot. for Summ. J. (hereinafter "Pl.'s App."), Sec. 1, at Ex. A, Misbehavior Rep., dated July 25, 2010 (hereinafter "1st Misbehavior Rep."); 1st Hr'g Tr. at p. 1. Plaintiff appealed the decision; but his appeal was denied by Defendant Prack, the Director of the Special Housing/ Inmate Disciplinary Program, on December 20, 2010. *See* Pl.'s App., Sec. I, at Exs. E, Appeal Form, dated Oct. 18, 2010; & F, Appeal Dec., dated Dec. 20, 2010. Subsequently, Plaintiff challenged the disciplinary determination, in State Court, pursuant to N.Y. C.P.L.R. § 7803 ("Article 78").*Id.* at Ex. G, Pl.'s Art. 78 Pet., dated Dec. 29, 2010. The New York State Appellate Division, Fourth Department, denied Plaintiff's petition, and unanimously upheld Defendant Bullis's disciplinary determination. *Id.* at Ex. I, Dec., dated Nov. 9, 2012.

**\*7** Plaintiff now argues that he is entitled to summary judgment as to his claims against Defendants Bullis and Prack for violations of his right to due process in conjunction with this hearing, because Defendants lacked any credible evidence to support the decision or its subsequent affirmation.*See, e.g.,* Dkt. No. 44–1, Pl.'s Opp'n at p. 2.[5] Defendants argue that they are entitled to summary judgement as to this claim because Plaintiff was provided all of the process that was due. Dkt. No. 42–7, Defs.' Mem. of Law, at pp. 13–16.

### a. Notice

It is undisputed that Plaintiff was served with a copy of the misbehavior report on October 6, 2010. Pl.'s App., Sec. I, Ex. D, Hr'g Disposition. Accordingly, Plaintiff received notice, as required, more than twenty-four hours prior to his hearing. *See Sira v. Morton,* 380 F.3d 57, 70 (2d Cir.2004) (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. at 564 for the proposition that "[d]ue process requires that prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing"). Moreover, the misbehavior report noted, *inter alia:*"[b]ased on an investigation [Sgt. Gower] conducted it has been determined that inmate Hinton ... was attempting to solicit sexual acts and was attempting to extort money from a family member of inmate Veach .... Inmate Hinton also gave inmate Veach two packs of tobacco without authorization of any staff." 1st Misbehavior Rep. Such notice was adequate to inform Plaintiff of the nature of the offenses for which he was charged. *See Sira v. Morton,* 380 F.3d at 70 (quoting *Taylor v. Rodriguez,* 238 F.3d at 193, for the proposition

that "due process requires more than a conclusory charge; an inmate must receive notice of at least some specific facts underlying the accusation such that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report.") (internal quotation marks omitted). [6]

### b. Opportunity to be Heard

The record clearly establishes that Plaintiff was present at the hearing, able to question witnesses, and present rebuttal evidence. *See generally* 1st Hr'g Tr. This remains true notwithstanding the fact that four of the witnesses Plaintiff called refused to testify. *See id.* at p. 10. Crucially, "it is well settled that [a]n inmate does not possess a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings." *Fernandez v. Callens,* 2010 WL 4320362, at *11 (W.D.N.Y. Oct. 29, 2010) (citing *Wolff v. McDonnell,* 418 U.S. at 567–68; *Kalwasinski v. Morse,* 201 F.3d 103, 109 (2d Cir.1999); & *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993)). The fact that these witnesses refused to testify on Plaintiff's behalf does not alter the fact that he was given the opportunity to call witnesses. *See Creech v. Schoellkoph,* 688 F.Supp.2d 205, 213 (W.D.N.Y.2010) (finding no due process violation where two witnesses called by inmate refused to testify); *see also Edmonson v. Coughlin,* 1996 WL 622626, at *8 (W.D.N.Y. Oct. 4, 1996) (citing *Wolff v. McDonnell,* 418 U.S. at 568–69 for the proposition that *"Wolff* specifically recognized the discretion of prison officials to decline to call as witnesses fellow inmates who do not wish to testify, or witnesses who know nothing of the underlying events"); *Jamison v. Fischer,* 2013 WL 5231457, at *3 (S.D.N.Y. July 11, 2013) (citing cases for the proposition that "if a requested witness refuses to testify at a disciplinary hearing, the hearing officer is not constitutionally required to compel the witness to testify."). Moreover, in such situations, all that is required of the hearing officer is that he provide the inmate with notice of the fact that witnesses are being withheld and explain the reasons why. *See*N.Y. COMP.CODES R. & REGS. tit. 7, § 254.5(a) ("If permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial, including the specific threat to institutional safety or correctional goals presented."). Here, Defendant Bullis explained at the hearing that:

> **\*8** Mr. Hinton, on your assistant form you requested four potential witnesses. It is written down that they all refused

> to testify and in the file there are four refusal forms, one by inmate Maida ... refuses to testify he does not want to be involved. Inmate King ... states he does not want to be involved with any of this, he doesn't want to get involved with any of this don't call me again as stated on the form. The next is from inmate Woods ... stating he does not want to be involved as he stated on the form. The next is for inmate Veach ... stating he does not want to be involved he claimed he does not know anything about this incident on 7/28/2010.

1st Hr'g Tr. at p. 10.

Thus, we can find no evidence of any constitutional deficiency in Plaintiff's opportunity to appear, call witnesses, or present rebuttal evidence at the first disciplinary hearing. *See Wolff v. McDonnell,* 418 U.S. at 564–66.

### c. Written Decision

It is clear from the record that at 11:15 a.m., on October 8, 2010, Plaintiff received a written statement as to the evidence relied upon and the reasons for the disciplinary action that was taken. Pl.'s App., Sec. I, Ex. D, Hr'g Disposition Form.

Therefore, under *Wolf v. McDonnell,* Plaintiff received all of the process due to him. 418 U.S. at 564–66.

### d. Remaining Arguments

Plaintiff also argues that there was no credible evidence to support Defendant Bullis's disciplinary determination. While an inmate is *not* entitled to a hearing officer with the same level of impartiality required by judges; it is true that he is entitled to a hearing untainted by arbitrary or pre-determined findings of guilt. *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). Nonetheless, a hearing officer's limited impartiality requirements are satisfied where the record contains "some evidence" to support the officer's findings. *Superintendent v. Hill,* 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or

weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached." *Id.,* 472 U.S. at 455–56 (citations omitted). That being said, only " 'reliable' evidence can constitute 'some evidence.' " *Sira v. Morton,* 380 F.3d at 76 (citing *Luna v. Pico,* 356 F.3d at 488).

Here, Defendant Bullis's determination was supported by ample reliable evidence, chiefly, the testimony and misbehavior report of Sgt. Gower. *See* Pl.'s App., Sec. I at Ex. C.

As noted above, the misbehavior report stated, *inter alia:* "[b]ased on an investigation [Sgt. Gower] conducted it has been determined that inmate Hinton ... was attempting to solicit sexual acts and was attempting to extort money from a family member of inmate Veach .... Inmate Hinton also gave inmate Veach two packs of tobacco without authorization of any staff." 1st Misbehavior Rep. At the hearing, Sgt. Gower explained, in sum and substance, that on the morning of July 25, 2010, an unidentified inmate told him that Plaintiff had attempted to solicit sex from Inmate Veach. As a result, Sgt. Gower conducted an investigation during which he interviewed Inmate Veach, who reported that "approximately 2 weeks before that he got two packs of tobacco from [Plaintiff] he was unable to pay him so [Plaintiff] had requested he perform sexual acts or ten days to pay him for the tobacco." 1st Hr'g Tr. at p. 6. Veach also informed Sgt. Gower that Plaintiff had attempted to pull him into a toilet stall but stopped when Inmate Moody walked into the bathroom area. Gower verified with Inmate Moody that he saw Veach and Hinton in the bathroom at the same time; however, Moody did not see Hinton pulling Veach into the stall. Gower ordered that Veach be examined by medical, and no evidence of sexual misconduct was found. Gower also testified that Veach informed him that Plaintiff and Inmate McGee had set up a three-way call in an attempt to extort fifteen dollars from Inmate Veach's sister for the tobacco. Gower reported that he verified this with inmate McGee who admitted to helping to orchestrate the three-way call. *Id.* at pp. 6–8.

**\*9** Standing alone, the unidentified inmate's claims that Plaintiff solicited sex from Inmate Veach would be insufficient to satisfy the "some evidence" standard applicable to prison disciplinary hearings. *See Dawkins v. Gonyea,* 646 F.Supp.2d 594, 611 (S.D.N .Y.2009) (citing *Sira v. Morton,* 380 F.3d at 78, for the proposition that "if any confidential informant's testimony was based solely on

hearsay, a greater inquiry into the reliability of this hearsay information is required."); *Howard v. Wilkerson,* 768 F.Supp. 1002, 1007 (S.D.N.Y.1991) (citing *Vasquez v. Coughlin,* 726 F.Supp. 466, 471 (S.D.N.Y.1989), for the proposition that "[s]ince *[Superintendent v.] Hill,* [472 U.S. 445 (1985) ] it has been held that hearsay evidence does not constitute 'some evidence' "). However, here, Defendant Bullis's determination was supported by Gower's misbehavior report. More importantly, Gower testified at the hearing that prior to issuing the misbehavior report he independently corroborated the statements made to him by the unidentified inmate and the victim. Gower's investigation, report, and testimony were all valid bases from which Defendant Bullis could conclude that the information was reliable. *See Sira v. Morton,* 380 F.3d at 78 ("Where the original declarant's identity is unknown or not disclosed, the hearing officer may nevertheless consider such factors as the specificity of the information, the circumstances under which it was disclosed, and the degree to which it is corroborated by other evidence."). Since Defendant Bullis found Gower's testimony to be reliable, Bullis Decl. at ¶ 17, we need not conduct an independent assessment of Gower's credibility. *Kotler v. Daby,* 2013 WL 1294282, at \* 10 (N.D.N.Y. Mar. 28, 2013) (finding guard's testimony and written report constituted some evidence, and that an independent assessment of the charging officer's credibility is neither required nor encouraged); *Thomas v. Connolly,* 2012 WL 3776698, at \*23 (S.D.N.Y. Apr. 10, 2012) (finding that disciplinary determination supported by the investigating officer's report was sufficient to satisfy the some evidence requirement). Thus, we conclude that no reasonable juror could conclude that Plaintiff's disciplinary conviction was not based on some reliable evidence. [7]

Furthermore, Plaintiff's argument that Inmate Veach's statements to Sgt. Gower during his investigation are unreliable in light of the fact that Inmate Veach subsequently refused to testify at Plaintiff's hearing—reportedly on the grounds that he knew nothing about the alleged incident— are also unavailing. *See* Pl.'s Mem. of Law at pp. 17–20; Pl.'s App., Sec. I, Ex. C, Inmate Refusal Form, dated Oct. 8, 2010; *see also Louis v. Ricks,* 2002 WL 31051633, at \*13 (S.D.N.Y. Sept. 13, 2002) (surveying cases for the proposition that no due process violation occurred where the hearing assistant relied on testimony from the alleged victim which the victim later recanted). [8]

**\*10** Accordingly, having determined that Plaintiff received all of the process that was due to him with regard to his first disciplinary hearing, we recommend that Plaintiff's

Motion for Summary Judgment be **DENIED** as to this claim, that Defendants' Cross–Motion for Summary Judgment be **GRANTED,** and that this claim be **DISMISSED.**

### e. Defendant Prack

Plaintiff alleges that Defendant Prack was liable in his supervisory capacity for Defendant Bullis's alleged due process violation because he knew of but failed to remedy the violation when he affirmed Defendant Bullis's disciplinary determination. Pl.'s Mem. of Law at p. 25. An individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he was personally involved in the alleged deprivation.

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted).

However, having failed to find any evidence of an underlying constitutional violation, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED** as to Plaintiff's claim against Defendant Prack arising out of his affirmation of Defendant Bullis's disciplinary determination. *See Elek v. Inc. Vill. of Monroe,* 815 F.Supp.2d 801, 808 (S.D.N.Y.2011) (collecting cases for the proposition that "because Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability"). Furthermore, we also recommend that Defendants' Motion be

**GRANTED** with respect to the same, and that this claim be **DISMISSED.**

### 3. Second Disciplinary Hearing

The following facts are undisputed.

On August 11, 2010, Plaintiff was charged with violent conduct, assault on an inmate, and fighting by Sergeant Betti, and violent conduct, creating a disturbance, and fighting by Corrections Officer Ruggerio. [9] According to Sergeant Betti's report "inmate Hinton admitted to [her] that he had a verbal argument with inmate Burton over some missing food items. He said the argument ended with him picking up a frying pan and hitting inmate Burton once over the head with it."Haug Decl., Ex. A, Betti Misbehavior Rep., dated Aug. 11, 2010. According to Officer Ruggerio, on August 11, he heard a crashing noise in the room near the kitchen, and upon responding "observed inmate Hinton lying on his left side ... near his overturned wheelchair.... [He] also observed Inmate Burton standing over Hinton with a clinched fist. There was also a medium sized stainless steel frying pan lying near [Hinton's wheelchair]."*Id.,* Ex. A, Ruggerrio Misbehavior Rep., dated Aug. 11, 2010.

**\*11** Defendant Haug conducted a disciplinary hearing between September 7 and 13, 2010, and found Plaintiff guilty of all six violations. Decl., Ex. A, Hr'g Disposition, dated Sept. 13, 2010. On November 12, 2010, Defendant D. Venettozzi, the Acting Director of the Special Housing/ Inmate Disciplinary Program, affirmed the disciplinary determination. *Id.* at Ex. C, Appeal Dec., dated Nov. 12, 2010. However, as a result of an Article 78 proceeding brought by Petitioner before the Fourth Department, the determination was overturned and vacated because "the hearing officer's effective denial of petitioner's request to call C.O. Ruggerio, Inmate Burton, Captain Scarafile and Deputy Superintendent Kinderman [10] as witnesses, without [ ] stated good faith reasons, constituted a clear constitutional violation[.]"*Id.* at Ex. C, Dec. & J., dated May 27, 2011. As a result, Plaintiff's September 13 disciplinary decision was administratively reversed on August 4, 2011. *Id.* at Ex. B, App. Dec., dated Aug. 4, 2011.

In his Motion, Plaintiff claims he is entitled to summary judgment as to his due process claims against Defendant Haug because he was improperly denied the right to call witnesses on his behalf, and against Defendant Venettozzi for affirming

Defendant Haug's disciplinary determination. *See* Pl.'s Opp'n at p. 5. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff received all of the process that was due at his second disciplinary hearing. Defs.' Mem. of Law at pp. 17–19.

### a. Notice

It is uncontested that Plaintiff received a copy of the misbehavior reports at issue on August 12, 2010. Haug Decl. at ¶ 9 & Ex. A, Tier III Data Sheet, dated Aug. 22, 2010. Furthermore, each report contained a detailed factual account of the basis of the charges, the names of those involved, and the date of the relevant events. *Id.* at Ex A, Misbehavior Reports, dated Aug. 11, 2010. Accordingly, Plaintiff clearly received constitutionally sufficient notice.

### b. Opportunity to be Heard

According to the Fourth Department, the "denial of petitioner's request to call C.O. Ruggerio, Inmate Burton, Captain Scarafile and Deputy Superintendent Kinderman as witnesses, without a stated good faith reason[ ], constituted a clear constitutional violation."*Id.* at Ex. B, Dec. & J. at p. 5. As a result of the Fourth Department's decision, Plaintiff's disciplinary determination was subsequently administratively overturned. However, neither of these facts is dispositive for purposes of the instant action. *Gutierrez v. Coughlin, 841 F.2d 484, 486 (2d Cir.1988)* (citing cases for the proposition that collateral estoppel does not preclude defendants from re-litigating due process violations decided in an Article 78 proceeding in a subsequent 1983 case because, *inter alia,* "appellees could not have been held personally liable in such a proceeding, they did not have the same incentive to litigate that state court action as they did the federal *§ 1983* action[,]" and "the defenses of absolute or qualified immunity, or lack of personal involvement, were not available to appellees"); *see also LaTorres v. Selsky, 2011 WL 7629515, *6 n. 10 (N.D.N.Y. Aug. 1, 2011)* (citing *Guitierrez v. Coughlin* ).

**\*12** Moreover, Plaintiff's claim is subject to review for harmless error.*Sims v. Artuz, 103 F. App'x 434, 436 (2d Cir.2004)* (upholding magistrate's determination applying harmless error to defendant's undisputed failure to provide a reason for refusing to call witnesses during a disciplinary hearing); *Clark v. Dannheim, 590 F.Supp.2d 426, 431 (W.D.N.Y.2008)* (same); *Colantuono v. Hockeborn, 801 F.Supp.2d 110, 115 (W.D.N.Y.2011)* (citing *Clark v. Dannheim, 590 F.Supp.2d 426, (W.D.N.Y.2008),* for the proposition that "dismissing state prisoner's due process claim based on the hearing officer's denial of plaintiff's requests to review certain medical records, and to call DOCS sergeant as a witness, where plaintiff failed to demonstrate that he was prejudiced as a result"); *cf. Powell v. Coughlin, 953 F.2d 744, 751 (2nd Cir.1991)* ("it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial").

Here, notwithstanding the fact that a denial of the right to call witnesses without an explanation is a violation of New York's prison disciplinary regulations, N.Y. COMP.CODES R. & REGS. tit. 7, § 254.5(a), Defendant Haug's decision to deny, without explanation, Plaintiff's request to call as witnesses Deputy Superintendent Geoghegan, Captain Scarafile, and Officer Rugerio did not rise to the level of a due process violation because Plaintiff failed to allege, in any fashion, how he was prejudiced. Indeed, it is undisputed that Deputy Superintendent Geoghegan and Captain Scarafile had no personal knowledge of the event; their only involvement was that they were informed about the alleged fight after the fact. Haug Aff. at ¶ 18 & Ex. A, Unusual Incident Report, dated Aug. 19, 2010, at p. 2. Similarly, Officer Ruggerio's misbehavior report confirms that he arrived on scene after the event, and the details of his report are nearly identical to those provided by Officer Betti, who testified at the hearing. *Id.* at ¶¶ 10 & 16–17, & Ex. A, Misbehavior Reports. Accordingly, their testimony was at best cumulative, and quite possibly irrelevant. *See Hamilton v. Fischer, 2013 WL 3784153, at *10 (W.D.N.Y. July 18, 2013)* (dismissing due process claims based on a hearing officer's failure to call witness who were not present for the incident at issue because the error was harmless).

Likewise, the record in this case compels us to reach a similar conclusion with regard to the fourth witness, Inmate Burton, although by a slightly different route. With respect to his decision to deny Plaintiff's request to call Inmate Burton, Defendant Haug avers that "I have no recollection of who that inmate was or why his testimony would have had any bearing on whether or not Plaintiff Hinton hit another inmate with a frying pan. Had I believed that this inmate had information that was pertinent to Plaintiff Hinton's defense, I would have requested his testimony."*Id.* at ¶ 19. It cannot seriously be

argued that Inmate Burton, the inmate Plaintiff allegedly hit over the head with the frying pan, did not have any relevant information with regard to the incident at issue.

**\*13** However, nothing in Plaintiff's papers [11] nor the many documents submitted by Defendants indicates that had Inmate Burton been called his testimony would have altered the course of the hearing. Rather, based on the record before us, we can only conclude the opposite. In the Fight Investigation Rep., dated August 11, 2010, Sergeant Betti reported that "Burton stated [that] Hinton approached him in the day room and was yelling at him for no reason. Hinton hit him with a pan in the head."Haug Decl., Ex. A. Crucially, Burton's statement was relied upon by Defendant Haug. *Id.,* Ex. A, Hr'g Disposition Report, dated Sep. 13, 2010, at p. 2.

Given the lack of any indication in the record that Inmate Burton would have testified favorably, as well as his own admissions to Sergeant Betti that he struck Inmate Burton with the pan, Plaintiff has failed to establish that he was prejudiced by Defendant Haug's refusal to call Inmate Burton as a witness. *See Clark v. Dannheim,* 590 F.Supp.2d at 430–31 (concluding, after examining the record, that failure to call a witness who had clearly relevant information was non-prejudicial because "there [wa]s no indication or reason to believe that his testimony would have been helpful to plaintiff"); *see also Sims v. Artuz,* 103 F. App'x at 436 (upholding magistrate's determination that exclusion of witnesses from disciplinary hearing was harmless error where plaintiff "ha [d] not shown that he was prejudiced in any way"); *Tafari v. Rock,* 2012 WL 1340799 (W.D.N.Y. Apr. 18, 2012) ("A prisoner cannot demonstrate prejudice and thus non-harmless error based upon pure speculation.").

### c. Written Decision

It is undisputed that Plaintiff received a copy of the notice of decision including the evidence that was relied upon, as well as an explanation of the reasons for the punishment assigned. *Id.* at Ex. A, Hr'g Disposition Form, dated Sep. 13, 2010, at p. 2.

Accordingly, we recommend that Plaintiff's Motion be **DENIED** as to his due process claim against Defendant Haug arising out of the second disciplinary hearing, that Defendants' CrossMotion be **GRANTED** with respect to the same, and that this claim be **DISMISSED.**

### d. Defendent Venettozzi

Having established the absence of any underlying constitutional violation, Plaintiff cannot maintain a cause of action against Defendant Venettozzi based on supervisory liability for affirming Defendant Haug's disciplinary determination. *See Elek v. Inc. Vill. of Monroe,* 815 F.Supp.2d at 808.

Accordingly, we recommend that Plaintiff's Motion for Summary Judgment be **DENIED** with respect to his claim against Defendant Venetozzi for affirming Defendant Haug's disciplinary determination, that Defendants' Cross–Motion for Summary Judgment be **GRANTED** as to the same, and that this claim be **DISMISSED.**

### 4. Third Disciplinary Hearing

The following facts are undisputed.

On January 19, 2011, Plaintiff was charged with two counts of possessing unauthorized medication and smuggling. 3rd Hr'g Tr. at p. 1. On February 2–3, 2011, Defendant Uhler conducted a Tier III disciplinary hearing, from which Plaintiff was excluded. *See generally id.* Plaintiff was convicted of all three offenses and sentenced to thirty-six months in SHU as well as thirty-six months loss of packages, commissary, phone, and good time credits. *Id.* at p. 1. On February 3, 2011, Plaintiff appealed Defendant Uhler's disciplinary determination. Compl. at p. 6. On March 29, 2011, Defendant Venettozzi modified Plaintiff's punishment to eighteen months SHU and corresponding loss of privileges. Uhler Decl., Ex. B, Appeal Dec., dated Mar. 29, 2011. On June 21, 2011, Defendant D. Rock, Superintendent of Upstate Correctional facility, refused Plaintiff's request for discretionary review of his disciplinary determination. *Id.* at Ex. C, Lt., dated June 21, 2011.

**\*14** On June 30, 2011, Plaintiff filed an Article 78 petition challenging the disciplinary determination. On December 2, 2012, the Honorable S. Peter Feldstein, Acting Supreme Court Justice in Franklin County, New York, determined that "the hearing officer did not err in conducting the Tier III Superintendent's Hearing in the absence of petitioner."Pl.'s App. at Sec. III, Ex. A, at p. 4. However, Judge Feldstein found that Plaintiff "must prevail" as to his argument that "he did not receive a copy of the written hearing disposition

sheet, including the statement of evidence relied upon by the hearing officer, and the statement of reason(s) for the disposition imposed."*Id.* at pp. 5–6. Judge Feldstein further noted that prison officials should "process any additional administrative appeal from the results and disposition of the Tier III Superintendent's Hearing concluded February 3, 2011 that petitioner files within 30 days service" of his decision. *Id.* at p. 6.

Plaintiff contends that he is entitled to summary judgment against Defendant Uhler because he held the third disciplinary hearing in Plaintiff's absence and because he failed to provide Plaintiff with written notice of the disciplinary determination and the evidence on which it was based. Pl.'s Mem. of Law at pp. 25–27. Plaintiff further claims that Defendants Venettozzi, Prack, and Rock were personally involved in depriving him of his due process right because they affirmed Defendant Uhler's determination. Pl's Opp'n at ¶ 53. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff received all of the process that was due at the subsequent disciplinary hearing. Defs.' Mem. of Law at pp. 20–24.

### a. Notice

Plaintiff concedes that he "receive[d] advance notice of the charges, by service of the misbehavior report."Dkt. No. 39–2, Pl.'s Mem. of Law, at ¶ 34.

### b. Opportunity to be Heard

Originally, Plaintiff contended that Defendant Uhler violated his right to due process by unlawfully excluding him from attending the third disciplinary hearing. Pl.'s Mem. of Law at pp. 25–27. However, Plaintiff has since conceded that he is barred from re-litigating this issue in the instant matter by the doctrine of collateral estoppel. [12]

A review of Judge Feldstein's decision reveals that he indeed already considered the issue of whether "the Tier III Superintendent's Hearing was unlawfully conducted in his absence" in Plaintiff's Article 78 action. Pl.'s App. at Sec. III, Ex. A, at p. 3. Judge Feldstein noted that, "an inmate has a fundamental right to be present at a Superintendent's Hearing unless he or she refused to attend, or is excluded for reasons of institutional safety or correctional goals."*Id.* (internal quotations, alterations, and citations omitted). After

considering the evidence before him, including a transcript of the hearing conducted in Plaintiff's absence—containing on-the-record testimony from multiple prison officials stating, in sum and substance, that they made every effort to bring Plaintiff to his disciplinary hearing but Plaintiff refused to comply with prison handcuffing procedures—Judge Feldstein concluded that "the hearing officer did not err in conducting the Tier III Superintendent's Hearing in the absence of petitioner."*Id.* at pp. 3–6.

**\*15** Crucially, and in keeping with the standard applied by Judge Feldstein, it is well established federal precedent that an inmate's refusal to attend a disciplinary hearing waives his due process objections where it occurs through no fault of prison authorities. *Tafari v. McCarthy,* 714 F.Supp.2d 317, 380 (N.D.N.Y.2010) (citing *Howard v. Wilkerson,* 768 F.Supp. 1002, 1006 (S.D.N.Y.1991)). Accordingly, Judge Feldstein's conclusion that Plaintiff's own actions justified holding the hearing in his absence is entitled to preclusive effect in the instant action. [13] *See Williams v. Pepin,* 2011 WL 7637552, *6 (N.D.N.Y. Dec. 23, 2011)* (holding that plaintiff's due process claims which were rejected in an earlier Article 78 action were precluded from being re-litigated in a subsequent § 1983 action under the doctrine of collateral estoppel).

Accordingly, Plaintiff's due process rights were not violated when his third disciplinary hearing was held in his absence.

### c. Some Evidence

It is clear that Defendant Uhler's disciplinary determination was supported by sufficient reliable evidence. Specifically, Defendant Uhler read the following into the record:

> The first report is by Officer Gravlin.... On 1/19/11 at approximately 9:45 AM, I conducted a pat frisk of inmate Hinton ... on 11 A 1 Gallery.... Inmate Hinton had a total of 29 pills in his front right pocket. The block nurse identified the pills as neurontin, baclofen. Both are prescription medication given to the inmate on medication rounds.... The second Report [states] ... January 19th, 2011 10:20 A.M.... On the above date and time I CO Bogardus ... was helping give inmate Hinton his level

one property after being transferred from eleven building to ten building. As I was going through the letters I noticed envelopes with no addresses with objects in them sealed. I opened the envelopes and found pills. After opening all the envelopes I took the pills to the block Nurse Holmes identified them and counted them which is what came up with [sic] 319 neurontin 600 milligram, 205 baclofen 10 milligram, 100 amlodipine 5.

3rd Disciplinary Hr'g Tr. at p. 4.

Given the specificity of these reports as well as the fact that they were authored by officers with first hand knowledge of the events, no rational juror could conclude that Defendant Uhler lacked sufficient reliable evidence to support his determination. *See Thomas v. Connolly,* 2012 WL 3776698, at *23; *Creech v. Schoellkoph,* 688 F.Supp.2d 205, 214–15 (W.D.N.Y.2010) (finding disciplinary determination relying on misbehavior report was sufficient for purposes of "some evidence" standard where "the misbehavior report was made by the officer personally involved in the ... incident, and is based on his first hand observation, and contains a detailed account of that incident, including the time, place, circumstances, and names of participants").

### d. Written Decision

It is undisputed that Plaintiff did not receive a formal written statement of the third disciplinary determination "until at least six months after the hearing was actually held."Pl.'s Opp'n at Ex. A, Hinton Aff. [14]

**\*16** It is clear that Plaintiff's due process rights were violated by Defendants' failure to provide him with a copy of this statement. *See Lunney v. Brureton,* 2007 WL 1544629, at *28 (S.D.N.Y. May 29, 2007) (surveying cases for the proposition that "the right to receive a written statement of the disposition is a requirement that has been in place since the Supreme Court's decision in *Wolff v. McDonnell"* ) (internal quotation marks, alterations, and citations omitted). However, notwithstanding this violation, Plaintiff is not entitled to anything other than nominal damages in the instant case because he has failed to establish an actual injury. *See McCann v.. Coughlin,* 698 F.2d 112, 126 (2d

Cir.1983) (citing *Carey v. Piphus,* 435 U.S. 247, 266–67 (1978), for the proposition that "[i]t is well established that to collect compensatory damages in an action brought pursuant to 42 U.S.C. § 1983, a plaintiff must prove more than mere violation of his constitutional rights. He must also demonstrate that the constitutional deprivation caused him some actual injury"); *Thomas v. Annucci,* 2008 WL 3884371, at *5 (N.D.N.Y. Aug. 19, 2008) (citing, *inter alia, McCann v. Coughlin* for the same proposition).

Here, notwithstanding the fact that Plaintiff's constitutional rights were violated, he cannot establish actual injury. To begin with, Plaintiff cannot argue that the failure to provide him with a written notice of the determination caused him to be sentenced to a term of SHU imprisonment; indeed, that determination was made before the duty to provide Plaintiff with a copy of the notice even arose. *Cf. McCann v. Coughlin,* 698 F.2d at 126 (noting that "the failure to provide McCann with a written statement of the Committee's decision and underlying reasons could not have caused his injury. If he had received such a written statement, it would have been after the Committee rendered its decision."). Thus, in order to establish that the Defendants' failure to provide him with a copy of the notice caused him actual injury, Plaintiff would have to show that because he did not have access to the information contained in the notice, he was unable to mount a meritorious appeal, and therefore, was forced to remain in SHU longer than necessary. *Cf. Miner v. City of Glens Falls,* 999 F.2d 655, 660 (2d Cir.1993) (citing *McCann v. Coughlin,* 698 F.2d at 126, for the proposition that "[i]n this Circuit, the burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages.... It was therefore Miner's burden to show that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed.").

Yet, despite the fact that he ultimately received a copy of the notice prior to commencing the instant action, Plaintiff fails to allege that had he known the evidentiary basis for his conviction as contained in the notice earlier, he would have been able to successfully appeal the determination. Indeed, according to his Complaint, despite the fact that Judge Feldestein explicitly granted him the right to file additional appeals after he had obtained a copy of the notice, his subsequent attempts were unsuccessful. *See* Compl. at p. 6; *see also* Pl.'s App. at Sec. III, Ex. A, at pp. 5–6. [15] Thus, Plaintiff's claim fails because he cannot establish that the failure to provide him with a copy of the hearing disposition in a timely manner caused him to suffer any actual injury. [16]

**\*17** Moreover, Plaintiff is not entitled to punitive damages in the instant action. "Courts may award punitive damages in situations where a defendant's conduct is 'willful or malicious,' or where defendants have demonstrated 'reckless intent' or 'callous indifference.' " *Giano v. Kelly,* 2000 WL 876855, at *26 (W.D.N.Y. May 16, 2000)* (quoting *Memphis Comty. School Dist. v. Stachura,* 447 U.S. 299, 306 (1986)). Here, nothing in the record establishes that Defendant Uhler acted maliciously or willfully with regard to his failure to provide Plaintiff with a copy of the notice. Therefore, the court recommends **DENYING** plaintiff's request for punitive damages.

Having failed to establish any actual injury, Plaintiff is only entitled to receive nominal damages in the amount of one dollar. *McCann v. Coughlin,* 698 F.2d at 126. Accordingly, we recommend that Defendants' Cross–Motion for Summary Judgment be **GRANTED** as to Plaintiff's claim that he was unlawfully excluded from the third disciplinary hearing and **DENIED** as to Plaintiff's claim that he was not provided with a copy of the hearing disposition in a timely manner. We further recommend that Plaintiff's Motion for Summary Judgment be **GRANTED** with respect to his claim that Defendants failed to provide him with a written disposition of the third disciplinary hearing, and that, in full satisfaction of his constitutional deprivation, he be awarded the sum of one dollar in nominal damages.

### e. Defendants Venettozzi, Prack, and Rock

Plaintiff claims that "[s]ince Venettozzi, Prack[,] and Rock all had [a] hand in affirming the [third disciplinary] decision, they as well are liable."Pl.'s Mem. of Law at p. 27. Courts within the Second Circuit are split over whether the mere allegation that a supervisory official affirmed a disciplinary determination is sufficient to establish personal liability. We subscribe to the affirmance plus standard, which holds that the mere rubber-stamping of a disciplinary determination is insufficient to plausibly allege personal involvement. *See Brown v. Brun,* 2010 WL 5072125, at *2 (W.D.N.Y. Dec. 7, 2010)* (noting that courts within the Second Circuit are split with regards to whether the act of affirming a disciplinary hearing is sufficient to allege personal involvement of a supervisory official, and concluding that the distinction appears to hinge upon whether the official proactively participated in reviewing the administrative appeal or merely rubber-stamped the results). Here, Plaintiff fails to make a

single non-conclusory allegation from which a reasonable juror could conclude that Defendants Venettozzi, Prack, and Rock did anything other than rubberstamp Plaintiff's disciplinary determination.

Accordingly, we recommend that Plaintiff's Motion for Summary Judgment as to his claims against Defendants Venettozzi, Prack, and Rock, for affirming the third disciplinary disposition be **DENIED,** and that Defendants' Motion be **GRANTED** with respect to the same, and that this claim be **DISMISSED.**

## B. Qualified Immunity

**\*18** Defendants argue that they are entitled to qualified immunity. Defs.' Mem. of Law at pp. 23–24. However, given that we have recommended dismissing all of Plaintiff's claims except his claim against Defendant Uhler, we do not discuss whether any of the other Defendants are entitled to qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). However, some limited discussion is necessary with regard to Plaintiff's due process claim against Defendant Uhler for the failure to provide Plaintiff with a written copy of the disposition.

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988). Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton,* 483 U.S. 635, 639 (1987); *Lewis v. Cowan,* 165 F.3d 154, 166 (2d Cir.1999). Until recently, courts faced with qualified immunity defenses have applied the procedure mandated in *Saucier v. Katz,* 533 U.S. 194 (2001). That case set forth a two-pronged approach whereby the court must first decide whether the facts alleged, or shown, make out a violation of a constitutional right. If yes, the court must then decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz,* 533 U.S. 194 at 201–02. Recently, however, the Supreme Court softened the rigid approach enunciated in

*Saucier. See Pearson v. Callahan,* 555 U.S. 223 (2009). Now, the *Saucier* two-pronged test is not mandated in terms of the order in which the prongs may be addressed, though the sequence of review may remain appropriate or beneficial.*Id.* at 818.

To determine whether a right was clearly established for purposes of qualified immunity, courts must consider "whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the [Second Circuit] supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his [or her] actions were unlawful."*Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *see also Nicholas v. Miller,* 189 F.3d 191, 195 (2d Cir.1999).

A party is entitled to summary judgment on qualified immunity grounds if the court finds that the rights asserted by the plaintiff were not clearly established, or that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff [ ], could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right."*Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997) (citations omitted).

**\*19** As discussed *supra,* the right to receive a written copy of the hearing disposition, including the evidence relied upon and the reasons for the sentence, has been clearly established since *Wolff v. McDonnell.Lunney v. Brureton,* 2007 WL 1544629, at \*28. Moreover, no rational juror could conclude that it was objectively reasonable for Defendant Uhler not to provide Plaintiff with a copy of his third disciplinary hearing disposition. Accordingly, Defendant Uhler is not entitled to qualified immunity with respect to this claim.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Plaintiff's Motion for Summary Judgment (Dkt. No. 39) be **GRANTED** in part and **DENIED** in part as follows:

1. **GRANTED** to the extent that Plaintiff is entitled to summary judgment as to the issue of whether Defendant Uhler violated his right to due process by failing to provide him with a copy of the hearing disposition from his third disciplinary hearing, **HOWEVER,** in light of Plaintiff's inability to establish actual injury, we further recommend that he be awarded nominal damages in the amount of one dollar; and

2. **DENIED** in all other respects; and it is further

**RECOMMENDED,** that Defendants Cross–Motion for Summary Judgment (Dkt. No. 42) be **GRANTED** in part and **DENIED** in part as follows:

1. **DENIED** with respect to Plaintiff's due process claim against Defendant Uhler for his failure to provide Plaintiff with a copy of his hearing disposition from the third disciplinary hearing; and

2. **GRANTED,** with respect to all of Plaintiff's other claims, which should be **DISMISSED;** and it is further

**ORDERED,** that the Clerk of the Court **TERMINATE** Sgt. Gower from this action; [17] and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.****Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also*28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

Date: August 14, 2014.

**All Citations**

Slip Copy, 2014 WL 4627120

Footnotes

1    We agree. In the instant case, Plaintiff has alleged that he spent a total of 910 consecutive days in SHU as a result of the three disciplinary hearings at issue. Dkt. No. 39–2, Pl.'s Mem. of Law, dated Nov. 8, 2013, at p. 2. The Second Circuit has held that "[o]verlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." *Reynoso v. Selsky,* 292 F. App'x 120, 122 (2d Cir.2008) (citing *Sims v. Artuz,* 230 F.3d 14, 23–24 (2d Cir.2000)); *see also Koehl v. Bernstein,* 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011) (citing *Sealey v. Giltner,* 197 F.3d 578 (2d Cir.1999), for the proposition that "the Second Circuit suggested that consecutive sentences resulting from separate hearings adjudicating different misbehavior reports should be aggregated for the purpose of determining whether the confinement constitutes atypicality.").

2    A transcript of the September 7–13 disciplinary hearing was not provided to the Court as part of his disciplinary record.

3    In addition to time in SHU, Plaintiff also lost several months of good time credits as a result of his disciplinary hearings. *See* 1st Hr'g Tr. at p. 1; Haug Decl., Ex. A, Disciplinary Hr'g Report; 3rd Hr'g Tr. at p. 1. Ordinarily, a prisoner cannot seek monetary damages for a due process violation arising out of a prison disciplinary hearing where the loss of good time credits affects the overall length of the plaintiff's sentence without first seeking a reversal or expungement of the disciplinary conviction. *See Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994)) (holding "that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983."). However, in the instant case, Plaintiff is serving a life sentence, and accordingly, the loss of good time credits neither affects the overall length of his sentence nor prevents him from filing the instant action. *See* New York State Inmate Lookup for Inmate DIN # 96–A–0837, Leonard Hinton, http://nysdoccslookup.doccsny.gov (last checked July 31, 2014); *see also Holmes v. Grant,* 2006 WL 851753, at *18 (S.D .N.Y. Mar. 31, 2006) (surveying cases in support of the proposition that *"Heck [v. Humphrey]* does not apply [w]here, ... plaintiff is serving a life sentence, [because] the loss of good time credits ... has no effect on the length of his sentence"); N.Y. CORR. LAWW § 803(1)(a) (noting that inmates serving a maximum life sentence are not eligible for reduced sentence based on good behavior).

4    Sgt. Gower was dismissed from this action by the Honorable Lawrence E. Kahn, Senior United States District Judge, during the Court's initial review on March 7, 2013. *See* Dkt. No. 4, Dec. & Order, dated Mar. 7, 2013, at p. 5. Nonetheless, Sgt. Gower was served with process and joined in Defendants' Answer. *See* Dkt. Nos. 7 & 23. In light of his earlier dismissal and notwithstanding the subsequent errors which occurred, the Clerk of the Court is ordered to terminate Sgt. Gower from this action.

5    Document Number 42–1 is listed as Plaintiff's Affidavit. However, this document contains both sworn statements and legal arguments, in non-sequentially numbered paragraphs. Accordingly, we make reference to the page numbers assigned by Plaintiff.

6    In his Article 78 proceeding, Plaintiff challenged the sufficiency of the notice on the grounds that it omitted the specific dates of the events in question. *See generally* Pl.'s App., Sec. I, Ex. H. While it does not appear that Plaintiff intended to re-raise that issue here, to the extent that he may have intended to do so, such an argument would be unavailing. Although the date of the misbehavior report was actually the date Sgt. Gower conducted his investigation rather than the date that the actual events giving rise to the report occurred, this omission was by no means fatal given the specific nature of the charges against Plaintiff. Indeed, it is clear that Plaintiff was able to understand the nature of the charges against him and to prepare a defense. *See id.*(finding that "the report provided adequate detail to apprise [Plaintiff] of the charges and afford him the opportunity to prepare his defense") (internal quotations and citation omitted); *see also Sira v. Morton,* 380 F.3d at 71 (citing *Quinones v. Ricks,* 288 A.D.2d 568, 568–69 (N.Y.App. Div.2d Dep't 2001), for the proposition that "failure to include specific date in misbehavior report may be excused if the report otherwise provides sufficient details to permit the inmate to fashion a defense"); *Cepeda v. Urban,* 2014 WL 2587746, at *6 (W .D.N.Y. June 10, 2014) (reaching similar conclusion).

7    Indeed, the New York State Appellate Division, Fourth Department, held that the evidence adduced at Plaintiff's disciplinary hearing was sufficiently adequate to meet the "substantial evidence" standard; a burden which is much higher than the "some evidence" standard applicable to the instant action. *See* Pl.'s App., Sec. I, Exs. H, Dec. & Order, dated Oct. 26, 2011; & I, Order, dated Nov. 9, 2012; *Smith v. Fischer,* 2010 WL 145292, at *9 (N.D.N.Y. Jan. 11, 2010) (citing *Sira v. Morton,* 380 F.3d at 76 n. 9, for the proposition that the substantial evidence " "requirement is sterner than the 'some evidence' standard necessary to afford due process" ").

8    It is also worth noting that it is not entirely clear that Inmate Veach's refusal to testify was actually a recantation of his earlier statements to Sgt. Gower. Inmate Veach stated in his refusal form that he knew nothing about any incident which occurred on July 25, 2010. Pl.'s App., Sec. I, Ex. C, Inmate Refusal Form, dated Oct. 8, 2010. However, July 25, 2010 was the day that Sgt. Gower was informed about the alleged violations, not the dates that the alleged violations occurred. *See supra* Note 6. Thus, this statement is not necessarily at odds with Veach's earlier statements to Sgt. Gower.

9    Neither Sergeant Betti nor Corrections Officer Ruggerio are Defendants in this action.

10   These individuals are not Defendants in the instant action.

11   It is clear from Plaintiff's Opposition to Defendant's Cross–Motion for Summary Judgment that Plaintiff was aware of Defendants' claim that he failed to identify how he was prejudiced by Defendant Haug's failure to call these witnesses. *See* Pl.'s Opp'n at pp. 6–7. However, rather than explain how he was prejudiced, Plaintiff argued that the Article 78 determination constituted "law of the case" and that Defendants' reliance on the harmless error standard was misplaced. *Id.*

12   On July 18, 2014, we stayed the parties pending Cross–Motions for Summary Judgment and ordered them to brief the Court as to whether Judge Feldstein's prior conclusion in Plaintiff's Article 78 action, that Plaintiff was properly excluded from his disciplinary hearing based on his failure to conform to facility security protocols, precluded him from arguing in the instant case that he was unlawfully excluded from attending the third disciplinary hearing. Dkt. No. 54, Order, dated July 18, 2014. In his Reply to the Defendants' Letter–Brief, Plaintiff conceded that Judge Feldstein's determination in this regard does preclude him from re-raising this issue in the instant matter. *See* Dkt. Nos. 55, Defs.' Lt.-Br., dated July 21, 2014, & 56, Pl.'s Reply Lt.-Br., dated July 25, 2014.

13   Moreover, even if the issue were not precluded, it is unlikely that Plaintiff's claim would have succeeded because Plaintiff fails to allege any resulting prejudice from this alleged error. *See Lunney v. Brureton,* 2007 WL 1544629, at *28 (S.D.N.Y. May 29, 2007) (citing *Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991) for the proposition that "[p]rison disciplinary hearings are subject to a harmless error analysis."). Indeed, Plaintiff fails to allege that had he been offered the opportunity, he would have presented evidence or called witnesses on his own behalf, let alone that such evidence would have been likely to affect the outcome of his disciplinary determination.

14   Defendants fail to adequately contest Plaintiff's contention that he was not served a written copy of the determination; indeed, with the exception of their unsupported statement that they "[d]eny information and belief about when plaintiff received a copy of the hearing determination," they fail to address the issue whatsoever. *See* Dkt. No. 42–1, Defs.' Reply to Pl.'s 7.1 Statement, at ¶ 35; *see also Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991) (finding that mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment).

15   Plaintiff also claims that he initially appealed his disciplinary determination on February 3, 2011, the day that it was imposed. Compl. at p. 6. However, he provides conflicting and wholly inadequate explanations for the type and content of the notice he received. *See id.* at p. 8 n. 3; *see also* Pl.'s Opp'n at Ex. A, Hinton Aff. And, although it is unclear what the bases of Plaintiff's February 3 appeal were, it is axiomatic that Plaintiff would have known at that time that he was excluded from the hearing and had not received proper notice, and accordingly, the lack of notice did not prevent him from raising either of these grounds at that time. Moreover, as a result of this appeal, Plaintiff's disciplinary determination was modified, and his sentence was reduced from thirty-six months SHU to eighteen months. Pl.'s Mem. of Law at p. 26; Uhler Decl. at Ex. B, Review of Sup't Hr'g, dated Mar. 29, 2011.

16   To be sure, we are not positing that the relief Plaintiff received from his Article 78 action somehow extinguished any due process violation that he may have suffered between the time that violation accrued, and the time the Article 78 Petition was granted in his favor. Rather, we are merely noting the fact that Plaintiff was unable to file a successful administrative grievance appeal at the prison once he was provided with a copy of the formal notice as evidence that nothing within the notice provided Plaintiff with a meritorious ground for appeal. Therefore, the fact that he did not receive the formal notice sooner did not prejudice him. *Compare Bogle v. Murphy,* 2003 WL 22384792, at *5 (W.D.N.Y. Sept. 9, 2003) (noting that once a due process violation accrues, a subsequent Article 78 determination in the plaintiff's favor does not rectify the harm caused); *with Lunney v. Brureton,* 2007 WL 1544629, at *27–29 (dismissing due process claim based on undisputed failure to provide timely written disposition to plaintiff, in part on the basis that after receiving a transcript of the hearing, which included a statement of the evidence relied upon, Plaintiff failed to add any new substantive arguments).

17   *See supra* Note 4.

---

2009 WL 890658
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Tyrone HOUSTON, Plaintiff,

v.

Glenn S. GOORD, et al., Defendants.

No. 9:03-CV-1412 (GTS/DEP).
|
March 31, 2009.

**Attorneys and Law Firms**

Tyrone Houston, Brooklyn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Stephen M. Kerwin, Esq., Assistant Attorney
General, of Counsel, for Defendants.

*DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court in this *pro se* prisoner civil
rights action are Defendants' motion for summary judgment
(Dkt. No. 80), and United States Magistrate Judge David
E. Peebles's Report-Recommendation recommending that
Defendants' motion be granted and Plaintiff's Complaint
be dismissed in its entirety (Dkt. No. 85). Plaintiff has
timely filed Objections to the Report-Recommendation.
(Dkt. No. 86.)For the reasons set forth below, the Report-
Recommendation is accepted and adopted in its entirety,
Defendants' motion is granted and Plaintiff's Complaint is
dismissed.

**I. RELEVANT BACKGROUND**

On November 21, 2003, Plaintiff filed this action against
twenty-two (22) individuals currently and/or formerly
employed by the New York State Department of Correctional
Services, at various correctional facilities. Generally, in his
Complaint, Plaintiff alleges that his rights under the First
and Eighth Amendments were violated when (1) certain
Defendants had him transferred in retaliation for grievances
that he had filed, (2) certain Defendants issued false
misbehavior reports against him in retaliation for grievances
that he had filed, and (3) certain Defendants deprived him of

the opportunity to engage in outdoor exercise on two separate
occasions. (*See generally*Dkt. No. 1.) [1]

On September 29, 2006, District Judge Lawrence E. Kahn
issued a Memorandum Decision and Order dismissing
(1) Plaintiff's claims for equitable relief due to Plaintiff's
release from incarceration, which mooted this claim, and
(2) Plaintiff's claims against the CORC and all of the
individual defendants in their official capacities on Eleventh
Amendment grounds. (Dkt. No. 69.)

On January 4, 2008, Defendants filed a motion for summary
judgment seeking dismissal of all of Plaintiff's claims
against them. (Dkt. No. 80.)Generally, Defendants' motion
is premised on the following three grounds: (1) certain
Plaintiff's claims are procedurally barred based upon his
failure to exhaust available administrative remedies with
regard to those claims (2) no reasonable factfinder could
conclude that the issuance of misbehavior reports or the
transfer to different facilities were *caused* by Plaintiff's
filing of grievances; and (3) no reasonable factfinder
could conclude that Plaintiff was subjected to cruel and
unusual punishment based on being denied certain exercise
opportunities. (*Id.*) On February 1, 2008, Plaintiff filed a
response in opposition to Defendants' motion. (Dkt. No. 82.).

On March 11, 2009, Magistrate Judge Peebles issued a
Report-Recommendation recommending that Defendants'
motion be granted, because (1) certain of Plaintiff's claims
were not properly exhausted, and (2) no reasonable factfinder
could rule in Plaintiff's favor on any of his claims.
(Dkt. No. 85.)Familiarity with the grounds of the Report-
Recommendation is assumed in this Decision and Order. On
March 20, 2009, Plaintiff filed his Objections to the Report-
Recommendation. (Dkt. No. 86.)

**II. APPLICABLE LEGAL STANDARDS**

**A. Standard of Review on Objection from Report-
Recommendation**

 **\*2** When specific objections are made to a magistrate
judge's report-recommendation, the Court makes a "de
novo determination of those portions of the report or
specified proposed findings or recommendations to which
objection is made."*See*28 U.S.C. § 636(b)(1)(C). [2] When
only general objections are made to a magistrate judge's
report-recommendation, the Court reviews the report-
recommendation for clear error or manifest injustice. *See*

*Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y.Sept.22, 1997) (Pooler, J.) [collecting cases], aff'd without opinion, 175 F.3d 1007 (2d Cir.1999). [3] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N .Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

**B. Standard Governing Motion for Summary Judgment**

Under Fed.R.Civ.P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed.R.Civ.P. 56(e)(2).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson,* 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) [citation omitted]; *see also* Fed.R.Civ.P. 56(e)(2). As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts" [citations omitted]. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986).

**\*3** As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the

governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* [citation omitted].

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute-even if that nonmoving party is proceeding *pro se.* [4] (This is because the Court extends special solicitude to the *pro se* litigant, in part by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.) [5] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules. [6] For this reason, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to have been admitted where the nonmoving party has failed to properly respond to that statement [7] -even where the nonmoving party was proceeding *pro se* in a civil rights case. [8]

**III. ANALYSIS**

After carefully reviewing all of the papers in this action, including Magistrate Judge Peebles's Report-Recommendation and Plaintiff's Objections thereto, the Court rejects each of Plaintiff's Objections, and agrees with each of the conclusions stated in the Report-Recommendation. (*See* Dkt. Nos 85, 86.) Magistrate Judge Peebles employed the proper legal standards, accurately recited the facts, and reasonably applied the law to those facts. (*See* Dkt. No. 86.)

In particular, Magistrate Judge Peebles correctly determined that Plaintiff failed to exhaust some of his claims, as required by the Prison Litigation Reform Act, in that he failed to file grievances, and/or pursue these claims to completion, before bringing the claims to federal court. [9] Magistrate Judge Peebles also correctly determined that the only evidence that the misbehavior reports filed against Plaintiff were retaliatory is the fact that they were filed in close proximity to Plaintiff's grievances. However, this inference alone is not enough for Plaintiff to defeat summary judgment, in light of the fact that (1) he was found guilty of at least some of the charges lodged in seven of the nine misbehavior reports with which he takes issue, (2) these reports were issued by nine different corrections officers in four different prisons, and (3) all but one of the officers submitted an affidavit expressly denying

retaliatory motivation. [10] In addition, regarding Plaintiff's claim that his numerous transfers to various prison facilities was done in retaliation for filing grievances, as Magistrate Judge Peebles explained, (1) Plaintiff has offered no evidence that he was transferred in retaliation for filing grievances, and (2) Plaintiff has a history of claiming retaliation for numerous adverse actions taken against him. As a result, these retaliation claims are dismissed.

**\*4** Furthermore, as explained in Magistrate Judge Peebles' Report-Recommendation, Plaintiff's Eighth Amendment claims are without merit because (1) the harm that he allegedly suffered as a result of being denied the opportunity to exercise outdoors for less than two weeks is *de minimis,* and (2) being forced to exercise in an area that is eight-feet-five inches by six-feet-nine inches in size, while confined in a SHU facility, is not a constitutional violation. *See, e.g., Cody v. Jones,* 895 F.Supp. 431, 441 (N.D . N.Y.1995) (McCurn, J.) (applying *Sandin* and concluding that no liberty interest was triggered through the failure of the prison to regularly accord plaintiff one hour of daily outdoor exercise for a period of several months); *Anderson v. Coughlin,* 757 F.2d 33, 34-35 (2d Cir.1985)* ("[T]hough courts have played a helpful role in assisting prisoners and prison officials to negotiate mutually acceptable terms for the provision of exercise opportunities, as has occurred in this case, they have not found in the Eighth Amendment a broad license to require prison officials to meet all of the recreational standards that have been recommended by penologists.") . [11]

In his Objections to the Report-Recommendation, Plaintiff argues, *inter alia,* that his failures to fully exhaust his available administrative remedies with regard to certain of his claims was due to his being transferred to different facilities shortly after filing grievances, and that his efforts to inform Defendant Goord and Wardens of this issue "are sufficient to invoke the limited exceptions to the grievance requirement."(Dkt. No. 86.)In addition, Plaintiff appears to argue that the Report-Recommendation should not be adopted because of its failure to appreciate that the "personal involvement on [the] part of all Defendants [regarding his retaliation claims]" constitutes sufficient evidence of a conflict, thereby warranting denial of summary judgment. (Dkt. No. 86.) [12]

With regard to Plaintiff's exhaustion claim, as an initial matter, the Court is not persuaded by Plaintiff's argument that his letters to Defendants Goord and Wardens created an

exception to the exhaustion requirement. [13] This is because (1) administrative remedies were available to Plaintiff, who is extremely experienced in the inmate litigation process, [14] (2) Defendants have not waived the exhaustion defense, and (3) special circumstances do not exist which would excuse Plaintiff from complying with the procedural requirements. [15] However, even if the Court were persuaded that Plaintiff's letters created an exception to the exhaustion requirement, such a finding would not help Plaintiff withstand summary judgment on the claims at issue. This is because, while Magistrate Judge Peebles found that some of Plaintiff's retaliatory transfer claims were unexhausted, Magistrate Judge Peebles also found that all of Plaintiff's retaliatory transfer claims were unsupported by sufficient record evidence from which a reasonable factfinder could conclude that the transfers were caused by Plaintiff's filing of grievances (as opposed to being caused by legitimate, penological considerations).

**\*5** Finally, with regard to Plaintiff's claim that a "conflict" existed (or exists) in this case, the Court rejects that argument. Plaintiff has not offered any evidence of such a conflict. The fact that District Judge Gary L. Sharpe issued a ruling in *Houston v. Leclaire,* 01-CV-0067, Decision and Order (N.D.N.Y. filed July 22, 2004) (Sharpe, J.) (denying, in part, defendants' motion for summary judgment requesting dismissal of Plaintiff's retaliation claim arising from the filing of false misbehavior reports against him, and the destruction of his legal materials, in 1999) in no way collaterally estops or otherwise precludes the Court from dismissing Plaintiff's claims in this current action due to a lack of supporting record evidence. [16] As a result, and for the reasons stated by Magistrate Judge Peebles in his Report-Recommendation, Plaintiff's retaliation claims with regard to the misbehavior reports are dismissed.

For all of these reasons, the Court grants Defendants' motion for summary judgment.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Peebles's Report-Recommendation (Dkt. No. 85) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 80) is ***GRANTED;*** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety.

---

### REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Tyrone Houston, a former New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983, *inter alia*, alleging violation of his civil rights. In his complaint, plaintiff maintains that as a result of having been engaged in activity protected under the First Amendment to the United States Constitution, including filing grievances and commencement and pursuit of prior lawsuits, he was subjected by prison officials to a series of inter-prison transfers, the filing of false misbehavior reports, the imposition of unwarranted disciplinary confinement, and unfavorable program assignments. Plaintiff also complains of the deprivation of outdoor exercise, contending that the denial represented cruel and unusual punishment, in violation of his rights under the Eighth Amendment. Plaintiff's complaint seeks both equitable relief and the recovery of compensatory and punitive damages.

Currently pending before the court is a motion filed on behalf of the defendants seeking the entry of summary judgment dismissing each of plaintiff's claims. In support of their motion, defendants assert that certain of plaintiff's causes of action are procedurally barred, based upon his failure to exhaust available administrative remedies before filing suit, and that all of his claims are subject to dismissal on the merits, arguing that no reasonable factfinder could conclude that he was subjected to unlawful retaliation or cruel and unusual punishment. For the reasons set forth below, I recommend that defendants' motion be granted.

### I. *BACKGROUND* [1]

 **\*6** At the times relevant to his claims plaintiff Tyrone Houston, apparently also known as Tyrone Black, was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"). Plaintiff's claims, which are expansive in terms of both their substantive breadth and the time period involved, arise from incidents occurring while he was confined in various facilities operated by the DOCS including, the Mid-State Correctional Facility, the Mohawk Correctional Facility, the

Marcy Correctional Facility, the Great Meadow Correctional Facility, the Downstate Correctional Facility, the Auburn Correctional Facility, the Five Points Correctional Facility, the Cayuga Correctional Facility, the Elmira Correctional Facility, and the Ogdensburg Correctional Facility.

During the period of his incarceration, plaintiff filed a series of grievances and commenced suits against various prison workers. Plaintiff claims that as a direct result of that activity he experienced recrimination, in the form of issuance of several false misbehavior reports, leading to procedurally flawed disciplinary hearings and ensuing unlawful disciplinary confinement in various facility special housing units ("SHUs"). Plaintiff also attributes the various inter-prison transfers which he experienced, including in October of 2000 to the Mohawk Correctional Facility in lieu of a facility closer to his place of residence, to retaliatory animus, in further response to his grievances and lawsuits. Plaintiff additionally asserts that while in disciplinary confinement, he was subject to a DOCS policy under which SHU inmates are ineligible for participation in outdoor exercise. As a result, plaintiff was unable to participate in such outdoor activities for an aggregate period of 222 days, extending intermittently from September of 2001 until mid-2003. [2]

### II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on November 21, 2003. Dkt. No. 1. As defendants, plaintiff's complaint names twenty-two present or past employees of the DOCS including the agency's commissioner, Glenn S. Goord, as well as the Central Office Review Committee (the "CORC"), which was sued as an entity, and asserts claims against the defendants in both their individual and official capacities. [3] *Id.* Issue was joined by the filing of answers on behalf of the majority of the defendants on September 30, 2005, and by defendant Dana C. Smith on November 28, 2005, generally denying the material allegations of plaintiff's complaint and interposing various affirmative defenses. Dkt. Nos. 58, 60.

On January 4, 2008, following the completion of pretrial discovery, defendants moved for summary judgment dismissing plaintiff's complaint in its entirety. Dkt. No. 80. In their motion, defendants argue that portions of plaintiff's claims are procedurally barred, based upon his failure to exhaust available administrative remedies before commencing suit. Addressing the merits, defendants assert that plaintiff's claims lack factual support and that the record

fails to contain evidence from which a reasonable factfinder could conclude that the adverse actions attributed by the plaintiff to retaliatory animus were in fact motivated by his protected activity. Defendants also contend that as a matter of law plaintiff's complaints regarding the denial of exercise do not implicate constitutional considerations. Plaintiff has since responded in opposition to defendants' motion in papers filed with the court on February 1, 2008. Dkt. No. 83.

**\*7** Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation to the assigned district judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). [4] *See also* Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *Summary Judgment Standard*
Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law ...." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special

latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process). When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is appropriately granted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507-08 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

#### B. *Failure to Exhaust Remedies*
**\*8** In their motion defendants assert that, as a threshold matter, certain of plaintiff's claims are procedurally barred based upon his failure to exhaust available administrative remedies with regard to those claims.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at \*5-6 (E.D.N.Y. Jan. 31, 2007). This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 914-15 (2007) (citations

omitted); *see Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386;*see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004)."[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter,* 534 U.S. at 532, 122 S.Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit.[5] *Jones,* 127 S.Ct. at 918. In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94-95, 126 S.Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).

"Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."*Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388;*see also Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ). While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 495 F .3d at 43 (quoting *Johnson,* 380 F.3d at 697-98) (emphasis omitted).

**\*9** New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by DOCS, and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112-13 (2d Cir.1999)). The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[6] 7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.*§§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.*§ 701.5(c).

The third level of the process affords the inmate the right to appeal the superintendent's ruling to CORC, which makes the final administrative decision. *Id* .§ 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citing, *inter alia, Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Without question the plaintiff, who by all accounts has frequently availed himself of New York's IGP while in DOCS custody, has filed grievances raising many of the issues forming the basis for his complaint in this action. The record now before the court, however, contains no indication that this is true with regard to all of Houston's claims. The only grievance which plaintiff claims to have lodged addressing the question of his many, allegedly retaliatory inter-prison transfers, for example, was filed on March 17, 2003. *See* Complaint (Dkt. No. 1) ¶ 46 and pp. 109-111.[7] Accordingly, it does not appear that plaintiff has exhausted available administrative remedies with respect to inter-prison transfers effectuated after the filing of that grievance, including his transfers 1) on June 13, 2003, into the Riverview Correctional Facility; 2) on June 16, 2003, into the Gouverneur Correctional Facility; and 3) on August 15, 2003, into the Elmira Correctional Facility. Similarly, there is no indication in the record now before the court that plaintiff's alleged denial of outdoor exercise covering the period from September 15, 2001 through November 21, 2001, forming the basis for a portion of plaintiff's cruel and unusual punishment claim, *see* Complaint (Dkt. No. 1) ¶ 47, was grieved. While plaintiff did apparently file a grievance on July 29, 2003 regarding his confinement in the Gouverneur SHU beginning on June 17, 2003, *see* Complaint (Dkt. No. 1) at p. 120, there is no evidence of pursuit of that grievance through to completion.

**\*10** In light of these failures and the fact that plaintiff has not offered any evidence which would indicate that the grievance procedure was not available to him or otherwise form a proper basis for excusing the grievance requirement, I recommend that the portions of plaintiff's claims for which there was no grievance filed and pursued to completion be dismissed on this procedural basis.[8]

### C. *Retaliation*

Plaintiff's complaint centers principally upon his claim of retaliation, which is comprised of two discrete components. First, plaintiff maintains that the issuance of various misbehavior reports, alleged by him to have contained false accusations, and resulting findings of guilt following disciplinary hearings, were prompted by his having engaged in protected activity, including the filing of grievances and lawsuits. Additionally, plaintiff asserts that for the same retaliatory reasons he was excessively transferred among various prison facilities, including into some at remote locations from his place of residence. In their motion, defendants contend that the record fails to disclose the basis upon which a reasonable factfinder could conclude that the adverse actions upon which plaintiff's retaliation claims hinge were in fact prompted by retaliatory animus.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies. *See Franco v. Kelly,* 854 F.2d 584, 588-90 (2d Cir.1988). As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care." *Dawes v. Walker,* 239 F .3d 489, 491 (2d Cir.2001) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (same).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that: 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007); *Dawes,* 239 F.3d at 492 (2d Cir.2001). If the plaintiff successfully shoulders this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct."*Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, state

action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

**\*11** Analysis of retaliation claims thus requires thoughtful consideration of the evidence presented concerning the protected activity in which the inmate plaintiff has engaged and the adverse action taken against him or her, as well as evidence tending to link the two. When such claims, which ordinarily are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, the entry of summary judgment dismissing plaintiff's retaliation claims is warranted. *Flaherty,* 713 F.2d at 13.

It should also be noted that personal involvement of a named defendant in any alleged constitutional deprivation is a prerequisite to an award of damages against that individual under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,*434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). As is true of other types of claims, this principle applies to causes of action claiming unlawful retaliation. *See Abascal v. Hilton,* No. 04-CV-1401, 2008 WL 268366, at \*10 (N.D.N.Y. Jan. 30, 2008) (Kahn, D.J. and Lowe, M.J.).

**1.** *False Misbehavior Report Claim*

In cases involving allegations of retaliation based on the filing of allegedly false misbehavior reports, "[t]he difficulty lies in establishing a retaliatory motive."*Barclay v. New York,* 477 F.Supp.2d 546, 558 (N.D.N.Y.2007). Mere conclusory allegations of such retaliatory motivation will not suffice to survive a summary judgment motion; to establish retaliatory animus, which ordinarily must be shown circumstantially since direct evidence of such motivation is typically lacking, a plaintiff may cite such factors as "temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives."*Id.* (citations omitted); *see also Rivera v. Goord,* 119 F.Supp.2d 327, 339 (S.D.N.Y.2000).

Plaintiff's complaint alleges the issuance of nine allegedly false misbehavior reports, each authored by a different corrections officer, between April 8, 2001 and June 9, 2003. Complaint (Dkt. No. 1) ¶¶ 13-29. In each instance plaintiff attributes the issuance to retaliatory motives, citing different protected activity, as follows:

| Date of Issuance | Author | Alleged Protected Activity Precipitating Issuance | Disposition |
| --- | --- | --- | --- |
| 4/8/01 | Van Slyke | Submission of grievance dated 4/12/01 against Van Slyke's girlfriend, identified only as "SHU Counselor".[9] | Dismissed (no hearing held) |

**\*12** *Id.*

The only evidence offered by the plaintiff which could potentially support the finding of a nexus between an instance of protected activity alleged in his complaint and a corresponding misbehavior report is the inference to be drawn from the relevant chronology. It is true such an inference, flowing from a closeness in proximity between protected activity and the issuance of a misbehavior report can in certain instances suffice to avoid summary judgment dismissal of a retaliation claim. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) citing *Flaherty v. Coughlin,* 713. F.2d 10, 14 (2d Cir.1983). As defendants note, however, in many circumstances this alone is insufficient to avoid summary judgment. *Williams v. Goord,* 111 F.Supp.2d 280, 290 (S.D.N.Y.2000); citing *Ayers v. Stewart,* 1996 WL 346049, at *1 (2d Cir.1999); *see also Ethier v. City of Cohoes,* No. 1:02 Civ. 1584, 2006 WL 1007780, *7 (N.D.N.Y. April 18, 2006).

In this instance there are misbehavior reports issued which, taken in isolation, could give rise to a determination by a reasonable factfinder that the misbehavior report was issued in retaliation for protected activity. Taken together and considered in the light of all relevant facts, however, the record in this instance simply does not support the inference of such a connection. Prior to April of 2001, plaintiff had amassed a disciplinary record which included twelve separate findings of guilt in connection with alleged violations between October, 1993 and July, 27, 1999. *See* Kerwin Decl. (Dkt. No. 80-8) Exh. B. The allegedly retaliatory misbehavior reports now in dispute were issued over a two-year period by nine different corrections workers, while plaintiff was incarcerated at four different prison facilities. With the exception of defendant Hammill, each of the

individuals authoring the subject misbehavior reports has submitted an affidavit expressly denying having done so prompted by retaliatory motivation.[12] In seven of the nine instances, plaintiff was found guilty of at least some of the charges lodged, with an acquittal in one additional instance and one other misbehavior report having been dismissed for failure to conduct a timely disciplinary hearing. Given the totality of these circumstances, no reasonable factfinder could conclude that the issuance of the various misbehavior reports and resulting findings of guilty was prompted by retaliatory animus. I therefore recommend dismissal of this portion of plaintiff's retaliation claim.

#### 2. *Prison Transfer Claim*

The second aspect of plaintiff's retaliation claim concerns his frequent transfer among prisons.[13] The record supports plaintiff's claim regarding the frequency of his prison transfers. Plaintiff was transferred among various New York prisons thirteen times between May 7, 2001 and August 15, 2003, as set forth below:

**\*13** Complaint (Dkt. No. 1) ¶¶ 7-10, 32-46; Knapp-David Aff. (Dkt. No. 80-22) Exh. B. Citing some specific instances of protected activity, plaintiff alleges that all of these transfers were prompted by retaliatory motives on the part of prison officials. *See* Complaint (Dkt. No. 1), *id.*

Without question, prison officials retain significant flexibility and wide discretion in managing the corrections system and placing inmates appropriately. *See* N.Y. Correction Law §§ 23, 72 and 112(1); *see also Prins v. Coughlin,* 76 F.3d 504, 507 (2d Cir.1996) *citing Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538 (1976) (prisoner generally has no due process right to challenge a transfer from

one facility to another). As the Supreme Court has noted, New York's statute governing prison transfers "imposes no conditions on the discretionary power to transfer, and we are advised by the State that no such requirements have been promulgated."*Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543 (1976).

While the discretion of prison officials to place and transfer prisoners is broad, it is not unfettered; when such a transfer is made out of purely retaliatory motivation, in response to constitutionally protected activity, a claim of unlawful retaliation under the First Amendment is established.*Meriwhether v. Coughlin,* 879 F.2d 1037, 1046 (2d Cir.1989); *Hohman v. Hogan,* 597 F.2d 490, 492-93 (2d Cir.1979).

In this instance plaintiff's allegations of retaliatory transfers appear to center upon defendants Knapp-David, LeClaire and Goord. *See* Complaint (Dkt. No. 1) ¶¶ 32, 35-42, 45 and pp. 18-19, 79-81, 88-89, 91-92, 94-95. Plaintiff apparently theorizes that these high ranking DOCS officials undertook a campaign of retaliatory transfers in order to punish him for his filing of grievances and lawsuits against various corrections workers assigned to the prison to which plaintiff was assigned.

In an affidavit given in support of defendants' motion, defendant Knapp-David, formerly the Director of Classification and Movement for the DOCS, explains the hub system implemented by the agency to designate the 63,500 inmates in the system and the process utilized to effectuate inmate transfers. Knapp-David Decl. (Dkt. No. 80-22) ¶¶ 2-7. That affidavit reflects that "transfers of inmates between hubs or transfer of maximum security inmates were approved and made by classification analysts on [Knapp-David's] staff when [she] was the Director of Classification and Movement .... As a routine matter [she] was not personally involved in inmate transfer decisions." [14] *Id.* ¶ 3. In that declaration defendant Knapp-David denies both having any retaliatory motivation, and participating in the decisions to make the disputed transfers.*Id* . Since personal involvement is a constitutional violation is a pre-requisite to establishing liability, defendant Knapp-David is entitled to dismissal on this basis. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977).

**\*14** Aside from his sheer conjecture, plaintiff has offered no evidence from which a reasonable factfinder could determine that any of the cited prison transfers were

ordered out of retaliation for plaintiff's filing of grievances and commencement of lawsuits, rather than resulting from legitimate, penological considerations. Given this and plaintiff's well documented history of claiming retaliation in connection with many adverse actions taken against him overtime by prison officials, I conclude that the entry of summary judgment dismissing this portion of plaintiff's retaliation claim is also warranted. [15]

**D.** *Cruel and Unusual Punishment*
The last element of plaintiff's complaint is focused upon the alleged denial of the opportunity to engage in outdoor exercise while confined to S-Blocks and at Ogdensburg. Complaint (Dkt. No. 1) ¶¶ 47-48. Defendants maintain that they are entitled to the entry of summary judgment dismissing this claim as well.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."*Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".*See Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Wilson v. Seiter,* 501 U.S. 294, 297-98, 111 S.Ct. 2321, 2323-2324 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M .J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Farmer,* 511 U.S. at

837, 114 S.Ct. at 1978; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer* ); *Waldo,* 1998 WL 713809, at *2 (same).

Without question, prison inmates must be afforded a reasonable opportunity for exercise. *Anderson v. Coughlin,* 757 F.2d 33, 35 (2d Cir.1985); *see also Williams v. Greifinger,* 97 F.3d 699, 704 (2d Cir.1996) and *Sostre v. McGinnis,* 442 F.2d 178, 193 & n .25 (2d Cir.1971) (en banc), *rev'd on other grounds, cert. denied* *Sostre v. Oswald,* 404 U.S. 1049, 92 S.Ct. 11190 (1972). Not every deprivation of this opportunity, however, rises to a level of constitutional significance; instead, to sustain an Eighth Amendment claim a plaintiff must show that he or she was denied of all meaningful exercise for a substantial period of time. *See Davidson v. Coughlin,* 968 F.Supp. 121, 129 (S.D.N.Y.1997). When determining whether this showing has been made, a court may consider such relevant factors as 1) the duration of the deprivation; 2) its extent; 3) the availability of other out-of-cell activities; 4) the opportunity for in-cell exercise; and 5) the justification offered for the deprivation. *See Williams v. Goord,* 111 F.Supp.2d 280, 291 (S.D.N.Y.2000).

 *15 Plaintiff's exercise claim is comprised of two components. First, he contends that when confined to an "S" block for disciplinary purposes he was not permitted to engage in outdoor exercise, but instead only permitted to exercise utilizing an outdoor recreation pen attached to his cell. *See* Complaint (Dkt. No. 1) ¶¶ 48 and p. 113. Secondly, plaintiff asserts that he was confined to his cell for twenty-four hours each day between March 22, 2003 and April 4, 2003, pending a hearing at the Ogdensburg Correctional Facility, and thus denied any meaningful opportunity to exercise during that period. (Dkt. No. 1) ¶ 49 and p. 116.

### 1. *"S" Block Confinement*
While confined in facility SHU's, plaintiff was restricted to an exercise area measuring eight feet five inches in width, six feet nine inches in depth, and with the ceiling height of twelve feet seven inches. Complaint (Dkt. No. 1) ¶¶ 47-48; Prack Aff. (Dkt. No. 80-30) ¶ 5. SHU exercise areas have three solid walls, with a fourth side made of woven rod security screen through which inmates can view the open surroundings. Prack Aff. (Dkt. No. 80-30) ¶ 5.

The relevant portions of plaintiff's complaint and exhibits describe standard SHU conditions of confinement, which have been found to pass constitutional muster. *See, e.g., Sostre v. McGinnis,* 442 F.2d at (outdoor exercise for one hour in small enclosed yard open to the sky consistent with

Eighth Amendment); *Anderson,* 757 F.2d at 35) (holding that Eighth Amendment not violated when inmates confined to special housing unit were allowed one hour per day of outdoor exercise-with no access to indoor exercise area); *Young v. Scully,* Nos. 91 Civ. 4332, 91 Civ. 4801, 91 Civ. 6769, 1993 WL 88144, at *5 (S.D.N.Y. March 22, 1993) (holding that Eighth Amendment was not violated when inmate was deprived of exercise for periods lasting several days); and *Jordan v. Arnold,* 408 F. Supp 869, 876-877 (M.D.Pa.1976) (holding that Eighth Amendment not violated when inmates confined to special housing unit were allowed two hours of exercise per week). In this instance the court declines plaintiff's invitation to enter the arena of prison management, and instead recommends a finding that this portion of plaintiff's complaint fails to allege a cognizable constitutional deprivation.

### 2. *Denial of Exercise While at Ogdensburg*
The second element of plaintiff's cruel and unusual punishment claim relates to the denial of exercise for a period of thirteen days while awaiting a disciplinary hearing. *See* Complaint (Dkt. No. 1) ¶ 49 and p. 116. In order to sustain a constitutional claim this cause of action must assert an "unquestioned and serious deprivation of basic human needs" or "depri[vation] of the minimal civilized measure of life's necessities. *Anderson,* 757 F.2d at 35. The denial of exercise for a period of thirteen days is, relatively speaking, *de minimis* and does not rise to a level sufficient to support a constitutional deprivation. *See Young v. Scully,* 91 Civ. 4332, 91 Civ. 4801, 91 Civ. 6768 and 91 Civ. 6769, 1993 WL 88144, at *5 (deprivation of exercise over several days found to be *de minimis* ); *Davidson v. Coughlin,* 968 F.Supp. 121, 128-131 (S.D.N.Y.1997) (holding that "temporary and sporadic deprivations of outdoor activity [for no longer than fourteen days in a row] do not fall below the minimum standards of the Eighth Amendment"); *see also Trammell v. Keane,* 338 F.3d 155 (2d Cir.2003); *Branham v. Meachum,* 77 F.3d 626, 630-31(2d Cir.1996) (finding that keeping inmate on lockdown and "full restraint" status without outdoor exercise for a period of approximately twenty-two days does not violate the Eighth Amendment).

 *16 There appears to be another basis on which dismissal of this portion of plaintiff's complaint would be warranted. The deprivation of exercise while in Ogdensburg does not appear to be attributed to subjective indifference on the part of any of the named defendants to plaintiff's well being, but instead was the result of a facility procedure at Ogdensburg which was later amended following plaintiff's successful grievance

regarding the matter. *See* Kurz Decl. (Dkt. No. 80-26) ¶ 9. Under these circumstances plaintiff has failed to establish the subject deliberate indifference on the part of any of the defendants toward his safety and well being. *Hathaway v. Coughlin,* 99 F.3d 550, 554 (2d Cir.1996) (charged official must act with sufficiently culpable state of mind that is equivalent to criminal recklessness); *see also Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994).

## IV. *SUMMARY AND RECOMMENDATION*

The plaintiff, a frequent litigator and an inmate who over the period of his confinement with the DOCS accumulated an extremely poor disciplinary record, now complains alleging that nine misbehavior reports authored by nine separate corrections officers at four corrections facilities over a two year period, seven of which resulted in findings of guilt following disciplinary hearings, were issued out retaliatory motivation. Having carefully considered the record now before the court, I conclude no reasonable factfinder could agree that those misbehavior reports were issued for retaliatory purposes. Plaintiff further claims that various inter-prison transfers which he experienced over time were retaliatory, in response to his having filed grievances and lawsuits. Once again, the record fails to contain evidence from which a reasonable factfinder could draw this conclusion. Finally plaintiff contends that he was subjected to cruel and unusual punishment by the denial of adequate opportunities for exercise. Having carefully reviewed the record, I conclude

that no reasonable factfinder could determine that he was in fact subjected to cruel and unusual punishment.

For these reasons, and additionally because certain of his claims are procedurally barred based upon his failure to exhaust available administrative remedies, I recommend dismissal of plaintiff's complaint in its entirety. It is therefore respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 80) be GRANTED, and that all plaintiff's claims in this action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

### All Citations

Not Reported in F.Supp.2d, 2009 WL 890658

Footnotes

1   On September 30, 2005, all of the Defendants except one filed their Answer to Plaintiff's Complaint. (Dkt. No. 58.)On November 28, 2005, Defendant Smith filed her answer to the Complaint. (Dkt. No. 59.)

2   On de novo review, "[t]he judge may ... receive further evidence...."28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

3   *See also Vargas v. Keane,* 93-CV-7852, 1994 WL 693885, at *1 (S.D.N.Y. Dec. 12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), aff'd, 86 F.3d 1273 (2d Cir.), *cert. denied,*519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996).

4   *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) [citations omitted]; *accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N .Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v.*

*Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

5 *Krug v. County of Rennselaer,* 04-CV-0640, 2006 WL 2669122, at *3 (N.D.N.Y. Sept. 18, 2006) (McAvoy, J.) ("When dealing with a *pro se* party, certain procedural rules apply so as to insure that the *pro se* litigant in not disadvantaged by the lack of legal training. In this regard, the Local Rules require that [a *pro se* party be informed of the consequences of failing to respond to a motion for summary judgment, before those consequences may be imposed]."); *see also Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) ("This Court has also held that summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default.") [citations omitted]; *see also* Jessica Case, *"Pro Se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?"* 90 Ky. L.J. 701, 704, n. 24 (Spring 2001) ("The Second, Fourth, Seventh, Tenth, Eleventh, and D.C. Circuit Courts of Appeals mandate that notice of summary judgment requirements be given to *pro se* litigants.... The Ninth Circuit requires notice of summary judgment requirements for *pro se* prisoner litigants only.") [citations omitted].

6 *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *McKaskle v. Wiggins,* 465 U.S. 168, 184 (1984) ("Nor does the Constitution require judges to take over chores for a *pro se* [litigant] that would normally be attended to by trained counsel as a matter of course."); *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980) ("[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law [even when that strict adherence inures to the detriment of a *pro se* litigant]."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*"[P]ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") [citation omitted]; *LoSacco v. City of Middletown,* 71 F.3d 88, 92 (2d Cir.1995) ("Although *pro se* litigants should be afforded latitude, ... they generally are required to inform themselves regarding procedural rules and to comply with them .... This is especially true in civil litigation.") [internal quotation marks and citations omitted]; *Edwards v. I.N.S.,* 69 F.3d 5, 8 (2d Cir.1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, ...*pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them .") [citations omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[T]he right [to benefit from reasonable allowances as a *pro se* litigant] does not exempt [the *pro se* ] party from compliance with relevant rules of procedural and substantive law.") [internal quotation marks and citations omitted].

7 Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L.R. 7.1(a)(3).

8 *See, e.g., Hassig v. N.Y.S. Dep't of Environmental Conservation,* 01-CV-0284, Decision and Order, at 7 (N.D.N.Y. filed March 4, 2004) (McAvoy, J.), *aff'd,* No. 04-1773, 2005 WL 290210 (2d Cir. Feb. 2, 2005); *Lee,* 2004 U.S. Dist. LEXIS 20746, at *12-13, 15, *aff'd,* No. 04-1921, 2004 U.S.App. LEXIS 21432; *Harvey v. Morabito,* 99-CV-1913, 2003 WL 21402561, at *1, 3-4 (N.D.N.Y. June 17, 2003) (Sharpe, M.J.), *adopted by* 99-CV-1913, Order, at 2-3 (N.D.N.Y. filed Jan. 15, 2004) (Munson, J.), *aff'd,* No. 04-1008, 115 F. App'x 521 (2d Cir. Dec. 23, 2004); *Krug,* 2006 WL 2669122, at *2-3; *Fox,* 2005 U.S. Dist. LEXIS 9147, at *2-3; *Singleton v. Caron,* 03-CV-0455, 2005 WL 2179402, at *3-4 (N.D.N.Y. Sept. 5, 2005) (Peebles, M.J.), *adopted by* 03-CV-0455, 2006 WL 2023000, at *3 (N.D.N.Y. July 18, 2006) (Sharpe, J.); *Govan,* 289 F.Supp.2d at 295; *Butler v. Weissman,* 00-CV-1240, 2002 WL 31309347, at *3 (N.D.N.Y. June 20, 2002) (Sharpe, M.J.), *adopted by* 00-CV-1240, Decision and Order, at 1-2 (N.D.N.Y. filed July 22, 2002) (Kahn, J.); *DeMar v. Car-Freshner Corp.,* 49 F.Supp.2d 84, 86 & n. 1 (N.D.N.Y.1999) (McAvoy, C.J.); *Costello v. Norton,* 96-CV-1634, 1998 WL 743710, at *1, n. 2 (N.D.N.Y. Oct. 21, 1998) (McAvoy, C.J.); *Squair v. O'Brien & Gere Eng'rs, Inc.,* 96-CV-1812, 1998 WL 566773, at *1, n. 2 (N.D.N.Y. Aug. 21, 1998) (Scullin, J.); *see also Monahan v. N.Y. City Dep't of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (discussing, in *pro se* civil rights case, district courts' discretion to adopt local rules like 7.1[a][3] "to carry out the conduct of its business").

9 The Court notes that a detailed recitation of the claims and Plaintiff's procedural errors are provided in Magistrate Judge Peebles's Report-Recommendation. (Dkt. No. 85, at 8-14.) Accordingly, the Court will not repeat this thorough analysis.

10 *See Williams v. Goord,* 111 F.Supp.2d 280, 290 (S.D.N.Y.2000) ("Although the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment.") (citing *Ayers v. Stewart,* No. 96-2013, 1996 WL 346049, at *1 [2d Cir.1999] ).

11    *See also Sostre v. McGinnis, 442 F.2d 178, 187-92 (2d Cir.1971), rev'd on other grounds, Sostre v. Oswald, 404 U.S. 1049 (1972).*

12    In addition, in his Objections to the Report-Recommendation, Plaintiff appears to argue, for the first time, that the Court lacks jurisdiction over his claims. The Court rejects this argument for a number of reasons, including the fact that (1) such a jurisdictional challenge is not timely, and (2) such a jurisdictional challenge flies in the face of Plaintiff's Complaint, which alleged that the Court had "jurisdiction over each of Plaintiff's claims."

13    "Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases."*Chaney v. Koupash,* 04-CV-0136, 2008 WL 5423419, at *7 (N.D.N.Y. Dec. 30, 2008) (citing *Porter v. Nussle,* 534 U.S. 516, 524 (2002)* [other citation omitted].). "While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that 'certain caveats apply.' " *Chaney,* 2008 WL 5423419, at *7 (citations omitted). "Exhaustion is generally achieved through the [Inmate Grievance Program]." *Id.*(citation omitted). "However, when inmates fail to follow the IGP, a court must conduct a three-part inquiry to determine if such failure is fatal to their claims." *Id.* "A court must consider whether (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Id.* (citations omitted).

14    "Administrative remedies are unavailable when there is no possibility of relief for the action complained of."*Chaney, 2008 WL 5423419, at *7 (citations and internal quotations omitted)."The test to determine the availability of an administrative remedy is an objective one asking whether 'a similarly situated individual of ordinary firmness' would have deemed it accessible."*Id.* (citation omitted)."Courts have found unavailability where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies."*Id.* (citations and internal quotations omitted).

15    *See, e.g., Carini v. Austin,* 06-CV-5652, 2008 WL 151555, at *4 (S.D.N.Y. Jan. 14, 2008) (noting that an inmate must point to "an affirmative act by prison officials that would have prevented him from pursuing administrative remedies, ... [because] his transfer to another facility is not a 'special circumstance' that excuses his failure to exhaust")

16    To the extent that Plaintiff argues that there existed a conflict of interest resulting from his disciplinary hearing officers knowing each other, or knowing the correctional officers having charged Plaintiff with disciplinary charges, it is true that "[p]risoners have a constitutional right to have a fair and impartial hearing officer preside over their disciplinary hearings."*Chaney, 2008 WL 5423419 at *7 (citing *Sira v. Morton, 380 F.3d 57, 69 [2d Cir.2004]*)."However, the degree of impartiality required of prison officials does not rise to the level of that required of judges as it is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts."*Id.* (citations and internal quotations omitted)."While the Supreme Court held 'that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] ...,' the Second Circuit has held that the test is whether there was 'reliable evidence' of the inmate's guilt."*Id.* (citations omitted).

1    In light of the procedural posture of the case the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff. See *Wells-Williams v. Kingsboro Psychiatric Ctr.,* No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

2    Each of these claims and their factual underpinnings will be discussed in more detail further on in this report.

3    Plaintiff's claim against the CORC, as well as those asserted against the remaining defendants in their official capacities, were dismissed by order issued by Senior District Judge Lawrence E. Kahn, on September 29, 2006 (Dkt. No. 69), acting on a report and recommendation issued by me on August 28, 2006. Dkt. No. 67.

4    This matter was transferred from Judge Kahn to District Judge Glenn T. Suddaby on October 2, 2008. *See*Dkt. No. 84.

5    In their answers, defendants have asserted an affirmative defense alleging plaintiff's failure to satisfy his exhaustion obligation. *See* Dkt. Nos. 58, ¶ 16 and 60, ¶ 16.

6    The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances." 7 N.Y.C.R.R. § 701 .6(g)(1)(i)(a)-(b).

7    In support of their motion, defendants have offered a version of plaintiff's complaint, which is exceedingly comprehensive, together with the extensive exhibits attached, all paginated for ease of reference. *See* Kerwin Decl. (Dkt. No. 80-8) Exh. A. In this report and recommendation I will adopt defendants' pagination when citing to those materials.

8    In his memorandum in opposition to defendants' motion, plaintiff alleges, for the first time, that certain prison officials, identified as defendants DeBejian and G. Molnar, interfered with his grievances out of retaliatory animus. *See* Plaintiff's Memorandum (Dkt. No. 82) at pp. 11-12.This conclusory statement draws no evidentiary support from the record, and is not viewed by the court as sufficient to invoke the limited exceptions by the Second Circuit in its group of decisions

issued in 2004. *See, Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004); *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004); *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004); and *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004). I note, moreover, that whether the *Hemphill* test survives intact following the Supreme Court's decision in *Woodford v. Ngo,* 54 U.S. 81, 126 S.Ct. 2378 (2006), has been a matter of some speculation. In one relatively recent decision a judge of another district within this Circuit concluded that at least the first two prongs of the *Hemphill* three part inquiry, requiring the court to assess whether administrative remedies were in fact "available" to prisoners and whether defendants should be estopped from raising the affirmative defense of non-exhaustion, retain continued vitality. *Amador v. Superintendents of Dep't of Correctional Services,* No. 03 Civ. 0650(KTD)(GWG), 2007 WL 4326747, at *6-7 (S.D.N.Y. Dec. 4, 2007). I note that another judge of this court has similarly concluded that

> it appears that these decisions have ***not*** been overruled ... In [his] concurring opinion, Justice Breyer specifically noted that two circuits, the ***Second*** Circuit and Third Circuit, have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts(,) ...,"

> further buttressing the conclusion that the Second Circuit's *Hemphill* test retains vitality. *Miller v. Covey,* No. 9:05-CV 649, 2007 WL 952054, at *3 (N.D.N.Y. Mar. 29, 2007) (*Emphasis in original* ).

9    While the grievance for which plaintiff claims he was retaliated against in this count was filed on April 12, 2001, according to the exhibit attached to plaintiff's complaint, Houston contends that it was filed earlier and that there was a delay on the part of the IGRC in passing the complaint through for filing. *See* Houston Aff. (Dkt. No. 82) ¶ 4. While plaintiff's actual grievance complaints are annexed as exhibits in connection with other claims of retaliation, plaintiff did not include a copy of his handwritten grievance in this instance. It should be noted, however, that the handwritten complaints filed in other instances and the resulting formal IGRC sheet all bear the same filing dates. *See, e.g.,* Complaint (Dkt. No. 1) at pp. 19-21, 24-25, 59-61 and 116-18.

| 8/15/01 | Elliott | Grievances filed on 8/9/01 and and 8/12/01 [10] | Guilty (all counts) |

10    While plaintiff alleges having filed grievances on August 9, 2001 and August 12, 2001 against defendants Elliott and DeBejain, the record contains only the August 12, 2001 grievance. *See* Complaint (Dkt. No. 1) at ¶ 15 and pp. 20-21. Additionally, although plaintiff claims that the resulting false misbehavior report was issued on August 15, 2001 by both defendants Elliot and DeBejain, the report contains only Elliot's signature. *Id.* at p. 21.

| 8/20/01 | Kelley | Filing of grievances (dates and content unspecified) | Guilty (two counts)/Not Guilty (one count) |
| 8/23/01 | Wurst | Filing of grievances and lawsuits against defendant Wurst's "buddies at Mohawk" (dates and specifics not specified) | Guilty of all charges |
| 11/26/02 | Morse | Plaintiff "verbally complaining to [Morse's] supervisor about his racist behavior" (neither dates nor specifics provided) | Acquitted on all counts |
| 3/3/03 | Touron | "[Plaintiff's] exercise of freedom of information" (neither dates nor specifics provided) | Guilty on all counts |
| 3/22/03 | Shaver | Grievance filed on 3/12/03 | Guilty (two counts), Not Guilty (one count). |
| 5/29/03 [11] | Hammill | Written complaint dated 5/29/03 to defendant Smith re: defendant Hammill [submitted by plaintiff] | Guilty (all counts) |

11    Plaintiff contends that this misbehavior report was issued on May 30, 2003, but backdated by one day. *See* Complaint (Dkt. No. 1) ¶ 26.

| 6/9/03 | Pirie | Pursuit of grievance appeal resulting in CORC decision dated 6/4/03 | Guilty (all counts); hearing result subsequently reversed on appeal to defendant Donald Selsky, Director of SHU/ Inmate Disciplinary Program |

12    No explanation is offered for the failure to include an affidavit for that defendant.

13    It should be noted that this is not the first time the plaintiff has had occasion to raise the claim of retaliation associated with this inter-prison transfers. In another action also filed in 2003, in the Western District of New York, plaintiff's complaint included claims of retaliation based upon prison transfers; plaintiff's claims in that case were dismissed, on motion for summary judgment, by order issued by District Judge David G. Larimer. *Houston v. ZenZen,* No. 03-CV-6118 L, (N.D.N.Y. September 26, 2005).*See* Kerwin Decl. (Dkt. No. 80-8) Exh. M (Decision and Order). Significantly, among the defendants named in that action was defendant Knapp-David. *Id.* It therefore could well be that plaintiff's claims in this action alleging retaliatory inter-prison transfer are barred by claim preclusion, or at the very least issue preclusion, based upon Judge Larimer's determination and the resulting judgment. *See Hill v. Coca Cola Bottling Co.,* 786 F.2d 550, 552-53 (2d Cir.1986) and *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67 (1985).

| *Date of Transfer* | *Transferee Facility* |
| --- | --- |
| 5/7/01 | Mohawk Correctional Facility |
| 9/15/01 | Marcy Correctional Facility SHU |
| 11/21/01 | Downstate Correctional Facility SHU |
| 11/23/01 | Great Meadow Correctional Facility SHU |
| 11/27/01 | Downstate Correctional Facility SHU |
| 12/2/01 | Auburn Correctional Facility SHU |
| 12/5/01 | Five Points Correctional Facility |
| 7/11/02 | Cayuga Correctional Facility |
| 8/16/02 | Auburn Correctional Facility |
| 2/3/03 | Ogdensburg Correctional Facility |
| 6/13/03 | Riverview Correctional Facility |
| 6/17/03 | Gouverneur Correctional Facility |
| 8/15/03 | Elmira Correctional Facility |

14    In her declaration, Knapp-David also explained that inmate transfers can be prompted by a number of factors, including required court appearances or the need for specialized medical treatment, additionally pointing out that on occasion when an inmate is moved between hubs, a transfer may include short term stays at various facilities along the way. Knapp-David Decl. (Dkt. No. 80-22) ¶ 9. Knapp-David further explained that this is the likely reason for certain transfers in rapid succession not necessarily reflected on plaintiff's inmate transfer history including, for example, the September 2001 transfer from Marcy to Great Meadow, with an intermediate stop at Downstate, and a return trip through Downstate with a final destination of Five Points, with only the Marcy to Five Points transfer having been noted on the plaintiff's transfer history. *See* Knapp-David Decl. (Dkt. No. 80-22) ¶ 9 and Exh. B.

15    In a declaration given in support of defendants' motion, Attorney Stephen M. Kerwin, Esq. recounts his search for actions commenced by the plaintiff, revealing eleven civil cases commenced by Houston against DOCS employees, several of which include allegations of retaliation. *See* Kerwin Decl. (Dkt. No. 80-8) ¶¶ 5, 9-11.

---

**End of Document**         © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 7629513
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Todd JOHNSON, Plaintiff,

v.

Christopher FERNANDEZ, et al., Defendants.

No. 9:09–CV–626 (FJS/ATB).
|
March 1, 2011.

**Attorneys and Law Firms**

Todd Johnson, pro se.

Michael G McCartin, Ass't Attorney General, for Defendants.

### REPORT RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** This matter was referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge. On November 4, 2010, this case was reassigned to me from Magistrate Judge David R. Homer. (Dkt. No. 48).

In this civil rights complaint (Dkt. No. 1), Plaintiff alleges that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks $1 million in damages, as well as injunctive relief. Presently before this court is Defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56(b). (Dkt. No. 39). Plaintiff responded in opposition to the motion. (Dkt. No. 43). For the following reasons, the court recommends granting Defendants' motion, and dismissing the complaint in its entirety.

### DISCUSSION

**I.** *Facts*

**A. Excessive Force Claims Against Christopher Fernandez and Jason Yung**

Plaintiff alleges [1] that he was assaulted by Defendant Christopher Fernandez, a correctional officer, on February 9, 2008, while incarcerated at Coxsackie Correctional Facility ("Coxsackie"). (Dkt. No. 1, Compl. at 8 [2]; Dkt. No. 39–3, Pl.'s Dep. at 13). At approximately 3:00 P.M., Defendant Fernandez approached Plaintiff's cell and started screaming about people who were "loud at the gate" earlier in the week. (Compl. at 8; Pl.'s Dep. at 12). Defendant Fernandez told another correctional officer, known only as Officer Ryan, to open Plaintiff's cell. (Compl. at 8; Pl.'s Dep. at 12–13). After Officer Ryan opened the cell, Defendant Fernandez told Plaintiff to "step out" and "place [his] hands on the wall."(Compl. at 8; Pl.'s Dep. at 13) Defendant Fernandez allegedly began punching Plaintiff in the ribs once he exited his cell. (Compl. at 8; Pl.'s Dep. at 16). Although Defendant Fernandez supposedly told Plaintiff to "fight back," Plaintiff refused to do so. (Compl. at 8; Pl.'s Dep. at 16). Defendant Fernandez then began "trashing" Plaintiff's cell, as if he were searching for contraband. (Compl. at 8; Pl.'s Dep. at 13). Finding none, Defendant Fernandez ordered Plaintiff to get on his knees. (Compl. at 8; Pl.'s Dep. at 13). Defendant Fernandez then kicked Plaintiff's lower back, causing Plaintiff's neck to snap. *Id.* (Compl. at 8; Pl.'s Dep. at 13).

After Defendant Fernandez locked Plaintiff in his cell, Defendant Fernandez walked over to Inmate Green's cell and ordered Officer Ryan to open that cell. (Compl. at 8; Pl.'s Dep. at 25). Although Plaintiff did not see what transpired immediately after Defendant Fernandez entered Inmate Green's cell, Plaintiff claims that he later witnessed Defendant Fernandez slapping Inmate Green. (Compl. at 8; Pl.'s Dep. at 26). Defendant Fernandez then proceeded to Inmate Palmer's cell and ordered Officer Ryan to open that cell. (Compl. at 8; Pl.'s Dep. at 30). Plaintiff does not claim that he witnessed any assault on Inmate Palmer, but claims that he heard repeated sounds of a stick hitting a body and cries for help. (Compl. at 8; Pl.'s Dep. at 35). Plaintiff also claims to have witnessed Inmate Palmer being dragged to the day room in bloody clothing. (Compl. at 8; Pl.'s Dep. at 35).

**\*2** On February 15, 2008, Plaintiff states that a correctional officer told Plaintiff that he was being called as a witness in Inmate Palmer's disciplinary hearing that arose from the February 9 incident. (Compl. at 8; Pl.'s Dep. at 59). The officer asked Plaintiff: "Do you want to get involved with that?"(Compl. at 8). After Plaintiff responded affirmatively, the officer allegedly told Plaintiff that getting involved was not a "good idea." *Id.* After that officer left, another officer

approached Plaintiff and asked him the same question. *Id.* Once again, Plaintiff replied affirmatively. *Id.* The officer then told Plaintiff that he would be called after lunch. *Id.*

Plaintiff states that he wanted to bring a written statement and other documents into Inmate Palmer's hearing. (Compl. at 8; Pl.'s Dep. at 64–65). On his way to the hearing room, after retrieving those items and placing them in an envelope, Plaintiff claims that he was stopped by Defendant Sergeant Jason Yung and an unidentified correctional officer. (Compl. at 8; Pl.'s Dep. at 65). Defendant Yung then allegedly threatened Plaintiff with being "locked up" if he testified at the hearing. (Compl. at 8; Pl.'s Dep. at 64).

As Plaintiff sat in the waiting pen, Correctional Officer (C.O.) Nieves told Plaintiff that his envelope would need to be searched before he could bring it into the hearing room. (Dkt. No. 39–11, Disciplinary Hr'g at 11; Dkt. No. 39–12, Hr'g Papers at 4). Plaintiff then shouted that he would not permit the officers to search his envelope, claiming that C.O. Nieves was interfering with his ability to testify for Inmate Palmer. (Pl.'s Dep. at 65; Disciplinary Hr'g at 11–12; Hr'g Papers at 4). C.O. Nieves then issued Plaintiff a disciplinary ticket. (Hr'g Papers at 4).

Based upon this misbehavior, Defendant Yung and another officer escorted Plaintiff back to his cell to pack for confinement in the special housing unit ("SHU"). (Compl. at 8; Disciplinary Hr'g at 17). During the escort to SHU, Defendant Yung allegedly called for more officers. (Compl. at 8). Plaintiff claims that Defendant Yung and the other officers began punching and kicking Plaintiff in the face and ribs. (Compl. at 8; Pl.'s Dep. at 70–73).

Once Plaintiff arrived at SHU, Plaintiff told his mental health counselor, Mr. Tatum, that he was crying because he had been assaulted. (Compl. at 8; Pl's Dep. at 78). Mr. Tatum transferred Plaintiff to the Office of Mental Health ("OMH") infirmary. (Compl. at 8; Pl.'s Dep. at 78). Plaintiff claims that was not seen by a doctor until February 27, 2008. (Compl. at 15). He believes that the delay in treatment occurred because he told Investigator Begmann of the Inspector General's Office about the February 9 and 15 assaults. *Id.*

**B. Mail Interference Claim Against M. Bathrick**
As an initial matter, the court notes that Plaintiff fails to allege which Defendant (or any other individual) deprived him of his First Amendment right to the free flow of mail. Although Defendant Bathrick is named as a defendant in the

caption of the Complaint and is later identified as a clerk in the Inmate Account Unit (Compl. at 3), the Complaint fails to contain any allegations indicating how Defendant Bathrick violated the law or injured Plaintiff. Under these circumstances, the claim would ordinarily have been subject to dismissal. [3] Defendants, however, have interpreted the allegation of mail interference to refer to Defendant Bathrick. (Dkt. No. 39–14, Defs.' Mem. of Law at 15). Moreover, Plaintiff states, in his opposition to summary judgment, that Defendant Bathrick is the defendant responsible for this alleged violation of Plaintiff's First Amendment rights. (Dkt. No. 43 at 24, Pl.'s 7.1 Statement ¶ 14). Accordingly, the Court will construe the Complaint as asserting a First Amendment mail interference claim against Defendant Bathrick. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (holding that where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest").

**\*3** Plaintiff alleges that his First Amendment rights were violated at Coxsackie because he was denied his right to "communicate with the outside world." (Compl. at 13). Following the alleged assaults discussed above, Plaintiff claims that he was depressed and wanted to communicate with his family. *Id.* Plaintiff states, however, that he was prevented from writing to his family because he was not permitted to buy stamps when he arrived at the SHU on February 15, 2008. (Pl.'s Dep. at 102). He states that he was unable to obtain stamps until March 2008. *Id.* at 106.

**C. Due Process Claims Against Defendant Kim Gerwer**
Defendant Kim Gerwer, a Coxsackie Education Supervisor, presided over Plaintiff's Tier III hearing. (Compl. at 15; Disciplinary Hr'g at 1). Plaintiff alleges that his due process rights were violated at this hearing in a number of ways. (Compl. at 15). First, he claims he was not provided with notice of the charges against him twenty-four hours before the hearing. *Id.* Second, he claims that Defendant Gerwer refused, without a legitimate reason, to call a witness that would have supported Plaintiff. *Id.* Third, Defendant Gerwer failed to collect documents that Plaintiff had requested. *Id.* Fourth, Defendant Gerwer relied upon Officer Germaine's testimony, even though the officer did not endorse the disciplinary ticket as someone with "personal knowledge" of the incident. (Pl.'s Dep. at 85–87). Finally, Plaintiff was not provided with an impartial hearing because Defendant Gerwer had stated that the officer who wrote the ticket was a "good person." *Id.* at 82. [4]

## II. *Legal Standard for Summary Judgment*

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006)."Only disputes over ['material'] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."*Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."*Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

 **\*4** In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin v. Goord,* 467 F.3d at 272. "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (citing, *inter alia, Burgos v. Hopkins,* 14 F.3d at 790 (a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest")). "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)).

## III. *Eighth Amendment Excessive Force Claims*

Defendants Fernandez and Yung argue that Plaintiff has failed to properly exhaust the excessive force claims. (Defs.' Mem. of Law at 5). The Prison Litigation Reform Act's ("PLRA") exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes regardless of the subject matter of the claim. *See, e.g., Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004). In *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368, 765 L.Ed. 368 (2006), the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Id.* at 92–93."Proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See id.* at 89– 94.An inmate must appeal any denial of his grievance to the highest available administrative level. *Martinez v. Williams,* 349 F.Supp.2d 677, 682 (S.D.N.Y.2004).

However, the Second Circuit has held that certain exceptions to exhaustion apply. The proper inquiry is to determine "whether: (1) administrative remedies are in fact available to the prisoner; (2) the defendants may have forfeited the affirmative defense of non-exhaustion by failing to preserve it ... or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense; and (3) special circumstances may have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements."*Chavis v. Goord,* 333 Fed. App'x 641, 643 (2d Cir.2009) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004) (internal quotation marks omitted).

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").N.Y. Comp.Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC).*Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program (IGP) encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance."*Id.* § 701.3(a).

 **\*5** There is also an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 NYCRR § 701.8. Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. *Id.* § 701.8. The inmate then files a grievance under the normal procedures outlined above; but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the Superintendent for review. *Id* .§ 701.8(b). Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment. If so, the Superintendent shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations.*Id.* §§ 701.8(c); 701.8(d)(1)-(d)(3). An appeal of the adverse decision of the Superintendent may be taken to the Central Office Review Committee as in the regular grievance procedure. *Id.* § 701.8(h).

Here, Defendants argue that Plaintiff did not properly exhaust his administrative remedies because he failed to grieve the excessive force claims through the state's three-tiered process in a timely and appropriate manner. (Defs.' Mem. of Law at 5). Plaintiff claims that a grievance officer told him that the grievance office did not handle staff assaults, and that he should, instead, complain to the Inspector General. (Compl. at 1; Pl's Dep. at 52–53; Pl.'s 7 .1 Statement ¶ 1). Plaintiff then wrote to the Inspector General's Office. (Pl.'s Dep. at 36–37).

An inmate's attempt to exhaust by simply writing a letter directly to the Inspector General will not suffice to exhaust administrative remedies. *See Grey v. Spearhawk,* No. 99 CIV. 9871, 2000 U.S. Dist. LEXIS, at *5, 2000 WL 815916 (S.D.N.Y. June 23, 2000) (holding that a complaint filed directly with the Inspector General did not excuse plaintiff from "adhering to the available administrative procedures"). It has been held that "a grievance through informal channels will satisfy the exhaustion requirement if the prisoner thereby obtained a *favorable resolution* of his grievance."*Thomas v. Cassleberry,* 315 F.Supp.2d 301, 304 (W.D.N.Y.2004) (citations omitted) (emphasis added). The exhaustion requirement will be satisfied in that situation because the inmate would not have any reason to appeal a favorable resolution. *Andrews v. Cruz,* No. 04 Civ. 566, 2010 U.S. Dist. LEXIS 28124, at *16, 2010 WL 1141182, at *6 (S.D.N.Y. Mar. 24, 2010) (citations omitted). Thus, Plaintiff did not exhaust administrative remedies by writing to the Inspector General's Office, even though the Inspector

General investigated plaintiff's allegations and found them to be unsubstantiated.

Defendants may "forfeit the affirmative defense of non-exhaustion ... [if] defendants' own actions inhibit[ed] the inmate's exhaustion of remedies .... " *Chavis v. Goord,* 333 Fed. App'x at 641 (citations omitted); *see, e.g., Jacoby v. Phelix,* No. 9:07–CV–872 (DNH/ATB), 2010 U.S. Dist. LEXIS 44222, at *26–28, 2010 WL 1839299, at *8–9 (N.D.N.Y. Mar.31, 2010) (Baxter, Mag. J.) (summary judgment denied where issues of fact remained on whether plaintiff was threatened by defendants into withdrawing his grievance), *report-recommendation adopted,* 2010 U.S. Dist. LEXIS 44201, 2010 WL 1839264 (N.D.N.Y. May 6, 2010) (Hurd, J.). Although plaintiff claims that an unidentified grievance officer told him that the grievance office did not handle staff assaults, nothing in the record indicates that Defendants Fernandez and Yung or any other DOCS employee actually inhibited Plaintiff's ability to exhaust administrative remedies. First, the IGP Supervisor at Coxsackie denied telling plaintiff that allegations of assault are not grievable. (Dkt. No. 39–7, Bellamy's 7/30/2008 Letter at 1). Further, plaintiff has acknowledged that he wrote one grievance regarding the assaults on February 25, 2008, and then wrote another grievance after March 8, 2008, when the grievance office supposedly told him that "they do not deal with assaults on inmates by staff." [5] (Dkt. No. 39–8, Pl. 6/20/2008 Letter at 4). Whatever the Grievance Supervisor said, plaintiff's own statements indicate that he was not deterred from pursuing grievance regarding the alleged assaults.

 **\*6** Plaintiff states that the he did mention the February 9 and February 15 incidents in a grievance that he filed on June 25, 2008. (Pl.'s Dep. at 55–56). The regulations provide, however, that an inmate must file a grievance within twenty-one days of the alleged occurrence. 7 NYCRR § 701.5(a)(1). An exception to this time limit may be granted based on "mitigating circumstances" if the extension is requested within forty-five days of the alleged occurrence. 7 NYCRR § 701.6(g)(1)(i)(a). Thus, to the extent that the June 25 grievance complained about the February 9 and 15 assaults, it would have been time-barred. [6]

Plaintiff appealed the denial of his June 25, 2008 grievance. In the CORC's decision, dated July 30, 2008, the Committee stated that "CORC notes that there is no record of the grievant filing prior grievances addressing the allegations of assaults by staff on 2/9/08 and 2/15/08. However, it is noted that both

allegations were investigated by the Office of the Inspector General and determined to be unsubstantiated."(Dkt. No. 39–6 at 1). Thus, it is clear from the CORC's response to plaintiff that there was no record of a prior grievance, complaining about these alleged assaults.

Even though the forty-five day window to file a grievance regarding the alleged assaults had already expired, IGP Director Karen Bellamy advised Plaintiff on June 30, 2008, that he could contact the IGP supervisor with his mitigating circumstances. (Dkt. No. 39–7, Bellamy's 7/30/2008 Letter at 1). There is nothing in the record, however, to indicate that Plaintiff did so. No rational fact finder could determine that Plaintiff exhausted his administrative remedies, or was deterred from doing so by the actions of the Defendants or any DOCS employee. [7] Accordingly, it is recommended that summary judgment be **granted** as to the Eighth Amendment claims.

#### IV. *First Amendment Mail Interference Claim*

Plaintiff alleges that his First Amendment rights were violated because he was not permitted to buy stamps when he arrived at the SHU on February 15, 2008, and was unable to buy stamps until "some time in March" 2008. (Pl.'s Dep. at 102, 106). Because he was unable to buy stamps, Plaintiff claims that he was unable to communicate with this family about the February 15 assault. (Compl. at 13). At his deposition, however, he admitted that he was able to send out at least one letter between February 15 and March 2008, in which he notified his family about the February 9 assault. (Pl.'s Dep. at 106).

Under the First Amendment, prisoners have a right to "the free flow of incoming and outgoing mail."*Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir.2006) (citations omitted). A plaintiff may bring a claim under the First Amendment for interference with non-legal mail, based upon his free speech right to send or receive mail. *See Cancel v. Goord,* No. 00 CIV 2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)."[A] prison official's interference with an inmate's mail may violate his First Amendment right to free speech, which includes the 'right to be free from unjustified governmental interference with communication.' " *Id.* (quotation omitted).

**\*7** Although "[t]he boundary between an inmate's First Amendment right to free speech and the ability of prison officials to open or otherwise interfere with an inmate's mail is not precise[,] ... when analyzing such claims courts have

consistently made distinctions between outgoing mail and incoming mail ... based on the various rights and interests at stake."*Id.*"[T]he Supreme Court has recognized that 'the implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials.' " *Id.* (quotation omitted). Thus, "the penological interests for interference with outgoing mail must be more than just the general security interest which justifies most interference with incoming mail." *Id.* (citation omitted). However, when reviewing an interference with mail claim, "district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face." *Davis v. Goord,* 320 F.3d 346, 351–52 (2d Cir.2003); *see also John v. N.Y.C. Dep't of Corr.,* 183 F.Supp.2d 619, 629 (S.D.N.Y.2002) (requiring plaintiff to allege facts that show defendants acted with invidious intent and plaintiff was harmed by the interference); *Cancel v. Goord,* 2001 WL 303713 at *6 (dismissing claim where only two incidents of tampering alleged and no other indications of a continuing practice).

In this case, Plaintiff admits that he was able to send out at least one letter between February 15, 2008, and March 2008. (Pl.'s Dep. at 106). Moreover, any inability to send mail to his family was limited to, at most, a one month period because Plaintiff was able to buy stamps in March 2008. [8] Thus, any alleged occurrences of mail interference were few, any delay was minimal, and there is no indication that it was an ongoing practice. Plaintiff has also failed to show any harm, physical or otherwise, caused by his failure to communicate with his family, and he has failed to show that Defendant Bathrick (or anyone else) acted with invidious intent. Accordingly, the Court recommends **granting** Defendants' motion for summary judgment as to Plaintiff's First Amendment claims.

#### V. *Due Process Violations*

Defendant Kim Gerwer is an Education Supervisor at Coxsackie. (Dkt. No. 39–10, Gerwer Decl. ¶ 1; Dkt. No. 39–13, Defs.' 7.1 Statement ¶ 2). She served as the hearing officer for Plaintiff's Tier III disciplinary hearing, which arose from the misbehavior report that was issued on February 15. (Gerwer Decl. ¶ 2; Defs.' 7.1 Statement ¶ 2). Plaintiff asserts that Defendant Gerwer's conduct at the disciplinary violated due process. (Compl. at 15–17).

To prevail on a procedural due process claim under section 1983, a plaintiff must show that he possessed a protected

property or liberty interest, and that he was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000); *Hynes v. Squillace,* 143 F.3d 653, 658 (2d Cir.1998). Due process generally requires that a state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir.2003).

**\*8** In *Wolff v. McDonnell,* 418 U.S. 539, 563–64, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that due process requires advance notice of the charges against the inmate, and a written statement of reasons for the disposition. The inmate should also have the ability to call witnesses and present documentary evidence, subject to legitimate safety and correctional goals of the institution. *Id.* at 566. Finally, the inmate is entitled to a fair and impartial hearing officer, and the hearing disposition must be supported by "some" or "a modicum" of evidence. *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (some evidence standard); *McCann v. Coughlin,* 698 F.2d 112, 121–22 (2d Cir.1983) (fair and impartial hearing officer).

**A. Liberty Interest**

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Second Circuit, however, has refused to set a bright line rule on when confinement becomes atypical. Instead, "in order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement and to identify with specificity the facts upon which [their] conclusions [are] based." *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998) (citations omitted).

Here, Plaintiff was sentenced to 180 days of SHU confinement. (Disciplinary Hr'g at 49). He also lost commissary, phone, and package privileges for 180 days. *Id.* The Second Circuit has found that SHU confinement for 180 days may impose an "atypical and significant hardship." *See Kalwasinski v. Morse,* 201 F.3d 103, 106–08 (2d Cir.1999) (per curiam). Defendants do not address this issue, and the court will assume that plaintiff had a protected liberty interest without further analysis because the court finds that plaintiff received due process in any event.

**B. Notice**

Generally a prisoner must be provided with advanced written notice of the charges against him at least twenty-four hours prior to the hearing. *Wolff v. McDonnell,* 418 U.S. at 564–66; *see also Taylor v. Rodriguez,* 238 F.3d 188, 192 (2d Cir.2001); *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986).

In this case, Plaintiff argues that his due process rights were violated because he did not receive notice of the charges against him at least twenty-four hours before the hearing. (Compl. at 15; Pl.'s Dep. at 84–85). Plaintiff admitted at his disciplinary hearing that he was served with formal notice of the charges on February 20, 2008, at 9:20, but it is unclear from the hearing transcript and other documents in the record whether Plaintiff was served at 9:20 A .M. or 9:20 P.M. (Disciplinary Hr'g at 1). The disciplinary hearing commenced on February 21, 2008, at 11:30 A.M. *Id.* If Plaintiff were served at 9:20 P.M., then he would not have received exactly twenty-four hour notice. Even assuming that plaintiff's allegation about the time that the misbehavior report was served was true, his due process rights were not violated by what was ultimately a technicality that had absolutely no impact upon plaintiff's right to proper notice of the disciplinary charges.

**\*9** The purpose of the twenty-four hour rule is to provide inmates with sufficient time to prepare to defend charges filed against him. *See Wolff v. McDonnell,* 418 U.S. at 564; *Benitez v. Wolff,* 985 F.2d 662, 665 (2d Cir.1993). A review of the hearing transcript shows that Plaintiff received sufficient notice to prepare for the hearing. Although the hearing began at 11:30 A.M. on February 20, 2008, Defendant Gerwer adjourned the hearing at 11:35 A.M., five minutes after the hearing started. (Disciplinary Hr'g at 3). Plaintiff did not have to defend himself against anything on February 20th. The hearing did not commence again until one week later, on February 27, 2008, at 1:29 P.M. *Id.* This six-day adjournment, which guaranteed that Plaintiff would have sufficient time to prepare for his defense, cured any deficiencies that may have occurred. The February 27th hearing was also adjourned at 2:05 P.M. and began again on March 6 at 3:25 P.M. *Id* . at 22. The second adjournment was necessary because Defendant Gerwer wanted secure the witnesses that Plaintiff requested. *Id.* The March 6 hearing adjourned at 3:45 P.M. so that Defendant Gerwer could secure another witness that Plaintiff requested. *Id.* at 32. The hearing reconvened on March 10 at 12:45 P.M. when that witness became available to testify. *Id.* The hearing was adjourned on at least three

different occasions, ensuring that Plaintiff had sufficient time to prepare to defend the charges against him. Plaintiff has not alleged, and cannot claim, any prejudice to him that resulted from the fact that the initial hearing may have started less than twenty-four hours after he was served with the misbehavior report, because there was no "hearing" on that day. Plaintiff had plenty of time to defend against the charges and to produce evidence and witnesses in his defense.

### C. Evidence and Witnesses

An inmate has a right to call witnesses and present evidence in his or her defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. at 566; *see also Ponte v. Real,* 471 U.S. 491, 496, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) ("Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority ....") (citations omitted). Moreover, a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony or evidence. *See Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 (2d Cir.1991) (citing *Wolff v. McDonnell,* 418 U.S. at 566). A hearing officer may refuse to call a witness "on the basis of relevance or lack of necessity." *Kingsley v. Bureau of Prisons,* 937 F.2d at 30; *see also Scott v. Kelly,* 962 F.2d 145, 145–47 (2d Cir.1992) ("It is well settled that an official may refuse to call a witness as long as the refusal is justifiable.").

 **\*10** Plaintiff alleges that his due process rights were violated because Defendant Gerwer excluded a log book from evidence. (Pl.'s Dep. at 88–89; Disciplinary Hr'g at 29–30). C.O. Nieves's signature appears on a misbehavior report dated February 15, 2008. (Dkt. No. 39–12, Disciplinary Hr'g Papers at 4). Plaintiff requested the log book because he did not believe that C.O. Nieves was assigned to the site of the incident at the time it occurred. (Pl.'s Dep. at 88; Disciplinary Hr'g at 29). C.O. Nieves testified at the disciplinary hearing that she wrote the February 15 report because Plaintiff had disobeyed her orders. (Disciplinary Hr'g at 11–12). Plaintiff questioned C.O. Nieves at the disciplinary hearing. *Id.* at 12–18. C.O. Donovan also testified that C.O. Nieves was present at the site of the incident. (Disciplinary Hr'g at 32). Plaintiff also had an opportunity to question C.O. Donovan. *Id.* at 33–34.

Thus, Defendant Gerwer had a rational basis to conclude that excluding the log book was proper because its inclusion was unnecessary as C.O. Nieves's presence at the site of

the incident was substantiated by C.O. Donovan. Plaintiff questioned both officers at the disciplinary hearing. Since C.O. Nieves was the officer claiming that plaintiff violated her orders, the log book, showing whether she was assigned to the location in question at the time of the incident, was totally irrelevant.

Defendant Gerwer also allegedly refused, without a legitimate reason, to let Plaintiff call Mr. Tatum to testify on Plaintiff's behalf. (Compl. at 15; Pl.'s Dep. at 90). Plaintiff wanted Mr. Tatum, a mental health counselor, to testify about Plaintiff's mental state after the alleged February 15th assault. (Pl.'s Dep. at 90; Disciplinary Hr'g at 25). Plaintiff admits, however, that Mr. Tatum was not present at the time of the incident that gave rise to the disciplinary hearing, and plaintiff's mental state when he was taken to SHU had nothing to do with the incident that gave rise to the disciplinary hearing. (Disciplinary Hr'g at 25). The alleged assault, even if it did occur, happened after the conduct giving rise to the misbehavior report occurred. As such, Defendant Gerwer had a proper basis to deny Mr. Tatum's testimony as his testimony would not be relevant to any issues or incidents that gave rise to the disciplinary hearing. *See, e.g., Kalwasinski v. Morse,* 201 F.3d 103, 108–109 (2d Cir.1999) (indicating that testimony on the record that no one else was present at incident gave rational basis for excluding plaintiff's witnesses as irrelevant and unnecessary). Moreover, at Plaintiff's request, Defendant Gerwer attempted to call another inmate who was present at the scene of the incident. *Id.* at 22. That inmate, however, refused to testify. *Id.* Finally, at Plaintiff's request, Defendant Gerwer called Officers Donovan and Germaine to testify. *Id.* at 32, 41, 43. Thus, Defendant Gerwer's refusal to call Mr. Tatum did not violate Plaintiff's due process rights because Mr. Tatum's testimony was irrelevant, and Defendant Gerwer called other witnesses that Plaintiff requested.

 **\*11** Defendant Gerwer allegedly committed another due process violation when C.O. Germaine was permitted to testify even though he failed to sign the misbehavior report as DOCS regulations require. (Pl.'s Dep. at 85–87). However, violations of state regulations with respect to disciplinary hearings do not, by themselves, necessarily rise to the level of constitutional violations. *See Young v. County of Fulton,* 160 F.3d 899, 902 (2d Cir.1998) (violation of state law is not the "benchmark" for determining whether a constitutional violation has occurred); *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (state law violation does not necessarily rise to the level of a constitutional violation).[9] Plaintiff's claim that this error violated his due process rights

is further undermined because Defendant Germaine testified at Plaintiff's request. (Disciplinary Hr'g at 43).

### D. Impartiality

Finally, Plaintiff alleges that he was deprived of due process because Defendant Gerwer was not fair or impartial. (Compl. at 15; Pl.'s Dep. at 82, 85–87)."An inmate subject to a disciplinary proceeding is entitled to an impartial hearing officer."*Allen v. Cuomo,* 100 F.3d at 253, 259 (2d Cir.1996). An impartial hearing officer is "one who, *inter alia,* does not prejudge the evidence and who cannot say ... how he would assess the evidence he has not yet seen."*Patterson v. Coughlin,* 905 F.2d 564, 569–70 (2d Cir.1990); *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) ("it would be improper for prison officials to decide the disposition of a case before it was heard").

It is well settled, however, "that prison disciplinary officers are not held to the same standard of neutrality as adjudicators in other contexts."*Allen v. Cuomo,* 100 F.3d at 259. "The degree of impartiality required of prison officials does not rise to the level of that required of judges generally."*Id.* An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact. *Francis v. Coughlin,* 891 F.2d 43, 47 (2d Cir.1989); *Clyde v. Schoellkopf,* 714 F.Supp.2d 432, 437–38 (W.D.N.Y.2010).

Plaintiff first accuses Defendant Gerwer of saying on the record that C.O. Nieves was a "good person." (Disciplinary Hr'g at 48). Later, Plaintiff claims that Defendant Gerwer made this statement off the record. (Disciplinary Hr'g at 52). A review of the disciplinary hearing transcript shows Defendant Gerwer never made such a statement on the record.[10] But even if Defendant Gerwer made such a statement, either on the record or off the record, it is not evidence of bias. As the hearing officer, Defendant Gerwer could make credibility determinations. *See Lewis v. Johnson,* No. 9:08–CV–482 (TJM/ATB), 2010 U.S. Dist. LEXIS 98116, at *39–40 n. 25, 2010 WL 3785771, at *11 n. 25 (N.D.N.Y. Aug.5, 2010) (Baxter, Mag. J .) ("the Second Circuit has required that a hearing examiner make an independent assessment of the credibility of certain sources of evidence at a prison disciplinary hearing"), *report-recommendation adopted,* 2010 U.S. Dist. LEXIS 98084, at *1, 2010 WL 3762016, at *1 (N.D.N.Y. Sept.20, 2010) (McAvoy, J.). Moreover, a review of the record belies Plaintiff's accusation that Defendant Gerwer had pre-determined Plaintiff's guilt. The disciplinary hearing spanned

several weeks to locate witnesses and schedule a time for them to testify. Plaintiff was permitted to call witnesses to testify on his behalf, and was permitted to cross-examine the witnesses against him. (Disciplinary Hr'g at 12, 32, 41, 43). The constitutional standard for sufficiency of evidence in a prison disciplinary hearing is whether there is "some" or "a modicum" of evidence to support the hearing officer's determination. *Sira v. Morton,* 380 F.3d 57, 76 (2d Cir.2004) (citing *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). In this case, there was clearly sufficient evidence supporting the hearing officer's determination. Thus, the record establishes that Defendant Gerwer was not biased and did not prejudge the evidence. Accordingly, Defendant Gerwer's summary judgment motion with respect to plaintiff's due process claim should be granted.[11]

### VI. *Qualified Immunity*

**\*12** Defendants argue that they are entitled to qualified immunity with respect to all of Plaintiff's claims. In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right."*Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *modified, Person v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 811, 172 L.Ed.2d 565 (2009) (holding that, "while the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory in all cases")."If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."*Saucier v. Katz,* 533 U.S. at 201. Accordingly, this Court need not address qualified immunity with respect to Plaintiff's claims because, as discussed above, he has not established those alleged violations of constitutional rights.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** Defendants' motion for summary judgment (Dkt. No. 39) be **GRANTED** and the complaint be **DISMISSED IN ITS ENTIRETY .**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette,*

*984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 7629513

Footnotes

1  Plaintiff was deposed on February 23, 2010 (Dkt. No. 39–3), and this court has incorporated facts that were brought out in plaintiff's deposition.

2  All references to page numbers in the Complaint will be to the page numbers assigned by the court's electronic docketing system.

3  *See, e.g., Orraca v. McCreery,* No. 9:04–CV–1183, 2006 U.S. Dist. LEXIS 22941, 2006 WL 1133254, at *6 (N.D.N.Y. Apr.25, 2006)* (dismissing claim against defendant where defendant named in complaint but complaint and supporting documents "fail[ed] to disclose any basis on which to conclude" that defendant was personally involved in the alleged unlawful conduct); *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999)* ( "Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."), *aff'd,*210 F.3d 354 (2d Cir.2000).

4  Plaintiff also appears to assert a conditions of confinement claim. (Compl. at 14). Plaintiff, however, has failed to make any allegations about how any of the named defendants are related to a possible condition of confinement claim. Accordingly, the Court will only address the claims asserted against the named defendants.

5  Contrary to this purported advice, DOCS regulations clearly permit an inmate to file harassment grievances. 7 NYCRR § 701.8; see also *id.* § 701.2(e) (defining "harassment grievances" as "those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate").

6  Captain J.R. Raymond also responded to an April 29, 2008, letter of complaint that Plaintiff sent to Superintendent Lape. (Compl. at 38, Ex. 8). Even if the April 29 letter could be considered a grievance complaint, it would likewise be time-barred under 7 NYCRR § 701.6(g)(1)(i)(a).

7  *See Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005)* ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,'... and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account."(citation omitted).*See also Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)* ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case").

8  Plaintiff could not remember the exact time in March that he was able to purchase the stamps. (Pl.'s Depo. at 102).

9  "While failure to adhere to regulations does not itself give rise to a claim under 42 U.S.C. § 1983, it may constitute evidence of a constitutional deprivation."*Samuels v. Selsky,* No. 01 Civ. 8235, 2002 U.S. Dist. LEXIS 17089, 2002 WL 31040370, at *13 n. 11 (S.D.N.Y. Sept. 12, 2002)* (citing *Duckett v. Ward,* 458 F.Supp. 624, 627 (S.D.N.Y.1978)).

10  Plaintiff, however, kept accusing defendant Gerwer of stating that fact. (Disciplinary Hr'g at 48, 50). At one point, plaintiff stated that "I object to this Hearing Officer on the grounds as she said on the record that Ms. Nieves is a good person.... so therefore I'm feeling like she feels like I'm the bad person."*Id.* at 48. Defendant Gerwer then stated that she wanted to "clarify for the record" that she was "an unbiased Tier Hearing Officer." *Id.* This court cannot find any statement on the record, made by Defendant Gerwer, that Officer Nieves was a "good person." Later during the hearing, Defendant Gerwer interrupted plaintiff and stated that "I said that 'the testimony of Ms. Nieves was believable to this Tier Hearing Officer."*Id.*

11  In his response to the summary judgment motion, Plaintiff asserts that Defendant Gerwer and others were engaged in a conspiracy to deprive him of his constitutional rights. (Dkt. No. 43 at 12). A civil rights conspiracy must be proven with specificity, as bare claims of illegal agreement, supported only by allegations of conduct easily explained as individual action, is insufficient. *See Iqbal v. Hasty,* 490 F.3d 143, 177 (2d Cir.2007), *rev'd on other grounds sub nom.Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir.1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end."*Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999)* (citations omitted). Conclusory, vague, and general allegations, such as those in this Plaintiff's response, are insufficient to support a civil rights conspiracy claim. *Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir.2002); *X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 71 (2d

Cir.1999). In any event, as discussed herein, Plaintiff has not asserted any viable substantive constitutional claims that would support a conspiracy claim.

---

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3729362
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Marc LEWIS, Plaintiff,

v.

MURPHY, Captain, Coxsackie Correctional
Facility; J. Lewis, Corrections Counselor,
Coxsackie Correctional Facility; Matthews, Deputy
Superintendent for Administration, Coxsackie
Correctional Facility; Christopher Miller, Deputy
Superintendent for Security, Coxsackie Correctional
Facility; Eric G. Gutwein, Commissioner
Hearing Officer, N.Y.S., D.O.C.C.S., Defendants.

No. 9:12–CV–00268 (NAM/CFH).
|
Signed July 24, 2014.
|
Filed July 25, 2014.

**Attorneys and Law Firms**

Marc Lewis, Attica, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Joshua E. McMahon, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

### *ORDER*

NORMAN A. MORDUE, Senior District Judge.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Christian F. Hummel,
duly filed on the 27th day of June 2014. Following fourteen
(14) days from the service thereof, the Clerk has sent me
the file, including any and all objections filed by the parties
herein.

After careful review of all of the papers herein, including
the Magistrate Judge's Report–Recommendation, and no
objections submitted thereto, it is

ORDERED that:

1. The Report–Recommendation is hereby adopted in its
entirety.

2. The defendants' motion for summary judgment (Dkt. No.
46) is granted and the Clerk shall enter judgment accordingly.

3. The Clerk of the Court shall serve a copy of this Order upon
all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION AND ORDER [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* Marc Lewis ("Lewis"), an inmate currently
in the custody of the New York State Department of
Correctional and Community Supervision ("DOCCS"),
brings this action pursuant to 42 U.S.C. § 1983 alleging
that defendants, five DOCCS employees, violated his
rights under the Fourteenth Amendment. Compl. (Dkt. No.
1). Presently pending is defendants' motion for summary
judgment pursuant to Fed.R.Civ.P. 56. Dkt. No. 46.Lewis
opposes and defendants replied. Dkt. Nos. 57, 61.For the
following reasons, it is recommended that defendants' motion
be granted.

### I. Background

The specific facts of the case are set forth in the Report–
Recommendation and Order filed February 28, 2012,
familiarity with which is assumed. *See*Dkt. No. 39 (Report–
Recommendation); Dkt. No. 43 (Memorandum–Decision and
Order). The facts are related herein in the light most favorable
to Lewis as the non-moving party. At all relevant times,
Lewis was an inmate at Coxsackie Correctional Facility
("Coxsackie").

### A. November 5, 2011 Letter

On November 5, 2011, Lewis was watching television when
non-party Correctional Officer Whit ("Whit") changed the
channel on the television that Lewis was watching. Dkt. No.
46–9 at 2. Lewis wrote a letter to non-party Superintendent
Martuscello ("Martuscello") complaining about the incident
and stated that Whit harassed and intimidated him. Compl.

¶ 1. Lewis indicated that he would "blow the whistle on a lot of other wrong doings in this facility if need be."Dkt. No. 46–9 at 4. Lewis further indicated that he feared correctional officers would retaliate against him because he filed this complaint. *Id.* at 3. Lewis sent a copy of this letter to non-party Commissioner Fisher. Lewis Dep. # 1 (Dkt. No. 46–6) at 43:8–14.On November 7, 2011, Lewis was taken from his cell and told by non-party Sergeant Martin that he was being placed under keeplock [2] status for threats Lewis made against someone in the administration building. *Id.* at 27:14–22.At that time, Lewis had yet to receive a copy of the misbehavior report. *Id.* at 28:11–15.Based on the content of the November 5, 2011 letter, Lewis was charged with making threats and attempting to bribe and extort personnel.Dkt. No. 46–9 at 1.

### B. Tier III Disciplinary Hearing

**\*2**  On November 10, 2011, Lewis was escorted by non-party Correctional Officer Stevenson ("Stevenson") to attend his disciplinary hearing before defendant Captain Murphy ("Murphy"). Lewis Dep. # 1 at 34:8–12, 35:12–13. Murphy started the recording, explained the hearing process, and took Lewis's plea. *Id.* at 35:17–22.Lewis advised Murphy that he had not been served with a copy of the misbehavior report and had not yet been provided inmate assistance. Compl. ¶ 4; Murphy Decl. (Dkt. No. 46–22) ¶ 8. Murphy attested that he immediately stopped the hearing and directed Stevenson to provide Lewis with a copy of the misbehavior report and to arrange for the plaintiff to receive inmate assistance. Murphy Decl. ¶¶ 8, 11. Lewis also objected to Murphy being the officer who reviewed the misbehavior report and authorized Lewis to be placed in keeplock pending a disciplinary hearing, and the hearing officer.*Id.* ¶ 9. According to DOCCS Directive 4932, 251–2.2(f) Murphy could not serve as both the reviewing and hearing officer on the same misbehavior report. Dkt. No. 46–12 at 4. Lewis was then brought back to his cell to review the misbehavior report and receive inmate assistance. Compl. ¶ 5.

### 1. Inmate Assistance

Defendant Corrections Counselor Jackie Lewis ("Counselor Lewis") was assigned as Lewis's employee assistant. Lewis Decl. (Dkt. No. 46–14) ¶ 4. On November 10, 2011, Counselor Lewis arrived at Lewis's cell to help prepare a defense for his hearing. *Id.* ¶ 7. During the meeting, Lewis requested that Martuscello and Fischer be called as witnesses

and asked for the name of the review officer who authorized his keeplock confinement. *Id.* ¶ 8; Lewis Dep. # 1 at 40:8–16. Counselor Lewis indicated that Murphy was the reviewing officer and took note of the witnesses whom Lewis wanted to question. Lewis Dep. # 1 at 40:15–17; Dkt. No. 46–15.Lewis also stated that he requested an explanation of the charges but Counselor Lewis said she was not going to do that because she was trying to go home. Compl. ¶¶ 7–8. Since Counselor Lewis did not meet Lewis's standards for assistance, Lewis did not sign the inmate assistance form and Counselor Lewis left the cell at that time. *Id.* ¶ 8. Counselor Lewis maintains that Lewis never asked her for definitions or an explanation of the charges. Lewis Decl. ¶ 9.

### 2. Hearing Extension

On November 10, 2011, a request for an extension of the Tier III disciplinary hearing was filed because Lewis was going to be in court from November 14, 2011 to November 18, 2011 and no staff was available to conduct the hearing before that time. Dkt. No. 46–17; Compl. ¶ 10. The request indicated that defendant Commissioner's Hearing Officer Gutwein ("Gutwein") was the hearing officer and that the hearing had not commenced. Dkt. No. 46–17.Lewis contends that defendant Deputy Superintendent for Administration Matthews ("Matthews") had filed the request. Compl. ¶ 10. Lewis believes that the request contained false information because Murphy began the hearing on November 10, 2011 and Lewis was only in court from November 14, 2011 to November 16, 2011. *Id.* Matthews attested that Lewis is mistaken about who wrote the report. Matthews Decl. (Dkt. No. 46–16) ¶¶ 8–10. Matthews explained that although the request indicates "Matthew" as the contact person, extension requests are filed by clerical staff in Coxsackie's Discipline Office; thus the reference to "Matthew" refers to someone in that office, and not Matthews. *Id.*

**\*3**  Later on November 10, 2011, Lewis wrote a letter to Martuscello explaining his November 5, 2011 letter and objecting to Murphy being the hearing officer. Dkt. No. 46–19.Martuscello directed defendant Deputy Superintendent Miller ("Miller") to respond to the letter. Miller Decl. (Dkt. No. 46–18) ¶ 7. By letter dated November 15, 2011, Miller informed Lewis that Gutwein was assigned as the hearing officer. *Id.;* Dkt. No. 46–20.

### 3. Hearing on November 21, 2011

On November 17, 2011, a second request to extend the date of the disciplinary hearing to November 21, 2011 was filed because no hearing officer was available to conduct the hearing before that time. Dkt. No. 46–13.On November 21, 2011, Gutwein conducted the disciplinary hearing for Lewis. Hr'g Tr. (Dkt. No. 46–10) at 2. [3] Lewis pleaded not guilty to the charges against him.*Id.* at 3. Lewis objected to: (1) Murphy commencing a disciplinary hearing concerning the same misbehavior report on November 10, 2011; (2) Murphy being both the reviewing and hearing officer; (3) Gutwein commencing the hearing more than seven days after placement in keeplock; and (4) Counselor Lewis providing inadequate assistance because she did not fulfill his requests. *Id.* at 4.

Lewis requested that Counselor Lewis, Murphy, Stevenson, Fischer, Martin, and Martuscello be called as witnesses. Hr'g Tr. at 8. Lewis also requested that the November 5, 2011 letter be produced as evidence. *Id.* Gutwein noted for the record that the November 5, 2011, letter was placed in the hearing packet and denied Lewis's request to have the log books produced as evidence. *Id.* at 8, 19.Gutwein denied Lewis's request to call Murphy, Stevenson, and Counselor Lewis as witnesses on relevance grounds as Lewis wanted them to testify to the defects of the disciplinary hearing. Gutwein Decl. (Dkt. No. 46–8) ¶ 28; Hr'g Tr. at 19, 20. Since Gutwein called Martin to testify to the misbehavior report, Gutwein declined to call Martuscello and Fischer as witnesses for their testimonies would be duplicative. Hr'g Tr. at 8, 19, 20.

Gutwein produced Martin and asked him questions concerning the grounds for authoring the misbehavior report. Hr'g Tr. at 9. Martin explained that Lewis's November 5, 2011 letter contained statements threatening actions if certain demands were not met and Lewis would "blow the whistle if need be."*Id.* Lewis was afforded an opportunity to direct questions at Martin through Gutwein. *Id.* Gutwein denied Lewis's request to have the definitions of bribery, extortion, and threats because the definitions would be irrelevant to the incident in the report. *Id* . at 19.

Gutwein then made a written disposition and found Lewis guilty of the charges based on: (1) the misbehavior report, which stated that Lewis would retaliate if his demands were not met; (2) review of the November 5, 2011 letter stating that Lewis will retaliate by "blowing the whistle on the wrong

doings by staff"; (3) Martin's testimony stating that the letters contained an ultimatum; (4) Lewis's Testimony stating that the hearing was commenced previously in an improper and untimely manner; and (5) Lewis's disciplinary history. Hr'g Tr. at 20. Gutwein sentenced Lewis to seven months in the Special Housing Unit ("SHU"), [4] along with seven months without packages, commissary privileges, phone privileges, and loss of good time credits. *Id.* Gutwein's determination and sentence was made to impress upon Lewis that it is a serious violation to threaten employees, which would not be tolerated at the correctional facility and that Lewis should modify his behavior in the future. Gutwein Decl. ¶ 12.

### C. SHU conditions

**\*4** On November 30, 2011, Lewis received a letter indicating that he had been unsatisfactorily discharged from the Aggression Replacement Training ("ART") Program because he was going to be in SHU for seven months. Compl. ¶ 39. Nevertheless, Lewis was able to complete this program after his release from SHU. Lewis Dep. # 1 (Dkt. No. 46–6) at 69:7–14.

Since Lewis had his telephone privileges taken away, he was unable to call his sister who was in need of a kidney transplant. Lewis Dep. # 2 (Dkt. No. 46–7) at 12:6–11.Lewis also stated he was in the process of filing paperwork to donate a kidney to his sister but being in SHU prevented him from finishing it. *Id.* at 12:3–5, 13:2–3.By the time Lewis was released from SHU, his sister had received a transplant. *Id.* at 13:4–7.

Lewis was also unable to interact with other inmates by attending group activities such as congregational prayer or group chow during his time in SHU. Compl. ¶ 46. Lewis contends that he was "restrained from practicing the prerequisite [rituals] associated with performing his [religious] prayers" while in SHU because the cells were unsanitary, he had to share a cell, the correctional officers gave him showers whenever they wanted, and he was not given a shower three times a week. Dkt. No. 57 at 15–16.Lewis claims he was prevented from practicing Islam because Muslims must be "in a state of purification in order to pray" and Islamic law states that men must not expose their body from the navel to the knee. Therefore he was restrained from doing "wudu," a ritual where one must wash their whole body in preparation for prayer. *Id.* at 16.

### D. Appeal of the Hearing Disposition

Lewis filed an appeal of the hearing disposition. Compl. ¶ 34. Miller reviewed the appeal and found "the hearing to be without procedural error and the resulting sanctions appropriate." Dkt. No. 46–21. Lewis appealed to non-party Albert Prack, the director of the Special Housing/Inmate disciplinary program, who reversed the guilty determination on the ground that "the evidence used fails to provide enough information to support the charges." Dkt. No. 57 at 49. Therefore, after sixty-nine days, Lewis was released from the SHU. Compl. ¶ 45.

## II. Discussion

Lewis contends that (1) all defendants deprived him of his Fourteenth Amendment rights by denying him procedural due process in connection with the disciplinary hearings at issue and (2) defendants Miller, Matthews, Murphy, and Gutwein conspired against him to cover up Murphy's improper commencement of the hearing.

Defendants seek summary judgment dismissing the complaint in its entirety. Defs.' Mem. of Law (Dkt. No. 46–2) at 3. Defendants specifically move for summary judgment on the grounds that: (1) Lewis failed to establish a due process claim; (2) Lewis failed to establish an actionable conspiracy claim; and (3) defendants are entitled to qualified immunity. *Id.* Additionally, Matthews moves for summary judgment for lack of personal involvement. *Id.*

### A. Legal Standard

 **\*5** A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

When, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude," ... that a *pro se* litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they "suggest,".... At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by *pro se* litigants,"... and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law...."

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. *Anderson,* 477 U.S. at 247–48.

### B. Personal Involvement

 **\*6** "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held

a position of authority. *Id.;Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). [5] Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact. *See e.g., Brown v. Artus,* 647 F.Supp.2d 190, 200 (N.D.N.Y.2009).

Lewis has failed to establish the personal involvement of defendant Matthews in allegedly depriving him of his Fourteenth Amendment due process rights by filing a Tier III hearing extension request. Lewis contends that Matthews filed a Tier III hearing extension form that falsely indicated Gutwein as the hearing officer, the hearing had not yet commenced, and the dates for which Lewis would be out of the facility for an unrelated trial. Compl. ¶ 10. Matthews attested that the notation "Contact: Matthew" on the extension request did not refer to him. Rather, the extension requests are submitted by members of Coxsackie's Discipline Office; hence, it can be inferred that the notation refers to a clerical staff member in the Discipline Office. Therefore, Matthews did not participate directly in the alleged constitutional violation. Matthews Decl. (Dkt. No. 46–16) ¶ 10; Dkt. No. 46–17.Furthermore, Matthews attested that he was not even aware of Lewis's disciplinary hearing or the extension request until after the lawsuit was filed. Matthews Decl. (Dkt. No. 46–16) ¶ 11. Accordingly, Matthews could not have failed to remedy any wrong after he was informed of the violation through a report or appeal, since he was never informed of any violation.

In addition, Matthews did not exhibit deliberate indifference to Lewis's rights by failing to act on information indicating that unconstitutional acts were occurring because Matthews had no information indicating that any wrong was occurring. Matthews also attested that he had no supervisory role over Coxsackie's inmate disciplinary program; consequently, Matthews could not have created or allowed the continuation of a policy or custom under which unconstitutional practices occurred. Matthews Decl. ¶ 2. Lastly, since Matthews held no supervisory authority over the inmate disciplinary program, he could not have been grossly negligent in supervising subordinates who committed the allegedly wrongful acts. *Id.* Lewis points to no evidence in the record to substantiate his assertions that Matthews created the extension request. Moreover, Lewis testified in his deposition and indicated in his response papers that he voluntarily withdraws his claims against Matthews. Lewis Dep. # 2 (Dkt. No. 46–7) at 28; Resp. (Dkt. No. 57) at 9. It is fair to conclude that a rational finder of fact would determine that these assertions are merely speculative and therefore, Lewis cannot establish the personal involvement of Matthews in the alleged unconstitutional actions.

**\*7** Accordingly, defendants' motion on this ground should be granted.

### C. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." *Baker v. McCollan,* 443 U.S. 137, 145 (1979) (internal quotation and citations omitted)."A liberty interest may arise from the Constitution itself, ... or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citations omitted). An inmate retains a protected liberty interest in remaining free from segregated confinement if the prisoner can satisfy the standard set forth in *Sandin v. Conner,* 515 U.S. 472, 483–84 (1995).

### 1. Liberty Interest

To state a claim for procedural due process, there must first be a liberty interest which requires protection. *See generally Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) ("[Procedural] due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered. *Vasquez v. Coughlin,* 2 F.Supp.2d 255, 259 (N.D.N.Y.1998). This standard requires a prisoner to establish that the confinement or condition was atypical and significant in relation to ordinary prison life. *See Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999); *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

While not a dispositive factor, the duration of a disciplinary confinement is a significant factor in determining atypicality. *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000) (citations omitted). The Second Circuit has not established "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights."*Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (citations omitted). Instead, the Second Circuit has provided guidelines that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of confinement relative to ordinary prison conditions is required."*Id.* at 64–65 (citing *Colon,* 215 F.3d at 232). In the absence of a dispute about the conditions of confinement, summary judgment may be issued "as a matter of law." *Id.* at 65 (citations omitted). Conversely, where an inmate is confined under normal SHU conditions for a duration in excess of an intermediate disposition, the length of the confinement itself is sufficient to establish atypicality. *Id.* (citing *Colon,* 215 F.3d at 231–32). Also, "[i]n the absence of a detailed factual record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short—e.g. 30 days—and there was no indication [of] ... unusual conditions." *Harvey v. Harder,* No. 09–CV–154 (TJM/ATB), 2012 WL 4093792, at *6 (N.D.N.Y. July 31, 2012) (citing *inter alia Palmer,* 364 F.3d at 65–66). [6]

**\*8** Defendants contend that Lewis has failed to demonstrate that he suffered from atypical and significant confinement

and therefore cannot establish a protected liberty interest. The Court considers factors such as the length of time the prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" to determine whether the prisoner can establish a liberty interest in remaining free from segregated confinement. *Palmer,* 364 F.3d at 64–65. The length of time in which Lewis spent in confinement was sixty-nine days, which is less than an intermediate amount of time. As such, the length of time itself cannot determine that the confinement is atypical and significant. Therefore, the Court determines if the confinement is atypical and significant by looking at the conditions of the segregated confinement compared to ordinary prison conditions.

Lewis contends that his confinement was atypical and significant because he was deprived of: (1) communications with the outside world; (2) an opportunity to possibly donate a kidney to his sister; (3) religious practices due to the unsanitary conditions of his confinement; (4) participation in the ART program; and (5) interaction with other inmates during activities like group chow and congressional prayer. [7] Dkt. No. 57 at 12–14.In New York, under "normal SHU conditions" an inmate is:

> placed in a solitary confinement cell, kept in his cell for twenty-three hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors were permitted but the frequency and duration was less than in general population. The number of books allowed in the cell was also limited.

*Colon,* 215 F.3d at 230;*see also*N.Y. COMP.CODES R. & REGS. tit. 7, §§ 304.1–.14, 305.1–.6 (setting forth minimum conditions of SHU confinement). Lewis's confinement was of a similar kind, with twenty-three hours a day of isolation, an hour of recreation, and denial of telephone and commissary privileges. Such a claim falls short of establishing a liberty interest as Lewis fails to allege any particular condition or further deprivation outside of those generally applicable to the incidents of prison life in SHU confinement. *Vasquez,* 2 F.Supp.2d at 259; *Frazier,* 81 F.3d at 317 (explaining that while prisoners in SHU may be deprived of "certain privileges that prisoners in the general population enjoy," there exists no liberty interest in remaining a part of the general prison

population); *see also Alvarado v. Halle Hous. Assoc.,* 152 F.Supp.2d 355, 355 (S.D.N.Y.2001) (finding restrictions such as loss of phone privileges, one hour of exercise a day, and three showers per week, fail to meet *Sandin* requirements).

**\*9** Lewis's inability to communicate with the outside world through phone or post for the purpose of transplanting his kidney to his sister or otherwise is not considered atypical because loss of telephone privileges is an aspect of SHU confinement in New York and courts have held that this would not violate an inmate's constitutional rights. *See Long v. Crowley,* No. 09–CV–456(F), 2012 WL 1202181, at \*11 (W.D.N.Y. March 22, 2012) (sixty days in keeplock with loss of telephone and commissary privileges is not a protected liberty interest); *Borsock v. Early,* No. 03–CV–395 (GLS/RFT), 2007 WL 2454196, at \*9 (N.D.N.Y. Aug. 22, 2007) (GLS/RFT) (finding that a ninety-day confinement in SHU with a ninety-day loss of packages, commissary and telephone privileges is insufficient to raise a liberty interest).

Lewis has failed to show that his unsatisfactory discharge from his ART programming due to his placement in SHU posed an atypical and significant hardship. Compl. ¶ 46; *Thompson v. LaClair,* No. 08–CV–37 (FJS/DEP), 2009 WL 2762164, at \*8 (N.D.N.Y. Jan. 30, 2009) (plaintiff's inability to participate in ASAT, ART, and MAWP programs not atypical and significant hardship); *Deutsch v. U.S.,* 943 F.Supp. 276, 280 (W.D.N.Y.1996) (holding that prisoners do not have a protected liberty interest in rehabilitative programs). Moreover, Lewis was able to complete this program after his release from SHU. Lewis Dep. # 1 at 69:7–14.

Lewis's claim that his exclusion from group activities posed an atypical and significant hardship is also unfounded because SHU confinement usually segregates the inmate from the rest of the prison and therefore, the inmate would be unable to participate in group activities. *Sealey v. Coughlin,* 997 F.Supp. 316, 321 (N.D.N.Y.1998) ("plaintiff's administrative segregation in SHU was not an atypical and significant hardship"); *Edmonson v. Coughlin,* 21 F.Supp.2d 242, 249, 250 (W.D.N.Y.1998) (plaintiff's inability to participate in congregate activities such as group counseling, and religious services during his eight months of administrative segregation is not a protected liberty interest).

Lastly, in his opposition papers to the instant motion, Lewis claims that the unsanitary conditions of his cell posed an atypical and significant hardship. Lewis contends that he

was "restrained from practicing the prerequisite [rituals] associated with performing his prayers" while in SHU because the cells were unsanitary, he had to share a cell, the correctional officers gave him showers at their choosing, and he was not given a shower three times a week. Dkt. No. 57 at 15–16.Lewis contends that his cell always accumulated dirt and dust, was cleaned once a week with a dirty sponge without any germicidal cleaning agents, and the water used was "black from prior use of 20 or more cells."*Id.*

Courts have found that the denial of a clean cell and personal hygiene items, as well as double-celling in SHU, do not constitute an atypical and significant hardship. *See Davidson v. Murray,* 371 F.Supp.2d 361, 364, 369 (W.D.N.Y.2005) (concluding that the denial of hygiene items and cleaning materials is not an atypical and significant hardship); *McNatt v. Unit Manager Parker,* No. 99–CV–1397 (AHN), 2000 WL 307000, at \*4, \*8 (D.Conn. Jan. 18, 2000) (finding stained, smelly mattresses, unclean cell, no cleaning supplies for toiletries for six days, no shower shoes, and dirty showers during SHU confinement do not constitute a constitutional violation of due process); *Bolton v. Goord,* 922 F.Supp. 604, 630 (S.D.N.Y.1998) (finding double-celling of inmates is not considered an atypical and substantial hardship). Nevertheless, a finder of fact may conclude that Lewis's cell conditions in conjunction with the denial of three showers a week constitute an atypical and significant hardship that amount to a protected liberty interest. *See, e.g., Welch v. Bartlett,* 196 F.3d 389, 393 (2d Cir.1999) (stating that allegations of "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes" may be a constitutional violation). Drawing every inference in Lewis's favor, these conditions were present during the entirety of Lewis's SHU confinement. Moreover, defendants do not specifically address these allegations with argument or evidence. Therefore the Court will proceed as though Lewis has established a protected liberty interest.

### 2. Procedural Due Process

**\*10** Defendants argue that Lewis was afforded ample due process. While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural due process. *Wolff v.. McDonnell,* 418 U.S. 539, 556 (1974). A prisoner is "entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the

disposition including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v.. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (citations omitted).

### a. Written Notice

In this case, Lewis received proper written notice. An inmate must be provided advance written notice of the charges against him at least twenty-four hours before the disciplinary hearing commences. *Wolff,* 418 U.S. at 563–64. Notice must be written "in order to inform [the inmate] of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564.When Lewis was brought to the hearing before Murphy on November 10, 2011, Lewis had not yet received written notice of the charges. Murphy attested that once Lewis stated he did not receive a copy of the misbehavior report or inmate assistance, Murphy stopped the hearing immediately. Murphy attested that no testimony was taken, he did not review any documentary evidence other than the misbehavior report, and did not discuss the statements in the misbehavior report with Lewis. Murphy Decl. ¶ 16. Lewis was then provided a copy of the misbehavior report and inmate assistance on the same day. On November 21, 2011, Gutwein took over Lewis's Tier III disciplinary hearing. Even assuming Murphy had commenced the hearing, the ultimate penalty imposed on Lewis was by Gutwein based on the evidence presented on November 21, 2011. Lewis received a copy of the misbehavior report on November 10, 2011, well in advance of the November 21, 2011 hearing date. As such, Lewis received advanced written notice of the charges against him.

Accordingly, defendants' motion on this ground should be granted.

### b. Opportunity to Call Witnesses and Present Documentary Evidence

Lewis contends that he was deprived of an opportunity to call all his requested witnesses and present some documentary evidence. However, "[i]t is well settled that an official may refuse to call witnesses as long as the refusal is justifiable [such as] ... on the basis of irrelevance or lack of necessity." *Scott v. Kelly,* 962 F.2d 145, 146–47 (2d Cir.1992). With respect to documentary evidence, Lewis requested the admission of the logbooks as evidence to show that he had already been taken for a disciplinary hearing regarding the

same misbehavior report. Hr'g Tr. at 19. Gutwein correctly denied this request because they were irrelevant to the charges in the misbehavior report and would not have aided in Lewis's defense to such charges. Gutwein Decl. ¶¶ 33–34. As for the November 5, 2011 letter, Gutwein allowed for a copy of it to be placed in the hearing packet as evidence. Hr'g Tr. at 8.

**\*11** As for witnesses, Gutwein permitted Martin to testify at Lewis's disciplinary hearing but denied the request for Murphy, Stevenson, and J. Lewis on relevance grounds because their testimonies would have concerned the alleged defects in the disciplinary hearing rather than the charges giving rise to the hearing. Gutwein Decl. ¶ 28. Furthermore, since Martin was to testify to the content of the November 5, 2011 letter, Gutwein denied testimonies from Martuscello and Fischer on the grounds that they would be unnecessary and duplicative. *Id.* ¶ 32.

Lewis was provided with an opportunity to question Martin through Gutwein. "While inmates do have the right to question witnesses at their disciplinary hearings, that right is not unlimited and its contours are under the discretion of prison officials." *Rivera v.. Wohlrab,* 232 F.Supp.2d 117, 125 (S.D.N.Y.2002). Thus, Gutwein retained the authority to administer the questioning in a manner he saw fit. Gutwein did not permit Lewis to ask every question, but Gutwein offered reasoning for the denial of certain questions that Lewis wanted to ask. Hr'g Tr. at 9–18. A review of the hearing transcript shows that Lewis was permitted to question Martin rather extensively until Lewis was finished. *Id.* As such, Lewis was provided an opportunity to call witnesses and present documentary evidence. *Sira,* 380 F.3d at 69.

Accordingly, defendants' motion on this ground should be granted.

### c. Fair and Impartial Hearing Officer

Lewis contends that Gutwein was not an impartial hearing officer because Gutwein had not allowed Lewis to call his requested witnesses and denied him the standard and legal definitions of bribery, extortion, and threats. Prisoners have a constitutional right to a fair and impartial hearing officer. *See, e.g., Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004). However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges ... [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators

in other contexts."*Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996) (citations omitted). The Supreme Court held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] .." and the Second Circuit has held that the test is whether there was " 'reliable evidence' of the inmate's guilt."*Luna v. Pico,* 356 F.3d 481, 487–88 (2d Cir.2004); *see also Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985).

As discussed *supra,*"[i]t is well settled that an official may refuse to call witnesses as long as the refusal is justifiable [such as] ... on the basis of irrelevance or lack of necessity."*Scott v. Kelly,* 962 F.2d 145, 146–47 (2d Cir.1992). Therefore, Gutwein was within his discretion to deny the calling of certain witnesses and the admission of certain evidence.

**\*12** Even though Lewis's guilty determination was reversed, it is not clear evidence that Gutwein was not a fair and impartial hearing officer. The determination was reversed on the grounds that there was insufficient evidence to support the charges, not on any procedural defects. Dkt. No. 57 at 49.The record shows no indication that Gutwein was biased and failed to serve a fair and impartial hearing officer. It is unclear to the Court how the denial of the requested definitions served as evidence of bias on Gutwein's part. Rather, it is clear from the hearing transcript that Gutwein allowed Lewis to state all of his objections for the record and question Martin as much as he needed to. *See generally* Hr'g Tr.

Gutwein had reliable evidence of Lewis's guilt, which is presented in his statement of the evidence relied upon. Gutwein relied on the statements in the November 5, 2011 letter that stated Lewis would 'blow the whistle' on wrongdoings in the facility and Martin's testimony regarding the ultimatums made by Lewis. Hr'g Tr. at 20–21. Lewis had admitted to writing the November 5, 2011 letter. *Id.* at 6. Gutwein's determination was made to impress upon Lewis that it is a serious violation to threaten employees, which would not be tolerated at the correctional facility and that he should modify his behavior in the future. Lewis points to no evidence in the record to show that Gutwein came to his determination improperly. As such, despite Lewis's contentions of bias, the record is clear that there is no question of material fact regarding the process that Lewis was provided.

Accordingly, defendants' motion on this ground should be granted.

#### d. Written Statement of Disposition

It is undisputed that Lewis received a written statement of the hearing disposition. On November 21, 2011, Lewis was present when Gutwein rendered his decision on the misbehavior report. Hr'g Tr. at 20–21. The record indicates that Lewis received a written statement of the evidence relied upon and the reasons for the disciplinary action. *Id.;* Dkt. No. 46–11 at 9. Thus, Lewis was provided with a written statement of the Tier III disciplinary hearing disposition. *Sira,* 380 F.3d at 69.

Accordingly, defendants' motion on this ground should be granted.

#### e. Inmate Assistance

"An inmate's right to assistance with his disciplinary hearing is limited."*Neree v. O'Hara,* No. 09–CV–802 (MAD/ATB), 2011 WL 3841551, at \*13 (N.D.N.Y. July 20, 2011) (*Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993)). This Circuit has held that an assistant is constitutionally necessary when the plaintiff is confined in SHU and unable to marshal evidence and present a defense. *Id.* (citation omitted). In such a case, the assistant need only perform what the plaintiff would have done but need not go beyond the inmate's instructions.*Lewis v. Johnson,* No. 08–CV–482 (TJM/ATB), 2010 WL 3785771, at \*10 (N.D.N.Y. Aug. 5.2010) (citing *Silva,* 992 F.2d at 22). Furthermore, "any violations of this qualified right are reviewed for 'harmless error.' " *Clyde v. Schoellkopf,* 714 F.Supp.2d 432, 437 (W.D.N.Y.2010) (citing *Pilgrim v. Luther,* 571 F.3d 201, 206 (2d Cir.2009)). Lewis was confined in SHU from November 7, 2011, onward and thus was entitled to an inmate assistant. Dkt. No. 46–12 at 5; N.Y. COMP.CODES R. & REGS. tit. 7 § 251–4.1(a)(4).

**\*13** Lewis alleges that he was deprived of adequate inmate assistance. Lewis first met with his inmate assistant, Counselor Lewis, on November 10, 2011. According to Lewis, Counselor Lewis refused to give him definitions of the charges against him and interview potential witnesses. Counselor Lewis denies that she was asked to give explanations of the charges and notes that the alleged request is not indicated on the assistant form. Lewis Decl. ¶ 9; Dkt. No. 46–17.Gutwein had also denied Lewis's request for

the definitions of threats, bribery, and extortion during the hearing on relevance grounds.

Taking Lewis's version of events as true, even if Counselor Lewis failed to provide such definitions of the charges, Lewis does not demonstrate that he was somehow prejudiced as a result of this error, and does not show that he was unable to present a defense or that the outcome of the hearing would have been different had Counselor Lewis provided such definitions. *Clark v. Dannheim*, 590 F.Supp.2d 426, 429–31 (W.D.N.Y.2008) ("To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing."(citation omitted)).

Furthermore, Lewis was able to present a defense and pose questions to Martin that evinced an understanding of the charges. *See generally* Hr'g Tr. at 5–18. For example, Lewis asked Martin whether the November 5, 2011 letter contained any threats of harm, which suggests that Lewis had some understanding of what constitutes "threat." *Id.* at 9. Lewis then asked "did I—anything of value to or from—Martuscello, yourself or anyone," which shows that Lewis understood the nature of the extortion charge. *Id.* at 10. Lastly, Lewis asked "did I give or attempt to give—money, gifts,—or anything worth—value ... to ... Superintendent Martuscello and—or—administrator ...." This demonstrates that Lewis had an understanding of what bribery meant. *Id.* at 11.

Lewis also alleged that Counselor Lewis failed to interview Martuscello or Fischer but does not show how this would have changed the outcome of the hearing or how this failure prejudiced him as a result. Therefore, any shortcomings in the assistance rendered by Counselor Lewis was harmless error and does not rise to the level of a due process violation. *Hernandez v. Selsky*, 572 F.Supp.2d 446, 455 (S.D.N.Y.2008) (plaintiff failed to show how outcome of hearing would have been different had employee assistant interviewed witnesses, and thus any alleged inadequate assistance was harmless error not warranting denial of summary judgment). Additionally, even though Gutwein failed to provide an explanation of the charges, Lewis was not prejudiced as a result because Gutwein described in his hearing disposition the evidence he relied upon to determine that Lewis was guilty. An explanation of these charges to Lewis would not have changed the evidence which Gutwein had relied upon. As such, Lewis's due process claim based on inadequate inmate assistance must fail.

**\*14** Accordingly, defendants' motion for on this ground should be granted.

### f. Timeliness

Lewis contends that the Tier III disciplinary hearing concerning the November 7, 2011 misbehavior report was not commenced in a timely manner because his hearing did not begin until November 21, 2011. Where an inmate is confined pending a disciplinary hearing, the hearing must commence within seven days of his initial confinement and conclude within fourteen days of the writing of the misbehavior report. N.Y. COMP.CODES R. & REGS. tit. 7 § 251–5.1(a)(b); [8] Dkt. No. 46–12 at 5–6. The Commissioner of Correctional Services or his designee must authorize any delay beyond those time limits. N.Y. COMP.CODES R. & REGS. tit. 7 § 251–5.1(a)(b); Dkt. No. 46–12 at 5–6.

Lewis's Tier III hearing was timely commenced. Although Lewis's hearing was initially required to commence by November 14, 2011, an extension was granted until November 18, 2011 because Lewis was scheduled to be out of the facility from November 14, 2011 through November 18, 2011, and no staff was available to conduct the hearing before that time period. Gutwein Decl. ¶ 21; Dkt. No. 46–13. A second request was made on November 17, 2011 because no hearing officer was available to conduct plaintiff's hearing until November 21, 2011. Gutwein Decl. ¶ 22; Dkt. No. 46–13. DOCCS Central Office Special Housing Unit granted the facility permission to commence Lewis's hearing by November 21, 2011 and the hearing commenced on that date. Dkt. No. 46–13. Therefore, the hearing was commenced in a timely manner in accordance with the pertinent New York regulations.

Accordingly, defendants' motion on this ground should be granted.

### D. Conspiracy

Lewis claims that defendants Murphy, Miller, and Gutwein conspired to deny him procedural due process. To establish a claim under Section 1985(3), a plaintiff must allege that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that

goal. *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. *Ciambriello,* 292 F.3d at 325. Therefore, the plaintiff must provide some details of the time, place, and the alleged affects of the conspiracy, which would include facts to demonstrate that there was an agreement between the defendants to achieve some unlawful goal. *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999) (citations omitted).

In this case, defendants all deny conspiring to cover up the hearing that was allegedly commenced by Murphy. Lewis Dep. # 2 at 1–8; Gutwein Decl. ¶ 39; Miller Decl. ¶ 17; Matthews Decl. ¶ 12; Murphy Decl. ¶ 11. Lewis points to no evidence in the record to show that there was an agreement between the defendants to deprive him of his constitutional rights. Lewis alleges that the defendants conspired to cover up Murphy's attempt to start the Tier III disciplinary hearing because Murphy could not have served as the hearing officer. Murphy stated that he stopped the hearing once he realized that Lewis had not received a copy of the misbehavior report. Lewis was provided a copy and the hearing commenced on November 21, 2011 with Gutwein as the hearing officer. Therefore, there was no wrongdoing on Murphy's part for the defendants to cover up.

 **\*15** Lewis alleges that there must have been an agreement to conspire against him because of the alleged discrepancies and false statements in the extension requests, Miller's letter ruling on the appeal, and other prison forms. These allegations are conclusory and do not provide any evidence that the defendants made an actual agreement to deprive Lewis of his constitutional rights. Furthermore, as discussed *supra,* there was no deprivation of Lewis's constitutional rights and therefore there can be no valid conspiracy claim.

Moreover, Lewis's conspiracy claim fails on the grounds that it is barred by the intra-corporate conspiracy doctrine. The doctrine states that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Nassau Cnty. Employee "L" v. Cnty. of Nassau,* 345 F.Supp.2d 293, 304 (E.D.N.Y.2004) (internal citations and quotation marks omitted). The doctrine applies when officers and officials are working in the scope of their official duties. *Id.* Although the doctrine began in cases involving corporations, the doctrine has been extended where there are allegations of conspiracy between a public entity and its employees. *Id.; see also Everson v. New York City Transit Auth.,* 216 F.Supp.2d 71, 76 (E.D.N.Y.2002) (collecting cases). This doctrine would therefore exclude conspiracy claims against employees of DOCCS working within the scope of their employment. *Hartline v. Gallo,* 546 F.3d 95, 99, n. 3 (2d Cir.2008) (citations omitted); *Little v. City of New York,* 487 F.Supp. 426, 441–42 (S.D.N.Y.2007) (citations omitted). There is an exception to the doctrine when the individuals of the conspiracy are "pursuing personal interests that are separate and apart from the entity." *Nassau Cnty. Employee "L",* 345 F.Supp.2d at 304. Furthermore, personal bias is not considered a personal interest and is not within the exception to the intra-corporate conspiracy doctrine. *Everson,* 216 F.Supp.2d at 76 (citations omitted).

In this case, Lewis's allegations of conspiracy are against defendants who were all employees of DOCCS, which is one public entity, who were acting within the scope of their employment when they filed extension requests and other prison forms. Therefore, they are legally incapable of conspiring against each other. Lewis makes no allegation that the defendants were pursuing personal interest apart from their official duties. As such, Lewis's conspiracy claim fails as a matter of law.

Accordingly, defendants' motion on this ground should be granted.

### E. Qualified Immunity

Defendants contend that even if Lewis's § 1983 Fourteenth Amendment and conspiracy claims are substantiated, they are nevertheless entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229–30 (N.D.N.Y.2002) (McAvoy, J.), *aff'd,* 80 F. App'x 146 (2d Cir.2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990) (internal citations omitted)). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Only if there is a constitutional

violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230.

 *16 Here, the second prong of the inquiry need not be addressed with respect to Lewis's Fourteenth Amendment and conspiracy claims against the defendants because, as discussed *supra,* it has not been shown that defendants violated Lewis's Fourteenth Amendment rights or conspired against Lewis to violate his Fourteenth Amendment rights.

Accordingly, defendants' motion on this ground should be granted.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 46) is **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation."N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Dated: June 27, 2014.

**All Citations**

Slip Copy, 2014 WL 3729362

Footnotes

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    "Keeplock" is a form of disciplinary confinement where an inmate is confined in his cell for the duration of the disciplinary sanction.*Gittens v. Lefevre,* 891 F.2d 38, 39 (2d Cir.1989) (citing N.Y. COMP.CODES R. & REGS. tit. 7, § 251–1.6 (2012)).

3    The page numbers following "Hr'g Tr." refer to the pagination of the header numbers generated by CM/ECF, not the individual transcripts.

4    SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population ...." N .Y. COMP.CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

5    Various courts in the Second Circuit have postulated how, if at all, the *Iqbal* decision affected the five *Colon* factors which were traditionally used to determine personal involvement. *Pearce v. Estate of Longo,* 766 F.Supp.2d 367, 376 (N.D.N.Y.2011), *rev'd in part on other grounds sub nom., Pearce v. Labella,* 473 F. App'x 16 (2d Cir.2012) (recognizing that several district courts in the Second Circuit have debated *Iqbal*'s impact on the five *Colon* factors); *Kleehammer v. Monroe Cnty.,* 743 F.Supp.2d 175 (W.D.N.Y.2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster ...."); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010) (disagreeing that *Iqbal* eliminated *Colon* 's personal involvement standard).

6    All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

7    Lewis may be attempting to raise First Amendment claims based on the denial of attendance to congregated services and sanitary conditions of his SHU cell. However, these claims were not specifically pled in the original complaint. Moreover, Lewis made no attempt to amend his complaint to include these claims. Therefore, the Court addresses these issues as arguments for establishing a liberty interest for purposes of a Fourteenth Amendment claim.

8    Section 251–5.1, states that

     (a) Where an inmate is confined pending a disciplinary hearing or superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said disciplinary hearing or superintendent's hearing, but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee.

(b) The disciplinary hearing or superintendent's hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee. Where a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals.

(c) Violation hearings must be completed within seven days of the writing of the misbehavior report.

N.Y. COMP.CODES R. & REGS. tit. 7 § 251–5.1.

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4676569
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

James O. MURRAY, III, Plaintiff,

v.

T. ARQUITT, Correction Officer, Upstate
Correctional Facility; Norman Bezio, Director
Special Housing, Inmate Disciplinary Programs,
New York State Department of Correctional
Services; B. Bogett, Correction Officer, Upstate
Correctional Facility; B. Clark, Correction
Officer, Upstate Correctional Facility; B. Fischer,
Commissioner, New York State Department
of Correctional Services; B. Grant, Correction
Officer, Upstate Correctional Facility; J. Herbert,
Sergeant, Upstate Correctional Facility; J. Laramay,
Lieutenant, Upstate Correctional Facility; F.
Manley; J. McGaw, Correction Officer, Upstate
Correctional Facility; Albert Prack, Acting Director
Special Housing, Inmate Disciplinary Program,
New York State Department of Correctional
Services; T. Ramsdell, Correction Officer, Upstate
Correctional Facility; D. Rock, Superintendent,
Upstate Correctional Facility; C. Rowe, Correction
Officer, Upstate Correctional Facility; Stanley
Tulip, Correction Officer, Upstate Correctional
Facility; Uhler, Deputy Supt. of Sec. Serv., all in
their Individual and Official Capacities, Defendants.

No. 9:10–CV–1440 (NAM/CFH).
|
Signed Sept. 17, 2014.
|
Filed Sept. 18, 2014.

**Attorneys and Law Firms**

James O. Murray, III, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State
of New York, Colleen D. Galligan, Esq., Assistant Attorney
General, Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

Hon. NORMAN A. MORDUE, Senior District Judge.

**INTRODUCTION**

**\*1** Plaintiff, an inmate in the custody of the New York
State Department of Corrections and Community Supervision
("DOCCS"), brought this *pro se* action under 42 U.S.C.
§ 1983. Defendants' motion for partial summary judgment
(Dkt. No. 103) was referred to United States Magistrate
Judge Christian F. Hummel for a report and recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).
In his Report–Recommendation and Order (Dkt. No. 117)
Magistrate Judge Hummel recommends that the motion be
granted.

Plaintiff has filed objections to the Report–Recommendation
and Order (Dkt. No. 124). Pursuant to 28 U.S.C. § 636(b)
(1)(C), this Court reviews *de novo* those parts of a report
and recommendation to which a party specifically objects.
Where a party interposes only general objections to a report
and recommendation, the Court reviews for clear error or
manifest injustice. *See Davis v. Chapple,* 2010 WL 145298,
*2 (N.D.N.Y. Jan. 8, 2010), *Brown v. Peters,* 1997 WL
599355,*2–* 3 (N.D.N.Y.), *aff'd without op.,*175 F.3d 1007
(2d Cir.1999). As set forth below, the Court accepts the
Report–Recommendation and Order and grants the motion.

**STANDARD ON SUMMARY JUDGMENT MOTION**

Summary judgment is appropriate when there is no genuine
issue with regard to any material fact, and the moving party
is entitled to judgment as a matter of law. *See Celotex
Corp. v.Catrett,* 477 U.S. 317, 322 (1986). Stated otherwise,
summary judgment is appropriate "[w]here the record taken
as a whole could not lead a rational trier of fact to find
for the non-moving party [.]"*Matsushita Elec. Indus. Co. v.
Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). When deciding
a summary judgment motion, the Court must "resolve all
ambiguities and draw all factual inferences in favor of the
party opposing the motion."*McPherson v. Coombe,* 174 F.3d
276, 280 (2d Cir.1999). Where, as here, the nonmovant is
proceeding pro se, the Court must read that party's papers
liberally and interpret them "to raise the strongest arguments
that they suggest."*Id.* (citation omitted).

## DISCUSSION

Plaintiff raises two objections to the Report–Recommendation and Order. First, he objects to dismissal of the Eighth Amendment claims against Corrections Officer T. Ramsdell on the ground of lack of personal involvement. Officer Ramsdell testified at the Tier III hearing that when he arrived at the scene of the altercation in the infirmary, the use of force was over and all he did was "relieve the officers that were holding [plaintiff]." Officer Ramsdell further stated that plaintiff was then placed in a cell with no additional use of force. Officer Ramsdell's testimony is consistent with that of other corrections officers and the various reports of the incident. The Court agrees with Magistrate Judge Hummel that plaintiff's single conclusory statement at the Tier III hearing that at some point during the incident he saw Officer Ramsdell is insufficient under all the circumstances to raise a question of fact on excessive force or failure to intervene, particularly in light of plaintiff's deposition testimony that he named Officer Ramsdell as a defendant solely because his name appeared on the use of force report. Plaintiff's objection cites to no other evidence supporting his claim against Officer Ramsdell. On *de novo* review, reading plaintiff's papers liberally, interpreting them to raise the strongest arguments that they suggest, and resolving all ambiguities and drawing all factual inferences in plaintiff's favor, the Court grants summary judgment dismissing the Eighth Amendment claims against Officer Ramsdell for lack of personal involvement.

 **\*2** Plaintiff's second specific objection to the Report–Recommendation and Order concerns the recommendation that summary judgment be granted dismissing the due process claims against the following defendants: Deputy Superintendent Uhler, who conducted the Tier III hearing; Director of Special Housing/Inmate Discipline Bezio; Acting Director of Special Housing/Inmate Discipline Albert Prack; Superintendent Rock; and Commissioner Brian Fischer. In his objection, plaintiff argues that his due process rights were violated at the Tier III hearing because Deputy Superintendent Uhler should have considered a videotape of plaintiff's medical examination on the day following the alleged incident, and because the following people should have been called as witnesses: Lt. Laramy; Corrections Officers Ramsdell, Manley, and Bogett; Dr. Weisman; Inmates Robertson and Gillard. On *de novo* review, after reading the transcript of the Tier III hearing and reviewing the record, and giving plaintiff all the deference to which he is

entitled as a *pro se* litigant, the Court finds as a matter of law that plaintiff was afforded due process at the Tier III hearing. Further, there is no basis to find personal involvement in any infringement of plaintiff's rights on the part of Director Prack, Superintendent Rock, or Commissioner Fischer.

In addition to the two above-discussed objections, plaintiff merely states that he "objects to the Report–Recommendation and Order in its entirety." In response to this general objection, the Court reviews the remaining issues for clear error or manifest injustice. There is no error or manifest injustice, and the Report–Recommendation and Order is accepted in its entirety.

It is therefore

ORDERED that the Report–Recommendation and Order (Dkt. No. 117) is accepted; and it is further

ORDERED that defendants' motion for partial summary judgment (Dkt. No. 103) is granted; and it is further

ORDERED that summary judgment is granted dismissing all claims against the following defendants: Corrections Officer T. Ramsdell; Director Norman Bezio; Commissioner Fischer; Director Albert Prack; Superintendent Rock; and Deputy Superintendent Uhler; and it is further

ORDERED that summary judgment is granted dismissing the claims against Officer Tulip and Sergeant Herbert for allegedly filing false misbehavior reports against plaintiff; and it is further

ORDERED that all claims against all defendants in their official capacities are dismissed; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this MemorandumDecision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

JAMES O. MURRAY, III,

Plaintiff,

v.

T. ARQUITT, Correction Officer, Upstate Correctional Facility; NORMAN BEZIO, Director Special Housing, Inmate Disciplinary Programs, New York State Department of Correctional Services; B. BOGETT, Correction Officer, Upstate Correctional Facility; B. CLARK, Correction Officer, Upstate Correctional Facility; B. FISCHER, Commissioner, New York State Department of Correctional Services; B. GRANT, Correction Officer, Upstate Correctional Facility; J. HERBERT, Sergeant, Upstate Correctional Facility; J. LARAMAY, Lieutenant, Upstate Correctional Facility; F. MANLEY; J. McGAW, Correction Officer, Upstate Correctional Facility; ALBERT PRACK, Acting Director Special Housing, Inmate Disciplinary Program, New York State Department of Correctional Services; T. RAMSDELL, Correction Officer, Upstate Correctional Facility; D. ROCK, Superintendent, Upstate Correctional Facility; C. ROWE, Correction Officer, Upstate Correctional Facility; STANLEY TULIP, Correction Officer, Upstate Correctional Facility; UHLER, Deputy Supt. of Sec. Serv., all in their Individual and Official Capacities,

**\*3** Defendants. [1]

## REPORT–RECOMMENDATION AND ORDER [2]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Plaintiff *pro se* James O. Murray, III ("Murray"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, sixteen DOCCS employees, violated his rights under the Eighth and Fourteenth Amendments. Compl. (Dkt. No. 1). Presently pending is defendants' motion for partial summary judgment pursuant to Fed.R.Civ.P. 56. Dkt. No. 103. Murray opposes. Dkt. No. 116. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related herein in the light most favorable to Murray as the non-moving party. *See* subsection II(A) *infra.* At all relevant times, Murray was an inmate at the Upstate Correctional Facility ("Upstate").

### A. Assault—Plaintiff's Account

On December 3, 2009, Murray was experiencing chest pains and requested emergency call out. Murray Dep. (Dkt. No. 103–15) at 12–13. Non-party Nurse Travers brought Murray to the infirmary for an EKG. Murray Dep. at 14–18; Dkt. No. 103–11 at 15–16. At the infirmary, medical personnel gave Murray an EKG and concluded that Murray's symptoms resulted from indigestion. Murray Dep. at 24–25; Dkt. No. 103–11 at 20. Non-party Dr. Weissman examined Murray and concluded that there was nothing wrong with Murray. Murray Dep. at 32.

Defendants and Corrections Officers Arquitt and Tulip escorted Murray back to the cellblock. Murray Dep. at 32–33. Murray was handcuffed in the front and had on a waist chain. *Id.* at 23; Dkt. No. 103–11 at 28; *see* Compl. §§ 1–2.Tulip walked behind Murray and Arquitt walked in front of Murray. Dkt. No. 103–11 at 63, 72; *see*Dkt. No. 103–11 at 21. Murray contends that while Arquitt was opening a door, Tulip hit him on the back the head. Murray Dep. at 34–35; *see* Compl. §§ 1–2. Murray believes Tulip then tackled him. Murray Dep. at 53. Murray thought to go through the door because that area was visible to a video camera. *Id.* at 35, 55; Dkt. No. 103–11 at 21. Several corrections officers arrived and proceeded to assault Murray. Murray Dep. at 36.Specifically, Arquitt twisted Murray's ankle. Dkt. No. 103–11 at 21.

Murray was then escorted to the infirmary holding pen. Murray Dep. at 53–54. Murray alleged that, while still in a waist chain and handcuffed, defendants assaulted him in the holding pen. *Id.* at 51–52, 55; Dkt. No. 103–11 at 22. Specifically, Grant pressed down on Murray to the point that Murray could not breathe. Murray Dep. at 52–53. Murray reacted by trying to bite Grant's hand. *Id.* at 66. The officers stood Murray up against a wall. Dkt. No. 103–11 at 23. An unidentified officer ran a finger down Murray's back, hit Murray in the kidney area, spun Murray around, and attempted to hit Murray with his knee. Murray Dep. at 57, 59–60. Murray brought his own knee upward to block his groin area. *Id.* at 60. The officer attempted to hit Murray a few times before Murray fell to the ground. *Id.* at 60–61. The officers proceeded to kick and hit Murray on the floor while calling Murray racial slurs. *Id.* at 63. Defendant Laramay told the officers to knock out Murray's teeth because of Murray's grievance activities. *Id.* at 67. The officers then sat Murray on a bench. *Id.* at 64. Defendant and Sergeant Hebert arrived, called Murray racial and religious slurs, stated "we'll kill

you," and complained about the lawsuits and grievances that Murray had filed. *Id.* Hebert did not use force against Murray. *Id.* at 65.

**\*4** On December 4, 2009, Murray requested sick call. Murray Dep. at 72–73. On December 8, 2009, Murray was taken to the Alice Hyde Medical Center ("Alice Hyde") for medical treatment. *Id.* at 73. Murray alleged that at Alice Hyde, he received surgery, had a tube inserted into him to "suck[ ] the blood out," was prescribed pain medication, and was admitted for three to four days. *Id.* at 73–74. As a result of the assaults, Murray alleges that he sustained broken ribs, a collapsed lung, cuts, bruises, swelling, extreme pain in the back, neck, hip, shoulder, head, mental distress, fear of death, nightmares, flashbacks, sleeping problems, and depression.[3] Compl. ¶¶ 5–6.

### B. Assault—Defendants' Account

Defendants proffer a different account of the use of force incidents. Arquitt and Tulip were escorting Murray from the infirmary and as they approached the fire door, Murray turned around and kicked Tulip in the groin area. Dkt. Nos. 103–7 at 7 (misbehavior report), 8 (unusual incident report), 11 (use of force report), 20, 103–11 at 55, 75. Arquitt had turned his head slightly and saw Murray kicking Tulip. Dkt. No. 103–11 at 75. Murray continued kicking and the three men fell through the door and onto the ground. Dkt. No. 103–7 at 20. Tulip fell onto Murray in an attempt to control Murray's feet but became "incapacitated" and rolled on the ground. Dkt. No. 103–7 at 17; *see* Dkt. No. 103–11 at 55, 65–66. Murray attempted to bite Arquitt, who was at that point positioned around Murray's head and shoulder area. Dkt. No. 103–11 at 76.

Arquitt, along with defendants and Corrections Officers Bogett, Clark, and Grant, forced Murray to the floor using body holds. Dkt. No. 103–7 at 8, 11. Arquitt held down Murray's head with his left hand and applied pressure to Murray's left shoulder with his right hand. *Id.* at 8, 11, 20. Bogett controlled Murray's waist chain with his left hand and placed his left knee on Murray's back. *Id.* at 8, 11, 15. Clark bent Murray's left leg across the back side of the right leg then bent the right leg up into a figure four leg hold. *Id.* at 8, 11, 17.

Hebert arrived and ordered the officers to carry Murray into the infirmary holding pen because Murray was non-complaint. Dkt. No. 103–7 at 8, 11. Bogett grabbed Murray's shirt with his left hand and controlled Murray's right arm

with his right hand. *Id.* at 8, 11, 15. Grant took control of Murray's left arm with both hands to carry him while Arquitt took Murray's legs in his left arms. *Id.* at 8, 11, 20–21. Clark attended to Tulip. *Id.* at 17.

Hebert was in the infirmary holding pen with Murray. Dkt. No. 103–7 at 6 (misbehavior report). Murray refused to comply with staff and attempted to bite and kick Grant. Dkt. Nos. 103–7 at 6, 8, 11, 21, 103–11 at 114. Hebert gave several direct orders to Murray but Murray refused to comply. Dkt. No. 103–7 at 6. Hebert ordered Bogett and Grant to take Murray to the ground and Grant pushed on Murray's upper body while Bogett held onto Murray's legs. Dkt. Nos. 103–7 at 11, 21, 103–11 at 97. Once Murray became complaint, Hebert ordered non-party Corrections Officer McGaw to videotape Murray in the holding pen. Dkt. Nos. 103–7 at 11, 103–11 at 106–07.

**\*5** Defendants and Corrections Officers Manley and Ramsdell responded to the incident, relieved Bogett and Grant, and escorted Murray to see medical personnel. Dkt. No. 103–7 at 18–19. Murray refused to remove his clothing. *Id.* at 8. Medical personnel examined Murray fully-clothed, and noted discoloration at the base of Murray's neck and minor lacerations over the right clavicular area, on and above the bridge of the nose and left eye, to the mid-lower lip, and below the left eye, and on the anterior of the left ear. *Id.* at 8, 12–13. Defendant and Sergeant Rowe supervised Manley and Ramsdell escorting Murray to his cell block. *Id.* at 14, 18–19. Photographs were taken of Murray's injuries on December 3 and 4, 2009. Dkt. Nos. 103–7 at 8, 14, 27–29, 103–10.[4]

Grant and Tulip were transported to Alice Hyde. Dkt. No. 103–7 at 8, 103–9 at 19. Tulip had an injury to the groin and Grant had swelling in the left hand. Dkt. No. 103–7 at 8. Grant and Tulip were out of work for four days. Dkt. Nos. 103–7 at 14, 103–11 at 56. Tulip considered his injury was moderate to severe. Dkt. No. 103–11 at 56. Arquitt had pain in the middle finger and remained on duty. Dkt. Nos. 103–7 at 14, 103–9 at 18.

### C. Tier III Disciplinary Hearing and Appeals

On December 4, 2009, Murray received misbehavior reports from Hebert and Tulip. Compl. ¶ 8. Hebert charged Murray with violent conduct, interference with employee, and refusing direct orders. Dkt. No. 103–7 at 3. Tulip charged

Murray with violent conduct, assault on staff, and interference with employee. [5] *Id.*

Murray was provided with non-party Corrections Officer Fish as an inmate assistant. Dkt. No. 103–7 at 5, 66. Fish met Murray on December 7, 2009.Dkt. No. 103–11 at 4. Fish denied Murray the videotape of the holding pen area for December 4, 2009. Dkt. No. 103–7 at 5. Murray's witness request list included: non-party Inmate Bonaparte; non-party Inmate Robertson; Arquitt; Clark; Grant; Hebert; Tulip; non-party Nurse Administrator Smith; and Travers.*Id.*

On December 17, 2009, defendant Captain Uhler commenced a Tier III disciplinary hearing that concluded on December 30, 2009. Dkt. Nos. 103–11 at 2, 103–12 at 88. Uhler stated that all documents generated from the use of force incidents were provided to Murray. Dkt. No. 103–11 at 9. Such documents included: unusual incident reports; use of force reports; to-and-from memoranda; log book entries; watch commander's log; and misbehavior reports.*Id.*

On December 21, 2009, Murray submitted a written complaint to Uhler. Dkt. No. 103–7 at 33–51. Murray asserts that he received inadequate inmate assistance, was denied the opportunity to present documentary evidence, and Uhler should not have conducted the hearing because Uhler had issued a restraint order against Murray and conducted the investigation. *Id.* at 33; Murray Dep. at 77. Uhler stated that he was not involved in the investigation of the charges. Dkt. No. 103–12 at 87.

### i. Documentary Evidence

**\*6** At the disciplinary hearing's inception, Murray asked for a copy of Directive # 4940, which provides that when an anticipated use of force incident occurs, a video camera would be dispatched to record the incident. Dkt. No. 103–11 at 6. Uhler explained that despite language in the Directive, the area sergeant was first obligated to secure and move Murray to an area that did not jeopardize the safety and security of the facility. *Id.* at 7.

Uhler explained that he would use his discretion in producing any grievances, complaints, and lawsuit correspondences that Murray had filed with respect to the assault incidents as well as medical reports of corrections personnel.Dkt. No. 103–11 at 4–6. Uhler stated there was a video recording of the area outside the infirmary but no recording of the area inside the door. *Id.* at 6. There was handheld camera footage of the escort to the holding pen then back to the prison block, which could be introduced. *Id.*

Uhler stated that the non-audio video recording of the infirmary shows a door abruptly opening with Tulip at one side of the door, bent over on his hands and knees. Dkt. No. 103–11 at 23–24. An officer assisted Tulip. *Id.* at 24. Four staff members tried to force Murray to the ground. *Id.* at 25. Uhler watched the video several times with Murray. *Id.*; Dkt. No. 103–12 at 73–74. Murray contends that Tulip was not in pain before coming out of that door. Dkt. No. 103–11 at 24. It is undisputed that the officers used force against Murray in the hallway but Uhler did not see anyone kicking or punching Murray. *Id.* at 25, 27. This incident lasted approximately one minute. *Id.* at 27–28.

Uhler denied Murray's videotape request of a medical exam that took place on December 4, 2009 because the videotape contained no evidence of the December 3, 2009 incidents. Dkt. No. 103–7 at 59.

### ii. Witnesses

Uhler proceeded to allow ten witnesses to testify. Arquitt, Grant, Hebert, and Smith testified. Dkt. Nos. 103–11 at 71, 96, 103–12 at 5–6, 65.

Bogett testified that he was walking to the infirmary area when he witnessed Murray kicking Tulip. Dkt. No. 103–12 at 43. Murray was on the ground when Bogett responded and Bogett assisted in controlling Murray by holding the waist chain. *Id.* Murray was removed from the area because it was not secure. *Id.* at 44. Bogett assisted in moving Murray to the holding pen and stood him up against a wall. *Id.* at 44–45. Murray attempted to bite Grant and struggled. *Id.* at 45. Hebert ordered Bogett to take down Murray and shortly thereafter Bogett was relieved. *Id.* at 45.

Bonaparte testified that before the December 3, 2009 incidents, he heard Gettman and other nurses talk to Murray, insinuating that Murray would be assaulted. Dkt. No. 103–12 at 48–50.

Clark testified that when he responded to the scene, Murray and other officers were on the ground, Murray was kicking his feet, and an officer was lying across Murray's legs. Dkt. No. 103–12 at 28. Clark did not carry Murray to the holding

pen. *Id.* at 29. Clark testified that Murray was removed from that area, which was considered unsecured. *Id.* at 31, 35.

**\*7** Ramsdell testified that he did not use force on Murray. Dkt. No. 103–12 at 81. When Ramsdell arrived at the scene, the use of force incident was completed and he relieved the officers who held Murray. *Id.* at 82. Ramsdell did not witness the incident itself. *Id.*

Nurse Travers testified that based on Murray's complaints and symptoms on December 3, 2009, she ordered an EKG for Murray. Dkt. No. 103–11 at 39. Travers advised Murray that the nurse at the infirmary would give him an EKG and take a full set of his vital signs. *Id.* at 42. Travers did not speak with Tulip in the infirmary. *Id.* Tulip testified that he did not have a conversation with Travers in the infirmary where Travers stated, "I'd like to get a car started for this [Murray]."*Id.* at 53.

Uhler denied Murray's witness request for: (1) Laramay because he only responded to the first incident and assisted Tulip, was not present during the use of force incident, and did not give any orders to staff; (2) Manley because he was not present at either incident and was only directed to escort Murray following the incidents; (3) Dr. Weissman because she had retired, attempts to contact her were futile, and she was not present during the incidents; (4) Robertson because he was on parole and stated that he did not want to testify; (5) non-party Inmate Gillard because he was contacted and declined to testify. [6] Dkt. Nos. 103–7 at 12, 14, 56–58, 103–12 at 58, 62–64. Uhler indicated he would allow Murray's request to question Rowe; however, Rowe was not produced. Dkt. No. 103–12 at 61–62.

### iii. Warnings

At the disciplinary hearing's inception, Murray asked to call his lawyer as a witness and Uhler denied that request, warning that "[o]utbursts and continued outbursts by yourself are going to result in me giving you a final warning and the next step will be I will remove you from this hearing."Dkt. No. 103–11 at 7–8. However, Uhler stated that his intent was not to remove Murray from the hearing. *Id.* at 8.

At one point, because Murray was having difficulty asking cogent questions, Uhler offered Murray additional time to formulate questions. Dkt. No. 103–11 at 68. Uhler explained that Murray "needed to prepare a defense" as Murray was

"badgering" witnesses. *Id.* However, Murray declined the offer. *Id.* at 69–70. At another point, Uhler stated,

> I warned you on all three days that, do not state policy that's not true. And you expect me to ask the witness about a policy that doesn't exist. I'm not going to discredit staff, and belittle staff based on some makeup believe policy that you believe exists when I ruled on it already telling you it doesn't exist.

Dkt. No. 103–12 at 39.

During the inception of Bogett's testimony, Uhler ejected Murray, stating, "I am not going to continue you to stare down and try to intimate the witnesses of this hearing. I've explained this to you in detail, in detail, alright? So I'll have you removed from this hearing at this time."Dkt. No. 103–12 at 40. After Bogett's testimony, Uhler spoke with Murray and returned Murray to the hearing. *Id.* at 46.

### iv. Disposition and Appeals

**\*8** On December 30, 2009, Uhler issued a hearing disposition. Dkt. No. 103–7 at 4. Uhler relied on: reports written by Hebert and Tulip; review of two unusual incident reports; testimony from eight staff members and one inmate; and a video tape of the infirmary door area showing staff tackling Murray to the floor. *Id.* Uhler concluded that all staff testimony was consistent with each other and the video evidence. *Id.* Uhler considered Tulip's testimony that he had moderate to serious injuries from Murray's kicking and was out of work for four days per a doctor's order. *Id.* at 4, 14. Grant was out of work for four days as well. *Id.* at 14. Travers and Smith testified that care given was appropriate. *Id.* at 4. Further, Uhler considered testimonies that Murray had attacked staff. *Id.* Uhler wrote, "[t]his type of behavior will not be allowed. Inmate caused serious harm to staff and placed many others in grave danger."*Id.* A copy of the disposition was given to Murray. *Id.* Uhler ordered that Murray be placed in the Special Housing Unit ("SHU") [7] for sixty months. Compl. ¶9; Dkt. Nos. 103–7 at 3, 103–12 at 90–91. Uhler also gave Murray sixty months loss of privileges for packages, commissary, phone, and good time credits. Dkt. Nos. 103–7 at 3, 103–12 at 90–91.

On March 8, 2010, defendant Director of SHU/Inmate Discipline Bezio modified Murray's sentence to twenty-four months in SHU, to begin on June 28, 2014.Dkt. No. 103–6 at 2–3; Murray Dep. at 12. [8] By letter dated June 3, 2010, Murray's attorney at Prisoners' Legal Services sought reconsideration of the disciplinary hearing disposition. Dkt. No. 103–14 at 9–12. By letter dated August 18, 2010, defendant Acting Director of SHU/Inmate Disciplinary Programs Prack denied reconsideration. *Id.* at 13.

As of February 17, 2012, Murray has approximately seventeen years of prison time left to serve in SHU from other misbehavior reports. Murray Dep. at 11. Murray alleges that SHU confinement causes him mental distress. Compl. ¶ 15; Murray Dep. at 76. Murray does not seek reinstatement of good time credits. Compl. ¶ 16.

## II. Discussion

Murray alleges that his Eighth Amendment rights were violated when: (1) defendants Arquitt, Bogett, Clark, Grant, Hebert, Laramay, Manley, McGaw, Ramsdell, Rowe, and Tulip either used excessive force against him and failed to intervene on his behalf; (2) defendants Bezio and Prack exhibited deliberate indifference to his safety in denying his appeals; and (3) defendants Fischer and Rock exhibited deliberate indifference in failing to train subordinates. Compl. ¶¶ 2–7, at 27. Murray further alleges that his Fourteenth Amendment rights were violated when: (1) defendants Hebert and Tulip issued false misbehavior reports against him; (2) defendants Bezio, Prack, and Rock denied his appeals and failed to remedy the alleged constitutional violations; and (3) defendant Uhler failed to provide him with due process. *Id.* ¶¶ 8–13, 17, at 27. Murray seeks monetary damages and injunctive and declaratory relief. *Id.* at 28.

**\*9** Defendants seek summary judgment of certain claims, contending that Murray's: (1) claims against them in their official capacities for monetary damages are barred by the Eleventh Amendment; (2) Eighth Amendment claims against Ramsdell and Fourteenth Amendment claims against defendants Fischer, Prack, and Rock must fail because they were not personally involved in the alleged constitutional violations; (3) Fourteenth Amendment procedural due process claim against defendants Bezio, Fischer, Prack, Rock, and Uhler must fail because Murray received all process that was due; (4) Fourteenth Amendment claims against defendants Hebert and Tulip based on the filing of false

misbehavior reports must fail; and (5) defendants Bezio, Fischer, Prack, Rock, and Uhler are entitled to qualified immunity. Defs.' Mem. of Law (Dkt. No. 103–16) at 4–5.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994); *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude," ... that a *pro se* litigant's submissions must be construed "liberally,"... and that such submissions must be read to raise the strongest arguments that they "suggest,".... At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by *pro se* litigants,"... and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law ...."

**\*10** *Id.*(citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se,...* a court is obliged to construe his pleadings liberally.' " (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.*Anderson,* 477 U.S. at 247–48.

### B. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."U.S. CONST. amend. XI."[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State ."*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984) (citing *Hans v. Louisiana,* 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Halderman,* 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan,* 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) (*citing Edelman v. Jordan,* 415 U.S. 651, 663 (1974))."Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Here, because Murray seeks monetary damages against defendants for acts occurring within the scope of their duties, the Eleventh Amendment bar applies and serves to prohibit claims for monetary damages against them in their official capacity.

Accordingly, defendants' motion on this ground should be granted.

### C. Personal Involvement

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." ' *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. *Id.; Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). However, supervisory personnel may be considered "personally involved" if:

**\*11** (1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).[9]

#### 1. Ramsdell

Murray has failed to establish the personal involvement of Ramsdell for the claims of excessive force and failure to protect. Murray believes that Ramsdell was present and assaulted him during the second incident on December 3, 2009 but does not know if Ramsdell had struck him. Contrary to Murray's assertion, Ramsdell testified that his involvement did not commence until he arrived at the scene after Bogett and Grant used force on Murray. Further, Ramsdell only escorted Murray to seek medical attention. Ramsdell's version of the events is consistent with use of force reports, unusual

incident reports, and internal memoranda. *See* Dkt. Nos. 103–7 at 14, 18–19, 103–8, 103–9 at 1–5.

While "an [inmate']s 'inability to positively identify those who allegedly violated his rights is not *per se* fatal to his claims'" Murray does not point to any record evidence establishing that Ramsdell was at scene of Murray's assault either before or during the time of the alleged use of excessive force. *De Michele v. City of New York,* No. 09–CV–9334 (PGG), 2012 WL 4354763, at *16 (S.D.N.Y. Sept. 24, 2012)* (citations omitted). [10] Despite Murray's conclusory and speculative assertions, it is fair to conclude that a rational factfinder could not find in favor of Murray as the record is devoid of any evidence indicating that Ramsdell was present at either assault. *See, e.g., Coleman v. Hauck,* No. 09–CV–1391 (GTS)(GHL), 2012 WL 4480684, at *9 (N.D.N.Y. Sept. 26, 2012)* (granting summary judgment for certain defendants on personal involvement grounds where plaintiff argued that "[a]ll named Defendants responded to the scene where Plaintiff was repeatedly struck and kicked in the face" but failed to point to record evidence establishing that those defendants arrived at the scene before the use of force was applied).

Furthermore, Murray failed to proffer any evidence showing that Ramsdell had "a realistic opportunity to intervene to prevent the harm from occurring."*De Michele,* 2012 WL 4354763, at *17 (citing *inter alia Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994))* (internal quotation marks omitted). As Murray does not provide even a scintilla of evidence that Ramsdell was present at the time of the alleged assaults, Murray cannot show that Ramsdell had directly participated in the assaults or failed to intervene in the misconduct. Moreover, Murray does not allege, and the record does not reflect the contrary, that Ramsdell had created a policy or custom under which unconstitutional practices occurred or was grossly negligent in his supervision. *Colon,* 58 F.3d at 873.* Therefore, Murray cannot establish the personal involvement of Ramsdell in the alleged unconstitutional actions.

**\*12** Accordingly, defendants' motion on this ground should be granted.

### 2. Fischer

Murray claims that Commissioner Fischer was negligent in managing his subordinates. The gravamen of Fischer's complaints against Fischer is that he was in a position of power, thus always involved with anything occurring in conjunction with Murray's incarceration. However, attempts to establish personal involvement based upon the supervisory role this defendant occupied is inappropriate. *Wright,* 21 F.3d at 501* (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement).

Drawing every favorable inference in Murray's favor, Murray contends that he notified Fischer of the alleged constitutional violations through letters and grievances. However, merely writing letters and grievances to a defendant is insufficient to establish notice and personal involvement. *Smart v. Goord,* 441 F.Supp.2d 631, 643 (S.D.N.Y.2006)* ("Commissioner ... cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff] ...."). Similarly, receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement. *See, e.g., Rivera v. Fischer,* 655 F.Supp.2d 235, 238 (W.D.N.Y.2009)* (citing cases); *Boddie v. Morgenthau,* 342 F.Supp.2d 193, 203 (S.D.N.Y.2004)* ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability ... [p]ersonal involvement will be found ... where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.").

The only correspondence which referenced any involvement by Fischer was a letter addressed to Fischer from Murray for an extension to appeal the Tier III hearing disposition. Dkt. No. 103–14 at 4–5. A letter from Bezio explained to Murray that the letter was received and Murray's letter request satisfied the thirty-day time period for submitting an appeal. *Id.* at 3. Here, it is within the purview of a superior officer to delegate responsibility to others. *See Vega v. Artus,* 610 F.Supp.2d 185, 198 (N.D.N.Y.2009)* (finding no personal involvement where "the only involvement of the supervisory official was to refer the inmate's complaint to the appropriate staff for investigation.") (citing *Ortiz–Rodriguez v. N.Y. State Dep't of Corr. Servs.,* 491 F.Supp.2d 342, 347 (W.D.N.Y.2007)).* Moreover, conclusory allegations about negligent supervision and a failure to train are insufficient to establish personal involvement.

Accordingly, defendants' motion on this ground should be granted.

### 3. Prack

Murray claims that Prack violated his Fourteenth Amendment rights by denying his appeals and failing to remedy the alleged constitutional violations. The only correspondence referencing Prack's involvement is a letter denying reconsideration of Bezio's reduced penalty for the disciplinary hearing. The affirmation of an allegedly unconstitutional disciplinary hearing appears to establish personal involvement. *See Thomas v. Calero,* 824 F.Supp.2d 488, 505–11 (S.D.N.Y.2011) (discussing cases and concluding that affirming or modifying, as opposed to vacating and remedying, an allegedly constitutionally infirm disciplinary proceeding can satisfy various prongs of *Colon* and, regardless of *Iqbal's* impact on the *Colon* factors, results in a constitutional violation of which the defendant had knowledge, failed to remedy, and allowed to continue). However, as discussed *infra,* Murray's disciplinary hearing passes constitutional muster. As such, Murray cannot establish Fourteenth Amendment due process claims against Prack based on the affirmance of a constitutional disciplinary hearing.

**\*13** Accordingly, defendants' motion on this ground should be granted.

### 4. Rock

Lastly, Murray contends that Superintendent Rock violated his Fourteenth Amendment by denying his appeals, failing to remedy the alleged constitutional violations, and failing to train subordinates. The record is devoid of any reference to Rock's personal involvement. Before the Court is a superintendent decision dated January 25, 2010 that denied Murray's grievance. Nevertheless, that decision was signed by Deputy Superintendent Otis, not Superintendent Rock. As previously discussed, it is within the purview of a superior officer to delegate responsibility to others. *See Vega,* 610 F.Supp.2d at 198 (citation omitted). As such, Murray has failed to establish Rock's personal involvement in the alleged due process violations. *Colon,* 58 F.3d at 873.

Accordingly, defendants' motion on this ground should be granted.

### D. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law."U.S. CONST. amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law."*Baker v. McCollan,* 443 U.S. 137, 145 (1979) (internal quotation and citations omitted)."A liberty interest may arise from the Constitution itself, ... or it may arise from an expectation or interest created by state laws or policies."*Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citations omitted). An inmate retains a protected liberty interest to remain free from segregated confinement if the prisoner can satisfy the standard set forth in *Sandin v. Conner,* 515 U.S. 472, 483–84 (1995).

### 1. Procedural Due Process

To state a claim for procedural due process, there must first be a liberty interest which requires protection. *See generally Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in segregation as well as "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population" are to be considered. *Vasquez v. Coughlin,* 2 F.Supp.2d 255, 259 (N.D.N.Y.1998). This standard requires a prisoner to establish that the confinement or condition was atypical and significant in relation to ordinary prison life. *See Jenkins v. Haubert,* 179 F.3d 19, 28 (2d Cir.1999); *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

**\*14** While not a dispositive factor, the duration of a disciplinary confinement is a significant factor in determining atypicality. *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000) (citations omitted). The Second Circuit has not established "a bright line rule that a certain period of SHU confinement automatically fails to implicate due

process rights."*Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (citations omitted). Instead, the Second Circuit has provided guidelines that "[w]here the plaintiff was confined for an intermediate duration-between 101 and 305 days-development of a detailed record of the conditions of confinement relative to ordinary prison conditions is required."*Id.* at 64–65 (citing *Colon,* 215 F.3d at 232). In the absence of a dispute about the conditions of confinement, summary judgment may be issued "as a matter of law." *Id.* at 65 (citations omitted). Conversely, where an inmate is confined under normal SHU conditions for a duration in excess of an intermediate disposition, the length of the confinement itself is sufficient to establish atypicality. *Id.* (citing *Colon,* 215 F.3d at 231–32). Also, "[i]n the absence of a detailed factual record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short-e.g. 30 days-and there was no indication [of] ... unusual conditions."*Harvey v. Harder,* No. 09–CV– 154 (TJM/ATB), 2012 WL 4093792, at *6 (N.D.N.Y. July 31, 2012) (citing *inter alia Palmer,* 364 F .3d at 65–66).

Defendants contend that Murray has failed to show the deprivation of a liberty interest because he has yet to serve the assigned SHU time. Courts in this District have held that where the plaintiff had not yet served the sentence imposed at the time he filed his complaint, the Court is unable to determine whether the confinement conditions of SHU were atypical or significant. *See, e.g., Chavis v. Kienert,* No. 03– CV–0039 (FJS/RFT), 2005 WL 2452150, at *12 (N.D .N.Y. Sept. 30, 2005). However, Murray was sentenced to twenty-four months of SHU confinement, which amounts to 730 days. This length of confinement is sufficient to establish atypicality. *Palmer,* 364 F.3d at 64. Even though Murray has yet to serve the penalty, he is scheduled to serve it on June 28, 2014, and there is no evidence before the Court indicating otherwise. Given the length of the sentence and the imminent date for commencement of that sentence, the Court is not persuaded that Murray has failed to establish a liberty interest for purposes of his procedural due process claims. *Cf. Benitez v. Mailloux,* No. 05–CV–1160, 2009 WL 1953847, at *10– 11 (N.D.N.Y. Mar. 25, 2005), *report and recommendation adopted in part, rejected in part on other grounds,*No. 05– CV–1160 (NAM/RFT), 2009 WL 1953752 (N.D.N.Y. July 2, 2009) (concluding no liberty interest in 2009 when sentence was to be served in 2012). As such, the Court proceeds with the understanding that Murray has in fact established a liberty interest.

**\*15** Defendants alternatively argue that Murray's procedural due process claims against defendants Bezio, Fischer, Prack, Rock, and Uhler should be dismissed because Murray was given all process that was due. While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural process. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). A prisoner is "entitled to advance written notice ...; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken."*Sira v.. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (citations omitted).

### a. Written Notice

In this case, the issue of a written notice is undisputed. An inmate must be provided advance written notice at least twenty-four hours before the hearing commences. *Wolff,* 418 U.S. at 563–64. Murray was provided with a written notice of the Tier III disciplinary hearing. On December 4, 2009, Murray received the misbehavior reports authored by Hebert and Tulip. Those reports charged Murray with violent conduct, interference with employee, and refusing direct order, and assault on staff for the December 3, 2009 incidents. The disciplinary hearing commenced on December 17, 2009. As such, Murray was provided with written advance notice. *Sira,* 380 F.3d at 69.

### b. Opportunity to Call Witnesses and Present Documentary Evidence

Murray contends that he was deprived of an opportunity to call all witnesses and present certain documentary evidence. However, "[i]t is well settled that an official may refuse to call witnesses as long as the refusal is justifiable [such as] ... on the basis of irrelevance or lack of necessity."*Scott v. Kelly,* 962 F.2d 145, 146–47 (2d Cir.1992) (internal quotations and citations omitted). Uhler permitted ten individuals to testify at Murray's disciplinary hearing. Gillard and Robertson did not testify because they declined to do so and Murray has not alleged, and the record does not reflect the contrary, that intimidation by prison officials resulted in the witnesses' refusals. *Webb v. Selsky,* No. 01–CV–149S, 2008 WL 796179, at *6 (W.D.N.Y. Mar. 24, 2008) ("A failure to summon the testimony of a witness who has refused to testify, in the absence of evidence that the refusal was linked

to intimidation on the part of prison officials, does not violate due process because calling a witness who refuses to speak upon questioning would be futile.") (citing *Johnson v. Doling,* No. 05–CV–376 (TJM/RFT), 2007 WL 3046701, at *7 (N.D.N.Y.Oct.17, 2007)). There is nothing in the record indicating that either Gillard or Robertson would have provided evidence favorable to Murray beyond what was given by Bonaparte. *Livingston v. Kelly,* 423 F. App'x 37, 40 (2d Cir.2011) (citation omitted). Furthermore, while Laramay, Manley, Weissman, and Rowe did not testify, they did not observe what transpired during the use of force incidents on December 3, 2009. Thus, their testimonies would not assist Uhler in arriving at a decision regarding the appropriateness of the misbehavior reports.

**\*16** The same is true for the evidence which was denied. Uhler denied Murray's request to watch footage of Murray on December 4, 2009 because it was irrelevant to the events on December 3, 2009. Further, Murray was provided all documents generated from the use of force incidents as well as review of a video recording showing what occurred after Arquitt, Murray, and Tulip fell through the door. Moreover, Uhler ultimately granted Murray the opportunity to watch handheld footage of his escort from the examination room to his cell."Courts have long recognized ... that the right to know evidence supporting prison disciplinary rulings is not absolute."*Sira,* 380 F.3d at 74 (citations omitted). Accordingly, in light of all documentary evidence that was provided to Murray, discovery of irrelevant documents regarding medical records and video surveillance would be of no value in determining the validity of the disciplinary tickets.

Murray was provided with an opportunity to extensively question his witnesses through Uhler. "While inmate do have the right to question witnesses at their disciplinary hearings, that right is not unlimited and its contours are under the discretion of prison officials."*Rivera v. Wohlrab,* 232 F.Supp.2d 117, 125 (S.D.N .Y.2002). Thus, Uhler retained the authority and discretion to administer the questioning in a manner he saw fit. While Uhler did not permit Murray to ask every question, a review of the hearing transcript shows that he did permit Murray to question the witnesses rather extensively. Moreover, when Uhler denied Murray's questions he provided reasoning regarding the denial, such as the lack of relevance to the ultimate issue of the validity of the misbehavior report.

Accordingly, Murray was provided with an opportunity to call witnesses and present documentary evidence. *Sira,* 380 F.3d at 69.

### c. Fair and Impartial Hearing Officer

Murray contends that Uhler was not an impartial hearing officer because Uhler had personally investigated the matter, already decided on the credibility of witnesses, and ejected Murray from the hearing during Bogett's testimony. Prisoners have a constitutional right to a fair and impartial hearing officer. *See, e.g., Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004). However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges ... [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts."*Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996) (citations omitted). The Supreme Court held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer]." and the Second Circuit has held that the test is whether there was " 'reliable evidence' of the party's guilt."*Luna v. Pico,* 356 F.3d 481, 487–88 (2d Cir.2004); *see also Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985).

**\*17** It was clear that Uhler was objective and carefully listened to the testimony and arguments presented by Murray as Uhler reversed his prior decision about allowing Bonaparte to testify as well as offering Murray an opportunity to adjourn the hearing so that Murray may formulate more cogent questions to support and present his defense. Throughout the hearing, Uhler reiterated that he had yet to determine whether Murray was guilty of the prison violations charged. *See, e.g.,* Dkt. No. 103–12 at 83. Moreover, Uhler offered to make personal inquiries as to certain witnesses to confirm their intention to decline appearing at the disciplinary hearing.

Murray specifically claims that Uhler had stated Traver's credibility was not at issue. However, this assertion is misplaced. In context, Uhler stated, "[h]er credibility is not on[,] here's the problem[,] it is my job to determine the credibility of any witness whether it is employee or inmate is good or bad at this hearing."Dkt. No. 103–11 at 45. Uhler continued, explaining that in order to show a witness was providing false allegations, Murray should submit evidence to substantiate his position. *Id.* at 49.

Murray asserts that Uhler should not have conducted the hearing because Uhler had investigated the charges against him and issued a restraint order for Murray after the alleged assault on staff. These conclusory assertions remain unsubstantiated. Uhler stated that he did not investigate the incidents. In fact, Uhler further explained,

> you've stated that you were assaulted[.] I can tell you as the Dep. of Security at this facility[,] I am aware of those complaints prior to coming down here today to do this hearing. I am aware that you have made allegations of abuse. I have not been part of the investigation that is being done by someone else at this point ... and that's outside of this hearing room.

Dkt. No. 103–11 at 35. Moreover, Uhler explained that he had only signed a recommendation from a sergeant, which was recommended by the watch commander for full restraints based on allegations against Murray. Dkt. No. 1–3–12 at 87. There is no record evidence showing the contrary; thus, Murray's contention on this point is unsubstantiated and without merit.

Murray also asserts that Uhler violated his due process rights when Uhler removed him from the hearing during Bogett's testimony. However, "inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding."*Harmon v. Escrow,* No. 08–CV–6381 (CJS), 2012 WL 3560812, at \*4 (W.D.N.Y. Aug. 16, 2012) (citing *Francis v. Coughlin,* 891 F.2d 43, 48 (2d Cir.1989), *Hidalgo v. Hopin,* No. 01–CV–0057(Sr), 2009 WL 4803689 (W.D.N.Y. Dec. 9, 2009) (stating inmates do not have "a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings)). As such, Murray's due process rights were not violated when Uhler took Bogett's testimony in Murray's absence.

**\*18** Lastly, it is clear that Murray's disciplinary disposition was based on reliable evidence of his guilt. Arquitt and Tulip testified that they were escorting Murray from the infirmary when Murray turned around and kicked Tulip in the groin area. In response, Arquitt and Tulip tackled Murray to the ground and in doing so, fell through a door. Tulip denied having hit Murray in the head prior to being kicked. Hebert testified that after Murray was placed in the holding pen, Murray continued to struggle with Bogett and attempted to bite Grant. Clark was working in the infirmary and responded

a loud noise in the entrance where he found Murray on the ground with officers attempting to restrain him. Clark assisted Tulip, who appeared injured. These officers' testimonies are consistent with each others' account of the events, a video tape of the infirmary's entrance way, and are supported by internal memoranda and the use of force and usual incident reports. As for Bonaparte's testimony regarding Travers and other prison staff, these individuals are not parties to this action. Uhler carefully considered the competing evidence, namely the testimonies, reports, video recording, and injuries suffered by Tulip and Grant, with Murray's contention that he did not provoke the use of force incidents. Ultimately, Uhler reasoned that Murray's behavior caused harm to staff, and given the environment of prisons, such behavior should and would not be tolerated.

Accordingly, despite Murray's conclusory and unsupported contentions of bias, the record is clear that there is no question of material fact surrounding the process Murray was provided. As such, defendants' motion should be granted on this ground.

### d. Written Statement of Disposition

It is undisputed that Murray received a written statement of the hearing disposition. On December 30, 2009, Murray voluntarily left his disciplinary hearing before Uhler rendered his decision on the two misbehavior reports.Dkt. No. 103–12 at 88–89. The record indicates that Murray received a written statement of the evidence relied upon and reasons for the disciplinary action. Thus, Murray was provided with a written statement of the Tier III disciplinary hearing disposition. *Sira,* 380 F.3d at 69.

Accordingly, defendants' motion on this ground should be granted.

### e. Inmate Assistance

"An inmate's right to assistance with his disciplinary hearing is limited."*Neree v. O'Hara,* No. 09–CV–802 (MAD/ATB), 2011 WL 3841551, at \*13 (N.D.N.Y. July 20, 2011) (*Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993)). This Circuit has held that an assistant is constitutionally necessary when the plaintiff is confined in SHU and unable to marshal evidence and present a defense. *Id.* (citation omitted). In such a case, the assistant need only perform what the plaintiff would have

done but need not go beyond the inmate's instructions. *Lewis v. Johnson,* No. 08–CV–482 (TJM/ATB), 2010 WL 3785771, at *10 (N.D.N.Y. Aug. 5.2010) (citing *Silva,* 992 F.2d at 22). Furthermore, "any violations of this qualified right are reviewed for 'harmless error.' " *Clyde v. Schoellkopf,* 714 F.Supp.2d 432, 437 (W.D.N.Y.2010) (citing *Pilgrim v. Luther,* 571 F.3d 201, 206 (2d Cir.2009)).

**\*19** Here, Murray was confined in SHU from December 3, 2009 onward and thus is entitled to an inmate assistant. Dkt. No. 103–5 at 3; *see also Murray v. Goord,* 668 F.Supp.2d 344, 350 (N.D.N.Y.2009) ("Upstate ... [is] a maximum security prison comprised of special housing unit ("SHU") cells in which inmates are confined ....") (citation omitted). Murray alleges that he was generally deprived of adequate inmate assistance. Murray first met with his Inmate Assistant Fish on December 7, 2009. Fish assisted Murray with completing the assistant form to identify witnesses and documentary evidence. Fish also assisted Murray with contacting potential witnesses to testify at the disciplinary hearing. Dkt. No. 103–11 at 5, 14. Fish denied Murray any complaints or legal correspondence with respect to Murray being assaulted in the infirmary area. Dkt. No. 103–11 at 5. However, Uhler stated at the disciplinary hearing that he may produce such records if during the hearing, he determines that those records are relevant. *Id.* As for video footage of what occurred on December 3, 2009 inside the door, Uhler explained that such footage did not exist. *Id.* Further, Uhler denied Murray video footage of him on December 4, 2009 because it was irrelevant to the December 3, 2009 incidents.

Even assuming Fish had provided inadequate assistance, such a deprivation was rendered harmless and a factfinder could not conclude that Murray was prejudiced as a result. *Gallo,* 22 F.3d at 1223–24. The record shows that Uhler took steps to provide Murray with the requested evidence. Uhler also offered Murray more time to prepare for the hearing, which Murray declined. There is no indication that the result of Murray's hearing would be different had Fish provided Murray with all requested evidence. *See Chavis v. vonHagn,* No. 02–CV–0119 (Sr), 2009 WL 236060, at *53 (W.D.N.Y. Jan. 30, 2009) (finding due process claim based on denied employee assistant to prepare for disciplinary hearings was without merit because the record showed that "plaintiff was indeed able to present evidence (and often did), both oral and documentary, in his own defense" (citation omitted). As such, Murray's due process claim based on inmate assistance must fail.

Accordingly, defendants' motion on this ground should be granted.

## 2. False Misbehavior Report

An inmate has a right not to be deprived of a liberty interest without due process. However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986))."There must be more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Franco v. Kelly,* 854 F.2d 584, 588–90 (2d Cir.1988)). Even so, a due process claim predicated upon a false misbehavior report issued in retaliation against an inmate still fails to state a claim if the inmate received all the procedural process protections that was due to him. *Livingston,* 423 F. App'x at 40 (citing *inter* alia *Freeman,* 808 F.2d at 952). Here, Murray alleges that defendants Hebert and Tulip filed false misbehavior reports against him in retaliation for Murray lodging grievances and complaints. *Boddie,* 105 F.3d at 862; *see* Murray Dep. 38–39. However, as discussed above, Murray received all the procedural process protections that he was due.

**\*20** Moreover, to allege a claim based on the issuance of false misbehavior reports as retaliatory conduct, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (internal quotation marks and citation omitted); *Tafari v. McCarthy,* 714 F.Supp.2d 317, 347 (N.D.N.Y.2010). Murray does not allege any facts going to establishing a causal connection. Murray does not proffer any information with regard to grievances or complaints he filed against either Hebert or Tulip. Murray further testified that he believes Tulip retaliated against him because he insulted Tulip. Murray Dep. at 41. However, such insults do not constitute protected speech. *Doe v. Selsky,* No. 08–CV–6199L, 2013 WL 5311221, at *3 (W.D.N.Y. Sept. 20, 2013) (citing *Lockett v. Suardini,* 526 F.3d 866, 874 (6th Cir.2008) (finding inmate's insulting comments to a disciplinary hearing officer was not protected speech), *Chevalier v. Schmidt,* No. 11–CV–788(JTC), 2012 WL 6690313, at *3 (W.D.N.Y. Dec. 21, 2012) ("Vulgar, insulting, and threatening statements

have been found not to be protected speech for purposes of the First Amendment")). As such, Murray has failed to allege a due process claim based on the issuance of false misbehavior reports as retaliatory conduct.

Accordingly, defendants' motion on this ground should be granted.

### E. Qualified Immunity

Defendants Bezio, Fischer, Prack, Rock, and Uhler contend that even if Murray's Fourteenth Amendment claims are substantiated, they are nevertheless entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Aiken v. Nixon,* 236 F.Supp.2d 211, 229–30 (N.D.N.Y.2002) (McAvoy, J.), *aff'd,* 80 F. App'x 146 (2d Cir.2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990) (internal citations omitted)). A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. *Aiken,* 236 F.Supp.2d at 230. Here, the second prong of the inquiry need not be addressed with respect to Murray's Fourteenth Amendment claims against these defendants because, as discussed *supra,* it has not been shown that defendants violated Murray's Fourteenth Amendment rights.

**\*21** Accordingly, defendants' motion on this ground should be granted.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for partial summary judgment (Dkt. No. 103) is **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the ... recommendation."N.Y.N.D.L.R. 72 .1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Filed April 22, 2014.

### All Citations

Slip Copy, 2014 WL 4676569

---

Footnotes

1    In his acknowledgment of receipt of summons and complaint, defendant"Herbert" spelled his name as "Hebert." Dkt. No. 22. The Court notes the discrepancy as mere error on Murray's part and proceeds with the latter spelling in this Report–Recommendation.

2    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

3    In his deposition, Murray generally contends that defendants used excessive force against him as part of a conspiracy to retaliate against him for his filing of grievances and lawsuits against them. *See, e.g.,* Murray Dep. at 38–39, 44–46, 50–52. Retaliation and conspiracy claims were neither alleged in Murray's complaint nor response to defendants' motion for summary judgment. In any event, Murray's attempt to allege either claim has failed.

      To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action.*Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (internal quotation marks and citation omitted); *Tafari v. McCarthy,* 714 F.Supp.2d 317,

347 (N.D.N.Y.2010). Here, Murray proffers only conclusory testimony that defendants had violated his constitutional rights in retaliation for the filing of grievances and lawsuits. Murray proffers nothing more going to when and against whom he filed such grievances and lawsuits, the results of the grievances and lawsuits, or his prior disciplinary history. *Barclay v. New York,* 477 F.Supp.2d 546, 588 (N.D.N.Y.2007) (citations omitted) ("Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives."). As such Murray has failed to assert a potential First Amendment retaliation claim against the defendants.

In order to support a claim for conspiracy under §§ 1983 or 1985, there must be "(1) an agreement ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."*Ciambriello v.. Cty. of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 468 (N.D.N.Y.2009). An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. *See Iqbal v. Hasty,* 490 F.3d 143,177 (2d Cir.2007); *see also Gyadu v. Hartford Ins. Co.,* 197 F.3d 590, 591 (2d Cir.1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end."*Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999) (citations omitted). Here, Murray fails to provide evidence sufficient to support a viable conspiracy claim among the defendants. There is nothing in the record to establish that defendants had any type of agreement between them. There were no allegations outlining with specificity when, why, or how an alleged conspiracy occurred. *Warren,* 33 F.Supp.2d at 177. Murray fails to provide any plausible information which would lend credence to a claim of an explicit or implicit agreement between any or all of the defendants.*Anilao v. Spota,* 774 F.Supp.2d 457, 512–13 (E.D.N.Y.2011) (citations omitted). As such, Murray has failed to allege any potential conspiracy claims in this action. Accordingly, Murray's potential conspiracy and retaliation claims must fail.

4   Photos taken by non-party Corrections Officer Gettman on December 4, 2009 of Murray indicate that Murray had red marks on his shoulder blades and neck and cuts between his eyebrows and on his nose.Dkt. No. 103–10 at 2–13.

5   The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response."*Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted). On December 6, 2009, Murray filed a grievance claiming the defendant corrections officers used excessive force against him while also failing to intervene on his behalf. Dkt. No. 103–13 at 6. On January 25, 2010, non-party Deputy Superintendent Otis denied Murray's grievance. *Id.* at 2. On March 10, 2010, CORC affirmed the superintendent's decision. *Id.* at 1.

6   Uhler stated that he would conduct a secondary inquiry into the reason behind Gillard's refusal. Dkt. No. 103–11 at 14.

7   SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population...."N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. *Id.* at pt. 301.

8   Defendant Bezio also reduced the punishment to twenty-four months of other privileges and good time credits to begin on April 22, 2011. Dkt. No. 103–6 at 2–3.

9   Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five *Colon* factors which were traditionally used to determine personal involvement. *Pearce v. Estate of Longo,* 766 F.Supp.2d 367, 376 (N.D.N.Y.2011), *rev'd in part on other grounds sub nom., Pearce v. Labella,* 473 F. App'x 16 (2d Cir.2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five *Colon* factors); *Kleehammer v. Monroe Cnty.,* 743 F.Supp.2d 175 (W.D.N.Y.2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal's* muster...."); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010) (disagreeing that *Iqbal* eliminated *Colon's* personal involvement standard).

10  All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

---

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 6799725
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Gary Franklin ROBINSON, Plaintiff,

v.

W. BROWN, Superintendent, et al., Defendants.

Civil Action No. 9:11–CV–0758 (TJM/DEP).

|

Nov. 1, 2012.

**Attorneys and Law Firms**

Gary Franklin Robinson, Dannemora, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of New York, Cathy Y. Sheehan, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

***REPORT AND RECOMMENDATION***

DAVID E. PEEBLES, United States Magistrate Judge.

 **\*1** *Pro se* plaintiff Gary Franklin Robinson, a New York State prison inmate, has commenced this action against four employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. Though difficult to decipher, his complaint, as amended, appears to assert a procedural due process claim arising out of the issuance of a misbehavior report, an ensuing disciplinary hearing, and a resulting penalty that included six months of disciplinary special housing unit ("SHU") confinement.

In response to plaintiff's complaint, as amended, defendants have moved seeking its dismissal for failure to state a claim upon which relief may be granted. For the reasons set forth below, I recommend that defendants' motion be granted.

**I.** *BACKGROUND* [1]
Plaintiff is a prison inmate currently being held in the custody of the DOCCS. *See generally* Amended Complaint (Dkt. No. 13). While he is now confined elsewhere, at the times relevant to his claims plaintiff was designated to the Eastern

Correctional Facility ("Eastern"), located in Naponock, New York. *Id.* at ¶¶ 1–3.

On February 24, 2011, while plaintiff was incarcerated at Eastern, Corrections Officer J. Mundorff confiscated Uniform Commercial Code ("UCC") documents from him and thereafter issued a misbehavior report accusing him of violating prison rules, including failure to obey a direct order, lying or providing incomplete, misleading or false information, and possessing UCC materials. *See* Complaint (Dkt. No. 2), Attachment at p. 18 of 23. [2] A Tier III disciplinary hearing was conducted on March 2, 2011, by G. Turbush, the Assistant Deputy Superintendent for Programs at Eastern, to address those charges. [3] *Id.* at p. 17 of 23. At the conclusion of that proceeding, defendant Turbush found plaintiff guilty on all three counts and sentenced him to a six-month period of disciplinary SHU confinement, with a corresponding loss of recreation, packages, commissary, and telephone privileges, additionally recommending the loss of six months of good time credits. *Id.*

**II.** *PROCEDURAL HISTORY*

This action was commenced by the plaintiff in the United States District for the Southern District of New York on or about May 12, 2011, but was subsequently transferred to this district in light of the fact that the events giving rise to plaintiff's claims occurred here. Dkt. Nos. 2, 4. Plaintiff thereafter filed an amended complaint, as a matter of right, on October 14, 2011. Dkt. No. 13. Named as defendants in plaintiff's amended complaint are J. Mundorff, a Corrections Officer at Eastern; W. Brown, the Superintendent at Eastern; Assistant Deputy Superintendent G. Turbush; and A. Prack, DOCCS Director of Special Housing/Inmate Disciplinary Program. *Id.*

On December 16, 2011, Senior District Judge Thomas J. McAvoy granted plaintiff's request for leave to proceed *in forma pauperis* and, after reviewing his complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), (1) dismissed all claims against defendant Mundorff, without prejudice; (2) dismissed plaintiff's claims related to the alleged issuance of a false misbehavior report and of unlawful retaliation growing out of the issuance of that report; and (3) pursuant to *Peralta v. Vasquez,* 467 F.3d 98, 103 (2d Cir.2006), directed Robinson to advise the court as to whether he was relinquishing all claims related to the disciplinary hearing affecting the duration of his confinement, including based upon the recommended loss of good time credits.

Dkt. No. 15.Following the receipt of a notice from the plaintiff concerning the latter issue, Dkt. No. 16, the court issued a second decision and order, dated February 6, 2012, dismissing any claim within plaintiff's amended complaint deemed to relate to disciplinary sanctions that could affect the duration of his confinement, but otherwise ordering the action to proceed. Dkt. No. 17.

**\*2** On May 10, 2012, the remaining three defendants moved for dismissal of plaintiff's amended complaint. Dkt. No. 32.In their motion, defendants argue that (1) plaintiff's conspiracy claim, to the extent such a cause of action may be contained in his amended complaint, is legally deficient on its face and also barred by the intra-corporate conspiracy doctrine; (2) plaintiff has failed to set forth facts reflecting the existence of a plausible due process cause of action; (3) plaintiff's claims against the defendants in their official capacities are precluded by the Eleventh Amendment; and (4) defendant Brown is entitled to dismissal of all claims against him based upon plaintiff's failure to allege his personal involvement in the offending conduct. *Id.* Plaintiff has since responded in opposition to defendants' motion. Dkt. No. 35.

Defendants' dismissal motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).*See also*Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U .S. 544, 555, 127 S.Ct. 1955, 1964–65 (2007)).*Rule 8(a)(2) of the Federal Rules of Civil Procedure* requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2); *see also id.*While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."*Iqbal,* 556 U.S. 679, 129 S.Ct. at 1950.

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 R. Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,*540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949–50. To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim that is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs"] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974).

**\*3** When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)); *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citations omitted); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Social Servs.,* 804 F.Supp.2d 100, 104 (N.D.N.Y.2011)

#### B. *Eleventh Amendment*

Plaintiff's complaint in this action, as amended, names four DOCCS employees, three of whom remain as defendants in the action, both individually and in their official capacities. Defendants' motion requests dismissal of plaintiff's claims against them to the extent they are sued in their official capacities as DOCCS employees.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.*Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58 (1978). This absolute immunity,

which states enjoy under the Eleventh Amendment, extends both to state agencies and state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest. [4] *Richards v. State of New York Appellate Div., Second Dep't,* 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89–91, 102 S.Ct. 2325, 2328–29 (1982)). To the extent that a state official is sued for damages in his official capacity, the official is entitled to invoke the Eleventh Amendment immunity belonging to the state. [5] *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105 (1985); *Hafer,* 502 U.S. at 25, 112 S.Ct. at 361.

Plaintiff's damage claims against the three remaining defendants in their official capacities are, in reality, claims against the State of New York. Accordingly, they represent the type of claims against which the Eleventh Amendment protects, and are therefore subject to dismissal. *Daisernia v. State of New York,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.). I therefore recommend that this portion of defendants' motion be granted, and that plaintiff's damage claims against the defendants in their roles as state employees be dismissed.

**C.** *Procedural Due Process*

At the heart of this action is plaintiff's claim that his procedural due process rights were violated during the course of proceedings leading to a finding that he violated prison rules and a corresponding period of disciplinary SHU confinement. Plaintiff maintains that his possession of the confiscated UCC documents was legitimate and that (1) Hearing Officer Turbush violated plaintiff's due process rights by failing to investigate the charges against him; (2) A. Prack contributed to the due process violation by not reviewing the record in its entirety when deciding Robinson's appeal of the hearing determination; and (3) Superintendent Brown "colluded" with defendants to deprive him of his rights. In their motion, defendants challenge the legal sufficiency of this cause of action.

**\*4** To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). In their motion, defendants appear

to concede that plaintiff's six-month sentence of disciplinary SHU confinement could suffice to implicate a protected liberty interest under the Fourteenth Amendment, and focus instead upon the contention that plaintiff was afforded the required procedural due process in connection with that deprivation.

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest were addressed by the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 564–67, 94 S.Ct. 2963, 2978–80 (1974). Under *Wolff,* the constitutionally mandated protections include the right (1) to receive written notice of the charges; (2) to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; (3) to receive a written statement by the hearing officer explaining his or her decision and the reasons for the disciplinary action being taken; and (4) in some circumstances, to assistance in preparing a defense. *Wolff,* 418 U.S. at 564–67, 94 S.Ct. at 2978–80;*see also Eng v. Coughlin,* 858 F.2d 889, 897–98 (2d Cir.1988). Additionally, in order to pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must garner the support of at least "some evidence." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454105 S.Ct. 2768, 2773 (1985).

Even when liberally construed, plaintiff's amended complaint does not allege the denial of any of the safeguards set out by the Supreme Court in *Wolff* as being guaranteed to inmates facing liberty interest deprivations in the context of disciplinary proceedings. Instead, Robinson appears to challenge the sufficiency of the evidence supporting the hearing officer's finding of guilt, although no specifics are offered. *See generally*Dkt. No. 13.

The misbehavior report issued by Corrections Officer J. Mundorff accuses Robinson of possessing UCC materials in violation of prison rules, and after having received a letter from a Deputy Superintendent of Security at the Greenhaven Correctional Facility ordering that he not use "redemption documents." Dkt. No. 2 at 19.Also referenced in that misbehavior report is a letter from the plaintiff to a senior corrections counselor alleged to contain misleading or false statements. *Id.*

Plaintiff does not refute these allegations. For example, he seemingly does not find fault with the hearing officer's determination that he possessed UCC documents in violation

of prison rules. *See* Dkt. Nos. 13, 35.Instead, he appears to assert a right to possess such documents, despite the existence of a DOCCS policy prohibiting inmates from possessing them, and argues that they relate both to his efforts to collaterally challenge his underlying conviction and to a "contract between the Creditor/Plaintiff Gary Franklin and the Trade Name/Debtor GARY FRANKLIN ROBINSON, filed in the STATE OF WASHINGTON Commercial Registry as a Transmitting Utility File # 2007–267–5393–2." [6] Dkt. No. 13 at ¶ 9. Plaintiff's contention in this regard is unsupported; the DOCCS' policies addressing inmate possession of UCC materials have withstood challenge under the First Amendment. *See, e.g., Neree v. O'Hara,* No. 9:09–CV–802, 2011 WL 3841551, at *7–9 (N.D.N.Y., July 20, 2011) (Baxter, J.), adopted, 2011 WL 3841553, at *2 n. 2 (N.D.N.Y. Aug. 29, 2011) (D'Agostino, J.) (concluding that such regulations are reasonably related to legitimate penological interests). [7]

**\*5** To be sure, plaintiff's suggestion that the UCC materials in issue could also relate to his efforts to collaterally challenge a criminal conviction give room for pause. The confiscation of an inmate's legal papers related to a legitimate, non-frivolous legal proceeding can give rise to a claim under the First Amendment for interference with access to the courts, provided that the inmate can establish that he or she has suffered prejudice as a result of the actions of corrections officials in the pursuit of his or her legal claims. *See Pacheco v. Pataki,* 07–CV–850, 2010 WL 3635673, at *3 (N.D.N.Y. Sept. 9, 2010) (Scullin, J.) ("A prisoner has a constitutional right of access to the courts, which is infringed when prison officials actively interfere with a prisoner's preparation of legal documents ....[f]or the claim of denial of access to the courts to be successful, a plaintiff must allege an actual injury."). [8] In this instance, however, the documents at issue have no bearing upon any attempts by plaintiff to collaterally challenge his criminal conviction. *See Osborne v. Hill,* No. 05–CV–641, 2006 WL 1215084, at *5 (D.Ore. May 1, 2006) ("There is nothing in the Uniform Commercial Code which would help plaintiff[s] challenge the legality of [their] conviction[s] or the conditions of [their] confinement"); *see also Rouse v. Caruso,* No. 06–CV–10961, 2011 WL 918327 at *17 (E.D.Mich. Feb. 18, 2011).

Among the bases for plaintiff's due process cause of action is his contention that Hearing Officer G. Turbush failed to properly investigate the charges against him. The Fourteenth Amendment guarantees inmates the right to the appointment of an unbiased hearing officer to address a disciplinary charge. *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996); *see also Davidson v. Capuano,* No. 78 Civ. 5724, 1988 WL 68189, at *8 (S.D.N.Y. June 16, 1988) (citing *McCann v. Coughlin,* 698 F.2d 112, 122 n. 10 (2d Cir.1983)). An impartial hearing officer is one who "does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen."*Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990). The allegation that defendant Turbush failed to investigate the claims against Lewis does not suggest bias on his part. Indeed, had he conducted an investigation into the allegations against Robinson and then presided over the ensuing hearing, that dual role could have been viewed as running afoul of the Fourteenth Amendment's procedural due process guaranty. *Cf. Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.1987). Simply stated, there is no requirement, as plaintiff apparently now argues, that a hearing officer assigned to preside over a disciplinary hearing conduct an independent investigation; that is simply not the role of a hearing officer.

In sum, plaintiff's amended complaint fails to set forth facts demonstrating the existence of a plausible procedural due process claim, and should therefore be dismissed on this basis.

### D. *Conspiracy*

**\*6** The oblique reference to "collusion" in plaintiff's amended complaint could potentially be regarded as alleging the existence of a conspiracy among the named defendants. In their motion, defendants also seek dismissal of any such conspiracy claim deemed to be included within Robinson's complaint, as amended.

To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts."; *Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y.1992); *accord, Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995). Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983), *cert. denied,*464 U .S. 857, 104 S.Ct. 177 (1983).

It should be noted that there is no independently cognizable claim of conspiracy under section 1983. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995) ("[A]lthough the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand

only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."); *see also Graham v. City of Albany,* 08–CV–0892, 2009 WL 4263510, at *12 (N.D.N.Y. Nov. 23, 2009) (Treece, M.J.) (dismissing the plaintiff's conspiracy claim because "she identifies no underlying constitutional violation or injury"). In this instance, since I have already concluded that plaintiff's procedural due process cause of action is deficient and no other constitutional claim is set forth in his complaint, there is no longer any civil rights deprivation in the case to support a conspiracy cause of action.[9] , [10]

### E. *Whether to Permit Amendment*

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant "without granting leave to amend *at least* once" if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991) (emphasis added); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (granting leave to replead where court could not say that under no circumstances would proposed claims provide a basis for relief). The court must next determine whether plaintiff is entitled to the benefit of this general rule, given the procedural history of the case.

While plaintiff's damage claim against defendants in their official capacities is hopelessly fatal, as is his conspiracy cause of action based upon the intra-corporate conspiracy doctrine, it is conceivable that he could state facts demonstrating the existence of a plausible due process claim against all or some of the defendants in their individual capacities. I therefore recommend that he be afforded an opportunity to file a second amended complaint, if desired, to include facts that could support such cause of action. He should be advised, however, that the law in this circuit clearly provides that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Pourzandvakil v. Humphry,* No. 94–CV–1594, 1995 WL 316935, at *7 (N.D.N.Y. May 23, 1995) (Pooler, D.J.). In his second amended complaint, plaintiff therefore must clearly set forth the facts that give rise to the claim, including the dates, times and places of the alleged underlying acts. In addition, the revised pleading should specifically

allege facts demonstrating the specific involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish the they were tangibly connected to those deprivations. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). Any such second amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. Fed.R.Civ.P. 10(a); *see Harris v. City of N.Y.,* 186 F.3d 243, 249 (2d Cir.1999) (citing *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994)).

### IV. *SUMMARY AND RECOMMENDATION*

 **\*7**  The primary thrust of plaintiff's complaint in this action, as amended and narrowed by an earlier court decision dismissing his false misbehavior report and retaliation claims, concerns the claim that his due process rights were violated when he was disciplined, following a hearing, for violating prison rules. Because plaintiff's amended complaint is lacking in facts demonstrating the existence of a plausible procedural due process claim, I recommend that it be dismissed, with leave to amend.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 32) be GRANTED, and that plaintiff's amended complaint be DISMISSED, with leave to replead only with respect to plaintiff's procedural due process claim against the defendants in their individual capacities.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**Appendix**

LEXSEE 1995 U.S.DIST. LEXIS 7136

MINA POURZANDVAKIL, Plaintiff, -againstHUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants.[1]

1 Names in the caption are spelled to reflect plaintiffs complaint.

Civil Action No. 94–CV–1594

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

1995 U.S. Dist. LEXIS 7136

May 22, 1995, Decided

May 23, 1995, FILED

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

*8 OVERVIEW: Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed.R.Civ.P. 4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed.R.Civ.P. 14 or Fed.R.Civ.P. 19.*No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P .L.R. § 302(a).* The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

OUTCOME: The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

LexisNexis(R) Headnotes

Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service

Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents

Governments > Federal Government > Employees & Officials

[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named

defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed.R.Civ.P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.R.Civ.P. 4(e)(1).*

**Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview**

**Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail**

**Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations**

[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed.R.Civ.P. 4(h)(1), i4(e)(1).*

**\*9 Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview**

[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp.1995); *N.Y. Bus. Corp. Law § 306* (Supp.1995); *Minn.Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

**Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail**

**Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview**

**Governments > Local Governments > Claims By & Against**

[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed.R.Civ.P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview**

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview**

**Civil Procedure > Parties > Interpleaders > General Overview**

[HN4] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed.R.Civ.P. 14* or *Fed.R.Civ.P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed.R.Civ.P. 4(k).*

**Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview**

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview**

[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview**

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims**

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy**

**\*10** [HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

**Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview**

**Civil Procedure > Venue > Multiparty Litigation**

[HN8] *See 28 U.S.C.S. § 1391(a).*

**Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview**
**Civil Procedure > Venue > Multiparty Litigation**

[HN9] *See 28 U.S.C.S. § 1391(1).*

**Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers**

**Civil Procedure > Venue > Individual Defendants**

**Civil Procedure > Venue > Multiparty Litigation**

[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a).*

**Civil Procedure > Venue > Motions to Transfer > General Overview**

**Civil Procedure > Judicial Officers > Judges > Discretion**

**Governments > Legislation > Statutes of Limitations > General Overview**

[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

**Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims**

**Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss**

[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed.R.Civ.P. 12(b)(6%)* issue.

**Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims**

**Civil Rights Law > General Overview**

[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

**Civil Procedure > Parties > Self–Representation > Pleading Standards**

[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

**Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims**

**Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview**

**Civil Procedure > Parties > Self–Representation > Pleading Standards**

[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

**Civil Procedure > Parties > Self–Representation > General Overview**

**Civil Procedure > Counsel > Appointments**

**Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals**

**\*11** [HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

**COUNSEL:** [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

## *MEMORANDUM–DECISION AND ORDER*
*INTRODUCTION*

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

 **\*12** In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

## BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14,

1994 (Docket No. 4) and Memorandum–Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic* ) [2] ("J.C.Penney"), British Airways, Kowate (*sic* ) Airline ("Kuwait"), MSi Insurnce (*sic* ) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic* ) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

 **13** The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O.Brown") (answer to amended complaint

filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

> 2 Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

> 3 Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8] The court also has received a total of thirteen motions ° from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure.*For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed.R.Civ.P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*14** 4 The court has also received three additional motions returnable May 22, 1995. The first-from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.

5 The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed.R.Civ.P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P. 4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by

delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed.R.Civ.P. 4(h)(1)* and *4(e)(1)*. [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, i311* (McKinney Supp.1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp.1995); *Minn.Stat. § 543.08 (1995)*; Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed.R.Civ.P. 4(j) (2)*. Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

**\*15** We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J.C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata*, most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

## A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed.R.Civ.P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k)*. *See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp.1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

## B. Subject Matter Jurisdiction

**\*16** Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed.R.Civ.P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject

matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L.Ed.2d 206, 103 S.Ct. 1303 (1983).* These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332.*They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a).Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy."*Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists.*Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them.[6]

> 6 We ordinarily would offer plaintiff
> an opportunity to amend her complaint
> because her submissions and Kuwait's
> answer indicate two bases on which

plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a).* However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a) (2).* Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. § 1603.*If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See*28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332. Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511–1512 (11th Cir.1989),* cert. denied, *131 L.Ed.2d 219, 115 S.Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses—including complete failure to state a cause of action—that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332.*

**\*17** [\*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [\*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> [HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a).Section 1391(b)* provides that federal question actions, except as otherwise provided by law, may be brought only in

> [HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[\*21] *Id. § 1391(b).* The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."*Id. § 1406(a).* Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits."*Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir.1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [\*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota.*Pourzandvakil v. Price,* Civ No. 4–93–207 (D.Minn.1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

## III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

**\*18** Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed.R.Civ.P.*

*12(b)(6).* [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682–83, 90 L.Ed. 939, 66 S.Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir.1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7 J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume—largely because many of the defendants involved are state officials or state employees and she appears to complain of certain appeals of various trials—that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25] of rights, instead of a litany of general conclusions that should but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir.1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106,*

*50 L.Ed.2d 251, 97 S.Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

**\*19** Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum–Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action —although not ASI—as well as others in several different jurisdictions. *See Pourzandvakil v.. Blackman,* a Civ. No. 94– C944 (D.D.C.1994), *Pourzandvakil v. Doty* (E.D.N.Y.1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn.1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4–93–207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94–C–94, Order entered April 28, 1994, *aff'd*Civ. No. 94–5139 (D.C.Cir.1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims."*Pourzandvakil v. Blackman,* Civ. No. 94–C–94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir.1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted.*Fed.R.Civ.P. 12(b)(6).*

8. Former Supreme Court Justice Harry A. Blackmun.

9 We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint

*sua sponte* under *28 U.S.C. § 1915(d)*, holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact."*Neitzke v. Williams, 490 U.S. 319, 325, 104 L.Ed.2d 338, 109 S.Ct. 1827 (1989).* The Supreme Court expressly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n. 8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y.1993),* aff'd *41 F.3d 1500 (2d Cir.1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir.1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

 **\*20** We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants—regardless of whether they have moved for dismissal—that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

### IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F.Supp. 686, 694–695 (S.D.N.Y.1991).* Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive

relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

### CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188–9 (5th Cir.1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n. 3 (2d Cir.1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875* (3d Cir.) *cert. denied, 322 U.S. 740, 88 L.Ed. 1573, 64 S.Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE

### All Citations

Not Reported in F.Supp.2d, 2012 WL 6799725

Footnotes

1    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v.. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

2    While annexed to plaintiff's original complaint, Murdorff's misbehavior report, dated February 24, 2011, and other documents relating to the proceedings that followed, are not included as attachments to his amended complaint. *See generally* Dkt. No. 13.Because those documents, while not incorporated by reference, are "integral" to plaintiff's claims, the court may properly consider them for purposes of the pending dismissal motion. *See Int' Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks omitted).

3    The DOCCS conducts three types of inmate disciplinary hearings. 7 N.Y.C.R.R. § 270.3. Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include a period of SHU confinement. Tier III hearings concern the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

4    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham County,* 547 U.S. 189, 193, 126 S.Ct. 1689, 1693 (2006).

5    By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer v. Melo,* 502 U.S. 21, 30–31, 112 S.Ct. 358, 364–65 (1991).

6    In his response to defendants' motion, Robinson describes the UCC documents at issue as containing "a contract and security interest in all property of GARY FRANKLIN ROBINSON."*See* Robinson Aff. (Dkt. No. 35) ¶ 4.

7    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

8    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

9    Plaintiff's amended complaint asserts a claim that he was issued a false misbehavior report, with retaliatory motives. As was noted earlier, that claim was dismissed by the court *sua sponte. See* Decision and Order Dated December 16, 2011 (Dkt. No. 15) at pp. 4–7, 10.

10   As defendants argue, plaintiff's conspiracy claim would likely be precluded in any event by the intra-agency conspiracy doctrine. *See Little v. City of New York,* 487 F.Supp.2d 426, 441–42 (S.D.N.Y.2007) ( "under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together.") (quoting *Salgado v. City of New York;* No. 00 Civ. 3667, 2001 WL 290051, at *8–9, (S.D.N.Y. March 26, 2011); *Cusamano v. Sobek,* 604 F.Supp.2d 416, 469–70 (N.D.N.Y.2009) (Suddaby, J.) (holding that the intra-agency conspiracy doctrine applies "to cases in which the entity is the State").

2011 WL 1086001
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Nelson RODRIGUEZ, Plaintiff,
v.
Donald SELSKY, Defendant.

Civil Action No. 9:07–CV–0432 (LEK/DEP).
|
Jan. 25, 2011.

**Attorneys and Law Firms**

Nelson Rodriguez, Attica, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State
of New York, Aaron M. Baldwin, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for the Defendant.

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

 *1 Plaintiff Nelson Rodriguez, a New York state prison
inmate, has commenced this action pursuant to 42 U.S.C. §
1983 alleging deprivation of his civil rights. In his complaint,
as amended, Rodriguez alleges that prison officials at the
facility in which he was confined at the relevant times
issued him two fabricated misbehavior reports ("MBRs")
falsely accusing him of violating prison rules and denied
him procedural due process during the course of the ensuing
disciplinary hearing.[1] Plaintiff attributes those actions to
retaliation for his having filed a civil action against a
corrections employee who was not named as a defendant in
his complaint.

The sole remaining claim in this action is asserted against
defendant Donald Selsky, the former Director of Special
Housing and Inmate Disciplinary Programs for the New
York State Department of Correctional Services ("DOCS"),
alleging deprivation of procedural due process arising out of
plaintiff's disciplinary hearing and defendant Selky's review
of the resulting determination.

Currently pending before the court is defendant's motion for
summary judgment dismissing plaintiff's amended complaint.

In his motion, defendant argues that 1) he was not sufficiently
involved in the constitutional deprivation alleged to support
a finding of liability; 2) plaintiff was afforded procedural due
process in connection with the disciplinary proceedings at
issue, and 3) in any event he is entitled to qualified immunity
from suit. For the reasons set forth below, I recommend
a finding that plaintiff was not deprived of procedural due
process, and that his complaint therefore be dismissed.

## I. *BACKGROUND* [2]

Plaintiff is a prison inmate entrusted to the custody of
the DOCS; at the times relevant to his due process claim
plaintiff was housed at the Shawangunk Correctional Facility
("Shawangunk"), located in Wallkill, New York. Amended
Complaint (Dkt. No. 7) ¶ 3; Selsky Decl. (Dkt. No. 62–3) ¶ 15.

As a result of an incident involving another inmate occurring
on December 30, 2003, plaintiff was issued two MBRs.
Amended Complaint (Dkt. No. 7) ¶¶ 12–15. Selsky Decl.
(Dkt. No. 62–3) ¶ 16. The first, issued on December 30,
2003 and authored by Corrections Officer Goosby, charged
Rodriguez with fighting and refusal to obey a direct order.
Selsky Decl. (Dkt. No. 62–3) ¶ 17 and Exh. A (Dkt. No. 62–
4). The second, issued on January 2, 2004 by Corrections
Lieutenant Wright, addressed the same incident and accused
Rodriguez of fighting, engaging in violent conduct, and
participating in a demonstration detrimental to the order of
the facility. Selksy Decl. (Dkt. No. 62–3) ¶ 18 and Exh. A
(Dkt. No. 62–4).

The parties differ as to when the two MBRs were served
upon Rodriguez. Plaintiff and defendant appear to be in
agreement that the second MBR was served upon him on
January 2, 2004. Selsky Decl. (Dkt. No. 62–3) ¶ 19 and
Exh. A (Dkt. No. 62–4); Plaintiff's Local Rule 7.1(a)(3)
Statement (Dkt. No. 68) ¶ 16. While defendant asserts that
both MBRs were served on January 2, 2004, *see* Selsky Decl.
(Dkt. No. 62–3) ¶ 19 and Exh. A (Dkt. No. 62–4), plaintiff
denies that he received the December 30, 2003 MBR until the
commencement of his disciplinary hearing.[3] Plaintiff's Local
Rule 7.1(a)(3) Statement (Dkt. No. 68) ¶ 16.

 *2 The two MBRs were consolidated, over plaintiff's
objection, and a Tier III disciplinary hearing was conducted,
beginning on January 7, 2004, to address the charges set forth
within them.[4],[5] Amended Complaint (Dkt. No. 7) ¶ 15;
Selsky Decl. (Dkt. No. 62–3) ¶ 21 and Exhs. A (Dkt. No. 62–
4) and B (Dkt. Nos. 62–5 and 62–6). In advance of the hearing

plaintiff was given the opportunity to express his preferences for an assistant, and based upon his selection Corrections Counselor Roddy was assigned to assist him. Selsky Decl. (Dkt.62–3) ¶ 20 and Exh. A (Dkt. No. 62–4).

Following its commencement on January 7, 2004, the hearing officer twice adjourned the hearing, initially to January 8, 2004, and again from January 8, 2004 to January 13, 2004, to allow the plaintiff an opportunity to prepare his defense. Selsky Decl. (Dkt. No. 62–3) and Exh. B (Dkt. No. 62–5) pp. 4–20, 20–58. During the course of the hearing plaintiff was permitted to call at least eleven witnesses to testify on his behalf, and also to introduce documentary evidence in his defense Selsky Decl. (Dkt. No. 62–3) ¶ 44 and Exh. A (Dkt. No. 62–4); Exh. B (Dkt. No. 62–5) at pp. 60–86, 94–115, 136–83, 185–209, and Exh. B (Part 2) (Dkt. No. 62–6) at pp. 2–12, 30–43, 59–71, 72–78, 76–83, 105–111, 111–117, 117–21,122–26, 128–39.Two inmate witnesses listed by the plaintiff declined to testify, and executed refusal forms stating that they did not wish to be involved in the matter. Selsky Decl. (Dkt. No. 62–3) ¶ 42 and Exh. A (Dkt. No. 62–4). The hearing officer rejected plaintiff's request that he be permitted to adduce testimony from two other witnesses, his wife and his attorney, concluding that the testimony would not be relevant to the issues involved in the hearing. Selsky Decl., Exh. B (Part 2) (Dkt. No. 62–6) pp. 98–99.

At the conclusion of hearing, plaintiff was found guilty of fighting (one count), refusing to obey a direct order, engaging in violent conduct, and participating in a demonstration, but was acquitted on the second count of fighting. Selsky Decl. (Dkt. No. 62–3) ¶ 22 and Exh. A (Dkt. No. 62–4). Based upon his findings, which were both noted in writing and stated orally at the hearing, the hearing officer imposed a penalty that included twenty-four months of disciplinary SHU confinement and a corresponding loss of package, commissary and telephone privileges. Selsky Decl. (Dkt. No. 62–3) ¶ 23; *see also* Exh. A (Dkt. No. 62–4) and Exh. B (Part 2) (Dkt. No. 62–6) pp. 156–58.

On February 11, 2004, plaintiff appealed the disciplinary determination to defendant Selsky's office. *See* Amended Complaint (Dkt. No. 7) ¶ 21; Selsky Decl. (Dkt. No. 62–3) ¶ 26 and Exh. C (Dkt. No. 62–7). Plaintiff also submitted a supplemental appeal on or about March 12, 2004. Selsky Decl. (Dkt. No. 62–3) ¶¶ 26–27, Exhs. C (Dkt. No. 62–7) and D (Dkt. No. 62–8). Defendant Selsky issued a determination on behalf of the DOCS Commissioner on April 8, 2004, modifying the results of the hearing by dismissing the charge

of engaging in a demonstration and reducing the penalty imposed to twelve months of SHU confinement with a corresponding loss of privileges. [6] Selsky Decl. (Dkt. No. 62–3) ¶ 28 and Exh. E (Dkt. No. 62–9). That determination was based upon defendant Selsky's finding that the nature of the incidents giving rise to the MBRs did not warrant the full extent of the penalty imposed and that the charge of engaging in a demonstration was not substantiated. *Id.* at ¶ 28 and Exh. E (Dkt. No. 62–9). Based upon his review, however, Selsky concluded that plaintiff received all of the procedural due process mandated under the Fourteenth Amendment and that there was evidence in the record substantiating the charges for which Rodriguez was found guilty.*Id.* at ¶ 29.

## II. *PROCEDURAL HISTORY*

**\*3** This action was commenced on April 11, 2007 in the Southern District of New York, but was subsequently transferred to this district by order issued by Chief District Judge Kimba M. Wood on April 11, 2007. [7] Dkt. Nos. 1, 3. Plaintiff's original complaint challenged not only the MBRs issued and the disciplinary action that ensued, but also chronicled alleged continued harassment and acts of retaliation that he experienced following his transfer into the Attica Correctional Facility, naming as defendants several DOCS employees including Donald Selsky. *See* Complaint (Dkt. No. 1).

Upon transfer of the case to this district and the court's initial review of plaintiff's complaint and accompanying request for leave to proceed *in forma pauperis* ("IFP"), by order dated May 17, 2007, Senior District Judge Lawrence E. Kahn granted plaintiff IFP status but directed that he file an amended complaint, noting several deficiencies in the original pleading including, *inter alia,* the apparent untimeliness of certain of his claims. Dkt. No. 5. In accordance with the court's directive, plaintiff filed an amended complaint on June 26, 2007. Dkt. No. 7. Upon review of that pleading District Judge Kahn issued an order on July 19, 2007 accepting the amended complaint for filing, but dismissing plaintiff's claims against the majority of the defendants as time-barred and further directing dismissal of plaintiff's claims against a newly-added defendant, Corrections Sergeant Corcran, without prejudice to plaintiff's right to file a separate action against that defendant in the Western District of New York. [8] As a result, Donald Selsky was left as the sole remaining defendant in the action.

After filing an answer generally denying plaintiff's allegations against him and asserting various affirmative defenses, *see* Dkt. No. 10, defendant Selsky moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings, urging dismissal of plaintiff's amended complaint on the ground that it failed to allege the requisite degree of his personal involvement in any wrongdoing to support a finding of liability. Dkt. No. 47. The motion resulted in my issuance of a report on February 25, 2010 recommending that the motion be denied. Dkt. No. 54. That recommendation was adopted by District Judge Lawrence E. Kahn by order issued on September 13, 2010. Dkt. No. 67.

On June 18, 2010, defendant again moved, this time for summary judgment dismissing plaintiff's complaint. Dkt. No. 62. In his motion defendant reiterates his claim of lack of personal involvement, and additionally asserts that in any event plaintiff's due process claim lacks merit since the plaintiff was afforded all of the procedural safeguards required under the Fourteenth Amendment, and further that he is entitled to qualified immunity from suit. *Id.* Plaintiff has since responded in opposition to defendant's motion, Dkt. No. 68, and defendant has submitted a reply memorandum addressing plaintiff's arguments and further supporting his motion. Dkt. No. 74.

**\*4** Defendant's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New*

York, 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620–21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. *Personal Involvement*

**\*5** In his motion defendant Selsky renews an argument previously made and rejected—that his limited involvement in reviewing the disciplinary determination in question based upon plaintiff's appeal of that decision is insufficient to support a finding of liability for any procedural due process violation which may have occurred in the context of that hearing. In response, plaintiff counters that the record reveals facts from which a reasonable factfinder could conclude that the defendant personally participated in the due process violation, including by conducting an inadequate review of the disciplinary hearing record.

It seems clear, particularly in light of the Supreme Court's relatively recent decision in *Ashcroft v. Iqbal,* —— U.S. ——– 129 S.Ct. 1937, 1948–49 (2009), that to be held accountable for a constitutional deprivation under section 1983 a defendant must have had personal involvement in the conduct giving rise to the deprivation. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (*citing Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978); *Scott v. Fischer,* 616 F.3d 100, 110 (2d Cir.2010) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.") (quoting *McKinnon* ). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

As was noted in my prior report and recommendation, the question of whether defendant Selsky's review of an allegedly infirm disciplinary hearing provides grounds for establishing his personal involvement is one that has divided the courts. Some courts have found the mere allegation that Selsky has reviewed and affirmed a hearing determination that was the product of a due process deprivation is insufficient to establish liability for the underlying violation. *See, e.g., Abdur–Raheem v. Selsky,* 598 F.Supp.2d 367, 370 (W.D.N.Y.2009) ("The only allegation concerning Selsky in the case at bar is that he affirmed the disposition of plaintiff's administrative segregation hearing, pursuant to which plaintiff was confined to SHU.... That is not enough to establish Selsky's personal involvement."); *Ramsey v. Goord,* No. 05–CV–47A, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005) ("[t]he fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS 'chain of command,' affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part."); [9] *see also Odom v. Calero,* No. 06 Civ. 15527, 2008 WL 2735868, at *7 (S.D.N.Y. Jul. 10, 2008) (concluding that a due process violation is complete upon the hearing officer rendering a decision, even when the liberty interest deprivation persists, and therefore is not "ongoing" when an appeal is taken to Donald Selsky).

**\*6** On the other hand, other courts have found that the act of reviewing and affirming a determination on appeal can provide a sufficient basis to find the necessary personal involvement of a supervisory employee like defendant Selksy. *See, e.g., Bennett v. Fischer,* No. 9:09–CV–1236, 2010 WL 5525368 (N.D.N.Y. Aug 17, 2010) (Peebles, M.J.) (finding questions of fact regarding Commissioner Fischer's personal involvement in disciplinary precluding summary judgment), *Report and Recommendation Adopted,* 2011 WL 13826 (N.D .N.Y. Jan. 4, 2011) (Scullin, S. J.); *Baez v. Harris,* No. 9:01–CV–807, 2007 WL 446015, at *2 (N.D.N.Y. Feb. 7, 2007) (Mordue, C.J.) (fact that defendant Selsky responds personally to all disciplinary appeals by inmates found sufficient to withstand summary judgment motion based on lack of personal involvement); *Cepeda v. Coughlin,* 785 F.Supp. 385, 391 (S.D.N.Y.1992) ("The Complaint alleges that '[t]he Commissioner and/or his designee entertained plaintiff[']s appeal and also affirmed.'... [T]he allegation that supervisory personnel learned of alleged misconduct on appeal yet failed to correct it constitutes an allegation of personal participation. Assuming that this allegation is true, as this court must on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)..., Cepeda has pleaded personal involvement by Commissioner Coughlin sufficiently to withstand this motion.") (citations omitted); *Johnson v. Coombe,* 156 F.Supp.2d 273, 278 (S.D.N.Y.2001) (finding that plaintiff's complaint had sufficiently alleged personal involvement of Superintendent and Commissioner to withstand motion to dismiss because plaintiff alleged that both defendants had actual or constructive notice of the defect in the underlying hearing); *Ciaprazi v. Goord,* No. 9:02–CV–0915, Report–Recommendation, 2005 WL 3531464, at *16 (N.D.N.Y. Mar. 14, 2004) (Peebles, M.J.) (recommending that Selsky's motion for summary judgment for lack of personal involvement be denied because Selsky's review of plaintiff's disciplinary hearing appeal "sufficiently establishes his personal involvement in any alleged due process violations based upon his being positioned to discern and remedy the ongoing effects of any such violations."), *adopted,* 2005 WL 3531464, at *1–2 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.).

In support of his argument regarding personal involvement defendant cites *Tafari v. McCarthy,* 714 F.Supp.2d 317 (N.D.N.Y. My 24, 2010), in which another magistrate judge of this court, in a report and recommendation adopted by the assigned district judge, wrote that "[t]he affirming of a disciplinary conviction does not constitute personal involvement in a constitutional violation."*Tafari,* 714 F.Supp.2d at 383. (citing *Joyner v. Greiner,* 195 F.Supp.2d 500, 506 (S.D.N.Y.2002)). I respectfully disagree with my esteemed colleague and maintain that the cases

holding that Selsky's affirmance, or that of someone in his corresponding position, of a constitutionally defective disciplinary determination at a time when the inmate is still serving his or her disciplinary sentence, and the violation can therefore be abated, falls within the *Colon* factors articulated in the Second Circuit for informing the supervisory liability analysis. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). In any event, this case is distinguishable from *Tafari* since here plaintiff has alleged that through his own conduct in inadequately reviewing the underlying determination defendant Selsky committed a due process violation, *see* Amended Complaint (Dkt. No. 7) ¶ 21, thereby satisfying the Supreme Court's admonition that a defendant can only be held liable for his or her own conduct for purposes of a civil rights violation. *Iqbal,* 129 S.Ct. at 1948.

**\*7** As I noted in my prior report, I believe that those cases concluding that a plaintiff's allegation that defendant Selsky reviewed and upheld an allegedly constitutionally-suspect disciplinary determination is enough to show his personal involvement in the alleged violation appear to be both better reasoned and more consonant with the Second Circuit's position regarding personal involvement. *See Black v. Coughlin,* 76 F.3d 72, 75 (2d Cir.1996) (criticizing a district court's denial of leave to amend to add Donald Selsky as a defendant in a due process setting and appearing to assume that Selsky's role in reviewing and affirming a disciplinary determination is sufficient to establish his personal involvement). While it may be true that the due process violations cited by Rodriguez occurred and were no longer ongoing when his appeal was taken to defendant Selsky, because it appears that the sentence imposed was still being served at the time of his review, the liberty interest deprivation allegedly effectuated without due process was therefore ongoing, and defendant Selsky was in a position to remedy the violation, at least in part, at a time when his intervention would still have been meaningful.

**C. Merits of Plaintiff's Due Process Claim**

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). Defendant concedes that plaintiff's eight months of SHU disciplinary confinement "at least arguably" impacted a protected liberty interest, *see*

Defendant's Memorandum (Dkt. No. 62–14) at p. 3, and I agree. *See Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000) (finding that disciplinary confinement for a period of 305 days is "a sufficient departure from the ordinary incidents of prison life to require procedurally due process protections."). Plaintiff's claim, then, boils down to whether he was provided the procedural safeguards guaranteed under the Fourteenth Amendment prior to that deprivation. [10]

The procedural rights to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well-established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell,* 418 U.S. 539, 564–67, 94 S.Ct. 2963, 2978–80 (1974). [11] Under *Wolff,* the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff,* 418 U.S. at 564–67, 94 S.Ct. at 2978–80; *see also Eng v. Coughlin,* 858 F .2d 889, 897–98 (2d Cir.1988). In addition, to pass muster under the Fourteenth Amendment the hearing officer's disciplinary determination must garner the support of at least "some evidence". *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768 (1985).

**1.** *Notice of Charges*

**\*8** The record now before the court, when interpreted in a light most favorable to the plaintiff, suggests that while the second of the two MBRs addressed at plaintiff's disciplinary hearing was served on Rodriguez on January 2, 2004, the earlier report was not received by him until the date on which the hearing was to begin. [12] Under *Wolff,* an accused inmate is entitled to meaningful advance written notice of the charges against him; in this circuit, a minimum of twenty-four hours of advance notice is generally considered to be required. *Sira v. Morten,* 380 F.3d 57, 70 (2d Cir.2004). The purpose of the notice requirement is to place the inmate on notice of the charges faced in order to permit the preparation of an adequate defense. *Id.* (citing *Taylor v. Rodriguez,* 238 F.3d 188, 192–93 (2d Cir.2001); *see also Martin v. Mitchell,* No. 92–CV–716, 1995 WL 760651, at \*2 (N.D.N.Y. Nov. 24, 1995) (McAvoy, J.) (citing *Wolff,* 418 U.S. at 564, 94 S.Ct. at 2978) (holding that the purpose of the twenty-four hour notice rule is to provide inmates with sufficient time to prepare a

defense, "not to hold hearing officers to a rigid and useless requirement that they only may call an inmate into a hearing room once they are positive that the inmate received a copy of the misbehavior report at least twenty-four hours earlier").

In this instance, any failure on the part of prison officials to provide plaintiff with notice of the charges lodged against him prior to the scheduled hearing was harmless in light of the hearing officer's agreement to adjourn the hearing, initially from January 7, 2004 to January 8, 2004, and then again to January 13, 2004, in order to allow the Rodriguez to prepare his defense. The record clearly reflects that, during those intervening periods, he was afforded the opportunity to prepare a defense to both charges before any testimony was taken. *See* Plaintiff's Memorandum (Dkt. No. 68–1) at p. 5 (admitting that plaintiff was served with the first misbehavior report at the hearing prior to any testimony having been taken).

The notice requirements of *Wolff* were therefore satisfied in this case, and no reasonable factfinder could conclude otherwise.

### 2. *Assistance in Preparation of a Defense*

Under *Wolff* and its progeny, a prisoner is entitled to an "employee assistant" to aid in the preparation for a disciplinary hearing when the inmate is illiterate, confined to the SHU, or unable to grasp the complexity of the issues involved. *Silva v. Casey,* 992 F.2d 20, 22 (2d Cir.1993); *see also Eng,* 858 F.2d at 897. The Supreme Court has made it clear, however, that the assistance due prisoners is limited and is not equivalent to the right of a criminally accused legal counsel. *Wolff,* 418 U.S. at 570, 94 S.Ct. at 2981. An assistant is only required to act as the inmate's *"surrogate*—to do what the inmate would have done were he able."*Silva,* 992 F.2d at 22 ("The assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel.")

**\*9** Because Rodriguez had been relegated to SHU confinement by the time of the disciplinary hearing he was entitled to and was in fact assigned an employee assistant, Ms. Roddy, to help him prepare for the hearing. Rodriguez asserts that the assistant, however, refused to provide him with requested documents and threatened to "write him up" if he requested further assistance. Plaintiff's Memorandum (Dkt. No. 68–1) at pp. 14–17.Specifically, plaintiff claims that he was refused access to documents that would have helped prove his innocence, including a list of officers involved

in the incidents involved, letters written by another inmate, video footage of a different inmate being led to the SHU, all misbehavior reports concerning other inmates' involvement in the incidents, and all pertinent "To/From" memoranda produced by staff or inmates with knowledge of the relevant events. *Id.* at p. 15.

A careful review of the assistant forms and attachments in the record shows that the assigned assistant fulfilled her duty as plaintiff's surrogate. Plaintiff provided several lists of documents requested to prepare his defense.[13] Selsky Decl., Exh. A (Dkt. No. 62–4) pp. 46–49, 54–61. Ms. Roddy indicated on the assistant form that she pursued all of plaintiff's requests and provided him with at least twenty pages of documents. *Id.* at pp. 17–18.On the handwritten lists, Ms. Roddy noted which documents were provided to plaintiff and gave brief explanations as to why some of the requested documents could not be produced. It was noted, for example, that plaintiff was denied access to the handwritten notes of another inmate, several requested "To/From" forms simply did not exist, and that the video footage would be available for viewing at the hearing if deemed pertinent to the pending charges. *Id.* at pp. 46–49.

There is no indication that any documents were withheld from plaintiff without justification or as a result of Ms. Roddy's ineffective assistance. Ms. Roddy's role as plaintiff's assistant was limited to acting as his surrogate; if he was not permitted to receive certain documents, Ms. Roddy likewise could not access them. Even assuming plaintiff's claim that Ms. Roddy was rude and hostile toward him is accurate, such conduct in and of itself does not violate his federal due process rights. *See Gates v. Selsky,* No. 02 CV 496, 2005 WL 2136914, at * 7 (W.D.N.Y. Sept. 02, 2005) (noting that the duty owed by an employee assistant is the provision of requested services in good faith and in the best interest of the inmate and to perform as instructed by the inmate). In short, there is no evidence now before the court from which a reasonable factfinder could conclude that plaintiff was denied effective assistance in preparing his defense to the pending disciplinary charges.

### 3. *Opportunity to Present Evidence*

The due process clause of the Fourteenth Amendment plainly guarantees the right of an accused inmate to present a defense to disciplinary charges.*Wolff,* 418 U.S. at 555–56, 94 S.Ct. at 2974. That right, however, is not unfettered and does not apply to the same extent as the constitutional guarantee to a criminally accused defendant of the right to present a

meaningful defense. *Hernandez v. Selsky,* 572 F.Supp.2d 446, 454 (S.D.N.Y.2008) (citing *Wolff* ). Instead, in order to keep a disciplinary hearing to within reasonable limits, a hearing officer "must have the necessary discretion ... to refuse to all witnesses that may create a risk of reprisal or undermine authority" *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980.

**\*10** An inmate's request to have specific witnesses called to testify may be refused if the hearing officer reasonably finds that such witnesses' testimony would be duplicative, non-probative, or would interfere with correctional goals. *See Russell v. Selsky,* 35 F.3d 55, 58 (2d Cir.1994)."[A] hearing officer does not violate due process by excluding irrelevant or unnecessary testimony." *Kalwasinski v. Morse,* 201 F.3d 103, 109 (2d Cir.1999).

In support of his claim that he was denied the opportunity to present a meaningful defense plaintiff first points to the hearing officer's refusal to allow him to call his mother and attorney as witnesses. According to the plaintiff, both would have substantiated his claim of retaliatory motives on the part of correctional officials. Plaintiff's Memorandum (Dkt. No. 68–1) at p. 8;*see also*Selsky Decl., Exh. B (Dkt. No. 62–6) pp. 98–99. Neither witness, however, was present in the prison during any of the events giving rise to plaintiff's claims. The only testimony those individuals could have offered would not only have been hearsay, but would have come directly from Rodriguez himself, who was present to testify. Accordingly, the hearing officer properly determined that such testimony would have been irrelevant or unnecessarily redundant.

Plaintiff also challenges the hearing officer's failure to submit written questions to two fellow inmates who refused to testify at the hearing. Despite plaintiff's claim to the contrary, a hearing officer is under no affirmative duty to compel a response from an inmate who refuses to testify at a disciplinary hearing. If a witness has indicated that he or she will not testify if called, it would be futile and unnecessary to pursue his or her testimony further. *Silva,* 992 F.2d at 22;*see also Johnson v. Doling,* No. 9:05–CV–376, 2007 WL 3046701, at \*7 (N.D.N.Y. Oct. 17, 2007) (McAvoy, J. and Treece, M.J.) (the failure to summon the testimony of a witness who refuses to testify does not violate due process); *Dumpson v. Rourke,* No. CIVA96CV621, 1997 WL 610652, at \*5 (N.D.N.Y. Sept. 26, 1997) (Pooler, J. and DiBianco, M.J.) (a hearing officer's failure to investigate why an inmate refused to testify does not constitute a due process violation).

Here, inmates Colon and Berrios flatly refused to testify at plaintiff's disciplinary hearing, signing the appropriate refusal forms on January 14, 2004. Selsky Decl., Exh. A (Dkt. No. 62–4) pp. 110–11. Colon explained his refusal by noting that he had not witnessed the incident, and Berrios likewise claimed to have no relevant information because he was sleeping in his cell at the relevant times. *Id.* Requesting further information from these inmates would have been futile and unnecessary since they claimed not to have actually witnessed the events that led to Rodriguez's charges. It was therefore not a violation of plaintiff's due process rights for the hearing officer to refuse to inquire further into their involvement.

### 4. *Impartial Hearing Officer*

**\*11** Among the due process dictates arising under the Fourteenth Amendment is the requirement that a hearing officer assigned to address a disciplinary charge against an inmate be unbiased. *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996); *see also Davidson v. Capuano,* No. 78 Civ. 5724, 1988 WL 68189, at \*8 (S.D.N.Y. June 16, 1988) (citing *McCann v. Coughlin,* 698 F.2d 112, 122 n. 10 (2d Cir.1983)). While the reality is that most hearing officers serving in that capacity are prison officials, and a prison hearing officer's impartiality generally does not have to mirror that of judicial officers, nonetheless the result of a disciplinary hearing should not be "arbitrary and adversely predetermined." *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). Here again, the inquiry focuses on whether plaintiff was afforded basic due process. *See Wright v. Conway,* 584 F.Supp.2d 604, 609 (W.D.N.Y.2009). Within that context, an impartial hearing officer is one who "does not prejudge the evidence and who cannot say ... how he would assess evidence he has not yet seen." *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir.1990).

It should be noted that a plaintiff's disagreement with a hearing officer's rulings alone does not give rise to a finding of bias. *See Johnson,* 2007 WL 3046701, at \*10 (hostile exchanges between plaintiff and the hearing officer throughout the proceeding and adverse rulings did not constitute bias where plaintiff was otherwise provided the opportunity to testify, call witnesses, and raise objections). Similarly, the mere involvement of a hearing officer in related investigations or proceedings does not evidence bias. *See Vega v. Artus,* 610 F.Supp.2d 185, 200 (N.D.N.Y.2009) (failing to find bias where the hearing officer conducted both the disciplinary proceeding and the investigation into the inmate's grievance against the involved corrections officer).

Because prison officials serving as adjudicators enjoy a rebuttable presumption that they are unbiased, *Allen,* 100 F.3d at 259, plaintiff's conclusory allegations of bias in this case are insufficient to overcome this presumption. Plaintiff claims that Hearing Officer Ewanciw was biased because he sought assistance from Lt. Wright, who authored one of the two MBRs in issue. Plaintiff's Memorandum (Dkt. No. 68–1) at pp. 18–20.However, Rodriguez fails to explain how this evidences bias against him, reflects a predetermination on the hearing officer's part, or impacted the outcome of the proceeding. The record reflects that the hearing officer disclosed to the plaintiff that he had consulted with Lt. Wright, the "disciplinary lieutenant," for the purpose of ascertaining whether plaintiff was permitted to receive copies of redacted investigation documents. Selsky Decl., Exh. B (Dkt. No. 62–5) p. 130.

During the hearing plaintiff suggested that the hearing officer and Lt. Wright are friends outside of work. Selsky Decl., Exh. B (Dkt. No. 62–5) pp. 131–32. While the allegation denied by Hearing Officer Ewanciew, even if true this fact does not show that he was predisposed to rule against plaintiff.

 *12  In sum, plaintiff has failed to adduce evidence from which a reasonable factfinder could conclude that the hearing officer assigned to preside over plaintiff's disciplinary hearing was biased, or had prejudged plaintiff's guilt prior to considering the evidence presented at the hearing.

**5.** *Determination Supported by "Some Evidence"*
In addition to repeated verbal explanations of his rulings throughout the hearing and of his ultimate findings, Hearing Officer Ewanciw provided plaintiff with a written explanation of the evidence relied upon in reaching his conclusion. Selksy Decl., Exh. A (Dkt. No. 62–4) pp. 3–4. In his written explanation, Hearing Ewanciw acknowledged that he relied in part on information from confidential witnesses. Selksy Decl., Exh. A (Dkt. No. 62–4) p. 4. The question next presented is whether these findings were supported by at least some credible evidence.

The "some evidence" standard is extremely tolerant and is satisfied if "there is any evidence in the record that supports" the disciplinary ruling. *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000). Nonetheless to pass constitute muster, the supporting evidence must be reliable. *Taylor v. Rodriguez,* 238 F.3d 188, 194 (2d Cir.2001). The Second Circuit has made clear that "the reliability of evidence is always properly assessed by reference to the totality of the circumstances and

that an informant's record for reliability cannot, by itself, establish the reliability of bald conclusions or third-party hearsay." *Sira,* 380 F.3d at 82; *see also Dawkins v. Gonyea,* 646 F.Supp.2d 594, 614 (S.D.N.Y.2009) ("*Sira* clearly established that an independent assessment is necessary to satisfy the 'some evidence' standard when a disciplinary decision is based solely on confidential information.").

The hearing transcript reflects that the hearing officer did not make an independent inquiry into the reliability of the confidential inmate witnesses himself, but instead relied on Lt. Wright's independent finding of reliability. Selsky Decl., Exh. B (Dkt. No. 62–5) p. 128. Had the disciplinary decision been based solely on such confidential information, an issue of material fact might have been presented as to whether the "some evidence" standard was met. With defendant Selsky's reversal of plaintiff's conviction on the demonstration charge contained within the January 2, 2004 MBR, the remaining charges for which he was found guilty included fighting, refusing a direct order, and violent conduct. To support his finding of guilt on those counts Hearing Officer Ewanciw relied on a correctional officer's assertion that he witnessed plaintiff raise his fists, throw punches, and fail to stop fighting when instructed to do so—an account that was corroborated by another officer's investigation—as well as the results of an investigation into the incident and evidence found in plaintiff's cell tying him to the relevant events. There was therefore sufficient reliable evidence on which to base a disciplinary decision related to the charges, independent of the confidential witness statements, and no reasonable factfinder could conclude otherwise.

**IV.** *SUMMARY AND RECOMMENDATION*
 *13  Plaintiff has failed to establish the existence of a genuine issue of material fact regarding his procedural due process claim. Rodriguez received sufficient notice of the charges against him as well as adequate assistance in preparing a defense, and had ample opportunity to appear, call witnesses, and present evidence in his defense. In addition, the record fails to disclose any basis for concluding that Hearing Officer Ewanciw was biased, and the record before the court proves that he provided plaintiff with a written explanation of the reasons for his decision, which was supported by at least some reliable evidence. I therefore recommend dismissal of plaintiff's due process claim against defendant Selsky on the merits, and in light of this recommendation find it unnecessary to address defendant's claim of qualified immunity. It is therefore respectfully

RECOMMENDED, that defendant's motion for summary judgment (Dkt. No. 62) be GRANTED, and that the complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1086001

## Footnotes

1   As originally constituted, plaintiff's complaint recited other purportedly unlawful conduct, alleging that he was subjected to ongoing harassment, retaliation, and interference with his access to the courts. As a result of a series of court interventions the claims in this action, which was commenced elsewhere but later transferred to this district, have been significantly narrowed.

2   In light of the procedural posture of the case the following recitation is derived from the record now before the court with all inferences drawn and ambiguities resolved in favor of the plaintiff. Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir.2003).

3   As will be seen I have assumed, as I must at this juncture, that plaintiff's version of the facts is correct. See pp. 21–32, post.

4   The DOCS conducts three types of inmate disciplinary hearings. See 7 N.Y.C.R.R. § 270.3. Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU"). Tier III hearings concern the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. See Hynes v. Squillace, 143 F.3d 653, 655 (2d Cir.), cert. denied, 525 U.S. 907, 119 S.Ct. 246 (1998).

5   Plaintiff's disciplinary hearing was originally scheduled to start on January 5, 2004, in order to meet the requirements of a state regulation mandating that a disciplinary hearing commence within seven days of a prisoner's confinement in a facility's SHU, 7 N.Y.C.R.R. § 251–5.1(a) (1983). Selsky Decl., Exh. B (Dkt. No. 62–5) pp. 18–19. While plaintiff assigns significance to the failure of prison officials to meeting the seven-day requirement, the record reveals that an extension was granted because plaintiff's assistant was unable to meet with him prior to January 5, 2004. Id. In any event, the violation of state regulations is not cognizable under 42 U.S.C. § 1983. Cusamano v. Sobek, 604 F.Supp.2d 416, 482 (N.D.N.Y.2009) (Suddaby, J.) (collecting cases). Plaintiff's claim of undue delay is instead subject to constitutional standards, which require only that the hearing be held within a "reasonable time" and not within any prescribed number of days. Russell v. Coughlin, 910 F.2d 75, 78 n. 1 (2d Cir.1990) ("Federal constitutional standards rather than state law define the requirements of procedural due process."); Donato v. Phillips, No. 9:04–CV–1160, 2007 WL 168238, at *6 (N.D.N.Y. Jan. 18, 2007) (McAvoy, J.) (hearing that started nine days after plaintiff's confinement in the SHU was reasonable).

6   Plaintiff's SHU term of disciplinary confinement and corresponding loss of privileges was further reduced to eighth months and nine days, ending on September 9, 2004, as a result of a discretionary time cut on or about July 14, 2004, occurring while plaintiff was housed at the Southport Correctional Facility. Selsky Decl. (Dkt. No. 62–3) ¶ 53.

7   While plaintiff's complaint was not filed in the Southern District until April 11, 2007, the transfer order issued by Chief Judge Wood noted that the complaint was received in that district on February 26, 2007. See Dkt. No. 3, n. 1.

8   District Judge Kahn explained that "[s]ince the alleged wrongdoing by Defendant Corcran occurred in the Western District of New York, and Plaintiff's claims against Defendant Corcora are very recent, and thus not in jeopardy of being time-barred at this time, the Court will dismiss Defendant Corcran from the action, without prejudice to Plaintiff filing his claims against Defendant Corcran in the Western District of New York." Decision and Order (Dkt. No. 8) at p. 3.

9   Copies of all unreported decisions cited in this document have been appended for the convenience of the pro se plaintiff.

10  It should be noted that in this case plaintiff goes beyond merely alleging defendant Selsky's failure to rectify a past due process violation. In his complaint plaintiff also alleges that defendant Selsky participated in or furthered the violation by failing to conduct an appropriate review. Amended Complaint (Dkt. No. 7) ¶ 21.

11    Many of the points raised in support of plaintiff's due process claim surround the alleged failure of prison officials to meet the requirements prescribed by regulation for disciplinary hearings. It is well established, however, that a violation of a state regulation is not actionable under section 1983. *Cusamano,* 604 F.Supp.2d at 482.

12    As was previously noted, defendant disputes plaintiff's claim in this regard and asserts instead that both misbehavior reports were served on the plaintiff on January 2, 2004 by Corrections Officer Ferguson on January 2, 2004. Selsky Decl. (Dkt. No. 62–3) ¶ 19 and Exh. A.

13    It is noted that plaintiff did not request that Ms. Roddy interview any inmates or other persons as potential witnesses and refused to sign the assistant form. Selsky Decl., Exh. A (Dkt. No. 62–4) p. 17.

2013 WL 1500422
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Troy SMITH, Plaintiff,
v.
C. ROSATI, et al., Defendants.

Civil Action No. 9:10–CV–1502 (DNH/DEP).
|
Feb. 20, 2013.

**Attorneys and Law Firms**

Troy Smith, Elmira, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, Michael G. McCartin, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Troy Smith, a New York State
prison inmate, has commenced this action, pursuant to
42 U.S.C. § 1983, against the Commissioner of the New
York State Department of Corrections and Community
Supervision ("DOCCS") and several DOCCS employees,
alleging deprivation of his civil rights. In general terms,
plaintiff's amended complaint alleges that two defendants
assaulted him at the instruction of other defendants, that one
defendant failed to intervene and protect him from the assault,
that two defendants failed to provide him with adequate
medical care, that several defendants conspired to conceal
the assault, and that he was deprived procedural due process at a
disciplinary hearing arising from the event.

Currently pending before the court in connection with the
action is defendants' motion for the entry of partial summary
judgment. Specifically, defendants seek dismissal of all
claims against all defendants with the exception of those
asserted against defendants Rosati and St. John, who, plaintiff
alleges, assaulted him. For the reasons set forth below, I
recommend that defendants' motion be granted except as
it relates to the failure to intervene claim asserted against

defendant Fraser and the retaliation claim interposed against
defendant Goodman.

## I. *BACKGROUND* [1]

Plaintiff is a New York State prison inmate currently being
held in the custody of the DOCCS. *See generally* Am. Compl.
(Dkt. No. 7). Although he is currently confined elsewhere,
at all times relevant to this action, Smith was confined in
the Great Meadow Correctional Facility ("Great Meadow"),
located in Comstock, New York. *Id.* at 1. Two series of
events, separately discussed below, give rise to this action.

### A. *Mattress Incident*

In January 2010, plaintiff attempted to trade in his old
mattress to defendant B. Mars, the laundry supervisor
at Great Meadow, in return for a new one. Plf.'s Dep.
Tr. (Dkt. No. 79, Attach.3) at 9. According to plaintiff,
defendant Mars improperly ordered plaintiff to pay the
full price for the new mattress because she believed that
plaintiff had purposely damaged his old one. *Id.* at 9–
10.Defendant Mars issued a misbehavior to plaintiff, and
plaintiff filed a grievance against defendant Mars with the
Inmate Grievance Resolution Committee ("IGRC"), both as
a result of the incident. *Id.* at 10.Defendant Craig Goodman, a
corrections captain employed by the DOCCS, presided over
the disciplinary hearing that resulted from the misbehavior
report issued by defendant Mars. *Id.* at 11; Goodman Decl.
(Dkt. No. 79, Attach.12) at ¶ 1. According to plaintiff, at that
hearing, defendant Goodman acknowledged that plaintiff's
old mattress was damaged as a result of normal wear-and-
tear, promised to testify on plaintiff's behalf at the IGRC
hearing, and dismissed the misbehavior report. Plf.'s Dep.
Tr. (Dkt. No. 79, Attach.3) at 11. Plaintiff alleges, however, that
defendant Goodman ultimately refused to testify on his behalf
at the IGRC hearing, and denied that he told plaintiff his
mattress was damaged as a result of normal wear-and-tear. *Id.*
at 12.As a result, in January or February 2010, plaintiff filed
a grievance with the IGRC alleging that defendant Goodman
lied to him. *Id.* at 15, 17.

**\*2** In May 2010, plaintiff tested positive for marijuana use,
and was issued a misbehavior report. Plf.'s Dep. Tr. (Dkt. No.
79, Attach.3) at 13. Defendant Goodman presided over
the ensuing disciplinary hearing and, after finding plaintiff guilty,
sentenced him principally to twelve months of disciplinary
confinement in the Special Housing Unit ("SHU").*Id.* at
18, 21.Due to plaintiff's mental health status, however,
this sentence was subsequently modified by the facility

superintendent to six months in keeplock confinement. *Id.* at 23.On or about June 11, 2010, plaintiff arrived in keeplock at Great Meadow. *Id.*

**B.** *Assault*

On June 18, 2010, defendant Paul Zarnetski, a corrections lieutenant employed by the DOCCS, instructed defendant Craig Rosati, a corrections officer also employed by the DOCCS, to escort plaintiff to his scheduled disciplinary hearing. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 87; Zarnetski Decl. (Dkt. No. 79, Attach.14) at ¶¶ 1, 4. At approximately 12:45 p.m. on the same date, defendant Rosati retrieved plaintiff from his cell for the escort. Am. Compl. (Dkt. No. 7) at 9; Goodman Decl. Exh. (Dkt. No. 79, Attach.15) at 1. As the two entered a nearby stairway, an altercation ensued between them, which resulted in both plaintiff and defendant Rosati falling down the stairs. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 31; Goodman Decl. Exh. (Dkt. No. 79, Attach.15) at 1. Plaintiff alleges that defendant Rosati pushed him down the stairs and then jumped on him. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 31, 35. Defendant Rosati, on the other hand, reported that plaintiff turned toward him in a threatening manner, causing him to use force that consisted of a strike to plaintiff's forehead with a closed fist. Goodman Decl. Exh. (Dkt. No. 79, Attach.13) at 1. It is undisputed, however, that, after plaintiff and defendant Rosati fell down the stairs, defendant Chad St. John, another corrections officer, arrived at the scene. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 35–36; Goodman Decl. Exh. (Dkt. No. 79, Attach.13) at 1. Plaintiff alleges that defendant St. John began kicking him while he was still on the ground. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 35–36. Defendants, however, maintain that defendant St. John used force that consisted only of applying mechanical hand restraints. Goodman Decl. (Dkt. No. 79, Attach.13) at 1.

Shortly after the arrival of defendant St. John, defendant C. Fraser, a corrections sergeant at Great Meadow, also arrived on the scene. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 37; Goodman Decl. Exh. (Dkt. No. 79, Attach.13) at 1. The parties dispute whether defendant Fraser witnessed a further use of force by defendant Rosati when defendant Rosati pushed plaintiff's face into a wall and threatened to kill him. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 38; Defs.' L.R. 7.1 Statement (Dkt. No. 79, Attach.16) at ¶ 9. It is undisputed, however, that defendant Fraser ordered that a video camera be brought to the scene; upon its arrival, a corrections officer began filming plaintiff's escort from the stairway to the Great

Meadow hospital. Lindemann Decl. Exhs. (Dkt. No. 79, Attach.10) (traditionally filed, not electronically filed).

**\*3** Upon his arrival at the hospital, Smith was examined by defendant David Lindemann, a DOCCS registered nurse. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 40; Lindemann Decl. (Dkt. No. 79, Attach.7) at ¶¶ 1, 4. As a result of his examination and interview of plaintiff, defendant Lindemann noted plaintiff's complaints of a sore left shoulder, pain to his left rib area, and facial area pain, but observed no decrease in plaintiff's range of motion in his shoulder and no visible injuries to his rib area. Lindemann Decl. (Dkt. No. 79, Attach.7) at ¶ 5; Lindemann Decl. Exhs. (Dkt. No. 79, Attachs.8, 9). Defendant Lindemann observed a swollen area on plaintiff's head and a laceration of approximately one and one-half inches in length above plaintiff's left eye, for which he referred plaintiff to defendant Nesmith for stitches.*Id.* Defendant Ted Nesmith, a physicians assistant employed by the DOCCS, closed plaintiff's laceration above his left eye with eight stitches. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 79–80; Nesmith Decl. (Dkt. No. 79, Attach.6) at ¶ 5.

As a result of the incident, plaintiff was issued a misbehavior report accusing him of engaging in violent conduct, attempted assault on staff, and refusing a direct order. McCartin Decl. Exhs. (Dkt. No. 79, Attach.5) at 2–3. A Tier III disciplinary hearing was subsequently convened by defendant Andrew Harvey, a commissioner's hearing officer, to address the charges. [2] *Id.* at 2. Plaintiff was assigned a corrections counselor, defendant Torres, to help him prepare his defense at the disciplinary hearing. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 75–79. At the close of that hearing, plaintiff was found guilty on all three counts, and was sentenced to a six-month period of disciplinary SHU confinement, together with a loss of packages, commissary, and telephone privileges for a similar period. *Id.* at 21.

In the months that followed the incident involving defendants Rosati and St. John, both plaintiff and his mother, Linda Terry, wrote letters to defendant Fischer, the DOCCS Commissioner, complaining of the alleged assault. Plf.'s Resp. Exhs. (Dkt. No. 87, Attach.2) at 5, 8–12. On September 15, 2010, defendant Lucien LeClaire, the Deputy DOCCS Commissioner, responded by letter, advising plaintiff that defendant Fischer had referred plaintiff's complaint to him, and that he, in turn, had referred the matter to the Office of Special Housing/Inmate Disciplinary Programs. *Id.* at 6. The next day, defendant Albert Prack, the acting director of the Office of Special Housing/Inmate Disciplinary Programs,

wrote a letter to plaintiff indicating that his letters to defendant Fischer, which he construed as a request for reconsideration of his appeal of the disciplinary conviction, was without merit, and advising plaintiff that "[n]o further administrative action will be taken."*Id.* at 7.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on December 13, 2010, and on February 14, 2011, filed an amended complaint as a matter of right. Dkt. Nos. 1, 7. Those named as defendants in plaintiff's amended complaint include DOCCS Commissioner Brian Fischer; DOCCS Chief Counsel and Deputy Commissioner Anthony J. Annucci; DOCCS Deputy Commissioner Lucien LeClaire, Jr.; DOCCS Inspector General Richard Roy; Deputy Superintendent for Security at Great Meadow Charles Kelly; Deputy Superintendent for Administration at the Great Meadow D. Lindstrand; Corrections Captains Joseph Carey and Craig Goodman;[3] Corrections Sergeants D. Bebee and C. Fraser; Corrections Lieutenants T. Pray and Paul Zarnetski;[4] Commissioner's Hearing Officer Andrew Harvey; Corrections Counselor Torres; Corrections Officers Craig P. Rosati and Chad W. St. John; Physicians Assistant Ted Nesmith;[5] Register Nurse David Lindemann;[6] Laundry Supervisor B. Mars; and Acting Director of the Office of Special Housing/Inmate Disciplinary Programs Albert Prack.[7]

**\*4** Liberally construed, plaintiff's amended complaint asserts eight causes of action, claiming (1) the use of excessive force by defendants Rosati and St. John; (2) conspiracy to conceal the alleged assault by defendants Rosati and St. John against defendants Rosati, St. John, Fraser, Bebee, Kelly, Lindemann, Nesmith, Lindstrand, Goodman, Torres, and Harvey; (3) deliberate indifference to plaintiff's serious medical needs against defendants Lindemann and Nesmith; (4) retaliation against defendants Goodman, Rosati, and St. John; (5) failure to enforce DOCCS regulations against defendants Fischer, Annucci, Roy, and LeClaire; (6) withholding personal property against defendant Mars and Goodman; (7) procedural due process against defendants Harvey, Torres, and Prack; and (8) failure to train and supervise against defendants Fischer, Annucci, LeClaire, Roy, Kelly, and Lindstrand.[8] Am. Compl. (Dkt. No. 7) at 19–20.Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

By decision and order dated June 23, 2011, following an initial review of plaintiff's amended complaint, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the court *sua sponte* dismissed all of plaintiff's claims against defendants Kelly, Lindstrand, Carey, Bebee, and Pray, without prejudice, as well as plaintiff's equal protection claims against defendants Mars and Goodman, also without prejudice, and otherwise authorized the action to go forward. Dkt. No. 10.

On May 14, 2012, following the close of discovery, defendants moved for the entry of partial summary judgment dismissing the majority of the claims made in plaintiff's amended complaint. Dkt. No. 79.In their motion, defendants argue that (1) defendants Fischer, Annucci, LeClaire, Roy, and Prack are entitled to dismissal based upon the lack of their personal involvement in the alleged constitutional violations; (2) the record fails to support a claim of deliberate medical indifference against defendant Nesmith and Lindemann; (3) the record does not disclose a basis to hold defendant Fraser liable for failure to protect or intervene; (4) plaintiff's claims against defendant Zarnetski are subject to dismissal, based upon his lack of prior knowledge of and involvement in the assault; (5) plaintiff's verbal harassment claim against defendant Goodman is not cognizable under section 1983; (6) plaintiff's procedural due process cause of action against defendant Harvey lacks merit; (7) plaintiff's claim based upon the payment of $65 for a new mattress does not state a cognizable constitutional claim; and (8) in any event, all defendants, except for defendants Rosati and St. John, are entitled to qualified immunity. Defs.' Memo. of Law (Dkt. No. 79, Attach.17). Defendants' motion, to which plaintiff has since responded, Dkt. No. 87, is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72(3)(c).*See*Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

**\*5** Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett, 477 U.S. 317,* 322 (1986); *Anderson v. Liberty Lobby, Inc., 477 U.S. 242,* 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77,* 82–83 (2d

Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."*Anderson,* 477 U.S. at 248;*see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson,* 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n.4; *Sec. Ins. Co.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences in a light most favorable to the nonmoving party.*Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

**B.** *Personal Involvement*

In their motion, defendants seek dismissal of all claims against defendants Fischer, Annucci, LeClaire, Roy, and Prack based upon lack of personal involvement. Plaintiff responds by arguing that, through his letters, those individuals were or should have been aware of plaintiff's circumstances, but were deliberately indifferent, and additionally were derelict in the performance of their duties and in supervising subordinates, permitting the alleged constitutional deprivations to occur.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983."*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant

and the injuries suffered."*Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). It is well established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor because there is no *respondeat superior* liability under section 1983. [9] *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). A supervisor, however, may be held responsible for a civil rights violation when it is established that he (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom., Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). [10]

**1.** *Defendant Fischer*

**\*6** At his deposition, plaintiff testified that he sued DOCCS Commissioner Fischer for two reasons: (1) he wrote defendant Fischer about the alleged assault by defendants Rosati and St. John, and defendant Fischer failed to respond; and (2) as the DOCCS Commissioner, defendant Fischer is responsible for the actions of his subordinate employees. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 55–57. Neither of these reasons provides an adequate basis for suit under section 1983. *See, e.g., Hernandez v. Keane,* 342 F.3d 137, 144 (2d Cir.2003) ("[S]upervisor liability in a [section] 1983 action ... cannot rest on *respondeat superior."*); *Parks v. Smith,* No. 08–CV– 0586, 2011 WL 4055415, at \*14 (N.D.N.Y. Mar. 29, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4055414 (N.D.N.Y.2011) (McAvoy, J.) ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that official's personal involvement."). [11] Except for this testimony by plaintiff, there is no other record evidence relating to defendant Fischer. As a result, I find that no reasonable factfinder could conclude, based on the record evidence, that defendant Fischer was personally involved in any of the allegations giving rise to this action.

**2.** *Defendant Annucci*

At his deposition, plaintiff testified that he sued DOCCS Chief Counsel and Deputy Commissioner Annucci in this action for four reasons: (1) he is at the top of the chain

of command as Deputy Commissioner of DOCCS; (2) he failed to investigate the alleged assault on plaintiff; (3) he merely passed the letters from plaintiff and plaintiff's family down the chain of command; (4) he did not do his job. Plf.'s Dep. Tr. (Dkt. No. 79, Attach 3) at 57–59. Plaintiff's argument that defendant Annucci did not do his job by failing to investigate is based on plaintiff's unsupported assumption that defendant Fischer forwarded plaintiff's letter to defendant Annucci and instructed him to investigate. *See id.* at 58 ("[Defendant Annucci] didn't do what I figured he was told to be done by investigating[.]"). Indeed, there is no record evidence, including any testimony from plaintiff, that plaintiff or any members of his family wrote a letter or complaint directly to defendant Annucci. In any event, even assuming that defendant Annucci received plaintiff's letters, defendant Annucci's failure to respond to them is not sufficient to give rise to personal involvement under section 1983. *Parks,* 2011 WL 4055415, at *14 ("A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that official's personal involvement."). For these reasons, I find that no reasonable factfinder could conclude, based on the record evidence, that defendant Annucci was personally involved in any of the allegations giving rise to this action.

### 3. *Defendant LeClaire*

At his deposition, plaintiff testified that he sued Deputy DOCCS Commissioner LeClaire because defendant LeClaire forwarded plaintiff's letter addressed to defendant Fischer regarding the alleged assault to the Office of Special Housing/ Inmate Disciplinary Programs. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 60; Plf.'s Resp. Exhs. (Dkt. No. 87, Attach.2) at 6. That allegation is insufficient to raise a dispute of material fact as to whether defendant LeClaire is personally involved in any of the allegations giving rise to this action. *See, e.g., Ward v. LeClaire,* No. 07–CV–0026, 2010 WL 1189354, at *5 (N.D.N.Y. Mar. 24, 2010) (Suddaby, J.) ("[I]t is well settled that referring letters and grievances to staff for investigation is not sufficient to establish personal involvement."(internal quotation marks and alterations omitted)). Because there is no other record evidence that relates to defendant LeClaire, I find that no reasonable factfinder could conclude that he was personally involved in any of the allegations giving rise to this action.

### 4. *Defendant Roy*

**\*7** At his deposition, plaintiff stated that he sued defendant Roy because he has not received a response from the Inspector General's Office, where defendant Roy heads the Internal Affairs Department, regarding plaintiff's grievance. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 61. Plaintiff testified that he gave a copy of his grievance regarding the alleged assault to an Internal Affairs employee while at Great Meadow, and was later interviewed regarding the incident, but has not yet received a result of the investigation. *Id.* at 61– 64.Importantly, plaintiff testified that he has no personal knowledge that defendant Roy, as the head of Internal Affairs, was ever personally aware of the investigation. *Id.* Because there is no *respondeat superior* liability under section 1983, this evidence is not sufficient to support a claim against defendant Roy. *Hernandez,* 342 F.3d at 144. For that reason, I find that no reasonable factfinder could conclude, based on the record evidence, that defendant Roy was personally involved in any of the allegations giving rise to this action.

### 5. *Defendant Prack*

At his deposition, plaintiff testified that he sued defendant Prack because Prack cursorily reviewed plaintiff's appeal of his disciplinary conviction in his capacity as the acting director of the Office of Special Housing/Inmate Disciplinary Programs. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 92; Plf.'s Resp. Exhs. (Dkt. No. 87, Attach.2) at 7. A review of the record evidence reveals that defendant Prack did, in fact, respond to plaintiff's appeal of his disciplinary conviction, and that defendant Prack indicated in that response that plaintiff's appeal was meritless. Plf.'s Resp. Exhs. (Dkt. No. 87, Attach.2) at 7.

Whether review of an inmate's disciplinary conviction by a person in defendant Prack's position is sufficient to establish personal involvement in section 1983 cases is the subject of debate in this circuit. Some courts have determined that the review and response to an appeal of a disciplinary conviction are sufficient to establish personal involvement because that conduct implicates the second of the five potential grounds for supervisor liability under *Colon.* [12] *See Baez v. Harris,* No. 01–CV–0807, 2007 WL 446015, at *2 (N.D.N.Y. Feb. 7, 2007) (Mordue, C.J.) (finding that the response of "the Director of the Special Housing/Inmate Disciplinary Program" to the plaintiff's appeal is "sufficient to withstand summary judgment on the issue of personal involvement"); *Ciaprazi v. Goord,* No. 02–CV–0915, 2005 WL 3531464, at *16 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J., *adopting report and recommendation by* Peebles, M.J.) (recommending that [the director of Office of Special Housing/Inmate Disciplinary Programs] not be dismissed for lack of personal

involvement because a "review of [the plaintiff's appeal from a disciplinary conviction] sufficiently establishes his personal involvement based upon [the defendant] being positioned to discern and remedy the ongoing effects of any such violations"); *Johnson v. Coombe,* 156 F.Supp.2d 273, 278 (S.D.N.Y.2001) (finding that plaintiff's complaint sufficiently alleged personal involvement of the superintendent and DOCCS commissioner to withstand motion to dismiss because the complaint alleged that both defendants had actual or constructive notice of the alleged constitutional violation that occurred at the disciplinary hearing); *Gilbert v. Selsky,* 867 F.Supp. 159, 166 (S.D.N.Y.1994) ("If a supervisory official learns of a violation through ... an appeal, but fails to remedy the wrong, that may constitute a sufficient basis for liability."); *Cepeda v. Coughlin,* 785 F.Supp. 385, 391 (S.D.N.Y.1992) (holding that, on a motion to dismiss, the allegation that the DOCCS's commissioner "entertained" and "affirmed" the plaintiff's appeal is sufficient to state a claim against the commissioner because "the allegation that supervisory personnel learned of alleged misconduct on appeal yet failed to correct it constitutes an allegation of personal participation").

**\*8** On the other hand, some courts have concluded otherwise, holding that the mere allegation that a defendant reviewed a disciplinary conviction appeal is insufficient to find that defendant personally involved. *See Tafari v. McCarthy,* 714 F.Supp.2d 317 (N.D.N.Y.2010) (Hurd, J., *adopting report and recommendation by* Lowe, M.J .) ("The affirming of a disciplinary conviction does not constitute personal involvement in a constitutional violation."); *Abdur– Raheem v. Selsky,* 598 F.Supp.2d 367, 370 (W.D.N.Y.2009) ("The only allegation concerning [the director of the Special Housing/Inmate Disciplinary Program] ... is that he affirmed the disposition of plaintiff's administrative segregation hearing, pursuant to which plaintiff was confined to SHU. That is not enough to establish [his] personal involvement."(internal citation omitted)); *Odom v. Calero,* No. 06–CV–15527, 2008 WL 2735868, at \*7 (S.D.N.Y. Jul. 10, 2008) (holding that the allegation that the director of the Special Housing/Inmate Disciplinary Program was personally involved as a result his denial of the plaintiff's appeal of his disciplinary conviction was not sufficient to trigger the second category establishing personal involvement under *Colon* because, "[o]nce the [disciplinary] hearing was over and [the defendant's] decision was issued, the due process violation was completed"); *Ramsey v. Goord,* No. 05–CV–0047A, 2005 WL 2000144, at \*6 (W.D.N.Y. Aug. 13, 2005) ("[T]he fact that [the DOCCS commissioner

and SHU director], as officials in the DOC[C]S 'chain of command,' affirmed [a] determination on appeal is not enough to establish personal involvement of their part."); *Joyner v. Greiner,* 195 F.Supp.2d 500, 506 (S.D.N.Y.2002) ("The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance—which is all that is alleged against him—is insufficient to establish personal involvement or to shed any light on the critical issue of supervisory liability, and more particularly, knowledge on the part of the defendant."(internal quotation marks omitted)).

At this time, I am inclined to agree with those courts that have determined that a defendant's review and response to an appeal of a disciplinary conviction is sufficient under *Colon* to find that defendant personally involved. Mindful that on a motion for summary judgment I must view the facts, and draw all inferences, in the light most favorable to the non-movant, I find that a reasonable factfinder could conclude, if plaintiff's testimony is credited, that defendant Prack's review of plaintiff's disciplinary conviction revealed a due process violation, and by defendant Prack dismissing plaintiff's appeal, he failed to remedy that violation. Additionally, because it appears that plaintiff was still serving the sentence imposed at the disciplinary hearing where his alleged due process violation occurred, I find that any violation that may have occurred was ongoing, and defendant Prack was in a position to remedy that violation, at least in part, at the time plaintiff appealed his conviction. All of this is enough to find that there is a dispute of material fact as to whether defendant Prack was personally involved in the allegations giving rise to plaintiff's due process claim by way of the second of the five potential grounds for supervisor liability under *Colon.Cf. Black v. Coughlin,* 76 F.3d 72, 75 (2d Cir.1996) ("We disagree, however, with the district court's denial of leave to amend to add [the director of the Special Housing/Inmate Disciplinary Program], who [was] personally involved in [the plaintiff's] disciplinary proceedings[.]"). [13]

**\*9** In summary, I recommend that defendants' motion for summary judgment on the basis of personal involvement be granted with respect to defendants Fischer, Annucci, LeClaire, and Roy, but denied as it relates to defendant Prack.

### C. *Deliberate Indifference Claims Against Defendants Nesmith and Lindemann*

Defendants next seek dismissal of plaintiff's Eighth Amendment deliberate indifference claims against defendants Nesmith and Lindemann, arguing that the record

lacks any evidence of their deliberate indifference to plaintiff's serious medical needs. In his amended complaint, plaintiff contends that defendants Nesmith and Lindemann failed to provide him with proper medical treatment for back pain, blurred vision, and hearing loss resulting from alleged assault by defendants Rosati and St. John on June 18, 2010. Am. Compl. (Dkt. No. 7) at 12.

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society [,]' or which 'involve the unnecessary and wanton infliction of pain [.]' " *Estelle v. Gamble,* 429 U.S. 97, 102–03 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 100–01 (1958) and *Gregg v. Georgia,* 428 U.S. 153, 169–73 (1976) (internal citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration."*Estelle,* 429 U.S. at 103. Failure to provide inmates with medical care, "[i]n the worst cases, ... may actually produce physical torture or lingering death, [and] ... [i]n less serious cases, ... may result in pain and suffering no one suggests would serve any penological purpose."*Id.*

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements. *Wright v.. Goord,* 554 F.3d 255, 268 (2d Cir.2009); *Price v. Reilly,* 697 F.Supp.2d 344, 356 (E.D.N.Y.2010). To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable medical care .... Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate

and what harm, if any, the inadequacy has caused or will likely cause the prisoner.

*Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006) (internal citations omitted).

**\*10** The second inquiry of the objective test requires a court to look at the seriousness of the inmate's medical condition if the plaintiff alleges a complete failure to provide treatment. *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003)."Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain."*Salahuddin,* 467 F.3d at 280 (internal quotation marks and alterations omitted).

If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin,* 467 F.3d at 280. "For example, if the prisoner is receiving ongoing treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone."*Id.* (quoting *Smith,* 316 F.3d at 185) (internal quotations marks omitted).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' " *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999). "In medical-treatment cases ..., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin,* 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer,* 511 U.S. at 837);*see also Leach v. Dutrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Farmer* ); *Waldo v. Goord,* No. 97–CV–1385, 1998 WL 713809, at \*2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term

is used in criminal law." *Salahuddin,* 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839–40).

Here, after carefully reviewing the record evidence, I find that no dispute of material fact exists as to whether defendants Nesmith and Lindemann were deliberately indifferent to plaintiff's medical needs as a result of the alleged assault by defendants Rosati and St. John. More specifically, although plaintiff testified at his deposition that defendant Nesmith did not follow "his procedure as being a physician" and failed to follow-up with plaintiff, plaintiff also testified that defendant Nesmith cleaned plaintiff's laceration and closed it with eight stitches. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 79–80. Importantly, plaintiff testified that, on the date of the alleged assault, defendant Nesmith did everything that plaintiff requested of him. *Id.* at 80, 81. The record also reflects that defendant Lindemann completed an examination of plaintiff upon his arrival at the Great Meadow hospital, and that he completed a two-page "Use of Force Report" and one-page "Alleged Fight Exam" report during his examination of plaintiff. [14] Lindemann Decl. (Dkt. No. 79, Attach.7) at ¶ 4; Lindemann Decl. Exhs. (Dkt. No. 79, Attachs.7, 8); Nesmith Decl. (Dkt. No. 79, Attach.6) at ¶ 4. I have also reviewed the videotape submitted by defendants that recorded the treatment that defendants Nesmith and Lindemann provided plaintiff following the alleged assault by defendants Rosati and St. John. Lindemann Decl. Exhs. (Dkt. No. 79, Attach.10) (traditionally filed, not electronically filed). This recording did not display anything unusual, and, although the recording did not include any sound, it appeared that defendants Lindemann and Nesmith asked plaintiff questions, responded to plaintiff's answers, and provided plaintiff with thorough medical care for his reported injuries. *See generally id.* After carefully reviewing all of this evidence, including plaintiff's testimony, I conclude that no reasonable factfinder could find that the care defendants Nesmith and Lindemann provided plaintiff was inadequate, or that they acted with the requisite deliberate indifference when providing medical treatment to plaintiff.

**\*11** As it relates to plaintiff's allegations that he received inadequate follow-up medical treatment, the record evidence does not support this allegation. Specifically, plaintiff testified that defendant Nesmith removed his stitches. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 83. Additionally, a review of plaintiff's ambulatory health record reveals that plaintiff was subsequently treated by other medical staff members at Great Meadow on several occasions, including on June 20 and 25, 2010; July 1, 6, 20, 23, 27, and 29, 2010; and

August 3, 2010. Lindemann Decl. Exhs. (Dkt. No. 79, Attach 11). While some of those visits reference symptoms that plaintiff now attributes to the alleged assault on June 18, 2010, including a notation that plaintiff was scheduled to see an eye doctor (June 25, 2010), others involved matters unrelated to the alleged assault, including missing dentures (July 20, 2010), bug bites (July 23, 2010) and a request for toenail clippers (July 29, 2010). *Id.* Even considered in the light most favorable to plaintiff, the cumulation of this evidence leads me to find that a reasonable factfinder could not conclude that plaintiff received inadequate follow-up medical care by any of the named-defendants, including defendants Nesmith and Lindemann, or that any of the named-defendants acted with the requisite deliberate indifference.

In summary, I find that there is no record evidence to support a reasonable factfinder's determination that, objectively, defendants Nesmith and Lindemann provided plaintiff with inadequate treatment for a serious medical need, or that, subjectively, they knew of but disregarded an excessive risk to plaintiff's health or safety. I therefore recommend dismissal of plaintiff's deliberate medical indifference claim against those two defendants.

### D. *Plaintiff's Claims Against Defendant Fraser*

Defendants next seek dismissal of all claims asserted in plaintiff's amended complaint against defendant Fraser. A careful review of plaintiff's amended complaint reveals that it asserts three causes of action against defendant Fraser, including (1) conspiracy to cover-up the alleged assault on June 18, 2010; (2) the issuance of a false misbehavior report; and (3) failure to intervene. In their motion, defendants only specifically seek dismissal of a perceived excessive force claim, and the issuance of a false misbehavior report claim against defendant Fraser. For the sake of completeness, I will nonetheless address all of the claims asserted against defendant Fraser.

To the extent that plaintiff's amended complaint may be construed as asserting an excessive force claim against defendant Fraser, I recommend dismissal of that claim because there is no record evidence that defendant Fraser used any force against plaintiff. Specifically, a review of both plaintiff's amended complaint and his deposition transcript do not reveal an allegation that defendant Fraser used any force against him. Plaintiff only alleges that defendants Rosati and St. John used force, which is not sufficient to support an excessive force claim against defendant Fraser.

**\*12** The remaining claims asserted against defendant Fraser, except for plaintiff's failure to intervene cause of action, are also easily discounted. Plaintiff's conspiracy claim fails against defendant Fraser, as well as defendants Rosati, St. John, Harvey and Torres, Am. Compl. (Dkt. No. 7) at 19, because there is no record evidence that these defendants agreed to violate any of plaintiff's constitutional rights. *See Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999) ("To prove a [section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."). Specifically, plaintiff did not testify at his deposition to the existence of any agreement among those defendants, and the only mention of such an agreement is a conclusory allegation in plaintiff's amended complaint. *See* Am. Compl. (Dkt. No. 7) at 19 ("Defendant[ ]s Fraser, Rosati, St. John, Harvey, and Torres conspired to use Tier III hearing to deflect official misconduct for exercising a protected right[.]"). Mere conclusory allegations that are unsupported by any record evidence are insufficient to give rise to a genuine dispute of material fact. *See, e.g., Hilson v. Maltese,* No. 09–CV–1373, 2012 WL 6965105, at *6 n.10 (N.D.N.Y. Dec. 14, 2012) (Baxter, M.J.), *adopted by* 2013 WL 375489 (N.D.N.Y. Jan. 30, 2013) (Mordue, J.) ("Plaintiff's conclusory assertion ... is not sufficient to establish a material issue of fact[.]" (listing cases)).

Plaintiff's claim that defendant Fraser issued a false misbehavior report against him is not cognizable under *section 1983. See Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) ("[A] prison inmate has no general right to be free from being falsely accused in a misbehavior report.").

The allegations in plaintiff's amended complaint related to defendant Fraser's failure to adhere to DOCCS's regulations or policies, do not give rise to a cognizable claim under *section 1983. See Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.1987) ("State procedural requirements do not establish federal constitutional rights."); *Barnes v. Henderson,* 628 F.Supp.2d 407, 411 (W.D.N.Y.2009) ("[A] violation of New York State regulations concerning disciplinary hearings does not in itself establish a due process violation.").

Plaintiff's failure to intervene claim against defendant Fraser, however, cannot be dismissed at this juncture. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994), *accord, Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *see also Mowry v. Noone,* No. 02–CV–6257, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004) ("Failure to intercede results in liability where an officer observes the use of excessive force or has reason to know that it will be used."). To establish liability on the part of a defendant under this theory, "the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene." *Henry v. Dinelle,* No. 10–CV–0456, 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.) (citing *JeanLaurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008)).

**\*13** Here, a review of the record evidence reveals the existence of a genuine dispute of material fact as to whether defendant Rosati's continued use of force against plaintiff triggered defendant Fraser's duty to intervene. Although defendants cite plaintiff's deposition testimony for the proposition that "no further assault occurred after Defendant Fraser's arrival on the scene," Defs.' L.R. 7.1 Statement (Dkt. No. 79, Attach.16) at ¶ 9, the record does not support this fact. Instead, during two separate lines of questioning, plaintiff testified at his deposition that, after defendant Fraser arrived to the scene, defendant Rosati "pushed" or "mushed" plaintiff's face into the wall and threatened to kill him. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 38, 65. Because this testimony clearly indicates that defendant Fraser was present for this alleged use of force by defendant Rosati, and because the record evidence does not conclusively support a finding that defendant Rosati's additional use of force was unconstitutional, [15] I find that a reasonable factfinder could conclude, based on the record evidence now before the court, that defendant Fraser's duty to intervene was triggered by defendant Rosati's conduct.

In summary, I recommend that all claims against defendant Fraser be dismissed, with the exception of the failure to intervene claim.

### E. *Plaintiff's Claims Against Defendant Zarnetski*

Defendants next seek dismissal of all claims against defendant Zarnetski. Plaintiff's amended complaint alleges that defendant Zarnetski is liable for the force used by

defendant Rosati because he should have predicted that, when he instructed defendant Rosati to escort plaintiff to the disciplinary hearing, defendant Rosati would assault him. Although such an allegation, if properly supported by the record, may give rise to a failure to intervene or conspiracy to use excessive force claim, the evidence in this case does not support either claim.

In his verified amended complaint, plaintiff avers that defendant Zarnetski sent defendant Rosati to escort him to his disciplinary hearing, and on the way to the hearing, defendant Rosati assaulted him. Am. Compl. (Dkt. No. 7) at 17.During his deposition, plaintiff elaborated on this allegation only to the extent of testifying that it is "known" at Great Meadow that defendant Rosati "is a hothead," and, as a result of this common prison knowledge, defendant Zarnetski should have predicted that defendant Rosati would assault plaintiff. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 88–89. Plaintiff also admitted, however, that, in order to attend his disciplinary hearing, he was required to be escorted by a corrections officer. *Id.* at 88.In his affidavit, defendant Zarnetski avers that he "had absolutely no foreknowledge that C.O. Rosati and plaintiff would be involved in a use of force on June 18, 2010."Zarnetski Decl. (Dkt. No. 79, Attach.14) at ¶ 4. Because, in the face of defendant Zarnetski's denial, plaintiff's allegations amount to nothing more than his rank speculation that defendant Zarnetski knew or should have known that defendant Rosati would assault plaintiff, I find that no reasonable factfinder could conclude that defendant Zarnetski had a duty to intervene. *See Henry,* 2011 WL 5975027, at *4 (finding that, to establish liability on the part of a defendant for failure to intervene, "the plaintiff must adduce evidence establishing that the officer had (1) a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene."). In addition, because none of this evidence raises a genuine dispute of material fact as to whether defendants Zarnetski and Rosati agreed to use force against plaintiff, I find that no reasonable factfinder could conclude that defendant Zarnetski conspired to violate plaintiff's constitutional rights. *See Pangburn,* 200 F.3d at 72 ("To prove a [section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."). For all of these reasons, I recommend dismissing all of plaintiff's claims against defendant Zarnetski.

### F. *Plaintiff's Claims Against Defendant Lieutenant Goodman*

**\*14** In his amended complaint, plaintiff alleges that defendant Goodman conspired with defendants Rosati and St. John to effectuate the alleged assault on plaintiff because plaintiff successfully modified a disciplinary sentence imposed by defendant Goodman. Am. Compl. (Dkt. No. 7) at 8. Plaintiff supports this contention with a further allegation that, three days after the alleged assault by defendants Rosati and St. John, defendant Goodman said to plaintiff, " 'That is what you get for getting my sentence modified [.]' " *Id.* at 14.Defendants properly construe these allegations as plaintiff's assertion of a First Amendment retaliation claim, and seek its dismissal. Defendants also seek dismissal of plaintiff's verbal harassment claim asserted against defendant Goodman.

#### 1. *First Amendment Retaliation*

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an inmate, which is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000) ( "In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). To state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007); *Garrett v. Reynolds,* No. 99–CV–2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

Here, it is well settled that plaintiff's appeal of defendant Goodman's disciplinary sentence is constitutionally protected conduct, satisfying the first prong of a retaliation claim. *See, e.g., Santiago v. Holden,* No. 11–CV–0567, 2011 WL 7431068, at *5 (N.D.N.Y. Nov. 29, 2011) (Homer, M.J.), *adopted by* 2012 WL 651871 (N.D.N.Y. Feb. 28, 2012) (Suddaby, J.) ("There is no question that [the plaintiff's]

conduct in filing grievances and appeals was conduct protected by the First Amendment."); *Brown v. Bascomb,* No. 05–CV–1466, 2008 WL 4283367, at *6 (N.D.N.Y. Sept. 16, 2008) (Mordue, C.J.). In addition, being assaulted plainly constitutes an adverse action sufficient to satisfy the second prong of a retaliation claim. *See Cole v. N.Y. S. Dep't of Corrs. Svcs.,* 2012 WL 4491825, at *13 (N.D.N.Y. Aug. 31, 2012) (Dancks, M . J.), *adopted by* 2012 WL 4506010 (N.D.N.Y. Sept. 28, 2012) (Mordue, J.) ("An assault by corrections officers is sufficient to chill a person of ordinary firmness from continuing to engage in his First Amendment activity."(internal quotation marks omitted)). Turning to the third requirement for a retaliation claim, requiring that a plaintiff to establish a casual connection between the protected conduct and adverse action, drawing all inferences in favor of plaintiff, I find that both plaintiff's amended complaint and his deposition testimony, if credited by a factfinder, may serve to support the allegation that defendant Goodman did, in fact, conspire with defendants Rosati and St. John to assault plaintiff. More specifically, if plaintiff's testimony regarding defendant Goodman's statements three days after the assault is credited, a reasonable factfinder could conclude that this statement was an admission by defendant Goodman that he orchestrated, in some way, the assault on plaintiff. However, because defendant Goodman explicitly denied conspiring with defendants Rosati and St. John to assault plaintiff, Goodman Decl. (Dkt. No. 79, Attach.12) at ¶¶ 3, 4, I find that a genuine dispute of fact exists as to whether defendant Goodman conspired with defendants Rosati and St. John to retaliate against plaintiff for having exercised his First Amendment rights. For this reason, I recommend that defendants' motion for summary judgment be denied as it relates to plaintiff's retaliation claim against defendant Goodman.

### 2. *Verbal Harassment*

 **\*15** To the extent that plaintiff's amended complaint may be construed as asserting a verbal harassment claim against defendant Goodman for allegedly stating to plaintiff, " 'That is what you get for getting my sentence modified,' " Am. Compl. (Dkt. No. 7) at 14, that claim is not cognizable under section 1983. *See, e.g., Moncrieffe v. Witbeck,* No. 97–CV–0253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) ("A claim for verbal harassment is not actionable under 42 U.S.C. § 1983."). For this reason, I recommend that plaintiff's verbal harassment claim asserted against defendant Goodman be dismissed. [16]

### G. *Plaintiff's Claims Against Defendants Harvey, Torres, and Prack*

Defendants next seek dismissal of plaintiff's procedural due process claims asserted against defendants Harvey, Torres, and Prack. Defendant Harvey served as the hearing officer who presided at plaintiff's Tier III disciplinary hearing arising from the incident on June 18, 2010. Defendant Torres was assigned to assist Smith in his defense at that disciplinary hearing. Plaintiff's amended complaint also alleges that defendants Harvey and Torres conspired with others to use the Tier III hearing to conceal official misconduct. Additionally, as was briefly noted above, plaintiff's amended complaint asserts a due process claim against defendant Prack.

### 1. *Due Process Claims*

To establish a procedural due process claim under section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996).

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell,* 418 U .S. 539, 564–67 (1974). Under *Wolff,* the constitutionally mandated due process requirements, include (1) advanced written notice of the charges, (2) a hearing in which the inmate is provided the opportunity to appear at a disciplinary hearing and present witnesses and evidence, (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken, and, in some circumstances, (4) the right to assistance in preparing a defense. *Wolff,* 418 U.S. at 564–70; *see also Eng v. Coughlin,* 858 F.2d 889, 897–98 (2d Cir.1988). In order to pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must garner at least "some eviden[tiary]" support. *Superintendent, MA Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985).

Here, as it relates to defendant Harvey, plaintiff's amended complaint alleges that defendant Harvey failed to provide plaintiff with a timely hearing. Am. Compl. (Dkt. No. 7) at 13.To the extent that plaintiff bases this claim on an allegation that defendant Harvey violated a state agency's regulation, that claim fails as a matter of law. *See Bolden,* 810 F.2d at 358 ("State procedural requirements do not establish

federal constitutional rights."); *Barnes,* 628 F.Supp.2d at 411 ("[A] violation of New York State regulations concerning disciplinary hearings does not in itself establish a due process violation.").

**\*16** As it relates to defendant Torres, plaintiff's allegation that she failed to call or interview witnesses on his behalf is unsupported by the record evidence. Specifically, plaintiff admitted at his deposition that he has no basis to believe that defendant Torres failed to interview the people identified by plaintiff as potential witnesses to the alleged assault. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 75–76. In addition, plaintiff admitted that defendant Torres returned to plaintiff with a list of witnesses that would or would not testify on his behalf. *Id.* at 77.Finally, plaintiff admitted that he did, in fact, call as witnesses those people that agreed to testify on his behalf. *Id.* at 78.From this record evidence, I find that no reasonable factfinder could conclude that defendant Torres denied plaintiff due process based on a failure to assist plaintiff in identifying and calling witnesses on his behalf.

As it relates to defendant Prack, plaintiff's amended complaint alleges that defendant Prack "failed to stop the torture in SHU."Am. Compl. (Dkt. No. 7) at 19.The court construes this allegation to suggest that, because defendant Prack denied plaintiff's appeal of his disciplinary conviction, he contributed to whatever procedural due process violations occurred during the disciplinary hearing below. The record evidence, however, does not support this conclusion because, as discussed above, defendant was provided the opportunity to investigate and present witnesses on his behalf, and he was appointed a corrections counselor to assist in the preparation of his defense. Plf.'s Dep. Tr. (Dkt. No. 79, Attach.3) at 75, 77–78. Moreover, a careful review of the Tier III hearing transcript, submitted by defendants in support of their motion, reveals that plaintiff was provided adequate due process during the disciplinary hearing from which plaintiff appealed to defendant Prack. McCartin Decl. Exhs. (Dkt. No. 79, Attach.5). All of this evidence leads the court to conclude that no reasonable factfinder could find that defendant Prack's determination that plaintiff's appeal contributed to a due process violation.

For all of these reasons, I recommend that plaintiff's procedural due process claim asserted against defendant Harvey, Torres, and Prack be dismissed.

### 2. *Conspiracy Claim*

To the extent it is alleged that defendants Harvey and Torres conspired to conceal the June 18, 2010 assault, such claims are not cognizable under section 1983. *De Ponceau v. Bruner,* No. 09–CV–0605, at \*7 (N.D.N.Y. Feb. 21, 2012) (Peebles, M.J.), *adopted by* 2012 WL 1014821 (N.D.N.Y. Mar. 23, 2012) (Suddaby, J.). In any event, as was discussed above in determining that plaintiff's conspiracy claim asserted against defendant Fraser, there is no record evidence that defendants Harvey and Torres engaged in an agreement to violate any of plaintiff's constitutional rights. For these reasons, I recommend that plaintiff's conspiracy claim asserted against defendants Harvey and Torres be dismissed.

### H. *Plaintiff's Claims Against Defendant Mars*

**\*17** Defendants next seek dismissal of all claims against defendant Mars, including plaintiff's claim that she violated his Fourteenth Amendment rights by making him pay $65 to replace a damaged mattress. The Fourteenth Amendment, however, does not give rise to a claim that a defendant deprived a plaintiff of private property; it only protects a plaintiff's right to due process as a result of a deprivation of private property. *See, e.g., Edwards v. Bezio,* No. 08–CV–0256, 2010 WL 681369, at \*5 (N.D.N.Y. Feb. 24, 2010) (Kahn, J., *adopting report and recommendation by* Treece, M.J.) ("The lynchpin of a due process claim based on a state actor's unauthorized deprivation of private property is the availability of post-deprivation remedies provided by the state, not the deprivation itself .... Plaintiff does not allege that New York State has failed to provide a meaningful post-deprivation remedy, and, in fact, New York provides a venue for challenging such appropriations in the New York State Court of Claims."). For this reason, I recommend that any claim asserted by plaintiff against defendant Mars based on an allegation that she charged him too much money for his new mattress be dismissed.

Defendants also seek dismissal of plaintiff's claim against defendant Mars relating to the issuance of a false misbehavior report. The mere allegation of the issuance of a false misbehavior report against an inmate, however, is not cognizable under section 1983. *See* Boddie, 105 F.3d at 862 ("[A] prison inmate has no general right to be free from being falsely accused in a misbehavior report."). Moreover, even assuming that defendant Mars did issue a false misbehavior report, whatever wrong arose out of that conduct is rectified by the court's finding that plaintiff received adequate due process at the ensuing disciplinary hearing. *See, e.g.,* Plf .'s Dep. Tr. (Dkt. No. 79, Attach.3) at 12–13. *See Jones v. Coughlin,* 45 F.3d 677, 679 (2d Cir.1995) (finding that, where

an alleged false misbehavior report is filed against a prisoner, his "due process rights are protected if he is granted a hearing on the charges and given an opportunity to rebut them").

Finally, defendants seek dismissal of plaintiff's equal protection claim asserted against defendant Mars based on plaintiff's admission that defendant Mars did not single him out or treat him differently than other inmates based on his race. Plaintiff's equal protection claim against defendant Mars, however, was previously dismissed by the court, and it has not been revived by plaintiff's amended complaint. Dkt. No. 10 at 16.

For all of these reasons, I recommend that all of plaintiff's claims asserted against defendant Mars be dismissed.

## I. *Qualified Immunity*

Because I recommend that one claim against each defendant Fraser and defendant Goodman survive defendants' pending motion for summary judgment, I will only address defendants' defense of qualified immunity as it relates to those two defendants.

 **\*18**  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."*Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012); *see also Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Sudler v. City of New York,* 689 F.3d 159, 174 (2d Cir.2012).* The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."*Pearson,* 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct.*Sudler,* 689 F.3d at 174 (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson,* 555 U.S. 223).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff,* 642 F.3d 334, 345 (2d Cir.2011). The inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a constitutional right, and if so, whether that right is clearly established at the relevant time. *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 (2011); *Nagle v. Marron,* 663 F.3d 100, 114 (2d Cir.2011); *Doninger,* 642 F.3d at 345 (citing cases). To be clearly established, a right must be sufficiently clear "that every reasonable official would have understood that what he is doing violates that right."*Ashcroft,* 131 S.Ct. at 2083 (internal quotation marks omitted). Until recently, courts were required to analyze qualified immunity by considering the two factors in order. *Doninger,* 642 F.3d at 345 (citing *Saucier,* 533 U.S. at 201). Following the Supreme Court's decision in *Pearson,* however, courts are no longer wedded to the *Saucier* "two step," and instead retain the discretion to decide the order in which the two relevant factors are to be considered. [17] *Id.; see also Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 429 n.9 (2d Cir.2009).

To prevail on a qualified immunity defense, a defendant must establish that "(1) the officers' actions did not violate clearly established law, or (2) it was objectively reasonable for the officers to believe that their actions did not violate such law."*Green v. Montgomery,* 219 F.3d 52, at 59 (2d Cir.2000).

### 1. *Defendant Fraser*

Because the right to be free from excessive force is a clearly established right, the relevant qualified immunity inquiry turns on whether a reasonable officer in defendant Fraser's position would have known that defendant Rosati's conduct amounted to excessive force. See *Green,* 219 F.3d at 59 ("It is beyond dispute that the right to be free from excessive force has long been clearly established."). Defendants have already acknowledged that whether defendant Rosati's use of force against plaintiff constitutes excessive force is a question for the jury, and I agree. As a result, I cannot conclude that defendant Fraser is entitled to qualified immunity as it relates to plaintiff's failure to intervene claim.

### 2. *Defendant Goodman*

 **\*19**  As noted earlier, an inmate's right to appeal a disciplinary sentence is protected by the First Amendment. *Santiago,* 2011 WL 7431068, at *5. Therefore, the relevant inquiry is whether a reasonable officer in defendant Goodman's position would have known that conspiring with other corrections officers to have plaintiff assaulted in retaliation for plaintiff appealing the sentence violated his clearly established First Amendment right. Because that answer is clearly, "yes," I cannot conclude that defendant Goodman is entitled to qualified immunity as it relates to plaintiff's retaliation claim.

In summary, I recommend that defendants' motion for summary judgment be denied as it relates to defendants' qualified immunity defense.

#### IV. *SUMMARY AND RECOMMENDATION*

At the center of plaintiff's amended complaint in this action is his claim that he was assaulted by defendants Rosati and St. John, two corrections officers stationed at Great Meadow, during an escort from his cell to a disciplinary hearing. While defendants have moved for summary judgment dismissing many of plaintiff's other claims, they do not challenge that cause of action at this juncture, acknowledging that its resolution will undoubtedly turn upon credibility determinations, which are not properly made on a motion for summary judgment.

After carefully reviewing the record evidence in this case, I recommend that all of plaintiff's claims against all of the remaining defendants be dismissed, with the exception of plaintiff's failure to intervene claim against defendant Fraser, and plaintiff's retaliation claim against defendant Goodman. As it relates to those two remaining claims, I conclude that a reasonable factfinder could determine, if plaintiff's testimony is credited, that defendant Fraser's duty to intervene was triggered, and that defendant Goodman conspired with defendants Rosati and St. John to retaliate against plaintiff. Additionally, at this juncture, the record evidence does not establish a basis to find that defendants Fraser or Goodman are entitled to qualified immunity.

Addressing plaintiff's remaining claims, I find that the record before the court fails to establish a proper basis to conclude that defendants Fischer, Annucci, LeClaire, and Roy were personally involved in any of the allegations giving rise to this action. The record also reflects that no reasonable factfinder could conclude that defendant Nesmith and Lindermann are liable for deliberate medical indifference to plaintiff's serious medical needs. Similarly, plaintiff has stated no claim against defendant Zarnetski associated with the assault or otherwise, nor has he stated a cognizable due process claim against defendants Harvey, Torres or Prack. Finally plaintiff's claims against defendant Mars, related to the requirement that he pay $65 to replace a damaged mattress, and the issuance of a false misbehavior report, lack merit. Based upon the foregoing, it is hereby respectfully,

**\*20** RECOMMENDED that defendants' summary judgment motion (Dkt. No. 79) be GRANTED, in part, as it relates to all of plaintiff's claims against all defendants, with the exception of (1) plaintiff's claims against defendants Rosati and St. John, (2) plaintiff's failure to intervene claim against defendant Fraser, and (3) plaintiff's First Amendment retaliation claim against defendant Goodman.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules; and it is further

ORDERED that the clerk is respectfully directed to amend court records to reflect the correct name spellings of defendants Zarnetski, Nesmith, Lindemann, and Prack.

#### All Citations

Not Reported in F.Supp.2d, 2013 WL 1500422

#### Footnotes

1   In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

2   The DOCCS conducts three types of inmate disciplinary hearings. See 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace,* 143 F.3d 653, 655 n.1 (2d Cir.1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes,* 143 F.3d 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

3   Plaintiff's amended complaint identifies defendant Goodman as a lieutenant. Am. Compl. (Dkt. No. 7) at 5. In his affidavit submitted in support of defendants' pending motion, however, defendant Goodman states that he is a corrections captain. Goodman Decl. (Dkt. No. 79, Attach.12) at ¶ 1.

4    Defendant Zarnetski's name has been spelled by plaintiff in various ways, and is listed on the court's records as Zaratski. The clerk is respectfully directed to amend the court's records to reflect the correct spelling of this defendant's name as Zarnetski.

5    Defendant Nesmith was sued by plaintiff as "Nesmith (Ted) Fisher, III," Am. Compl. (Dkt. No. 7) at 6, and is listed on the court's records as "Nesmith Fisher." The clerk is respectfully directed to amend the court's records to reflect the correct spelling of this defendant's name as Ted Nesmith.

6    Defendant Lindemann was sued by plaintiff as "D. Lindermann," Am. Compl. (Dkt. No. 7) at 6, and is listed on the court's records as "D. Lindermann." The clerk is respectfully directed to amend the court's records to reflect the correct spelling of this defendant's name as David Lindemann.

7    The record reflects that defendant Prack's name has been spelled in a variety of ways, and is listed on the court's records as "Albert Prach." The clerk is respectfully directed to amend the court's records to reflect the correct spelling of this defendant's name as Albert Prack.

8    At several points in his complaint, as amended, plaintiff alleges that defendants violated various regulations regarding such matters as reporting the requirement of prison medical personnel to assess medical conditions, and the requirement that a disciplinary hearing be held within seven days. It is well-established that the violation of a prison regulation is not redressable in a civil rights action brought pursuant to section 1983. *See* *Bolden v. Alston,* 810 F.2d 353, 358 (2d Cir.1987) ( "State procedural requirements do not establish federal constitutional rights."); *Barnes v. Henderson,* 628 F.Supp.2d 407, 411 (W.D.N.Y.2009) ( "[A] violation of New York State regulations concerning disciplinary hearings does not in itself establish a due process violation."). Plaintiff's complaint also references 18 U.S.C. § 1351, a criminal statute addressing fraud and foreign labor contracting, as well as the Torture Victim Protection Act of 1991, codified at 28 U.S.C. § 1350, and providing a private right of action by an alien for a tort committed in violation of international law or a United States treaty. Those sections do not appear to have any applicability to the facts of this case.

9    Here, the defendants implicated in this portion of the pending motion are principally supervisory DOCCS employees.

10   The Second Circuit has yet to address the impact of the Supreme Court's decision in *Iqbal* on the categories of supervisory liability under *Colon.*Lower courts have struggled with this issue—specifically in deciding whether *Iqbal* effectively calls into question certain categories of supervisor liability in *Colon. Sash v. United States,* 674 F.Supp.2d 542–44 (S.D.N.Y.2009); *see also* *Stewart v. Howard,* No. 09–CV0069, 2010 WL 3907227, at *12 n.10 (N.D.N.Y. Apr. 26, 2010)* (Lowe, M.J.) ("The Supreme Court's decision in [*Iqbal* ] arguably casts in doubt the continued viability of some of the categories set forth in *Colon.*"(citing *Sash* )). In this case, absent any controlling authority to the contrary, the court assumes that all of the *Colon* categories still apply.

11   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions deleted for Westlaw purposes.]

12   *See Colon,* 58 F.3d at 873 ("The personal involvement of a supervisory defendant may be shown by evidence that: ... (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[.]").

13   Based on the record evidence now before the court, I find that defendant Prack could have been personally involved only in plaintiff's procedural due process claim. As discussed more completely below, however, I recommend dismissal of that claim. Therefore, the finding that a dispute of material fact exists as to whether defendant Prack was personally involved in the allegations giving rise to this action is largely academic.

14   These reports do not include any complaints of hearing loss or blurred vision—complaints that plaintiff has alleged are ongoing and long-term effects of the alleged assault. *See generally* Lindemann Decl. Exhs. (Dkt. No. 79, Attachs.7, 8).

15   In their motion, defendants have expressly represented that they do not move for summary judgment on the excessive force claim asserted against defendants Rosati and St. John because "[t]hat claim ... necessarily involves a credibility determination ... [and] remain[s] for trial."Defs.' Memo of Law (Dkt. No. 79, Attach.17) at 3.

16   In the court's initial order, plaintiff's equal protection cause of action was dismissed against defendants Goodman and Mars. Dkt. No. 10 at 16.

17   Because qualified immunity is "an immunity from suit rather than a mere defense to liability,"*Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."*Pearson,* 555 U.S. at 231 (internal quotation marks omitted).

---

WestlawNext © 2016 Thomson Reuters. No claim to original U.S. Government Works.